IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re OWENS CORNING, *et al.*,

| | |
|---|---|
| INACOM CORP., and its related debtors, by and through Executive Sounding Board Associates, Inc. as Plan Administrator,<br><br>    **Appellant,**<br><br>  v.<br><br>Owens Corning, and its affiliated debtors and debtors in possession,<br><br>    **Appellee.** | Civil Action No. 05-852 (JPF)<br><br>Bankruptcy Case No. 00-3837<br><br>On Appeal from an Order of the United States Bankruptcy Court for the District of Delaware |

## OPENING BRIEF OF APPELLANT INACOM CORP., *ET AL.*

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
  & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Electronic Mail: ljones@pszyjw.com
     sselzer@pszyjw.com

Counsel for Appellant

## TABLE OF CONTENTS

Page

I.  STATEMENT OF ISSUES .................................................................. 1

II. PRELIMINARY STATEMENT .......................................................... 1

III. SUBJECT MATTER AND APPELLATE JURISDICTION ......................... 5

IV. STANDARDS OF REVIEW ............................................................. 5

V.  STATEMENT OF FACTS ............................................................... 6

   A.  Inacom's State of Affairs and Prior Bankruptcy Filing ................................ 6

   B.  The Owens Corning Bankruptcy and Inacom's Realization of Its Mistake ........................................................................................ 9

   C.  Procedural History ................................................................................... 13

   D.  Subsequent and Related Events ................................................................ 13

VI. ARGUMENT ................................................................................. 15

   A.  The Bankruptcy Court Clearly Erred By Failing to Engage in a Proper Analysis of All of the Factors and Circumstances in the Instant Matter as Mandated by *Pioneer* and Third Circuit Precedent. .............................................................................. 15

   B.  The Bankruptcy Court Abused Its Discretion in Ruling that There Was No Excusable Neglect in This Case, By Failing to Properly Weigh the *Pioneer* Factors, Including in Particular the Lack of Prejudice to Appellee. ....................................................... 21

      1.  There is No Prejudice to Appellee. ........................................ 21

      2.  The Reasons for Appellant's Delay in Filing a Claim Were a Combination of Exceptionally Adverse Circumstances Confronting Inacom and Not the Result of Bad Faith Actions or Motives. ............................................... 25

      3.  There Will Be No Effect on Judicial Proceedings if Inacom Were Permitted to Late-File Its Claim. ...................... 27

      4.  Appellant Has Acted in Good Faith and Appellee Has Not Asserted or Presented Any Evidence to the Contrary. .............................................................................. 28

VII. CONCLUSION ............................................................................. 29

42125-003\DOCS_DE:114140.3

# TABLE OF AUTHORITIES

## CASES

Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995) ....................................................20, 21, 27

Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.), 62 F.3d 730
 (3d Cir. 1995) ..............................................................................................................22

Herman's Sporting Goods, Inc., 166 B.R. 581 (Bankr. D.N.J. 1994)...................................18, 19

In re Lernout & Hauspie Speech Products N.V.,
 308 B.R. 672 (D. Del. 2004) ........................................................................................5

In re O'Brien Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999)...........................passim

Mother Hubbard, Inc., 152 B.R. 189 (Bankr. W.D.Mich. 1993) .........................................18, 27

Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315 (3d Cir. 2001).....20, 23, 24

Perrin v. United States, 444 U.S. 37, 1000 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ........................16

Pioneer Investment Services Co. v. Brunswick Associates
 Ltd. Partnership, 507 U.S. 380 (1983) ...................................................................passim

Pro-Tec Services, LLC v. Inacom Corp., et al.
 (In re Inacom Corp., et al.), Civil Action No. 04-390 (GMS),
 2004 WL 2283599 (D. Del. Oct. 4, 2004)......................................................17, 22, 24, 25,27

R.H. Macy & Co., Inc., 166 B.R. 799 (S.D.N.Y. 1994) ...............................................................24

## STATUTES

11 U.S.C. § 1121(d) ....................................................................................................................23

28 U.S.C. § 158 ........................................................................................................................5, 16

28 U.S.C. §§ 1334 .........................................................................................................................5

## RULES

Fed. R. Bankr. P. 8013 ..................................................................................................................5

Fed. R. Bankr. P 9006 .................................................................................................1, 2, 15, 20

I. **STATEMENT OF ISSUES**

The issues on appeal are (i) whether the Bankruptcy Court erred in denying "Inacom Corporation's Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1)" (the "Motion") (A59-184),[1] filed by Executive Sounding Board Associates, Inc. as Plan Administrator, on behalf of Inacom Corp. and its affiliated debtors (collectively, "Inacom" or "Appellant"), in that the Bankruptcy Court failed to engage in a proper analysis of all of the relevant factors and circumstances in determining whether "excusable neglect" exists for purposes of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (ii) if the Bankruptcy Court did consider and apply all of the relevant factors, whether the Bankruptcy Court nonetheless abused its discretion in determining that there was no excusable neglect warranting the relief requested in the Motion.

II. **PRELIMINARY STATEMENT**

By its Motion, Appellant Inacom sought authority to file a proof of claim against Appellee Owens Corning and its debtor affiliates (collectively, "Owens Corning" or "Appellee") in the pending Chapter 11 cases, after the lapse of the applicable claims bar date, based on Appellant's excusable neglect, pursuant to Bankruptcy Rule 9006. Based on the findings and statements made by the Bankruptcy Court at a hearing held on the Motion, the Bankruptcy Court entered an order denying the Motion. For the reasons set forth herein, Appellant believes that (i)

---

[1] Citations to "A__" herein refer to the designated pages in the Appendix to Opening Brief of Appellant Inacom Corp., *et al.* For the convenience of the Court, all items designated by the Appellant in the Appellant's Designation of Items to be Included in the Record on Appeal and referenced to by the Appellant in this Opening Brief have been included in the Appellant's Appendix.

the Bankruptcy Court failed to engage in a proper analysis of all of the relevant factors set forth by the Supreme Court in <u>Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership</u>, 507 U.S. 380 (1983) ("<u>Pioneer</u>"), and controlling Third Circuit authority, and (ii) even assuming arguendo that it did weigh and apply the relevant standards, the Bankruptcy Court abused its discretion in determining that there was no excusable neglect. Accordingly, the Bankruptcy Court's ruling should be reversed and Inacom should be granted leave to file its proof of claim in Appellee's bankruptcy case.

Appellant does not dispute that it received notice of the claims bar date in Owens Corning's Chapter 11 case, and acknowledges that negligent mistakes were made by its agents, resulting in Appellant's failure to timely file a proof of claim. Nonetheless, based on a proper consideration of all of the factors enunciated by the Supreme Court in <u>Pioneer</u>, it is clear that excusable neglect for purposes of Bankruptcy Rule 9006(b)(1) exists in this case. Importantly, however, the Bankruptcy Court failed to conduct a proper analysis of all, if any, of the <u>Pioneer</u> factors in denying Appellant's Motion.

As reflected in the transcript of the hearing on the Motion, the Bankruptcy Court focused exclusively on the fact that Inacom "deliberately" or "affirmatively" decided not to file its claim. This focus was misplaced. As explained herein, it is perhaps accurate that there was one "deliberate" or intentional act in a combination of events and circumstances comprising Appellant's failure to timely file a claim: After receipt of the claims bar date notice, Inacom's agents consulted certain of its records and mistakenly first believed that Inacom had filed a proof

2

of claim against Appellee on earlier occasion.[2]  Based on that neglectful mistake, Inacom did (using the Bankruptcy Court's terminology) "deliberately" and "affirmatively" determine not to file a proof of claim, but as noted, that determination was a mistake predicated on misinformation, neglect and other errors.  Certainly, there was no intentional decision to not file a claim for some strategic or other like reason.  Only later, after the lapse of the claims bar date, did Inacom's agents learn that actually no proof of claim had been filed.

Notwithstanding Inacom's prior neglectful mistakes (made in good faith), the Bankruptcy Court considered as dispositive that Inacom's agents (albeit based on the erroneous belief that a claim had been filed) made the deliberate or intentional decision not to file its proof of claim.  According to the Bankruptcy Court, "[T]he problem is that somebody [Inacom's agent(s)] is dealing on a deliberate basis with this Owens Corning claim.  If they made a mistake, they made a mistake.  But the question is, is there neglect? .... I absolutely can't see how this is neglectful.  It was a deliberate course of events."  (Hr'g Tr. pp. 25:8-12, 26:14-15, A286-287).  Apparently based on the foregoing reasoning, the Bankruptcy Court did not conduct any meaningful analysis of the Pioneer factors.  The Bankruptcy Court's analysis, based on this overly narrow application of the excusable neglect standard under Bankruptcy Rule 9006, missed the true import of Pioneer and fell far short of the comprehensive, requisite analysis of all relevant factors and circumstances mandated by Pioneer and controlling Third Circuit authority.

---

[2] Inacom's failure to timely file its claim was directly related to Inacom's agents misconstruing information in its internal schedules (that a proof of claim had already been filed), but a combination of adverse events and circumstances, many of which were beyond Inacom's control, had contributed to the poor state of Inacom's accounts receivable records, including those related to Owens Corning.

Even assuming for argument sake that the Bankruptcy Court weighed all of the relevant factors and circumstances, the Bankruptcy Court abused its discretion in all events in failing to find excusable neglect in the instant matter. As discussed herein, the Pioneer factors significantly militate in favor of Appellant's position. Most significantly, Appellee does not stand to suffer any cognizable prejudice if Inacom, which has acted in good faith at all relevant times, were permitted to late-file its claim. Appellee has only recently submitted an amended reorganization plan in its pending bankruptcy case (thus, there have been no distributions to other creditors that would potentially have to be returned), and is still in the process of the claims administration and litigation process. In fact, Appellee had listed in its Schedules of Liabilities potential claims of Inacom entities of over $3.27 million (substantially more than the amount currently sought by Inacom); Appellee cannot claim (and has not claimed) surprise in Inacom's current attempt to file claims. There is simply no risk of true harm to Appellee and its reorganization efforts if Inacom's Motion were granted. Basically recognizing this fact, Appellee, in its opposition to the Motion, rather than presenting any evidence, could only muster the rhetorical question, "Should the Motion be granted, how many of these parties [potential creditors who were served with notice of the bar date but did not file any claims] will seek to assert late claims?" (Objection, ¶ 14, p. 6, A209). The Third Circuit has made crystal clear that such hypothetical harm is simply insufficient to demonstrate prejudice.

The foregoing and the other Pioneer factors, considered together, amply demonstrate that there was excusable neglect committed by Inacom and that the Bankruptcy Court clearly erred in judgment and abused its discretion in ruling to the contrary.

4

III.    **SUBJECT MATTER AND APPELLATE JURISDICTION**

The Bankruptcy Court exercised subject matter jurisdiction over the dispute giving rise to this appeal under 28 U.S.C. §§ 1334 and 157. This Court exercises subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

IV.    **STANDARDS OF REVIEW**

The District Court may affirm, modify or reverse a Bankruptcy Court's judgment, order or decree or remand with instructions for further proceedings. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013. In reviewing the decision of the Bankruptcy Court, the District Court reviews the Bankruptcy Court's legal determinations <u>de novo</u>, its factual findings for clear error, and its exercise of discretion for abuse thereof. <u>In re O'Brien Environmental Energy, Inc.</u>, 188 F.3d 116, 122 (3d Cir. 1999). A Bankruptcy Court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts. <u>Id.</u> In determining whether an error exists, the Bankruptcy Court's application of the law to the facts is reviewed <u>de novo</u>. <u>Id.</u> <u>See also</u> <u>In re Lernout & Hauspie Speech Products N.V.</u>, 308 B.R. 672, 675 (D. Del. 2004) ("The Bankruptcy Court's finding of historical or narrative facts must be accepted unless clearly erroneous, but this Court may exercise plenary review of the Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.").

Accordingly, this Court must review <u>de novo</u> whether the Bankruptcy Court, with respect to its determination that there was no excusable neglect, engaged in a proper analysis under <u>Pioneer</u>, and must determine whether the Bankruptcy Court based its ruling on an error or

5

misapplication of law to all of the facts, thereby abusing its discretion, with the Bankruptcy

Court's application of the law to the facts to be reviewed <u>de</u> <u>novo</u> by this Court.

## V.    STATEMENT OF FACTS[3]

### A.    Inacom's State of Affairs and Prior Bankruptcy Filing

At one time, Appellant Inacom and its affiliates comprised one of the world's

leading technology services corporate families, distributing and configuring personal computer

and related information technology products to businesses together with the provision of related

support services to such businesses, with, at its peak, nearly $7 billion in annual revenues,

approximately 90 company-owned business centers, approximately 875 independent dealers, and

more than 12,500 employees nation-wide.  However, commencing in 1999, within a short 16-

month period, Inacom underwent substantial corporate and other changes, some of which were

outside of its control and which negatively affected its accounting records and systems and the

infrastructure (including critical personnel in adequate numbers) needed to properly maintain and

monitor such records and systems.  (Mot. at 1-2, A59-60).

In February 1999, Inacom merged with a business competitor, Vanstar.  The

merger proved difficult to consummate and, among other things, many accounting systems of the

two companies were never successfully merged, resulting in a lack of centralization.

Deteriorating industry conditions combined with millions of dollars of unanticipated costs in

connection with the Vanstar merger resulted in significant losses for the merged companies in

---

[3] Generally, the factual background set forth herein was presented by Appellant in its Motion (A59-184) and/or as part of the proffer by Appellant at the October 2005 hearing on the Motion, of the testimony of witness Elaine Agee, Inacom's Vice President of Operations.  (A262-323).

1999 and the loss of access to lines of credit and other financing critical to sustaining the

operations. Inacom's board of directors recognized the severity of the problems and brought in a

new executive management team in the fourth quarter of 1999. The new team quickly realized

that Inacom could not continue to operate in the highly competitive computer hardware

distribution industry, and engaged an investment banking firm to assist in a sale of the

distribution business – a sale that would have to be completed prior to the collapse of Inacom's

already-fragile financing arrangements. A sale transaction with Compaq Computer Corporation

("Compaq") was put together very quickly and consummated in mid-February 2000. As a result

of this sale, Inacom's number of employees, scale of infrastructure, and revenues were all

drastically reduced. The separation of Inacom's former distribution business from its remaining

businesses proved very difficult. Inacom's accounts receivable for the hardware distribution

business and related accounting systems and information were transferred to Compaq; with such

transfer of certain systems and information, Inacom's ability to access and monitor material

information and records was adversely affected. Problems related to the sale transaction

culminated in acrimonious litigation between Compaq, Inacom, and Inacom's agent bank when

nearly $100 million of money due to Compaq was inadvertently paid to Inacom by Compaq's

customers and then swept by the agent bank and used to reduce Inacom's bank debt. This

litigation further harmed Inacom's ability to manage its remaining assets -- particularly, to

manage and collect the company's accounts receivable. (Mot. at 2-3, A60-61).

Notwithstanding the shedding of the distribution business and a new focus on the

service related businesses, Inacom continued to lose millions of dollars in the several months

after the sale transaction, and defaulted on its senior debt facility. Based on its condition and

7

circumstances, Inacom endeavored to sell substantially all of its remaining assets and businesses. A sale transaction with Compucom Systems Inc. was negotiated and expected to close in about mid-2000, but in late May 2000, just prior to the intended closing date and after documentation and due diligence had been substantially completed, the potential buyer refused to proceed with the transaction because Inacom could not issue its Form 10-K filing for year 1999 (said filing was needed for the potential buyer to access the capital markets in the future). (Mot. at 3-4, A61-62).

With the failure of the contemplated sale transaction and the refusal of Inacom's agent bank to advance any additional funds, Inacom was forced to suddenly, and with minimal planning, cease operations and file for bankruptcy protection. Inacom and its affiliates filed their Chapter 11 cases in the United States Bankruptcy Court for the District of Delaware on June 16, 2000. These cases were jointly administered under Case No. 00-2426 (PJW). (Mot. at 4, A62).

Drastic changes were immediately made after the commencement of Inacom's bankruptcy case. Inacom shut down all of its business operations and quickly terminated all but 140 of its then-5,000 employees.[4] Within several weeks of the commencement of the bankruptcy case, after completion of certain customer billing tasks, more employees were terminated, and only a core group of 100 employees was retained at that period. Because of the precipitous way in which Inacom had been forced to cease operations, Inacom's books and records were simply in disarray, boxed and stored in a disorganized fashion in locations remote from its few

---

[4] During the critical early stages of Inacom's bankruptcy, counsel and advisors were in flux. Inacom did not retain Bridge Associates LLC as its bankruptcy consultants until after the commencement of the case, and Inacom's original, primary bankruptcy counsel was replaced shortly after the petition date. Because of the timing and/or other circumstances, Inacom's professionals were not able to coordinate beforehand, to the extent desired, with terminated employees.

remaining operational offices, or had been abandoned or destroyed when field offices were

closed. Moreover, virtually all of Inacom's employees at field offices were terminated

immediately after the bankruptcy filing, resulting in the loss by Inacom of material knowledge

(retained by these employees) of the books and records. (Mot. at 4, A62).

During most of Inacom's bankruptcy case, given its limited resources, Inacom

had only a skeleton group of employees to review and manage over 5,000 accounts (totaling over

$137 million in accounts receivable), but with substantial assistance from Inacom's professionals

and collection agencies, Inacom was successful in collecting and pooling sufficient monies and

assets to pay secured and administrative claims in full and to make significant distributions to

general unsecured creditors pursuant to Inacom's Joint Plan of Liquidation (confirmed on May

23, 2003). (Mot. at 4, A62).

**B.     The Owens Corning Bankruptcy and Inacom's Realization of Its Mistake**

At the time it filed its bankruptcy petition in June 2000, Inacom had a Master

Agreement with Owens Corning to provide computer hardware and services to Owens Corning

locations domestically as well as internationally. (Mot. at 6, A64).

On October 5, 2000, Owens Corning and its related debtors filed the above-

referenced bankruptcy cases in the United States Bankruptcy Court for the District of Delaware.

Since filing for bankruptcy, these debtors have continued to manage and operate their businesses

as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. (Mot. at 4,

A62).

9

Owens Corning filed with the Court Amended Schedules of Assets and Liabilities

on November 20, 2001. In its various schedules, Owens Corning scheduled the following claims

of Inacom:

| Inacom Entity/Location | Status | Amount |
|---|---|---|
| Inacom/Vanstar Philadelphia, PA | Disputed | $317,590.66 |
| Inacom/Vanstar Palatine, IL | Disputed | $6,272.80 |
| Inacom Chicago, IL | Disputed | $36,173.39 |
| Inacom North Central Chicago, IL | Disputed | $822,672.67 |
| Inacom Information Systems Philadelphia, PA | Disputed | $1,966,683.00 (originally scheduled as $4,133,330.49) |
| Inacom Central Area Atlanta, GA | Disputed | $47,439.36 |
| Inacom/Vanstar Philadelphia, PA | Disputed | $1,945.81 |
| Inacom Information Systems Philadelphia, PA | Disputed | $76,168.50 |
| Total: | | $3,274,946.19 |

Additionally, Owens Corning scheduled undisputed claims (listed at $0) of

Inacom. (Mot. at 4, A62).

After Owens Corning filed for bankruptcy, Inacom's accounts receivable

collection team identified that the Owens Corning receivable was one of the company's largest

receivables. At this time, given that this was one of the early instances of a potential need to file

a claim, Inacom personnel had not yet devised a formal process and protocol to follow in order to

properly file proofs of claim in pending bankruptcy cases. Inacom's accounting personnel

contacted Inacom's counsel, but apparently, due to some misunderstanding, the Owens Corning

accounts receivable were written-off by Inacom in December 2000, resulting in a loss of

visibility of the Owens Corning claims. Subsequently, Inacom implemented a formal protocol,

10

in connection with, among other things, schedules ("Proof-of-Claim Schedules") were prepared by its professionals and agents listing claims against third parties and whether proofs of claim had been filed or needed to be filed by Inacom in third party bankruptcy proceedings. Overall, Inacom has filed numerous proofs of claim and was a creditor in more than 70 other bankruptcy cases around the nation. (Mot. at 9, A67).

On November 27, 2001, the Bankruptcy Court set April 15, 2002 as the general claims bar date in the Owens Corning cases. Notice of the claims bar date was served upon Inacom at certain sites. During this same period, Inacom's small accounting staff was in midst of reviewing and assisting in the preparation of objections to the more than 10,000 claims scheduled by or filed against the Inacom estates, and assisting Inacom's professionals and agents in hundreds of collection actions and avoidance actions and in the disposition of assets. Based on an investigation by Appellant, it appears that, after receipt of the claims bar date notice, Inacom's agents misconstrued the information on the Proof-of-Claim Schedules, believing that a proof of claim had been filed in the Owens Corning bankruptcy case. Mistakenly believing that a proof of claim had already been filed, Inacom failed to timely file its proof of claim against Appellee. Based on the then-poor state of Inacom's books and records (as especially worsened by Inacom's abrupt bankruptcy filing and the concomitant scarce resources, pressures and other adverse circumstances, and as generally aggravated by the various transactions and events described in Section V.A. above), in Inacom's view, it is not surprising that, unfortunately, some such errors were made; Inacom's agents performed as best as possible under exceptionally difficult circumstances. (Mot. at 7-9, A65-67).

In November 2004, Inacom's Plan Administrator was contacted by a third party claims trader seeking to purchase Inacom's claims against Owens Corning. This inquiry caused the Plan Administrator to start another review of Inacom's books and records for evidence of potential claims against Owens Corning. Inacom's few remaining staff members conducted a search and discovered the Owens Corning accounts receivable previously written-off by mistake (as described above). Since that time, Inacom, the Plan Administrator, and counsel have thoroughly researched the claim, have made inquiries of all the parties who may have been involved in the events surrounding the failure to file a timely proof of claim, and in contacting Owens Corning and their counsel about this matter. (Mot. at 8, A66).

Specifically, representatives of Inacom contacted Owens Corning agents by telephone and electronic mail, and were initially informed that Inacom's claims were scheduled and would be paid. Later, however, after further communications with Owens Corning, and upon further review of the numerous schedules, Inacom concluded that its claims were, in fact, disputed. Inacom's representatives contacted Owens Corning to determine whether the parties could consensually resolve the matter by allowing Inacom to late-file a proof of claim and avoid the need of the two debtors to incur additional legal fees and costs to the detriment of their respective creditors. No consensual resolution was reached, and thus, Inacom determined to file the Motion.[5] (Mot. at 9, A67)

---

[5] If Inacom is permitted to late-file a claim, Inacom will file a proof of claim for approximately $2.5 million for service and maintenance accounts receivable and professional services accounts receivable. (Mot. Ex. A, A77-183).

12

## C.     Procedural History

On September 19, 2005, Appellant filed Inacom Corporation's Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1) (A59-184).  On October 7, 2005, Appellee filed its response to the Motion (A204-225) ("Appellee's Objection").  After holding a hearing on the Motion on October 24, 2005, by an order dated November 10, 2005, the Bankruptcy Court denied the Motion. Order Denying Inacom Corporation's Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1) (A260-261) ("Order"); Oct. 24, 2005 Hearing Transcript (Hr'g Tr., A262-323) ("Transcript").  On November 15, 2005, Inacom filed its Notice of Appeal to the United States District Court for the District of Delaware from the final Order. (A392).

## D.     Subsequent and Related Events

On November 14, 2005, in Appellee's Chapter 11 case, the Bankruptcy Court entered its Order Further Extending the Exclusive Periods During Which the Debtors May File Plans of Reorganization and Solicit Acceptances Thereto. (A324-329).

On December 5, 2005, Appellee filed Debtors' Motion to Strike Items Improperly Designated by Inacom Corporation to be Included in the Record on Appeal of Order Denying Inacom Corporation's Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1) (the "Motion to Strike"). (A464). The Motion to Strike is presently pending before the Bankruptcy Court and scheduled to be heard on January 30, 2006.

13

On December 31, 2005, Owens Corning and other parties in interest proposed a Fifth Amended Joint Plan of Reorganization (the "Proposed Plan"), which provides for general unsecured creditors of Owens Corning to receive new common stock and cash.[6] As set forth in its related Disclosure Statement (the "Proposed Disclosure Statement"), Appellee estimates that the general unsecured claims class (Class A6-A under the Proposed Plan) is (will be) comprised of anywhere from approximately $76.8 million to $100.4 million in allowed claims, and that based on this estimate and other assumptions, the estimated recovery for Owens Corning's general unsecured creditors may potentially be approximately 35.7% of their allowed claim amounts (low-end estimate) if certain other creditor classes accept the proposed plan or approximately 41.3% (low-end estimate) if said classes reject the plan. Proposed Disclosure Statement, p. vii. As noted in the Proposed Disclosure Statement, all estimates as to potential recovery "remain subject to further changes" and "the actual recovery amounts will be based on a number of considerations set forth in the Plan which cannot be determined with certainty at this time." Id. at p. vi, n. 1.

---

[6] Pursuant to Federal Rule of Evidence 201(b)(2), Appellant requests that the Court take judicial notice of the proposed Disclosure Statement with respect to the Fifth Amended Joint Plan of Reorganization for Owens Corning and Its Affiliated Debtors and Debtors-in-Possession filed in the Appellee's Chapter 11 case on December 31, 2005 (Docket Nos. 16567, 16569) and the appendices and exhibits thereto, including the Proposed Plan (Appendix A) (A506-1228).

42125-003\DOCS_DE:114140.3

## VI.    ARGUMENT

### A.    The Bankruptcy Court Clearly Erred By Failing to Engage in a Proper Analysis of All of the Factors and Circumstances in the Instant Matter as Mandated by *Pioneer* and Third Circuit Precedent.

The Bankruptcy Court erred in making its determination with respect to whether there was excusable neglect for purposes of Bankruptcy Rule 9006 because it failed to engage in a proper analysis of all of the Pioneer factors.    Accordingly, the Bankruptcy Court's ruling should be reversed.

Bankruptcy Rule 9006(b)(1) provides in pertinent part that:

Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done or within a specified period by these rules or by notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Bankruptcy Rule 9006(b)(1) (emphasis added).    Thus, to obtain a court's waiver of the general requirement that all bankruptcy claims be filed by the applicable claims bar date, a creditor must show that its failure to comply with the deadline "was the result of excusable neglect." Pioneer, 507 U.S. at 388.    The Supreme Court in Pioneer explained the import of Bankruptcy Rule 9006(b)(1) as follows:

First the Rule [9006 (b)(1)] grants a reprieve to out–of–time filings that were delayed by "neglect."    The ordinary meaning of "neglect" is "to give little attention or respect" to a matter, or closer to the point for our purposes, "to leave undone or unattended to esp[ecially] through carelessness" Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added).    The word

15

therefore encompasses both simple faultless omissions to act and, more commonly, omissions caused by carelessness. Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry "their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42, 1000 S. Ct. 311,314, 62 L. Ed. 2d 199 (1979). Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness as well as by intervening circumstances beyond the party's control.

Id. Importantly, the Pioneer court articulated the factors that a reviewing court must consider when determining whether excusable neglect exists in a particular case: (i) "the danger of prejudice to the debtor", (ii) "the length of the delay and its potential impact", (iii) "the reason for the delay, including whether it was within the reasonable control of the movant", and (iv) "whether the movant acted in good faith." Id. at 395. The Pioneer factors were expressly adopted and applied by the Third Circuit in the O'Brien case. 188 F.3d at 125. Ultimately, as explained by the Pioneer court, "the determination [of whether excusable neglect exists] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395.

Notwithstanding the foregoing, the Bankruptcy Court in the first instance ruled that, in effect, none of the Pioneer factors would have to be considered. According to the Bankruptcy Court, "It's clearly not neglect because someone took the effort to determine that the claim was filed [in Appellee's bankruptcy case], and as a result there's no neglect at all. So I don't even have to get to the question of whether it's excusable. It's not neglectful." (Hr'g Tr. 24:19-23, A285). The Bankruptcy Court further explained at the hearing on the Motion: "....

16

[I]t's still not neglect. You know, the problem is that somebody [Inacom's agent(s)] is dealing on a deliberate basis with this Owens Corning claim. If they made a mistake, they made a mistake. But the question is, is there neglect? .... I absolutely can't see how this is neglectful. It was a deliberate course of events." (Hr'g Tr. 25:8-12, 26:14-15, A286, A287).

The Bankruptcy Court's reasoning misapprehends the full import of Pioneer. As observed by the Third Circuit, "[w]hile it is certainly relevant that the delay in this case was due in part to ... lack of care on part of [movant creditor], the concept of excusable neglect clearly anticipates this, i.e., neglect on the part of the one seeking to be excused. See Pioneer, 507 U.S. at 388, 113 S.Ct. 1489." O'Brien, 188 F.3d at 128. See also Pro-Tec Services, LLC v. Inacom Corp., et al. (In re Inacom Corp., et al.), Civil Action No. 04-390 (GMS), 2004 WL 2283599, at *7 (D. Del. Oct. 4, 2004) ("It is clear in this case, that the delay was due to [movant's] lack of care. However, the concept of excusable neglect clearly anticipates neglect on the part of the party seeking to be excused."). It is indeed true that Appellant intentionally or deliberately determined not to file its proof of claim after it had received notice of the Owens Corning bar date and reviewed its internal Proof-of-Claim Schedules, but, in Appellant's view, that is not the salient point of Pioneer and case law following Pioneer. Appellant's failure to timely file its claim was due to a mistake of fact on its part; as a result of excusable neglect, Appellant's agents erroneously believed that a proof of claim had already been filed against Owen Corning and thus, did not seek to file a claim until after it learned of its mistake. In all events, unfortunately, there was "neglect" on the part of Appellant. Pioneer, 507 U.S. at 388 ("Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused

17

by <u>inadvertence, mistake or carelessness</u> as well as by intervening circumstances beyond the party's control.") (emphasis added).

   In other terms, in the instant matter, the Bankruptcy Court considered only one aspect of Appellant's failure to timely file a claim – Appellant's "intentional" decision not to file a claim after having reviewed the Proof-of-Claim Schedules. As noted above and in Section V.A., however, Appellant's failure to file a claim was not intentional. Rather, it was comprised of, or was aggravated by, a combination of mistakes and other circumstances. Certainly, there was no intentional decision in this case to not file a claim for strategic or similar reasons. <u>Compare</u> with <u>In re Mother Hubbard, Inc.</u>, 152 B.R. 189, 193-94 (Bankr. W.D.Mich. 1993) (not finding excusable neglect where creditor admitted he knew of bar date but initially "made a <u>conscious decision</u> not to file a proof of claim assertedly believing a waiver of his unfilled claim would be the best alternative for the reorganization of the Debtor") (emphasis in original).

   If the Bankruptcy Court's reasoning with respect to this "intent" element were correct, that would basically mean that basically the only cases in which there could possibly be excusable neglect at all for failing to timely file a claim (depending on the particular circumstances) are where the creditor was completely unaware of the existence of a claim, or could not timely file a claim due to an act of God or other circumstance beyond its control. In virtually every other instance, it could be argued that there is some "intentional" decision or "intentional" element related to the creditor not timely filing a proof of claim (<u>e.g.</u>, a creditor's attorney "intentionally" decides not to file a claim by the bar date because he or she calendared an incorrect (later) bar date and accordingly believed there was additional time). Such a calendaring mistake was the cause of the delay at issue in <u>In re Herman's Sporting Goods, Inc.</u>,

18

166 B.R. 581 (Bankr. D.N.J. 1994). The Herman's court properly observed that this matter was only one factor to be considered in determining whether there was excusable neglect and held in that case that, based on the totality of the circumstances, excusable neglect was indeed demonstrated. Id. at 585.

The factual situation in the O'Brien case is also similar in some respects. At issue in O'Brien was the untimely assertion of a cure claim by a creditor (assertion by way of filing an opposition to the debtor's application seeking to set certain claims at zero) caused by the creditor having failed to carefully read the related notice; having "leafed through it" and believing that the notice "did not affect his rights or interests", the creditor did not forward the notice to his attorney, attend a related hearing, and timely oppose the subject application. 188 F.3d at 120-22. If the analysis of the Bankruptcy Court in the instant matter were to have been applied to the facts in O'Brien, it could be similarly argued that there was no excusable neglect in that there was certainly some "intent" element to the reason for the delay; the creditor in O'Brien intentionally or deliberately decided not to take any action based on his (mis)reading of the relevant notice.

Based on certain other statements made by the Bankruptcy Court, it could perhaps be argued that the Bankruptcy Court may have in effect ruled, alternatively, that there was no excusable neglect because the errors ultimately resulting in Inacom failing to timely file a proof of claim were within Inacom's control: "There is nothing, (a) excusable in the fact that you [Inacom] don't double check a record to make sure that a claim has been filed when you've got outside counsel apparently working with you on that issue. You certainly can pick up the phone and call [Inacom's] counsel and say, 'Did you really file the claim?' That's #1. But even if you

19

don't do that, relying on your own records when you are telling me that your records are in such a shambles that they're not reliable is itself not excusable." (Hr'g Tr. 29:13-21, A290). However, Pioneer is clear that blamelessness on the part of the movant is not the standard for excusable neglect. Pioneer, 507 U.S. at 394 (all relevant circumstances must be considered). Thus, again, the Bankruptcy Court's analysis was improper and incomplete, failing to include consideration of all of the Pioneer factors.

Pioneer rejected per se narrow and inflexible applications of Bankruptcy Rule 9006(b)(1). 507 U.S. at 388, 394-94 (party's failure to file on time for reasons within its control does not automatically preclude a finding of excusable neglect; all relevant circumstances are to be considered). See also Orthopedic Bone Screw Products Liability Litigation, 246 F.3d 315, 322 (3d Cir. 2001) (Pioneer analysis "eschews any per se rule that excusable neglect is unavailable to a party whose untimely filing was due to circumstances within his or her control"). In short, the Bankruptcy Court did not properly construe and apply the Pioneer factors and the Bankruptcy Court's analysis (as reflected in the record) fell well short of that mandated by Pioneer and Third Circuit law; indeed, the Bankruptcy Court did not weigh any of the four Pioneer factors because it believed that "I don't even have to get to the question of whether it's excusable. It's not neglectful." (Hr'g Tr. 24:21-23, A285). See also Chemetron Corp. v. Jones, 72 F.3d 341, 349-50 (3d Cir. 1995) (remanding to bankruptcy court where both bankruptcy court and district court had failed to undertake a comprehensive analysis of all of the Pioneer factors; "the bankruptcy court failed to make additional relevant factual findings, including the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings,

20

the reason for the delay, and whether the movant acted in good faith"). Accordingly, the

Bankruptcy Court's ruling should be reversed.

> **B.     The Bankruptcy Court Abused Its Discretion in Ruling that There Was No Excusable Neglect in This Case, By Failing to Properly Weigh the *Pioneer* Factors, Including in Particular the Lack of Prejudice to Appellee.**

Even assuming arguendo that the Bankruptcy Court weighed all of the relevant

factors enunciated in Pioneer, the Bankruptcy Court abused its discretion in failing to find

excusable neglect. As discussed below, the Pioneer factors militate in favor of Appellant's

position. Weighed altogether, these factors bear out that there was excusable neglect and that the

Bankruptcy Court abused its discretion in finding to the contrary.

> **1.     There is No Prejudice to Appellee.**

Most importantly, Appellee does not stand to suffer any prejudice if Inacom were

permitted to late-file its claim. See generally O'Brien, 188 F.3d at 116 ("prejudice is not merely

the loss of an advantageous position, but must be something more closely tied to the merits of the

issue"). First, there is no unfair surprise to Appellee. See generally id. at 126-28 (in analyzing

the prejudice factor, court to consider, among other things, whether debtor was surprised or

caught unaware by the assertion of a claim that it had not anticipated). Appellee, in fact, has

long been aware of the potential claims of Inacom; Appellee listed in its amended Schedule of

Liabilities (filed in 2001) various claims of Inacom entities, including undisputed claims and

over $3.27 million in disputed claims (more than the amount currently sought by Inacom).

Accordingly, Appellee cannot claim (and has not claimed) surprise in Inacom's present attempt

to file its claims.

Second, there is no prejudice to Appellee's other unsecured creditors.[7] No

reorganization plan of the Appellee has yet been confirmed (as noted in Section V.B. hereof, the

Proposed Plan was submitted "less than two weeks ago), and thus, no distributions to general

unsecured creditors have yet been made (i.e., there is no risk of monies or property previously

distributed having to be disgorged). See, e.g., Pro-Tec Services, 2004 WL 2283599, at *4-*6 (no

prejudice to debtor by allowing a late-filed claim where, among other things, there was no risk of

other creditors having to return prior distributions). Further, other general unsecured creditors

have no reasonable expectation with respect to the amount of actual recovery under any proposed

plan of Owens Corning. As discussed above in Section V.B., Appellee's current, proposed

reorganization plan does not provide for any guaranteed recovery for general unsecured

creditors, but instead provides only a possible range of recovery, contingent on, among other

factors, the size of the actual, aggregate claim pool, which, as noted below, has not yet been

fixed.[8]  See id. at *4-*6 (no prejudice to debtor where other creditors would not suffer any

cognizable harm because confirmed plan provided only for estimated, potential recoveries

contingent on the size of the allowed claims pool and other factors). Even assuming for

---

[7] Potential prejudice to third parties is not a factor that was enumerated by the Pioneer court, and it is debatable whether such a factor should be weighed. See Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.), 62 F.3d 730, 737-38 (3d Cir. 1995) ("Under Pioneer, the central inquiry is whether the debtor will be prejudiced."; court stating that it would not decide this issue) (emphasis in original).  As discussed above, even if properly considered as part of the analysis, this factor does not support Appellee's position.

[8] While Appellee estimates that the potential size of its general unsecured creditor pool may range from $76.8 million to $100 million, over $1 billion of general unsecured claims have been filed against Owens Corning, and in its Disclosure Statement, Appellee acknowledges that "Notwithstanding the Debtors' estimates as set forth herein, the actual amount of claims that ultimately become allowed claims could materially exceed the amounts set forth on this Schedule, and in such event, the estimated percentage recoveries for holders of some or all claims could be materially less than estimated." See Proposed Disclosure Statement, Appendix E-1.  Using Appellee's lowest estimate ($76.8 million), Inacom's proof of claim for approximately $2.5 million (if allowed) would constitute only a small percentage (3%), at most, of all allowed general unsecured claims against Appellee.  Inacom's claim represents only a small fraction of the aggregate amount of all filed unsecured claims ($1 billion).

22

argument sake that other unsecured creditors may somehow be harmed, it would be inequitable

to, in effect, view or consider the potential prejudice to them as any more deserving of

prevention than the prejudice to Appellant (having acted in good faith) if it were not allowed to

late-file its claim. See, e.g., In re Orthopedic Bone Screw Products Liability Litigation, 246 F.3d

315, 324 (3d Cir. 2001) (explaining that there would be no cognizable harm to other class

members because "[i]t cannot be maintained that timely registrants are more deserving of

remedy, for purposes of equity, than tardy registrants with similar claims, presuming the failure

to register on time was indeed blameless").

As for Appellee itself, as explained above, no reorganization plan has yet been

confirmed, and Appellee is still in the midst of, and will likely continue to be significantly

involved with, the claims review, administration and litigation process, as evidenced by the

pending claims objections against various third parties listed on the court docket for Appellee's

bankruptcy case[9] and the fact that there are over $1 billion in general unsecured claims asserted

against Owens Corning which Appellee estimates will be whittled down to $76 million to $100

million. See Proposed Disclosure Statement, Appendix E-1 (A1193); Motion of Debtors for

Order, Pursuant to 11 U.S.C. § 1121(d), Granting Further Extension of Exclusive Periods to File

and Solicit Acceptances of Plan of Reoganization, p. 9 (A487) ("The Debtors continue to review,

analyze and investigate claims to determine their validity and intend to file additional objections

to claims."), p. 11 (A489) ("The Debtors Require Sufficient Time To Negotiate A Plan Of

Reorganization And Prepare Adequate Information ... [W]hile the Debtors move toward

---

[9] Pursuant to Federal Rule of Evidence 201, Appellant requests that the Court take judicial notice of the pending claims objections filed by Appellee in its Chapter 11 case, including its Thirty-Eighth Omnibus Objection filed December 9, 2005 (Docket No. 16433), set for hearing on January 30, 2006. (A397).

23

confirmation of the Plan, they will also endeavor to continue to facilitate negotiations"), p. 12

(A490) ("a further extension of the Exclusive Periods will continue to enhance the ability of the

Debtors and the creditor constituencies to focus on reaching a consensus on disputes during the

process leading to confirmation").[10]

      Even assuming that Appellee's proposed reorganization plan is ultimately

confirmed, because general unsecured creditors with allowed claims would share pro rata out of

a pool of assets, Appellee does not stand to suffer any cognizable harm in the form of having to

fund additional amounts (not otherwise contemplated under the Proposed Plan).[11]  See, e.g.,

Orthopedic Bone Screw Products, 246 F.3d at 323 ("[i]nclusion of [creditor's] claim [in the

settlement class], and those of others similarly situated, has no effect on the amount Acro-med

will pay to those aggrieved by its products [capped at $100 million]"); Pro-Tec Services, 2004

WL 2283599, at *4-*6 (no prejudice to debtor by allowing a late-filed claim where, among other

things, debtor was in fact still in process of litigating many disputed claims, and there was no

evidence that payment of subject claim would jeopardize debtor's reorganization).  See generally

O'Brien, 188 F.3d at 126-28 (in analyzing the prejudice factor, court to consider, among other

things, whether payment of the claim would force return of amounts already paid out under a

confirmed plan, and whether payment of claim would jeopardize success of debtor's

---

[10] Appellant requests that the Court take judicial notice of this motion filed by Appellee in its bankruptcy case on December 31, 2005 [Docket No. 16571] (A479-498).

[11] Even if somehow the late-filing of Inacom's claim would require Appellee to infuse more cash or property under any confirmed plan, that would not be per se dispositive in any event. See O'Brien, 188 F.3d at 127 ("We believe that Pioneer requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue."); In re R.H. Macy & Co., Inc., 166 B.R. 799, 802 (S.D.N.Y. 1994) ("[P]rejudice to the debtor is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims. Were it otherwise, virtually all late filings would be condemned by this factor; they seek to share, with timely filed claims, in the bankrupt's limited resources.").

reorganization). Thus, extending Appellant's time to file its claim does not jeopardize or put at

risk Appellee's plan or reorganization efforts.

Finally, there is no evidence in the record whatsoever that allowing Inacom to file

its proof of claim would cause a "flood" of other late-filed claims. Appellee presents instead of

evidence, merely unsubstantiated fears, which are not sufficient to demonstrate prejudice. See

Appellee's Objection, ¶ 14, p. 6, A209 (simply asking rhetorically, "Should the Motion be

granted, how many of these parties [potential creditors who were served with notice of the bar

date but did not file any claims] will seek to assert late claims?"). See O'Brien, 188 F.3d at 126

("prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a

conclusion based on facts in evidence"); Pro-Tec Services, 2004 WL 2283599, at *4 (A501)

(applying O'Brien).

In short, Owens Corning does not stand to suffer any cognizable harm or

prejudice with respect to its reorganization efforts or bankruptcy case or otherwise.

> **2.** **The Reasons for Appellant's Delay in Filing a Claim Were a Combination of Exceptionally Adverse Circumstances Confronting Inacom and Not the Result of Bad Faith Actions or Motives.**

As set forth in detail in Section V.A. above, the delay in Inacom asserting its

claims was the result of an unfortunate combination of events and circumstances, many of which

were outside of the control of Inacom, which at all relevant times acted in good faith. In the

most concise terms, Inacom's agents mistakenly believed that Inacom had filed a proof of claim

against Appellee on an earlier occasion; only later, after the lapse of the claims bar date, did

Inacom's agents learn that no proof of claim had been filed. This mistake is most directly

attributable to Inacom's agents misconstruing information in an internal schedule, but was also

substantially compounded by other events (a financial and bankruptcy "freefall" in some respects shortly prior to and during much of the relevant period) that negatively affected Inacom's accounting records and systems and the infrastructure (including requisite personnel in adequate numbers) needed to properly maintain, review and monitor such records and systems. Among other things, Inacom itself had abruptly filed for bankruptcy relief in June 2000, and, as discussed herein, given its limited resources, had only a very small crew of accounting and financial personnel during the relevant periods to maintain and review the books and records of a once-multi-billion dollar corporate family. Faced with the significant task of reviewing and resolving thousands of claims in Inacom's own bankruptcy case, as well as having to assist in various other actions and business and bankruptcy related matters, Inacom's agents made certain mistakes and the timely filing of a proof of claim against Appellee fell through the cracks.

In short, Inacom's accounting related books and records were in disarray during substantial portions of this period, and valuable accounting and financial information (including the knowledge of terminated employees) had been lost. Further, as discussed herein, within a short 16 month period (prior to Inacom's bankruptcy filing), other transactions and events had occurred negatively impacting Inacom's accounting systems and contributing to the general state of Inacom's accounting systems and records.

Inacom's delay was not due to some malfeasance or improper motive but was simply the result of good faith mistakes made under exceptional circumstances confronting Inacom at the time.

3.    **There Will Be No Effect on Judicial Proceedings if Inacom Were
Permitted to Late-File Its Claim.**

The claims bar date in Appellee's bankruptcy case was April 15, 2002, and

Appellant did not file its Motion until September 2005. In all events, because the totality of the

circumstances must be considered by the reviewing court, the length of this delay is not

determinative and does not preclude a finding of excusable neglect.[12] See, e.g., Chemetron, 72

F.3d at 349-50 (remanding excusable neglect issue to bankruptcy court where, even though

creditors sought to file claims more than four years after bar date, lower courts had not

undertaken the requisite comprehensive analysis required under Pioneer); Pro-Tec Services,

2004 WL 2283599, at *6-*7 (A503-504) (finding excusable neglect based on consideration of all

factors, even though creditor did not seek relief until two years and ten months after the original

claim objection had been filed and two years and nine months after the order disallowing

creditor's claim). More importantly, given that Appellee has not yet confirmed any

reorganization plan and made any distributions to general unsecured creditors, and is still

litigating other disputed claims, there will not be any negative impact on Appellee's judicial

proceedings. See, e.g., Pro-Tec Services, 2004 WL 2283599, at *7 (A504) ("When considering

the delay's effect on the judicial proceedings in absolute terms, as O'Brien instructs, the court

concludes that this Pioneer factor weighs in favor of [movant-creditor] because [debtor] is still

litigating disputed claims and distributions to creditors are based on [debtor's] progress in

---

[12] As discussed in Section V.B., during the delay, after learning of its mistake in not having previously filed a claim
against Owens Corning, Inacom proceeded in good faith to fully investigate its mistake and the genesis thereof,
review and assess its claims against Owens Corning, and contact and attempt to reach some consensual resolution
with Owens Corning's agents with respect to this matter.

27

resolving the claims"); In re Mother Hubbard, Inc., 152 B.R. 189, 193 n. 9 (Bankr. W.D. Mich. 1993) ("because no plan of reorganization has been confirmed and the Debtor continues in chapter 11 as a debtor in possession, this court views the delay to the debtor and any impact on efficient court administration as nonfactors").

**4.    Appellant Has Acted in Good Faith and Appellee Has Not Asserted or Presented Any Evidence to the Contrary.**

At all relevant times, through the entire series of events and circumstances (discussed in Section V.A. above) contributing to Inacom's failure to timely file its proof of claim, Inacom has acted in good faith, and Appellee has not asserted or presented any evidence to the contrary.  As explained above, Inacom was faced with difficult and exceptional circumstances adversely impacting its records and business information, including those related to Owens Corning accounts receivable, and its ability to properly access and use such information due to extremely limited employee resources.  Admittedly, Inacom's efforts with respect to its claims against Appellee were not perfect; however, its efforts were undertaken in good faith.

Based on all of the foregoing, Appellant believes that the Pioneer factors clearly and substantially weigh in its favor.  Considered altogether, these factors bear out that there was excusable neglect and that the Bankruptcy Court abused its discretion in denying Appellee's Motion.

## VII.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order denying Appellant's

Motion should be reversed and Appellant should be permitted to file its proof of claim.

Dated: January 9, 2006

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Counsel to Appellant

42125-003\DOCS_DE:114140.3