IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re OWENS CORNING, *et al.*,

| | |
|---|---|
| INACOM CORP., and its related debtors, by and through Executive Sounding Board Associates, Inc. as Plan Administrator,<br><br>　　　　　　Appellant,<br><br>　　v.<br><br>Owens Corning, and its affiliated debtors and debtors in possession,<br><br>　　　　　　Appellee. | Civil Action No. 05-852 (JPF)<br><br>Bankruptcy Case No. 00-3837<br><br><br>On Appeal from an Order of the United States Bankruptcy Court for the District of Delaware |

## APPENDIX TO OPENING BRIEF OF APPELLANT INACOM CORP., *ET AL.*

### APPENDIX ONE OF THREE

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Electronic Mail: ljones@pszyjw.com
　　　　　　　　sselzer@pszyjw.com


Counsel for Appellant

## APPENDIX TO OPENING BRIEF OF APPELLANT INACOM CORP., *ET AL.*

### TABLE OF CONTENTS

### APPENDIX ONE

Page

Order Pursuant to Bankruptcy Rule 3003(c)(3):  (i) Fixing General Claims
Bar Date for Filing Certain Proofs of Claim; (ii) Approving Proposed Proof
of Claim Form, General Claims Bar Date Notice and Related Publication
Notice Procedures; and (iii) Approving Proposed Employee and Retiree
Claims Notification Procedures .............................................................A1

Notice of Entry of General Claims Bar Date Order Requiring the Filing
of Proofs of Claim ...........................................................................A44

Order Conditionally Approving the Disclosure Statement ...............................A55

Inacom Corporation's Motion to Allow the Filing of a Proof of Claim
After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy
Rule 9006(B)(1) ..............................................................................A59

Motion of Debtors for Order, Pursuant to 11 U.S.C. § 1121(d), Granting
Further Extension of Exclusive Periods to File and Solicit Acceptances
of Plan of Reorganization ..................................................................A185

Objection of Debtors to Inacom Corporation's Motion to Allow the Filing
of a Proof of Claim After the Deadline for Filing Proofs of Claim
Pursuant to Bankruptcy Rule 9006(B)(1) ...............................................A204

Inacom's Motion for Leave to File Reply to Objection of Debtors to
Inacom Corporation's Motion to Allow the Filing of a Proof of
Claim After the Deadline for Filing Proofs of Claim Pursuant to
Bankruptcy Rule 9006(B)(1) ..............................................................A226

Order, Pursuant to 11 U.S.C. § 1121(d), Further Extending the
Exclusive Periods During Which the Debtors May File Plans of
Reorganization and Solicit Acceptances Thereto ......................................A258

Order Denying Inacom Corporation's Motion to Allow the Filing
of a Proof of Claim After the Deadline for Filing Proofs of Claim
Pursuant to Bankruptcy Rule 9006(B)(1) ...............................................A260

Page

Transcript of Motions Hearing Before the Honorable Judith K.
Fitzgerald on October 24, 2005 at 10:00 a.m. ........................................A262

Order, Pursuant to 11 U.S.C. § 1121(d), Further Extending the
Exclusive Periods During Which the Debtors May File Plans of
Reorganization and Solicit Acceptances Thereto ......................................A324

Transcript of Proceedings Before the Honorable Judith K.
Fitzgerald on November 14, 2005 at 10:03 a.m. ......................................A330

Notice of Appeal ...............................................................................A392

Thirty-Eighth Omnibus (Substantive) Objection of Debtors
to Claims Pursuant to 11 U.S.C. Section 502(b) and
Bankruptcy Rule 3007 - Claims Improperly Asserted
Against One or More Debtors ...............................................................A397

Debtors' Motion to Strike Items Improperly Designated
by InaCom Corporation to be Included in the Record on Appeal
of Order Denying InaCom Corporation's Motion to Allow the
Filing of a Proof of Claim After the Deadline for Filing Proofs of
Claim Pursuant to Bankruptcy Rule 9006(b)(1) .......................................A464

Motion of Debtors for Order, Pursuant to 11 U.S.C. Section 1121(d),
Granting Further Extension of Exclusive Periods to File and
Solicit Acceptances of Plan of Reorganization .........................................A479

Pro-Tec Services, LLC v. Inacom Corp., et al.
(In re: Inacom Corp., et al.), Civ. A. 04-390-GMS,
2004 WL 2283599 (D. Del. Oct. 4, 2004) ..............................................A499

## APPENDIX TWO AND THREE

Disclosure Statement with Respect to Fifth Amended
Joint Plan of Reorganization for Owens Corning
and its Affiliated Debtors and Debtors-in-Possession (with Exhibits) ................A506

**ORIGINAL**

## ·IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| OWENS CORNING, et al., | : | Case No. 00-03837 |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | Related to Docket No. 3494 |

### ORDER PURSUANT TO BANKRUPTCY RULE 3003(c)(3): (i) FIXING GENERAL CLAIMS BAR DATE FOR FILING CERTAIN PROOFS OF CLAIM; (ii) APPROVING PROPOSED PROOF OF CLAIM FORM, GENERAL CLAIMS BAR DATE NOTICE AND RELATED PUBLICATION NOTICE AND PROCEDURES; AND (iii) APPROVING PROPOSED EMPLOYEE . AND RETIREE CLAIMS NOTIFICATION PROCEDURES

Upon the motion dated November 6, 2001 (the "Motion")[1] of Owens Corning

and its affiliated debtors, as debtors and debtors-in-possession (collectively, the "Debtors"), for

an Order pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"): (i) Fixing General Claims Bar Date for Filing Certain Proofs of Claim;

(ii) Approving Proposed Proof of Claim Form, General Claims Bar Date Notice and Related

Publication Notice and Procedures; and (iii) Approving Proposed Employee and Retiree

Claims Notification Procedures, all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein purchase to 28 U.S.C.

§§ 157 and 1334; and it appearing that: (a) establishing a bar date by which creditors must

assert claims (other than Excluded Claims) against the Debtors or be forever barred from

asserting such claims, voting on any plan or plans of reorganization or participating in any

---

[1]    All capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

015632.14 11/A/01

Docket # _3673_

Date _11-27-01_

distributions from the Debtors' estates is necessary for the prompt and efficient administration of these chapter 11 cases and to protect the interests of the Debtors, their creditors and other parties-in-interest herein; and (b) notification of the relief granted by this Order in the manner proposed by the Debtors, as set forth herein, is fair and reasonable and will provide good, sufficient and proper notice to all creditors of their rights and obligations in connection with claims they may have against the Debtors in these chapter 11 cases; and due notice of the Motion having been provided to: (i) the United States Trustee for the District of Delaware; (ii) the agent and attorneys for the Debtors' pre-petition lenders; (iii) the agent and attorneys for the Debtors' post-petition lenders; (iv) the attorneys for each of the Official Committees appointed in these cases; (v) the Indenture Trustees and the attorneys for the Indenture Trustees (if known); (vi) the Future Representative appointed by Court Order dated September 28, 2001 and his attorneys; and (vii) all parties on the Debtors' General Service List proposed pursuant to the Court's Order Clarifying Case Notice Procedures dated May 16, 2001, and it appearing that no other or further notice need be provided; and it appearing that it is appropriate to set the General Claims Bar Date; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties-in-interest; and upon consideration of the Motion and all of the proceedings before the Court; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that pursuant to Bankruptcy Rule 3003(c)(3), and except as otherwise provided herein, any Entity that asserts a claim, other than an Excluded Claim, against any Debtor, which claim arose prior to October 5, 2000, shall file an original, completed, written proof of such claim against such debtor that substantially conforms to the Proof of Claim Form annexed as Exhibit "B" to the Motion (the "Proof of Claim Form"),

615432.14 11/6/01

-2-

which form is hereby approved, so as to be received on or before April 15, 2002 at 4:00 p.m.

prevailing Pacific time (the "General Claims Bar Date"), by mailing or delivering by overnight

courier or messenger an original Proof of Claim Form to: In re Owens Corning, et al., c/o

Robert L. Berger & Associates 16161 Ventura Boulevard, PMB 517, Encino, CA 91436 (the

"Claims Agent"); and it is further

ORDERED that Excluded Claims include the following Claims:

A.   An asbestos-related personal injury claim and an asbestos-related wrongful death claim, whether or not such claim: (a) has been resolved or is subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement; or (b) is based on a judgment;

B.   A claim that already has been properly filed with the Clerk of the United States Bankruptcy Court for the District of Delaware or the Claims Agent (as defined below) using a claim form that substantially conforms to Official Form No. 10;

C.   A claim that: (i) is listed on the Debtors' Amended Schedules; (ii) is *not* described in the Amended Schedules as "disputed," "contingent," or "unliquidated;" and (iii) is in the same amount and is of the same priority as set forth in the Amended Schedules;

D.   An administrative expense of any Debtor's chapter 11 case under section 503(b) of the Bankruptcy Code;

E.   A claim of a Debtor or a non-Debtor Subsidiary of a Debtor against a Debtor;

F.   A claim that has been allowed, paid or otherwise satisfied by or pursuant to an Order of the Court;

G.   A claim of an employee of any of the Debtors (other than retired employees) for deferred compensation;

H.   A claim of a retired employee of any of the Debtors for retirement benefits, including deferred compensation, pension and medical benefits;

I.   A claim of a current or former employee of any of the Debtors for pre-petition worker's compensation benefits;

-3-

J.    -  A claim that has been subject to a bar date established by Order of the Court other than the General Claims Bar Date Order; and

K.    A claim which is limited exclusively to a claim for the repayment by the applicable Debtor of principal and interest (a "Debt Claim") or under any of Owens Corning's 7.5% Notes due 2005, 7.7% Debentures due 2008, 7.5% Debentures due 2018 and 7.0% Senior Notes due 2009 (collectively, the "Notes") or on or under any industrial development, industrial revenue or other conduit bonds issued by a public instrumentality for the benefit of any Debtor (collectively, the "Bonds") or the indenture in respect of each of the Notes or Bonds (the "Indentures" and, each such Indenture collectively with the Notes and/or Bonds issued thereunder, the "Debt Instruments"); provided, however, that: (a) the foregoing exclusion in this subparagraph shall not apply to the indenture trustees under each of the Indentures (the "Indenture Trustees"); (b) each Indenture Trustee shall be required to file a proof of claim on account of the applicable Debt Claims on or under the applicable Debt Instruments for which it is the Indenture Trustee, on or before the General Claims Bar Date; and (c) any holder of Notes or Bonds that wishes to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a proof of claim on or before the General Claims Bar Date, unless another exception identified herein applies.

and it is further

ORDERED that asbestos property damage claims, derivative asbestos claims, personal injury and wrongful death claims which are not asbestos-related are not Excluded Claims and are subject to the General Claims Bar Date; and it is further

ORDERED that any Entity asserting a claim against more than one Debtor shall file a separate Proof of Claim Form with respect to each Debtor against whom such entity asserts a claim; and it is further

ORDERED that Proofs of Claim Forms will be deemed filed timely only if actually received by the Claims Agent on or before the General Claims Bar Date; and it is further

ORDERED that the Claims Agent shall not accept Proofs of Claim Forms sent by electronic submission or facsimile; and it is further

ORDERED that any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease as to which the effective date of such rejection is on or before the date of this Order, must, if no earlier deadline is fixed in the rejection order, file a Proof of Claim Form based on such rejection on or before the General Claims Bar Date. Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease as to which the effective date of such rejection is subsequent to the date of this Order must file a Proof of Claim Form on or before the later of: (i) thirty (30) days after the applicable rejection order is entered; or (ii) the General Claims Bar Date; and it is further

ORDERED that the Indenture Trustees for any debt issued by the Debtors are required to file a Proof of Claim Form on behalf of the debtholders for which they act; *provided however*, that individual debtholders shall retain the exclusive right to vote on any plan or plans of reorganization of the Debtors with respect to their respective claims; and it is further

ORDERED that each Proof of Claim Form to be properly filed pursuant to this Order shall: (i) be written in the English language; (ii) be denominated in lawful currency of the United States, based upon the exchange rate in effect as of the Petition Date, if applicable; (iii) conform substantially with the Proof of Claim Form; and (iv) indicate the Debtor against which the creditor is asserting a claim; and it is further

ORDERED that any holder of a claim who is required to but fails to file a Proof of Claim Form for such claim in accordance with this Order on or before the General Claims

(15452.34 13/4/1)

Bar Date shall be forever barred, estopped and enjoined from asserting such claim against such Debtor, such Debtor and its property shall be forever discharged from any and all indebtedness or liability with respect to such claim, and such holder shall not be permitted to vote on any plan or plans of reorganization or participate in any distribution in such Debtor's chapter 11 case on account of such claim or to receive further notices regarding such claim; and it is further

ORDERED that with respect to each of the creditors listed on the Amended Schedules, the Debtors shall mail one or more Proof of Claim Forms (as appropriate) substantially similar to the Proof of Claim Form attached to the Motion as Exhibit "B" (i) stating the name of the applicable Debtor and creditor; and (ii) indicating in the top right hand corner thereof the manner in which the Debtors have scheduled such creditor's claim in the Amended Schedules (including the amount and classification of the claim and whether the claim has been scheduled as contingent, unliquidated or disputed); and it is further

ORDERED that the Debtors' compliance with the immediately preceding paragraph of this Order shall satisfy the Debtors' obligations under Bankruptcy Rule 1009 and Local Bankruptcy Rule 1009-2, to the extent applicable; and it is further

ORDERED that with respect to any Entity not included in the Amended Schedules but listed on the Debtors' Matrix, as amended, other than employees, retirees, asbestos-related personal injury claimants and asbestos-related wrongful death claimants, the Debtors shall mail one or more blank Proof of Claim Forms (as appropriate) substantially similar to the Proof of Claim Form attached to the Motion as Exhibit "B"; and it is further

ORDERED that, unless otherwise agreed to by the Debtors or ordered by the Court, single Proof of Claim Forms which assert a claim against more than one Debtor shall be deemed filed solely against the first Debtor identified therein; and it is further

ORDERED that notice of entry of this Order and of the General Claims Bar Date in a form substantially similar to the notice attached to the Motion as Exhibit "C" (the "General Claims Bar Date Notice"), which General Claims Bar Date Notice is hereby approved in all respects, shall be deemed good, adequate and sufficient notice of the General Claims Bar Date with respect to all of the Debtors and all procedures and requirements in connection therewith if it is served together with one or more Proof of Claim Forms (as appropriate) by depositing same in the United States mail, first class postage prepaid, within thirty (30) days after the date of entry of this Order upon the following entities:

A.    the Office of the United States Trustee for the District of Delaware;

B.    the members of the Committees and the Committee' attorneys;

C.    the Indenture Trustees, their attorneys (if known) and all debtholders for which they act;

D.    the agent for the Debtors' post-petition lenders and its attorneys;

E.    all holders of claims listed on the Amended Schedules at the addresses stated therein;

F.    all counter-parties to executory contracts and unexpired leases listed on the Amended Schedules at the addresses stated therein;

G.    the District Director of Internal Revenue for the District of Delaware;

H.    the Securities and Exchange Commission;

I.    all Entities that have requested notice pursuant to Bankruptcy Rule 2002 as of the entry of this Order; and

J.  -  all Entities listed on the Debtors' Matrix, as amended, not otherwise listed above other than employees, retirees, asbestos-related personal injury claimants and asbestos-related wrongful death claimants;

and it is further

ORDERED that pursuant to Bankruptcy Rule 2002(l), the Debtors shall publish a bar date notice in substantially the form attached to the Motion as Exhibit "D" (the "Publication Notice"), which Publication Notice is approved in all respects: (i) twice in the national and (if applicable) international editions of *The New York Times*, *The Wall Street Journal* and *USA Today* at least thirty (30) days prior to the General Claims Bar Date; (ii) once in at least each of the newspapers set forth on Exhibit E-1 annexed to the Motion at least thirty (30) days prior to the General Claims Bar Date; (iii) once in at least each of the trade publications listed in Exhibit E-2 annexed to the Motion on the estimated dates set forth therein, which publication is hereby approved in all respects and which shall be deemed good, adequate and sufficient publication notice of the General Claims Bar Date; and it is further

ORDERED that in the event the Debtors further amend or supplement the Amended Schedules subsequent to the date hereof, the Debtors shall give notice of any amendment or supplement to the holders of claims affected thereby, and such holders shall be granted sixty (60) days from the date of such notification within which to file a Proof of Claim Form in respect of their claim or be forever barred from doing so; and it is further

ORDERED that notwithstanding anything to the contrary herein, with respect to the Debtors' employees and retirees, the Debtors shall utilize the Employee/Retiree Notification Procedures (as such procedures are described in the Motion) and distribute notice of the General Claims Bar Date to employees using a notice substantially similar to the form of notice annexed to the motion as Exhibit "F" and to retirees using a notice substantially similar

61342_14 11/6/01

-8-

to the form of notice annexed to the Motion as Exhibit "G", which notices are approved in all respects, within thirty (30) days after the date of entry of this Order; and it is further

ORDERED that the Debtors are authorized to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order; and it is further

ORDERED that notification of the relief granted by this Order as provided herein and in the Motion is fair and reasonable and will provide good, sufficient and proper notice to all creditors of their rights and obligations in connection with the claims they may have against the Debtors in these chapter 11 cases in satisfaction of due process; and it is further

ORDERED that entry of this Order is without prejudice to the Debtors' right to seek a further Order of this Court fixing a date by which a holder of a claim not subject to the General Claims Bar Date established herein must file such claim against the Debtors or be forever barred from voting on any plan or plans of reorganization of the Debtors, from receiving any distribution of property from any of the Debtors with respect to such claim and from asserting such claim against any of the Debtors.

Dated: Nov. 27___, 2001
       Wilmington, Delaware

_Judith K. Fitzgerald_

THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

9

EXHIBIT "B"

PROPOSED PROOF OF CLAIM FORM

<OC_ID>

| DO NOT USE THIS FORM TO ASSERT AN ASBESTOS-RELATED PERSONAL INJURY CLAIM OR AN ASBESTOS-RELATED WRONGFUL DEATH CLAIM, EVEN IF SUCH CLAIM HAS BEEN RESOLVED OR IS SUBJECT TO RESOLUTION PURSUANT TO A SETTLEMENT AGREEMENT OR IS BASED ON A JUDGMENT. | PROOF OF CLAIM<br>THIS SPACE IS FOR COURT USE ONLY |

UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE

| Specific Debtor against which this claim is asserted: | Case Number: |
| <DEBTOR NAME> | <CASE NUMBER> |

Name of Creditor (The person or other entity to whom the debtor owes money or property):

<CREDITOR NAME>

Name and address where notices should be sent:

<OC_ID BAR CODE>

<CREDITOR NAME>

<CREDITOR ADDRESS>

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone Number:

<TELEPHONE NUMBER>

Your claim is listed /a the Debtor's amended schedules as follows:

Classification: <SCH CLASS>   Amount: <SCH AMOUNT>

<CONTINGENT>, <UNLIQUIDATED>, <DISPUTED>

Basis for Claim: <DESCRIPTION>

If you agree with the amount and classification scheduled by the Debtor and have no other claim against the Debtor, you do not need to file this proof of claim. However, if the amount is shown as Disputed, Unliquidated, Contingent or Unknown, a proof of claim must be filed. If you have already filed a proof of claim with the Bankruptcy Court or the Claims Agent, you do not need to file again.

If you believe you have a claim against any of the other related Debtors, you must file a separate proof of claim in the appropriate case(s). See instructions.

Carefully read the instructions included with this Proof of Claim before completing. In order to have your claim considered for payment and/or voting purposes, complete ALL applicable questions. The original of this Proof of Claim must be sent to: In re OWENS CORNING et al., c/o Robert L. Berger and Associates, 16161 Ventura Blvd., PMB 517, Encino, CA 91436. This Proof of Claim must be received by the Claims Agent by 4 p.m., April 15, 2002, prevailing Pacific time. No electronic submissions or facsimiles will be accepted.

Account or other number by which creditor identifies debtor:          ☐ Check here if this claim   ☐ Replaces   A previously filed claim, dated: _____   ☐ Amends   number: _____

| 1. Basis for Claim (see Instructions): | ☐ Goods Sold | ☐ Real Property Lease | ☐ Wages, salaries, and compensation (Fill out below): |
| ☐ Asbestos Property Damage | ☐ Indemnification or Contribution | ☐ Retiree Benefits as defined in 11 U.S.C. §1114(a) | Your SS#: _____ |
| ☐ Derivative Asbestos Claim | ☐ Litigation - Non-Asbestos | ☐ Services Performed | Unpaid compensation for services performed |
| ☐ Environmental | ☐ Personal Injury – Non-Asbestos | ☐ Trade Claim | from _____ to _____ |
| ☐ Executory Contract, including Personal Property Lease | ☐ Money Loaned | ☐ Taxes | (date)   (date) |
| ☐ Freight | ☐ Professional Fees | ☐ Warranty   ☐ Other _____ | |

2. Date debt was incurred:

3. If court judgment, date obtained:

4. Total Amount of Claim: $ _____

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. Secured Claim. | 6. Unsecured Priority Claim. |
| ☐ Check this box if your claim is secured by collateral (including a right of setoff). | ☐ Check this box if you have an unsecured priority claim. |
| | Amount entitled to priority: $ _____ |
| Brief description of collateral: | Specify the priority of the claim: |
| ☐ Real Estate   ☐ Motor Vehicle | ☐ Wages, salaries, or commissions (up to $4,300), earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3). |
| ☐ Other | ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4). |
| Value of collateral: $ _____ | ☐ Up to $2,000 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6). |
| Amount of arrearage and other charges included in Secured claim, if any: $ _____ | ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7). |
| | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). |
| | ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a). |

7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

8. Supporting Documents: Attach copies of supporting documents such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Failure to provide appropriate documentation may result in your claim being subject to objection.

9. Acknowledgment of Claim: You will receive written notification of receipt of your Proof of Claim and the number assigned to it.

THIS SPACE IS FOR COURT USE ONLY

| Date _____ | SIGN and print the name and title, if any, of the creditor or other person authorized to file this claim (attach power of attorney, if any). |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.          <OC_ID>

*Do not use this form to assert an asbestos-related personal injury claim or an asbestos-related wrongful death claim, even if such claim has been received or is subject to resolution pursuant to a settlement agreement or is based on a judgment. Asbestos-related personal injury claims and asbestos-related wrongful death claims will be subject to a separate proof of claim process.*

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

Refer to Notice of Entry of General Claims Bar Date Order Requiring the Filing of Proofs of Claim for additional information.

## General Instructions

The Debtors in these cases are Owens Corning, CDC Corporation, Engineered Yarns America, Inc., Falcon Foam Corporation, Integrex, Fibreboard Corporation, Exterior Systems, Inc., Integrex Ventures LLC, Integrex Professional Services LLC, Integrex Supply Chain Solutions LLC, Integrex Testing Systems LLC, HOMExperts LLC, Jefferson Holdings, Inc., Owens-Corning Fiberglas Technology, Inc., Owens Corning HT, Inc., Owens-Corning Overseas Holdings, Inc., Owens Corning Remodeling Systems, LLC and Soltech, Inc. (each individually a "Debtor" and collectively, the "Debtors"). A list of certain of the present and former business and legal names for each Debtor is attached as Schedule 1 to the Notice of Entry of General Claims Bar Date Order Requiring the Filing of Proofs of Claim.

Your Proof of Claim Form must be filed with the Claims Agent (Robert L. Berger & Associates) so that it is _actually received_ by 4:00 p.m., _April 15, 2002_, prevailing Pacific time. If you are returning your Proof of Claim Form by mail, allow sufficient time so that it is _received_ on or before April 15, 2002. Proof of Claim Forms that are post-marked prior to April 15, 2002, but received after April 15, 2002, will be considered late filed claims. No electronic submissions or facsimiles will be accepted. _Failure to file timely a Proof of Claim Form will forever preclude you from asserting your claim(s) against or receiving payment from the Debtor._

Proof of Claim Forms should be sent to the Claims Agent at the following address:

In re Owens Corning, _et al._
c/o Robert L. Berger & Associates
16161 Ventura Blvd.
PMB 517
Encino, CA 91436

If you have claims against more than one of the Debtors, you MUST file a separate Proof of Claim Form against EACH applicable Debtor. For example, if you believe you have claims against both Owens Corning and Soltech, Inc., you must file separate Proof of Claim Forms against Owens Corning and Soltech, Inc. If you file a single Proof of Claim Form asserting a claim against more than one Debtor, the claim will be considered to have been filed against the first Debtor identified only. All additional identified Debtors will be disregarded.

If you wish to assert claims against one or more Debtor(s) other than the Debtor listed on this Proof of Claim Form you must request an additional Proof of Claim Form by: (a) calling 1-(866)773-8653 or (b) visiting the website at http://www.occlaims.com/ .

DO NOT distribute this Proof of Claim Form to others.

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the Debtor's case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503(b).

## — DEFINITIONS —

**Debtor**
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**Creditor**
A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

**Proof of Claim**
A form telling the bankruptcy court how much the debtor owed a creditor at the time the debtor's bankruptcy case was filed (the amount of the creditor's claim).

**Secured Claim**
A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim*.)

**Unsecured Claim**
If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Priority Claim**
Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

**Asbestos Property Damage Claim**
Asbestos Property Damage Claims are claims for diminution of value or economic loss, etc., of or to real property caused by asbestos-containing products or materials which were manufactured, distributed, sold, supplied, specified, selected, installed or marketed by the debtor. More specifically, Asbestos Property Damage Claims are those claims against, or any debt, obligation or liability of, the debtor, whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty, for, relating to or arising by reason of, directly or indirectly, property damages, including but not limited to diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by asbestos—including but not limited to asbestos-containing products or materials manufactured, sold, supplied, produced, specified, selected, installed, distributed or marketed by the debtor—and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the debtors, including but not limited to all claims, debts, obligations or liabilities for compensatory and punitive damages.

**Derivative Asbestos Claim**
Derivative Asbestos Claims typically are asserted by other defendants in asbestos personal injury litigation (such as other manufacturers or distributors of asbestos-containing products or premises owners) and include cross-claims, contribution claims, subrogation claims, reimbursement or indemnity claims, etc. More specifically, Derivative Asbestos Claims are those claims and cross-claims brought by other defendants in asbestos litigation against the debtor arising from personal injury claims brought directly against the other defendants, whether in nature of or sounding in tort, contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity or any other theory of law, equity or admiralty for, relating to or arising by reason of, directly or indirectly, liability, debts, or obligations for damages to persons or property caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos including but not limited to asbestos-containing products or materials manufactured, sold, supplied, produced, specified, selected, distributed, installed, or marketed by the Debtor and arising or allegedly arising, directly or indirectly, from acts or omissions of the debtor.

## Items to be completed in Proof of Claim Form (if not already filled in)

**Court, Name of Debtor and Case Number**
The name of the federal judicial district where the Debtor's bankruptcy case was filed, the Debtor's name, and the Debtor's case number may have been completed for you. If not, you must complete such information.

**Information about Creditor:**
The name and address of the creditor to whom the Debtor owes money or property may have been completed for you. Note any corrections on the form. Complete the sections giving the creditor's telephone number and the Debtor's account number. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or amends a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the Proof of Claim Form is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of claim.

**2. Date Debt Incurred:**
Fill in the date when your debt first was owed by the Debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim:**
Fill in the total amount of your claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**6. Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**7. Credits:**
By signing this Proof of Claim Form, you are stating under oath that in calculating the amount of your claim you have given the Debtor credit for all payments received on account of your claim.

**8. Supporting Documents:**
You must attach to this Proof of Claim copies of documents that show the Debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available. Documents will not be returned. Failure to provide appropriate documentation may result in your claim not being considered for payment and/or voting purposes.

**9. Acknowledgment of Claim:**
Keep a copy of your completed Proof of Claim Form for your records. You will receive written notification of receipt of your Proof of Claim Form and the number assigned to it. Time-stamped copies of Proof of Claim Forms will not be returned.

13

# EXHIBIT "C"

EXHIBIT "C"

PROPOSED GENERAL CLAIMS BAR DATE NOTICE

615832.14 11/4/02

EXHIBIT "C"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| OWENS CORNING, et al., | : | Case No. 00-03837 (JKF) |
| Debtors. | : | Jointly Administered |

## NOTICE OF ENTRY OF GENERAL CLAIMS BAR DATE
## ORDER REQUIRING THE FILING OF PROOFS OF CLAIM

On October 5, 2000, the following debtors (each a "Debtor" and collectively the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"):

| |
|---|
| Owens Corning (Case No. 00-3837) - - f/k/a Owens Corning Fiberglas Corp.; dba Cultured Stone, a division of Owens Corning (after 12/31/99); OEM Solutions Group; Owens Corning Tanks; O/C Tanks Corporation; Western Fiberglass, Inc. |
| CDC Corporation (Case No. 00-3838) |
| Engineered Yarns America, Inc. (Case No. 00-3839) |
| Falcon Foam Corporation (Case No. 00-3840) |
| Integrex (Case No. 00-3841) - - dba Integrex HOMExperts; Integrex Testing Systems LLC; HOMExperts LLC; Owens Corning HOMExperts |
| Fibreboard Corporation (Case No. 00-3842) |
| Exterior Systems, Inc. (Case No. 00-3843) - - dba Norandex, Inc.; Fabwel Composites; AmerMark Building Products, Inc.; Fabwel, Inc.; Fabwel Plastics; Owens Corning Metal Systems; Norandex/Reynolds; Norandex/Reynolds Distribution Company; Norandex Bldg. Products; Reynolds Bldg. Products; Norandex Installation Company; Aristocrat Windows; Weather-Tite |
| Integrex Ventures LLC (Case No. 00-3844) |
| Integrex Professional Services LLC (Case No. 00-3845) |
| Integrex Supply Chain Solutions LLC (Case No. 00-3846) |
| Integrex Testing Systems LLC (Case No. 00-3847) |
| Homexperts LLC (Case No. 00-3848) |
| Jefferson Holdings, Inc. (Case No. 00-3849) |
| Owens-Corning Fiberglas Technology Inc. (Case No. 00-3850) |
| Owens Corning HT, Inc. (Case No. 00-3851) |
| Owens-Corning Overseas Holdings, Inc. (Case No. 00-3852) |
| Owens Corning Remodeling Systems, LLC  (Case No. 00-3853) |
| Soltech, Inc. (Case No. 00-3854) |

Schedule "1" hereto contains a more detailed list of certain of the Debtors' current and former business and legal names.

615452.14 11/4/01

PLEASE TAKE NOTICE THAT on _____, 2001, the United States Bankruptcy Court for the District of Delaware (the "Court"), having jurisdiction over the chapter 11 cases of the Debtors, issued an Order pursuant to Bankruptcy Rule 3003(c)(3): (i) Fixing General Claims Bar Date for Filing Certain Proofs of Claim; (ii) Approving Proposed Proof of Claim Form, General Claims Bar Date Notice and Related Publication Notice and Procedures, and (iii) Approving Proposed Employee and Retiree Claims Notification Procedures (the "General Claims Bar Date Order").

Pursuant to the General Claims Bar Date Order, the Court established **April 15, 2002** at 4:00 p.m. prevailing Pacific time (the "General Claims Bar Date") as the last date and time for each person or entity, including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit (each individually an "Entity" and collectively, "Entities"), except holders of Excluded Claims, as hereinafter defined, to file a proof of claim against any of the Debtors.

## 1.     WHO MUST FILE A PROOF OF CLAIM

You MUST file a proof of claim if you have a claim (as hereinafter defined) against a Debtor that: (a) arose prior to October 5, 2000, including, but not limited to, claims based upon: (i) the purchase of products by, or the provision of any services to, any of the Debtors; (ii) property damage arising from the presence of asbestos-containing or other products in buildings; (iii) acts or omissions by any the Debtors, including without limitation claims based on indemnification, contribution, reimbursement, subrogation and guarantees; (iv) environmental liabilities; and/or (v) the sale, manufacture, distribution, installation and/or marketing of products by any of the Debtors, including without limitation underground or above-ground storage tanks, roofing shingles, vinyl siding, metal siding and products containing glass fibers, synthetic vitreous fibers, asphalt and/or resins; and (b) is not an Excluded Claim (as hereinafter defined).

The General Claims Bar Date does not apply to asbestos-related personal injury claims and asbestos-related wrongful death claims, whether or not such claims (a) have been resolved or are subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) are based on a judgment. Asbestos-related personal injury claims and asbestos-related wrongful death claims will be subject to a separate claim submission process and should not be filed at this time.

The General Claims Bar Date does apply to derivative asbestos claims[1] and asbestos-related claims for contribution, indemnity, reimbursement or subrogation. The

---

[1] The term "derivative asbestos claims" means claims asserted by other defendants in asbestos personal injury litigation (such as other manufacturers or distributors of asbestos-containing products or premises owners) and includes cross-claims, contribution claims, subrogation claims, reimbursement or indemnity claims, etc. More specifically, "derivative asbestos claims" are those claims and cross-claims brought by

General Claims Bar Date also applies to personal injury and/or wrongful death claims which are not asbestos-related.

Claims for property damage (including asbestos property damage claims[2] and any claims for property damage arising from the presence of asbestos-containing or other products in buildings) and claims for contribution, indemnity, reimbursement or subrogation, even though such claims may or might arise directly as a result of exposure to asbestos or asbestos-containing products, are required to be filed on or before the General Claims Bar Date.

Under Section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. Because of this broad definition, acts or omissions of the Debtors that arose before October 5, 2000 may give rise to claims against them notwithstanding that such claims may not have matured or become fixed or liquidated prior to such date.

---

other defendants in asbestos litigation against a Debtor arising from personal injury claims brought directly against the other defendants, whether in nature of or sounding in tort, contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity or any other theory of law, equity or admiralty for, relating to or arising by reason of, directly or indirectly, liability, debts or obligations for damages to persons or property cause, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos including but not limited to asbestos-containing products or materials manufactured, sold, supplied, produced, specified, selected, distributed, installed, or marketed a Debtor and arising or allegedly arising, directly or indirectly, from acts of omissions of a Debtor.

[2] The term "asbestos property damage claim" means claims that are for diminution of value or economic loss, etc., of or to real property caused by asbestos-containing products or materials which were manufactured, distributed, sold, supplied, produced, specified, selected, installed or marketed by a Debtor. More specifically, "asbestos property damage claims" are those claims against, or any debt, obligation or liability of, a Debtor, whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty, for, relating to or arising by reason of, directly or indirectly, property damages, including but not limited to diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by asbestos -- including but not limited to asbestos-containing products or materials manufactured, sold, supplied, produced, specified, selected, installed, distributed or marketed by a Debtor -- and arising or allegedly arising, directly or indirectly, from acts or omissions of a Debtor, including but not limited to all claims, debts, obligations or liabilities for compensatory and punitive damages.

18

## 2.    EXCLUDED CLAIMS

You should not file any proof of claim that is an Excluded Claim. An "Excluded Claim" is any of the following types of claims:

A.    An asbestos-related personal injury claim or an asbestos-related wrongful death claim, whether or not such claim (a) has been resolved or is subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) is based on a judgment;

B.    A claim that already has been properly filed with the Clerk of the United States Bankruptcy Court for the District of Delaware or the Claims Agent (as defined below) using a claim form that substantially conforms to the Proof of Claim Form approved for use in these cases and included with this Notice;

C.    A claim that is: (i) listed on the Debtors' Amended Schedules (as defined below); (ii) *not* described in the Amended Schedules as "disputed," "contingent," or "unliquidated;" and (iii) in the same amount and of the same priority as set forth in the Amended Schedules;

D.    An administrative expense of any Debtor's chapter 11 case under section 503(b) of the Bankruptcy Code;

E.    A claim of a Debtor or a Debtor's non-Debtor subsidiary[3] against a Debtor;

F.    A claim that has been paid or otherwise satisfied by or pursuant to an Order of the Court;

G.    A claim of an employee of any of the Debtors for deferred compensation;

H.    A claim of a retired employee of any of the Debtors for retirement benefits, including deferred compensation, pension and medical benefits;

I.    A claim of a current or former employee of any of the Debtors for pre-petition worker's compensation benefits;

---

[3]    As used herein, the term "Subsidiary" refers to an Entity that is directly or indirectly controlled by a Debtor. As used herein, the term "control" means having an ownership interest in excess of 50%.

619452.14 11/6/01

-4-

J.   A claim that has been subject to a bar date established by Order of the Court other than the General Claims Bar Date Order; and

K.   A claim which is limited exclusively to a claim for the repayment by the applicable Debtor of principal and interest (a "Debt Claim") on or under any of Owens Corning's 7.5% Notes due 2005, 7.7% Debentures due 2008, 7.5% Debentures due 2018 and 7.0% Senior Notes due 2009 (collectively, the "Notes") or on or under any industrial development, industrial revenue or other conduit bonds issued by a public instrumentality for the benefit of a Debtor (collectively, the "Bonds") or the indenture in respect of each of the Notes or Bonds (the "Indentures" and, each such Indenture collectively with the Notes and/or Bonds issued thereunder, the "Debt Instruments"); provided, however, that: (a) the foregoing exclusion in this subparagraph shall not apply to the Indenture trustees under each of the Indentures (the "Indenture Trustees"); (b) each Indenture Trustee shall be required to file a proof of claim on account of the applicable Debt Claims on or under the applicable Debt Instruments for which it is the Indenture Trustee, on or before the General Claims Bar Date; and (c) any holder of Notes or Bonds that wishes to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a proof of claim on or before the General Claims Bar Date, unless another exception identified herein applies.

YOU SHOULD NOT FILE A PROOF OF CLAIM FORM IF YOU DO NOT HAVE A CLAIM AGAINST ANY OF THE DEBTORS OR IF YOUR CLAIM HAS BEEN PAID IN FULL OR OTHERWISE SATISFIED.

THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS BELIEVE THAT YOU HAVE A CLAIM.

3.   **ASBESTOS-RELATED PERSONAL INJURY CLAIMS AND ASBESTOS-RELATED WRONGFUL DEATH CLAIMS**

*The General Claims Bar Date does not apply to asbestos-related personal injury claims or asbestos-related wrongful death claims, whether or not such claims (a) have been resolved or are subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) are based on a judgment.* Asbestos-related personal injury claims or asbestos-related wrongful death claims will be subject to a separate claims process, to be established by the Court, and should not be filed at this time.

613432.14 11/4/03

-5-

20

4.    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease as to which the effective date of such rejection is on or before the entry of the General Claims Bar Date, must, if no earlier deadline is fixed in the rejection Order, file a Proof of Claim Form based on such rejection on or before the General Claims Bar Date. Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease as to which the effective date of such rejection is after the entry of the General Claims Bar Date, must file a Proof of Claim Form of on or before the later of: (i) thirty (30) days after the applicable rejection order is entered; or (ii) the General Claims Bar Date.

5.    **WHEN AND WHERE TO FILE**

To file a claim, you must do the following:

- File with the Claims Agent, as defined below, your claim on the Proof of Claim Form enclosed with this notice. For additional copies of the Proof of Claim Form:

  - Call 1-866-773-8653 or

  - Visit the website at http://www.occlaims.com to download a Proof of Claim Form and instructions for completing the Proof of Claim Form.

- Return your completed Proof of Claim Form(s) to the Claims Agent no later than 4:00 p.m., prevailing Pacific time, <u>April 15, 2002</u>. Proof of Claim Forms will be deemed filed only when actually received by the Claims Agent. Proof of Claim Forms submitted by electronic submission or by facsimile will not be accepted and will not be deemed filed. If you are returning a Proof of Claim Form by mail, allow sufficient mailing time so that the Proof of Claim Form is received on or before April 15, 2002 at 4:00 p.m., prevailing Pacific time. Proof of Claim Forms that are postmarked before that date but received thereafter will be considered late.

- Proof of Claim Forms should be sent to the Claims Agent at the following address:

  Claims Agent
  In re Owens Corning, et al.
  c/o Robert L. Berger & Associates LLC
  16161 Ventura Boulevard
  PMB 517
  Encino, CA  91436

**6.    WHAT TO FILE** ·

Your filed Proof of Claim Form must: (i) be written in English; (ii) be denominated in lawful currency of the United States, based upon the exchange rate in effect as of the Petition Date, if applicable; (iii) conform substantially with the Proof of Claim Form provided; and (iv) indicate the specific Debtor against which you are asserting your claim. To expedite the processing of your claim, use the Proof of Claim Form approved for use in these cases and enclosed with this Notice.

You must attach to your completed Proof of Claim Form copies of any writings or other documents upon which your claim is based. Submitted documents will not be returned. Do not attach original documents. If the documents supporting your claim are voluminous, you may attach summaries.

Keep a copy of your completed Proof of Claim Form for your records. You will receive written notification of your Proof of Claim Form and the number assigned to it. Time-stamped copies of Proof of Claim Forms will not be returned.

**7.    CLAIMS AGAINST MULTIPLE DEBTORS**

If you assert claims against more than one Debtor, you must file a separate Proof of Claim Form against each applicable Debtor. If you file a single Proof of Claim Form asserting a claim against more than one Debtor, your claim will be deemed to have been filed against the first Debtor identified only. All additional identified Debtors will be disregarded.

If you wish to assert claims against one or more Debtors other than the Debtor listed on the enclosed Proof of Claim Form(s), you must request an additional Proof of Claim Form to assert such claim(s) by: (a) calling 1-866-773-8653; or (b) visiting the website at http://www.occlaims.com.

**8.    EFFECT OF NOT FILING A CLAIM**

IF YOU ARE REQUIRED TO FILE A PROOF OF CLAIM FORM AND DO NOT DO SO ON OR BEFORE THE GENERAL CLAIMS BAR DATE OF APRIL 15, 2002, YOU WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST ANY OF THE DEBTORS AND SUCH DEBTORS AND THEIR PROPERTY WILL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM, AND YOU WILL NOT BE PERMITTED TO VOTE ON ANY PLAN OF REORGANIZATION OR PARTICIPATE IN ANY DISTRIBUTION IN SUCH DEBTOR'S CHAPTER 11 CASE ON ACCOUNT OF SUCH CLAIM OR TO RECEIVE FURTHER NOTICES REGARDING SUCH CLAIM.

## 9.    THE DEBTORS' AMENDED SCHEDULES AND ACCESS THERETO

You may be listed as the holder of a claim against one or more Debtors in the Debtors' Amended and Restated Schedules of Assets and Liabilities (the "Amended Schedules"), which were filed on November __, 2001.  The Amended Schedules replace and supersede the Debtors' Schedules of Assets and Liabilities filed with the Court in November and December 2000 (the "Original Schedules").  You should not in any way rely upon the information contained in the Original Schedules.

If you are listed on the Amended Schedules, a description of the nature, amount and classification of your claim, as reflected in the Amended Schedules, is set forth in the upper right hand corner of the enclosed Proof of Claim Form(s).  If, prior to the filing of the Amended Schedules, you received Court-authorized post-petition payments from any of the Debtors on account of your claim(s), the enclosed Proof of Claim Form(s) should reflect the net amount of your claim(s) (i.e., reduced by the post-petition payments).  If the Debtors believe that you may hold or assert claims against more than one Debtor, you will receive a separate Proof of Claim Form for each applicable Debtor, which will reflect the nature, amount and classification of your claim against each such Debtor, as listed in the Amended Schedules.  If you agree with the nature, amount and classification of your claim(s) as described in the enclosed Proof of Claim Form(s), you do not need to file a proof of claim unless your claim is designated as "disputed," "contingent" or "unliquidated."  If you are not listed in the Amended Schedules, a description of the nature, amount and classification of your claim, if any, is not set forth on the enclosed Proof of Claim Form.

If it is unclear from the Amended Schedules whether your claim is disputed, contingent or unliquidated as to amount, or is otherwise properly listed and classified, or if you believe you hold a claim against one or more of the Debtors and have not been scheduled, you must file a proof of claim on or before the General Claims Bar Date.  Any Entity that fails to file a proof of claim in reliance upon the Amended Schedules bears sole responsibility for determining that its claim is accurately listed therein.

Copies of the Amended Schedules may be examined by interested parties: (a) between the hours of 8:00 a.m. and 4:00 p.m., prevailing Eastern time, at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the District of Delaware, Sixth Floor, 824 Market Street, Wilmington, Delaware 19801; and (b) on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at http://www.deb.uscourts.gov.

**YOU MAY WISH TO CONSULT AN ATTORNEY REGARDING WHETHER YOU HAVE CLAIMS AGAINST ONE OR MORE OF THE DEBTORS, THE GENERAL CLAIMS BAR DATE AND WHETHER YOU SHOULD FILE A PROOF OF CLAIM FORM.**

BY ORDER OF THE COURT

/s/ Judith K. Fitzgerald
United States Bankruptcy Judge

SAUL EWING LLP

COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION

613432.14 11/16/01

-9-

24

# SCHEDULE 1
## TO NOTICE OF ENTRY OF GENERAL CLAIMS BAR DATE ORDER REQUIRING THE FILING OF PROOFS OF CLAIM


**(List of Present and Former dba's and tradenames)**

## Owens Corning, et al. — List of Present and Former dba's and Tradenames

*Note:  This list of present and former dba's and tradenames is based on
information contained in the Debtors' books and records.  This list may be,
in certain respects, over-inclusive and/or incomplete. The inclusion of a particular dba
or tradename on this list is not an admission that any Debtor
utilized such dba or tradename or is otherwise responsible for debts incurred by
or under such dba or tradename, and the Debtors reserve all rights regarding same.*

| Debtor: | Present and Former dba's and Tradenames (most commonly used names in bold): |
|---|---|
| Owens Corning<br>Case No. 00-3837 | Owens-Corning Fiberglas Corporation; Cultured Stone, a division of Owens Corning (after 12/31/99); OEM Solutions Group; Owens Corning Yanks; O/C Yanks Corporation; Western Fiberglass Inc.; Trumbull Asphalt, a division of Owens Corning; Lloyd A. Fry Roofing Company; The Fiberglas Corporation; Fiberglas, Inc.; Owens-Corning Fiberglas International Corp.; Yellow Jacket, a division of Owens Corning; Western Fiberglas of Texas; Western Fiberglas of Arizona; Fiberglas Engineering & Supply Company of Northern California; Fiberglas Engineering & Supply Company of Northwest Portland, Oregon; Detroit Fiberglas Insulation Company; Fiberglas Contracting & Supply Company of Ohio Valley; Fiberglas Contracting & Supply Company of Toledo, OH; Owens-Corning Fiberglas Export Sales Corporation; Fiberglas Fabrication Sales Corporation; FAB; OC Fiberlite; Fiberlite Corporation; OC Michigan Molded; OC Contracting Divisions; OC Windows; TRB Development, Inc.; Sierra Corp.; Kaytex LLC; O/C First Corporation; O/C Second Corporation; OCFOGO, Inc.; U.C. Industries/ UCI; T Acquisition; Darlington America Corporation; Electric Smith; Owens Corning Toxling Service; Sharp-Schurer Company; Maxcorp, Inc.; Kerkcorp; Borate Distribution Company; Summit Wholesale Supply Company; FSE Inc.; OCF Building Inc.; OC Utah One Corporation; OC Utah Two Corporation; OC Utah Three Corporation; Soltech Acquisition Company; Owens Corning Fabrication. |
| CDC Corporation<br>Case No. 00-3838 | Conwed Designscape |
| Engineered Yarns America, Inc.,<br>Case No. 00-3839 | n/a |
| Falcon Foam Corporation<br>Case No. 00-3840 | Falcon Manufacturing Acquisition Corp. |
| Integrex<br>Case No. 00-3841 | INTEGREX HOMExperts; Integrex Testing Systems LLC; HOMExperts LLC; Owens Corning HOMExperts; Falco, Inc.; Owens Corning Litigation Management Systems; Owens Corning Integrex; Owens-Corning Testing Services; Integrex Supply Chain Solutions LLC; Integrex Professional Services LLC; Integrex Ventures LLC |
| Fibreboard Corporation<br>Case No. 00-3842 | Fibreboard Paper Products Corporation; Pabco Products Inc.; Pantfline Companies, Inc.; Fibreboard Box & Millwork; Fibreboard Technologies Corp.; Fibreboard Wood Products Co. Inc.; P Metals; Keystone Bark & Mulch Corp.; Vytec Sales Corporation; Sierra Corp.; Cultured Stone Corporation (prior to 12/31/99); Great American Stoneworks; Stone Products Corporation; Sincco Stone Products; Carriage Hill Stone Products; Pabco, a Division of Fibreboard; Pabco Insulation, a Division of Fibreboard |
| Exterior Systems, Inc.<br>Case No. 00-3843 | Norandex, Inc.; Fabwel Composites; AmeriMark Building Products, Inc.; Fabwel, Inc.; Fabwel Plastics; Owens Corning Metal Systems; Norandex/Reynolds; Norandex/Reynolds -- Distribution Company; Norandex Bldg. Products; Reynolds Bldg. Products; Norandex Installation Company; Aristocrat Windows; Weather-Tite; Ryan Wholesale Supply; Norandex Sales Company; Tappan Bros. Inc.; Northwest Standard Products Co.; East Range Company; West Range Company; Texas Siding Supply, Inc.; Corn Husker Siding Supply, Inc.; Aluminum Supply Company; Summit Siding Company; Aristocrat Window Co. of Maryland Inc.; Aristocrat Window Co. of New Jersey Inc.; Aristocrat Window Co. of Pittsburgh Inc.; Aristocrat Window Co. of Rhode Island Inc.; Aristocrat Window Co. of Virginia Inc.; Illinois Aristocrat Window Co., Inc.' Aristocrat Window Company; Noranda Exploration Inc.; The Pacific Coast Company; Pacific Coast Realty Corp. of Delaware; Pacific Coast Realty Corp. of Indiana Inc.; Pacific Coast Redevelopment Corporation; Weather-Tite Co. of Alabama Inc.; Weather-Tite Co. of Arkansas Inc.; Weather-Tite Co. of Cincinnati Inc.; Weather-Tite Co. of Colorado Inc.; Weather-Tite Co. of Columbus Inc.; Weather-Tite Co. of Connecticut Inc.; Weather-Tite Co. of Florida Inc.; Weather-Tite Co. of Georgia Inc.; Weather-Tite Co. of Indiana Inc.; Weather-Tite Co. of Iowa Inc.; Weather-Tite Co. of Kansas Inc.; Weather-Tite Co. of Louisiana Inc.; Weather-Tite Co. of Michigan Inc.; Weather-Tite Co. of Minnesota Inc.; Weather-Tite Co. of Missouri Inc.; Weather-Tite Co. of Nebraska Inc.; Weather-Tite Co. of New York Inc.; Weather-Tite Co. of North Carolina Inc.; Weather-Tite Co. of Ohio Inc.; Weather-Tite Co. of Oklahoma Inc.; Weather-Tite Co. of Pennsylvania Inc.; Weather-Tite Co. of South Carolina Inc.; Weather-Tite Co. of Tennessee Inc.; Weather-Tite Co. of Texas Inc.; Weather-Tite Co. of West Virginia Inc.; Weather-Tite Co. of Wisconsin Inc.; Weather-Tite Co. of Indianapolis Inc.; Northwest Thermal Window Company; Master-S, Inc.; Oklahoma Better Homes, Inc.; ITI/TUCO; WGS Acquisition Inc.; OCAA, Inc.; Alsco; Hastings; Wolverine Coil Coating |

6301E4 11/4/01

## Owens Corning, et al. — List of Present and Former dba's and Tradenames (continued)

*Note: This list of present and former dba's and tradenames is based on
information contained in the Debtors' books and records. This list may be,
in certain respects, over-inclusive and/or incomplete. The inclusion of a particular dba
or tradename on this list is not an admission that any Debtor
utilized such dba or tradename or is otherwise responsible for debts incurred by
or under such dba or tradename, and the Debtors reserve all rights regarding same.*

| Debtor: | Present and Former dba's and Tradenames (most commonly used names in bold): |
|---|---|
| Integrex Ventures LLC<br>Case No. 00-3844 | HOMExperts |
| Integrex Professional Services LLC<br>Case No. 00-3845 | n/a |
| Integrex Supply Chain Solutions LLC<br>Case No. 00-3846 | n/a |
| Integrex Testing Systems LLC<br>Case No. 00-3847 | n/a |
| HOMEXPERTS LLC<br>Case No. 00-3848 | n/a |
| Jefferson Holdings, Inc.<br>Case No. 00-3849 | n/a |
| Owens-Corning Fiberglas Technology, Inc.<br>Case No. 00-3850 | OC Utah Four Corporation |
| Owens Corning HT, Inc.<br>Case No. 00-3851 | n/a |
| Owens-Corning Overseas Holdings, Inc.<br>Case No. 00-3852 | n/a |
| Owens Corning Remodeling Systems, LLC<br>Case No. 00-3853 | n/a |
| Soltech, Inc.<br>Case No. 00-3854 | Soltech OEM Solutions; OEM Solutions Group; Fiberflex Inc.; Fiber-flex Company Inc.; Thermoceutics Division; Solar Technology Inc.; Owens Corning Fabrication; SFF1 Acquisition Corporation; SFF2 Acquisition Corporation; Zeta Center Holding Corporation |

GO&LL4 11/AG]

27

# EXHIBIT "D"

EXHIBIT "D"

PUBLICATION NOTICE

413432.14 11/6/01

EXHIBIT "D"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| OWENS CORNING, et al., | Case No. 00-03837 (JKF) |
| Debtors. | Jointly Administered |

## NOTICE OF LAST DAY TO FILE CLAIMS

On October 5, 2000, the following debtors (each a "Debtor" and collectively the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"):

| |
|---|
| Owens Corning  (Case No. 00-3837) -- f/k/a Owens Corning Fiberglas Corp.; dba Cultured Stone, a division of Owens Corning (after 12/31/99); OEM Solutions Group; Owens Corning Tanks; O/C Tanks Corporation; Western Fiberglass, Inc. |
| CDC Corporation (Case No. 00-3838) |
| Engineered Yarns America, Inc. (Case No. 00-3839) |
| Falcon Foam Corporation (Case No. 00-3840) |
| Integrex (Case No. 00-3841) -- dba Integrex HOMExperts; Integrex Testing Systems LLC; HOMExperts LLC; Owens Corning HOMExperts |
| Fibreboard Corporation (Case No. 00-3842) |
| Exterior Systems, Inc. (Case No. 00-3843) -- dba Norandex, Inc.; Fabwel Composites; AmeriMark Building Products, Inc.; Fabwel, Inc.; Fabwel Plastics; Owens Corning Metal Systems; Norandex/Reynolds; Norandex/Reynolds Distribution Company; Norandex Bldg. Products; Reynolds Bldg. Products; Norandex Installation Company; Aristocrat Windows; Weather-Tite |
| Integrex Ventures LLC (Case No. 00-3844) |
| Integrex Professional Services LLC (Case No. 00-3845) |
| Integrex Supply Chain Solutions LLC (Case No. 00-3846) |
| Integrex Testing Systems LLC (Case No. 00-3847) |
| Homexperts LLC (Case No. 00-3848) |
| Jefferson Holdings, Inc. (Case No. 00-3849) |
| Owens-Corning Fiberglas Technology Inc. (Case No. 00-3850) |
| Owens Corning HT, Inc. (Case No. 00-3851) |
| Owens-Corning Overseas Holdings, Inc. (Case No. 00-3852) |
| Owens Corning Remodeling Systems, LLC (Case No. 00-3853) |
| Soltech, Inc. (Case No. 00-3854) |

A more complete list of certain of the Debtors' current and former business and legal names can be obtained by calling 1-866-773-8653 or by visiting the website at http://www.occlaims.com

PLEASE TAKE NOTICE THAT on _____, 2001, the United States Bankruptcy Court for the District of Delaware issued an Order establishing **April 15, 2002** at 4:00 p.m. prevailing Pacific time (the "General Claims Bar Date") as

the last date and time to file a proof of claim against any of the Debtors.

### I.    WHO MUST FILE A PROOF OF CLAIM

You MUST file a proof of claim if you have a claim against a Debtor that: (a) arose prior to October 5, 2000 including but not limited to claims based upon: (i) the purchase of products by, or the provision of any services to, any of the Debtors; (ii) property damage arising from the presence of asbestos-containing or other products in buildings; (iii) acts or omissions by any the Debtors including without limitation claims based on indemnification, contribution, reimbursement, subrogation and guarantees; (iv) environmental liabilities; and/or (v) the sale, manufacture, distribution, installation and/or marketing of products by any of the Debtors, including without limitation underground or above-ground storage tanks, roofing shingles, vinyl siding, metal siding and products containing glass fibers, synthetic vitreous fibers, asphalt and/or resins; and (b) is not an Excluded Claim (as hereinafter defined).

Under Section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. Because of this broad definition, acts or omissions of the Debtors that arose before October 5, 2000 may give rise to claims against them notwithstanding that such claims may not have matured or become fixed or liquidated prior to such date.

**THE GENERAL CLAIMS BAR DATE DOES NOT APPLY TO ASBESTOS-RELATED PERSONAL INJURY CLAIMS AND ASBESTOS-RELATED WRONGFUL DEATH CLAIMS**, whether or not such claims (a) have been resolved or are subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement, or (b) are based on a judgment, but does apply to asbestos-related claims for contribution, indemnity, reimbursement or subrogation. Asbestos-related personal injury claims and asbestos-related wrongful death claims will be subject to a separate claim submission process. Asbestos-related personal injury claims and asbestos-related wrongful death claims should not be filed at this time.

415452.14 12/6/01

30

**2.    EXCLUDED CLAIMS**

You should not file any proof of claim that is an Excluded Claim. "Excluded Claims" include the following types of claims:

- An asbestos-related personal injury claim or asbestos-related wrongful death claim, whether or not such claim (a) has been resolved or is subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) is based on a judgment;

- A claim that already has been properly filed with the Clerk of the United States Bankruptcy Court for the District of Delaware or the Claims Agent (as defined below);

- A claim that is: (i) listed on the Debtors' Amended Schedules; (ii) not described in the Amended Schedules as "disputed," "contingent," or "unliquidated;" and (iii) in the same amount and of the same priority as set forth in the Amended Schedules;

- An administrative expense of any Debtor's chapter 11 case under section 503(b) of the Bankruptcy Code;

- A claim of an employee of any of the Debtors for deferred compensation;

- A claim of a retired employee of any of the Debtors for retirement benefits, including deferred compensation, pension and medical benefits;

- A claim of an employee of any of the Debtors for pre-petition worker's compensation benefits; and

- A claim that has been subject to a bar date established by Order of the Court other than the General Claims Bar Date Order.

A more complete list of Excluded Claims can be obtained by calling 1-866-773-8653 or by visiting the website at http://www.occlaims.com.

**3.    WHEN AND WHERE TO FILE**

To file a claim, you must do the following:

- Return your completed Proof of Claim Form(s) to the Claims Agent no later than 4:00 p.m., prevailing Pacific time, April 15, 2002. Proof of Claim Forms will be deemed filed only when actually received by the Claims Agent. Proof of Claim Forms submitted by electronic submission or by facsimile will not be accepted and will not be deemed filed.

- Proof of Claim Form(s) should be sent to the Claims Agent at the following address:

    Claims Agent
    In re Owens Corning, et al.
    c/o Robert L. Berger & Associates LLC
    16161 Ventura Boulevard
    PMB 517
    Encino, CA  91436

**4.    CLAIMS AGAINST MULTIPLE DEBTORS**

If you assert claims against more than one of the Debtors, you must file a separate Proof of Claim Form asserting each such claim against the appropriate Debtor. If you file a single Proof of Claim Form asserting a claim against more than one Debtor, your claim will be deemed to have been filed against the first Debtor identified only. All additional identified Debtors will be disregarded.

**5.    EFFECT OF NOT FILING A CLAIM**

IF YOU ARE REQUIRED TO FILE A PROOF OF CLAIM FORM AND DO NOT DO SO ON OR BEFORE THE GENERAL CLAIMS BAR DATE OF APRIL 15, 2002, YOU WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST ANY OF THE DEBTORS AND SUCH DEBTORS AND THEIR PROPERTY WILL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM, AND YOU WILL NOT BE PERMITTED TO VOTE ON ANY PLAN OF REORGANIZATION OR PARTICIPATE IN ANY DISTRIBUTION IN SUCH DEBTOR'S CHAPTER 11 CASE ON ACCOUNT OF SUCH CLAIM OR TO RECEIVE FURTHER NOTICES REGARDING SUCH CLAIM.

613472-16 03/6/01

To obtain a Proof of Claim Form: (a) call: 1-866-773-8653; or (b) visit the website at occlaims.com.

BY ORDER OF THE COURT, JUDITH K. FITZGERALD,
UNITED STATES BANKRUPTCY JUDGE

PLEASE DO NOT CALL OR SEND REQUESTS FOR NOTICE TO THE COURT.

SAUL EWING LLP, Attorneys for Debtors and Debtors-in-Possession

625432.14 11/4/01

EXHIBIT "E-1"

NEWSPAPERS

| CITY | STATE | NEWSPAPER | CIRCULATION |
|------|-------|-----------|-------------|
| Anchorage | AK | The Anchorage Daily News | 84,275 |
| Alexandria | AL | The Anniston Star | 27,720 |
| Athens | AL | The News-Courier | 8,474 |
| Birmingham | AL | The Birmingham News | 191,944 |
| Decatur | AL | The Decatur Daily | 27,950 |
| Dothan | AL | The Dothan Eagle | 36,620 |
| Mobile | AL | The Mobile Register/Mississippi Press | 136,046 |
| Montgomery | AL | The Montgomery Advertiser | 66,124 |
| Tuscaloosa | AL | The Tuscaloosa News | 40,123 |
| Fort Smith | AR | The Times Record | 46,300 |
| Hot Springs | AR | The Sentinel Record | 18,459 |
| Little Rock | AR | The Arkansas Democrat-Gazette | 289,673 |
| Springdale | AR | The Morning News Of Northwest Arkansas | 36,354 |
| Eloy | AZ | Casa Grande Dispatch (Daily) | 9,579 |
| Phoenix | AZ | The Arizona Republic | 599,450 |
| Adelanto | CA | The Desert Press Dispatch | 38,848 |
| Los Angeles | CA | The Los Angeles Times | 1,391,343 |
| Napa | CA | The Napa Valley Register | 19,339 |
| San Diego | CA | The San Diego Union-Tribune | 444,649 |
| San Francisco | CA | The San Francisco Chronicle | 540,074 |
| Santa Clara | CA | The San Jose Mercury News | 317,695 |
| Woodland | CA | The Daily Democrat | 10,038 |
| Denver | CO | Denver Post and Rocky Mountain News | 970,935 |
| Hartford | CT | The Hartford Courant | 293,221 |
| Washington | DC | The Washington Post | 1,070,809 |
| Dover | DE | The Delaware State News | 25,316 |
| Wilmington | DE | The News Journal | 142,807 |
| Bradenton | FL | The Bradenton Herald | 56,930 |
| Daytona Beach | FL | The News-Journal | 124,536 |
| Fort Lauderdale | FL | The Sun Sentinel | 361,838 |
| Fort Myers | FL | The News-Press | 119,247 |
| Jacksonville | FL | The Florida Times-Union | 230,789 |
| Lakeland | FL | The Ledger | 92,527 |
| Miami | FL | The Miami Herald | 440,491 |
| Ocala | FL | The Star-Banner | 55,234 |
| Orlando | FL | The Orlando Sentinel | 382,439 |
| Panama City Beach | FL | The Sentinel | 38,163 |
| Pensacola | FL | The News Herald | 81,612 |

| CITY | STATE | NEWSPAPER | CIRCULATION |
|---|---|---|---|
| Port St. Lucie | FL | The Tribune | 29,456 |
| St. Petersburg | FL | The St. Petersburg Times | 431,832 |
| Tallahassee | FL | The Tallahassee Democrat | 66,199 |
| Tampa | FL | The Tampa Tribune & Times | 307,737 |
| West Melbourne | FL | Florida Today | 113,721 |
| West Palm Beach | FL | The Palm Beach Post | 227,171 |
| Atlanta | GA | The Atlanta Journal-Constitution | 651,684 |
| Columbus | GA | The Columbus Ledger-Enquirer | 64,637 |
| Douglas | GA | The Coffee County News | 5,800 |
| Macon | GA | The Macon Telegraph | 89,824 |
| Savannah | GA | The Savannah Morning News | 76,181 |
| Honolulu | HI | The Honolulu Advertiser | 176,727 |
| Marion | IA | The Cedar Rapids Gazette | 80,229 |
| Urbandale | IA | The Des Moines Register | 244,954 |
| Idaho Falls | ID | The Post Register | 25,418 |
| Meridian | ID | The Idaho Statesman (Boise) | 86,755 |
| Belleville | IL | The Belleville News-Democrat | 63,407 |
| Bloomington | IL | The Pantagraph | 51,767 |
| Chicago | IL | The Chicago Tribune | 1,001,662 |
| Danville | IL | The Commercial-News | 19,629 |
| Decatur | IL | The Herald & Review | 41,052 |
| East Peoria | IL | The Register-Mail/Journal-Star | 106,316 |
| Rock Island | IL | The Rock Island Argus & Dispatch | 47,907 |
| Rockford | IL | The Rockford Register-Star | 81,903 |
| Angola | IN | The Auburn Evening Star | 7,968 |
| Bourbon | IN | The Warsaw Times-Union | 11,650 |
| Elkhart | IN | The Elkhart Truth | 30,181 |
| Fort Wayne | IN | The Journal-Gazette | 127,818 |
| Goshen | IN | The Goshen News | 15,866 |
| Indianapolis | IN | The Indianapolis Star | 365,546 |
| Lafayette | IN | The Journal & Courier | 44,324 |
| Mishawaka | IN | The South Bend Tribune | 100,778 |
| Muncie | IN | The Star Press | 35,933 |
| New Albany | IN | The Tribune | 10,098 |
| Valparaiso | IN | The Times | 95,610 |
| Kansas City | KS | The Kansas City Star | 387,311 |
| Wichita | KS | The Wichita Eagle | 132,474 |
| Elizabethtown | KY | The News-Enterprise | 19,103 |
| Lexington | KY | The Lexington Herald-Leader | 149,614 |
| Louisville | KY | The Courier-Journal | 289,349 |
| Alexandria | LA | The Town Talk | 39,434 |
| Bossier City | LA | The Shreveport Times | 84,148 |

| CITY | STATE | NEWSPAPER | CIRCULATION |
|------|-------|-----------|-------------|
| Carencro | LA | The Lafayette Daily Adviser | 51,258 |
| New Orleans | LA | The Times Picayune | 290,241 |
| Sulphur | LA | The American Press (Lake Charles) | 42,700 |
| West Monroe | LA | The Monroe News-Star | 41,519 |
| Boston | MA | The Boston Globe | 710,256 |
| Pittsfield | MA | The Berkshire Eagle | 35,572 |
| Springfield | MA | The Sunday Republican | 136,135 |
| Woburn | MA | The Woburn Daily Times Chronicle (Daily) | 9,885 |
| Baltimore | MD | The Baltimore Sun | 465,338 |
| Hagerstown | MD | The Herald Mail | 39,312 |
| Portland | ME | The Maine Sunday Telegram | 115,313 |
| Battle Creek | MI | The Battle Creek Enquirer | 34,209 |
| Detroit | MI | The Detroit News & Free Press | 546,342 |
| Fenton | MI | The Flint Journal | 106,892 |
| Gaylord | MI | The Gaylord Herald Times (Wed) | 7,000 |
| Grand Rapids | MI | The Grand Rapids Press | 190,828 |
| Kalamazoo | MI | The Kalamazoo Gazette | 74,183 |
| Lansing | MI | The Lansing State Journal | 90,812 |
| Marquette | MI | The Mining Journal | 18,449 |
| Mt. Clemens | MI | The Macomb Daily | 73,194 |
| Niles | MI | The Niles Daily Star (Daily) | 3,750 |
| Saginaw | MI | The Saginaw News | 59,555 |
| Minneapolis | MN | The Minneapolis Star-Tribune | 668,560 |
| Moorhead | MN | The Forum | 64,192 |
| Rochester | MN | The Post-Bulletin | 46,171 |
| St. Cloud | MN | The St. Cloud Times | 37,848 |
| St. Paul | MN | The St. Paul Pioneer Press | 255,067 |
| Columbia | MO | The Columbia Daily Tribune | 23,825 |
| Joplin | MO | The Joplin Globe | 39,793 |
| Springfield | MO | The Springfield News-Leader | 93,155 |
| St. Louis | MO | The St. Louis Post-Dispatch | 483,628 |
| Columbus | MS | The Commercial Dispatch | 14,638 |
| Gulfport | MS | The Sun Herald | 56,643 |
| Tupelo | MS | The Northeast Mississippi Daily Journal | 34,997 |
| East Billings | MT | The Billings Gazette | 51,190 |
| Asheville | NC | The Asheville Citizen Times | 68,751 |
| Charlotte | NC | The Charlotte Observer | 294,605 |
| Concord | NC | The Independent Tribune | 22,873 |
| Denver | NC | The Gaston Gazette | 34,678 |
| Fayetteville | NC | The Fayetteville Observer | 74,512 |
| Greensboro | NC | The News & Record | 112,775 |
| Greenville | NC | The Daily Reflector | 23,367 |

615822.16 11/6/01

-3-

| CITY | STATE | NEWSPAPER | CIRCULATION |
|---|---|---|---|
| Hickory | NC | The Hickory Daily Record | 21,531 |
| Kinston | NC | The Kinston Free Press | 13,886 |
| Morehead City | NC | The Carteret County News-Times | 12,000 |
| Raleigh | NC | The News & Observer | 210,037 |
| Roxboro | NC | The Courier-Times | 8,160 |
| Salisbury | NC | The Salisbury Post | 25,874 |
| Wilmington | NC | The Sunday Star-News | 62,882 |
| Winston-Salem | NC | The Winston-Salem Journal | 98,210 |
| Mandan | ND | The Bismarck Tribune | 29,932 |
| Lincoln | NE | The Lincoln Journal Star | 83,684 |
| Omaha | NE | The Omaha World-Herald | 261,036 |
| Manchester | NH | The New Hampshire Sun News | 82,474 |
| Berlin | NJ | The Courier-Post (Camden) | 98,841 |
| Kearny | NJ | The Newark Star-Ledger | 606,462 |
| Trenton | NJ | The Times | 84,201 |
| Las Vegas | NV | The Review Journal & Sun | 233,151 |
| Albany | NY | The Times Union | 148,867 |
| Buffalo | NY | The Buffalo News | 307,825 |
| Long Island | NY | Newsday | 663,220 |
| Poughkeepsie | NY | The Poughkeepsie Journal | 52,005 |
| Rochester | NY | The Democrat & Chronicle | 239,822 |
| Vestal | NY | The Binghampton Press & Sunday Bulletin | 75,009 |
| Akron | OH | The Akron Beacon-Journal | 193,641 |
| Ashville | OH | The Circleville Herald | 7,009 |
| Canton | OH | The Repository | 80,526 |
| Cincinnati | OH | The Cincinnati Enquirer | 314,465 |
| Cleveland | OH | The Plain Dealer | 480,878 |
| Columbus | OH | The Columbus Dispatch | 369,596 |
| Dayton | OH | The Dayton Daily News/Springfield News Sun | 239,713 |
| Dover | OH | The Times Reporter | 24,504 |
| Elyria | OH | The Chronicle Telegram | 29,018 |
| Granville | OH | The Granville Booster | 13,000 |
| Madison | OH | The Ashtabula Star-Beacon | 21,445 |
| Mansfield | OH | The News Journal | 43,792 |
| Medina | OH | The Medina County Gazette | 14,863 |
| Mount Vernon | OH | The Mount Vernon News | 9,777 |
| Navarre | OH | The Massillon Independent | 13,005 |
| Newark | OH | The Newark Advocate | 22,403 |
| Port Clinton | OH | The News Herald/News Messenger | 19,459 |
| Sidney | OH | The Sidney Daily News | 13,570 |
| Tiffin | OH | The Tiffin Advertiser Tribune | 11,487 |

415432.14 1L6/03

-4-

| CITY | STATE | NEWSPAPER | CIRCULATION |
|------|-------|-----------|-------------|
| Toledo | OH | The Toledo Blade | 189,611 |
| West Chester | OH | The Coschocton Tribune | 7,838 |
| Youngstown | OH | The Vindicator | 103,714 |
| Oklahoma City | OK | The Oklahoman | 299,514 |
| Tulsa | OK | Tulsa World | 207,007 |
| Portland | OR | The Oregonian | 433,933 |
| Allentown | PA | The Morning Call | 170,012 |
| Erie | PA | The Erie Times-News | 88,008 |
| Huntingdon | PA | The Daily News | 9,935 |
| Mechanicsburg | PA | The Harrisburg Patriot-News | 154,095 |
| Philadelphia | PA | The Philadelphia Inquirer | 762,194 |
| Pittsburgh | PA | The Pittsburgh Post-Gazette | 413,350 |
| West Hazelton | PA | The Standard-Speaker | 21,034 |
| Wilkes Barre | PA | The Times Leader | 66,604 |
| Providence | RI | The Providence Journal | 229,271 |
| Aiken | SC | The Aiken Standard | 14,643 |
| Anderson | SC | The Anderson Independent Mail | 45,572 |
| Chester | SC | The Rock Hill Heralds | 33,484 |
| Duncan | SC | The Spartansburg Herald Journal | 61,894 |
| Greer | SC | The Greenville News | 133,409 |
| Hanahan | SC | The Charleston Post and Courier | 115,790 |
| West Columbia | SC | The State | 156,930 |
| Pierre | SD | The Capital Journal | 4,752 |
| Rapid City | SD | The Rapid City Journal | 33,355 |
| Cleveland | TN | The Cleveland Daily Banner | 16,203 |
| Jackson | TN | The Jackson Sun | 42,242 |
| Johnson City | TN | The Johnson City Press | 34,413 |
| Knoxville | TN | The Knoxville News-Sentinel | 159,109 |
| Memphis | TN | The Commercial Appeal | 236,153 |
| Nashville | TN | The Tennessean | 286,376 |
| Piney Flat | TN | The Bristol Herald-Courier | 43,295 |
| Amarillo | TX | The Amarillo Sunday Globe-News | 67,648 |
| Austin | TX | The Austin American-Statesman | 224,738 |
| Beaumont | TX | The Beaumont Enterprise | 65,377 |
| Dallas | TX | The Dallas Morning News | 782,748 |
| El Paso | TX | The El Paso Times | 95,241 |
| Ennis | TX | The Ennis Daily News | 4,050 |
| Fort Worth | TX | The Fort Worth Star-Telegram | 334,104 |
| Galveston | TX | The Galveston County Daily News | 26,149 |
| Houston | TX | The Houston Chronicle | 737,626 |
| Laredo | TX | The Laredo Morning Times | 23,373 |
| Lubbock | TX | The Lubbock Avalanche-Journal | 65,593 |

ELM6154 (1998)

| CITY | STATE | NEWSPAPER | CIRCULATION |
|------|-------|-----------|-------------|
| New Braunfels | TX | The Herald-Zeitung | 9,862 |
| Palestine | TX | The Palestine Herald Press | 8,712 |
| San Antonio | TX | The San Antonio Express-News | 362,352 |
| Waco | TX | The Waco Tribune Herald | 51,519 |
| Waxahachie | TX | The Waxahachie Daily Light | 5,406 |
| Lindon | UT | The Provo Daily Herald | 34,726 |
| Salt Lake City | UT | The Salt Lake Tribune & Desert News | 231,035 |
| St. George | UT | The Spectrum | 22,879 |
| Fishersville | VA | The Waynesboro News-Virginian | 7,890 |
| Fredericksburg | VA | The Free Lance-Star | 50,475 |
| Gainesville | VA | The Manassas Journal Messenger | 19,497 |
| Lynchburg | VA | The News & Advance | 43,087 |
| Newport News | VA | The Daily Press | 115,461 |
| Norfolk | VA | The Virginian-Pilot | 231,845 |
| Richmond | VA | The Richmond Times-Dispatch | 230,299 |
| Roanoke | VA | The Roanoke Times | 115,472 |
| South Hill | VA | The South Hill Enterprise | 8,200 |
| Winchester | VA | The Winchester Star | 25,184 |
| Williston | VT | The Burlington Free-Press | 60,265 |
| Auburn | WA | The Seattle Times-Post | 482,978 |
| Everett | WA | The Herald | 61,433 |
| Tacoma | WA | The News Tribune | 145,957 |
| Appleton | WI | The Post-Crescent | 74,804 |
| Beloit | WI | The Beloit Daily News  (Daily) | 14,644 |
| Brookfield | WI | The Milwaukee Journal Sentinel | 443,411 |
| Green Bay | WI | The Green Bay Press-Gazette | 81,013 |
| LaCrosse | WI | The LaCrosse Tribune | 48,058 |
| Ladysmith | WI | The Ladysmith News  (Weekly) | 5,754 |
| Madison | WI | The Wisconsin State Journal | 155,823 |
| Wausau | WI | The Wausau Daily Herald | 29,932 |
| Ceredo | WV | The Huntington Herald-Dispatch | 41,041 |
| Charleston | WV | The Sunday Gazette-Mail | 93,729 |
| Parkersburg | WV | The Parkersburg News & Sentinel | 46,659 |
| Stonewood | WV | The Clarksburg Exponent-Telegraph | 20,057 |
| CANADA | | | |
| Calgary | ALE | The Calgary Herald (Friday) | 156,932 |
| Edmonton | ALE | The Edmonton Journal (Friday) | 169,601 |
| Vancouver | BC | The Vancouver Sun (Daily) | 202,429 |
| Ottawa | ONT | The Ottawa Citizen (Saturday) | 181,637 |
| Toronto | ONT | The Toronto Globe & Mail (Saturday) | 421,175 |
| Montreal | QUE | The Montreal Gazette (Saturday -- English) | 284,953 |

38

EXHIBIT "E-2"

TRADE PUBLICATIONS

| Publication Name | Issue Date | Mail Date | Space Close | Materials Close |
|---|---|---|---|---|
| Appliance Magazine | Feb '02 | 30-Jan | 1-Jan | 1-Jan |
| Architectural Record | Feb '02 | 5-Feb | 1-Jan | 5-Jan |
| ASHRAE Journal | Feb '02 | 11-Feb | 29-Dec | 5-Jan |
| Automated Builder | Feb '02 | 31-Jan | 1-Jan | 1-Jan |
| Builder Magazine | Feb '02 | 10-Feb | 1-Jan | 1-Jan |
| Building Material Dealer | Feb '02 | 10-Feb | 5-Jan | 26-Dec |
| Chemical Engineering | Feb '02 | 10-Feb | 11-Jan | 11-Jan |
| Composites Fabrication | Feb '02 | 10-Feb | 10-Jan | 17-Jan |
| Composites Technology | Jan-Feb '02 | 10-Feb | 3-Jan | 3-Jan |
| Construction Specifier | Feb '02 | 10-Feb | 1-Jan | 1-Jan |
| Contractor Magazine | Feb '02 | 10-Feb | 8-Jan | 8-Jan |
| Convenience Store Decisions | Feb '02 | 10-Feb | 1-Jan | 15-Jan |
| Convenience Store News | Feb '02 | 10-Feb | 6-Jan | 6-Jan |
| Custom Home | Jan-Feb '02 | 10-Feb | 1-Jan | 8-Jan |
| Design News | Feb '02 | 8-Feb | 4-Jan | 4-Jan |
| Hearth & Home | Feb '02 | 10-Feb | 12-Dec | 19-Dec |
| High Performance Composites | Jan-Feb '02 | 10-Feb | 1-Jan | 1-Jan |
| Journal of Light Construction | Feb '02 | 10-Feb | 22-Dec | 29-Dec |
| Metal Architecture | Feb '02 | 10-Feb | 15-Jan | 19-Jan |
| Modern Plastics | Feb '02 | 10-Feb | 23-Dec | 23-Dec |
| National Home Center News | Feb '02 | 10-Feb | 11-Jan | 11-Jan |
| National Petroleum News | Feb '02 | 10-Feb | 8-Jan | 8-Jan |
| Petroleum Equipment & Technology | Feb '02 | 10-Feb | 1-Jan | 5-Jan |
| Plant Engineering | Feb '02 | 10-Feb | 12-Jan | 12-Jan |
| Plastics News | Feb '02 | 1-Feb | 20-Jan | 20-Jan |
| Plastics Technology | Feb '02 | 10-Feb | 2-Jan | 5-Jan |
| Pro Sales | Feb '02 | 10-Feb | 1-Jan | 1-Jan |
| Professional Builder | Feb '02 | 10-Feb | 6-Jan | 6-Jan |
| Professional Remodeler | Feb '02 | 10-Feb | 6-Jan | 11-Jan |
| Professional Roofing | Feb '02 | 10-Feb | 20-Dec | 20-Dec |
| Remodeling Magazine | Feb '02 | 10-Feb | 1-Jan | 1-Jun |
| Roofing Contractor | Feb '02 | 10-Feb | 27-Dec | 27-Dec |
| Security Products | Feb '02 | 10-Feb | 1-Jan | 8-Jan |
| Walls & Ceilings | Feb '02 | 10-Feb | 30-Dec | 30-Dec |
| Wards Auto World | Feb '02 | 1-Feb | 1-Jan | 10-Jan |
| Water & Wastes Digest | Feb '02 | 10-Feb | 27-Dec | 27-Dec |

015452.14 11/5/01

# EXHIBIT "F"

EXHIBIT "F"

[COMPANY LETTERHEAD]

_____, 2001

## TO ALL EMPLOYEES OF OWENS CORNING
## AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-
## POSSESSION

As you are aware, Owens Corning and its affiliated debtors and debtors-in-possession (the "Debtors") filed for chapter 11 protection on October 5, 2000. Pursuant to an Order of the Bankruptcy Court, the Debtors were authorized to pay, and have paid, their employees' pre-petition wages and benefits as well as other employment-related obligations (including deferred compensation).

However, if you believe you have an unpaid claim for wages or any other claims other than for deferred compensation that arose before October 5, 2000, you should call 1-866-773-8653 or visit Owens Corning's chapter 11 claim website at occlaims.com for information regarding the procedures for filing a proof of claim against the Debtors.

The deadline for filing proofs of claim against the Debtors is **April 15, 2002 at 4:00 p.m., prevailing Pacific time.** If you have a claim against the Debtors other than a claim for deferred compensation, but fail to file a proof of claim before the deadline, you will lose your right to assert such claim against the Debtors in the future and will not receive any distribution with respect to such claim. Filing a claim does not necessarily entitle you to compensation.

Thank you for your attention to this matter.

619432.14 31/6/01

41

# EXHIBIT "G"

EXHIBIT "G"

[COMPANY LETTERHEAD]

_____, 2001

# TO ALL RETIREES OF OWENS CORNING AND
## ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

As you are aware, Owens Corning and its affiliated debtors and debtors-in-possession (the "Debtors") filed for chapter 11 protection on October 5, 2000. Pursuant to an Order of the Bankruptcy Court dated October 5, 2000, the Debtors were authorized to pay, and have continued to pay, their retirees' retirement benefits (including deferred compensation, pension and medical benefits).

If you believe you have a claim against the Debtors that arose before October 5, 2000, other than a claim for retirement benefits, you should call 1-866-773-8653 or visit Owens Corning's chapter 11 claim website at occlaims.com for information regarding the procedures for filing a proof of claim against the Debtors.

The deadline for filing proofs of claim against the Debtors is **April 15, 2002 at 4:00 p.m., prevailing Pacific time.** If you have a claim against the Debtors other than a claim for retirement benefits, but fail to file a proof of claim before the deadline, you will lose your right to assert such claim against the Debtors in the future and will not receive any distribution with respect to such claim. Filing a claim does not necessarily entitle you to compensation.

Thank you for your attention to this matter.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE    FILED

2002 JAN 22  PM 4:06

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                             :    **Chapter 11**
                                   :
**OWENS CORNING, et al.,**         :    **Case No. 00-03837 (JKF)**
                                   :
                      Debtors.     :    **Jointly Administered**
                                   :

---

### NOTICE OF ENTRY OF GENERAL CLAIMS BAR DATE
### ORDER REQUIRING THE FILING OF PROOFS OF CLAIM

On October 5, 2000, the following debtors (each a "Debtor" and collectively the "Debtors") commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"):

| |
|---|
| Owens Corning (Case No. 00-3837) - - f/k/a Owens Corning Fiberglas Corp.; dba Owens Corning Corp.; Cultured Stone, a division of Owens Corning (after 12/31/99); OEM Solutions Group; Owens Corning Tanks; O/C Tanks Corporation; Western Fiberglass, Inc. |
| CDC Corporation (Case No. 00-3838) |
| Engineered Yarns America, Inc. (Case No. 00-3839) |
| Falcon Foam Corporation (Case No. 00-3840) |
| Integrex (Case No. 00-3841) - - dba Integrex HOMExperts; Integrex Testing Systems LLC; HOMExperts LLC; Owens Corning HOMExperts |
| Fibreboard Corporation (Case No. 00-3842) |
| Exterior Systems, Inc. (Case No. 00-3843) - - dba Norandex, Inc.; Fabwel Composites; AmeriMark Building Products, Inc.; Fabwel, Inc.; Fabwel Plastics; Owens Corning Metal Systems; Norandex/Reynolds; Norandex/Reynolds Distribution Company; Norandex Bldg. Products; Reynolds Bldg. Products; Norandex Installation Company; Aristocrat Windows; Weather-Tite |
| Integrex Ventures LLC (Case No. 00-3844) |
| Integrex Professional Services LLC (Case No. 00-3845) |
| Integrex Supply Chain Solutions LLC (Case No. 00-3846) |
| Integrex Testing Systems LLC (Case No. 00-3847) |
| Homexperts LLC (Case No. 00-3848) |
| Jefferson Holdings, Inc. (Case No. 00-3849) |
| Owens-Corning Fiberglas Technology Inc. (Case No. 00-3850) |
| Owens Corning HT, Inc. (Case No. 00-3851) |
| Owens-Corning Overseas Holdings, Inc. (Case No. 00-3852) |
| Owens Corning Remodeling Systems, LLC (Case No. 00-3853) |
| Soltech, Inc. (Case No. 003854) |

Schedule "1" hereto contains a more detailed list of certain of the Debtors' current and former business and legal names.

4014
1-22-02

PLEASE TAKE NOTICE THAT on November 27, 2001, the United States Bankruptcy Court for the District of Delaware (the "Court"), having jurisdiction over the chapter 11 cases of the Debtors, issued an Order pursuant to Bankruptcy Rule 3003(c)(3): (i) Fixing General Claims Bar Date for Filing Certain Proofs of Claim; (ii) Approving Proposed Proof of Claim Form, General Claims Bar Date Notice and Related Publication Notice and Procedures, and (iii) Approving Proposed Employee and Retiree Claims Notification Procedures (the "General Claims Bar Date Order").

Pursuant to the General Claims Bar Date Order, the Court established **April 15, 2002** at 4:00 p.m. prevailing Pacific time (the "General Claims Bar Date") as the last date and time for each person or entity, including, without limitation, each individual, partnership, joint venture, corporation, estate, trust and governmental unit (each individually an "Entity" and collectively, "Entities"), except holders of Excluded Claims, as hereinafter defined, to file a proof of claim against any of the Debtors.

## 1.    WHO MUST FILE A PROOF OF CLAIM

You MUST file a proof of claim if you have a claim (as hereinafter defined) against a Debtor that: (a) arose prior to October 5, 2000, including, but not limited to, claims based upon: (i) the purchase of products by, or the provision of any services to, any of the Debtors; (ii) property damage arising from the presence of asbestos-containing or other products in buildings; (iii) acts or omissions by any the Debtors, including without limitation claims based on indemnification, contribution, reimbursement, subrogation and guarantees; (iv) environmental liabilities; and/or (v) the sale, manufacture, distribution, installation and/or marketing of products by any of the Debtors, including without limitation underground or above-ground storage tanks, roofing shingles, vinyl siding, metal siding and products containing glass fibers, synthetic vitreous fibers, asphalt and/or resins; and (b) is not an Excluded Claim (as hereinafter defined).

**The General Claims Bar Date does not apply to asbestos-related personal injury claims and asbestos-related wrongful death claims, whether or not such claims (a) have been resolved or are subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) are based on a judgment. Asbestos-related personal injury claims and asbestos-related wrongful death claims will be subject to a separate claim submission process and should not be filed at this time.**

The General Claims Bar Date does apply to derivative asbestos claims[1] and asbestos-related claims for contribution, indemnity, reimbursement or subrogation. The

---

[1]    The term "derivative asbestos claims" means claims asserted by other defendants in asbestos personal injury litigation (such as other manufacturers or distributors of asbestos-containing products or premises owners) and includes cross-claims, contribution claims, subrogation claims, reimbursement or indemnity claims, etc. More specifically, "derivative asbestos claims" are those claims and cross-claims brought by

-2-

General Claims Bar Date also applies to personal injury and/or wrongful death claims which are not asbestos-related.

Claims for property damage (including asbestos property damage claims[2] and any claims for property damage arising from the presence of asbestos-containing or other products in buildings) and claims for contribution, indemnity, reimbursement or subrogation, even though such claims may or might arise directly as a result of exposure to asbestos or asbestos-containing products, are required to be filed on or before the General Claims Bar Date.

Under Section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. Because of this broad definition, acts or omissions of the Debtors that arose before October 5, 2000 may give rise to claims against them notwithstanding that such claims may not have matured or become fixed or liquidated prior to such date.

---

other defendants in asbestos litigation against a Debtor arising from personal injury claims brought directly against the other defendants, whether in nature of or sounding in tort, contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity or any other theory of law, equity or admiralty for, relating to or arising by reason of, directly or indirectly, liability, debts or obligations for damages to persons or property cause, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos including but not limited to asbestos-containing products or materials manufactured, sold, supplied, produced, specified, selected, distributed, installed, or marketed a Debtor and arising or allegedly arising, directly or indirectly, from acts or omissions of a Debtor.

[2]    The term "asbestos property damage claim" means claims that are for diminution of value or economic loss, etc., of or to real property caused by asbestos-containing products or materials which were manufactured, distributed, sold, supplied, produced, specified, selected, installed or marketed by a Debtor. More specifically, "asbestos property damage claims" are those claims against, or any debt, obligation or liability of, a Debtor, whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty, for, relating to or arising by reason of, directly or indirectly, property damages, including but not limited to diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by asbestos -- including but not limited to asbestos-containing products or materials manufactured, sold, supplied, produced, specified, selected, installed, distributed or marketed by a Debtor -- and arising or allegedly arising, directly or indirectly, from acts or omissions of a Debtor, including but not limited to all claims, debts, obligations or liabilities for compensatory and punitive damages.

-3-

46



## 2.    EXCLUDED CLAIMS

You should not file any proof of claim that is an Excluded Claim. An "Excluded Claim" is any of the following types of claims:

A.    An asbestos-related personal injury claim or an asbestos-related wrongful death claim, whether or not such claim (a) has been resolved or is subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) is based on a judgment;

B.    A claim that already has been properly filed with the Clerk of the United States Bankruptcy Court for the District of Delaware or the Claims Agent (as defined below) using a claim form that substantially conforms to the Proof of Claim Form approved for use in these cases and included with this Notice;

C.    A claim that is: (i) listed on the Debtors' Amended Schedules (as defined below); (ii) *not* described in the Amended Schedules as "disputed," "contingent," or "unliquidated;" and (iii) in the same amount and of the same priority as set forth in the Amended Schedules;

D.    An administrative expense of any Debtor's chapter 11 case under section 503(b) of the Bankruptcy Code;

E.    A claim of a Debtor or a Debtor's non-Debtor subsidiary[3] against a Debtor;

F.    A claim that has been paid or otherwise satisfied by or pursuant to an Order of the Court;

G.    A claim of an employee of any of the Debtors for deferred compensation;

H.    A claim of a retired employee of any of the Debtors for retirement benefits, including deferred compensation, pension and medical benefits;

I.    A claim of a current or former employee of any of the Debtors for pre-petition worker's compensation benefits;

---

[3]    As used herein, the term "Subsidiary" refers to an Entity that is directly or indirectly controlled by a Debtor. As used herein, the term "control" means having an ownership interest in excess of 50%.

-4-

J.   A claim that has been subject to a bar date established by Order of the Court other than the General Claims Bar Date Order; and

K.   A claim which is limited exclusively to a claim for the repayment by the applicable Debtor of principal and interest (a "Debt Claim") on or under any of Owens Corning's 7.5% Notes due 2005, 7.7% Debentures due 2008, 7.5% Debentures due 2018 and 7.0% Senior Notes due 2009 (collectively, the "Notes") or on or under any industrial development, industrial revenue or other conduit bonds issued by a public instrumentality for the benefit of a Debtor (collectively, the "Bonds") or the indenture in respect of each of the Notes or Bonds (the "Indentures" and, each such Indenture collectively with the Notes and/or Bonds issued thereunder, the "Debt Instruments"); provided, however, that: (a) the foregoing exclusion in this subparagraph shall not apply to the indenture trustees under each of the Indentures (the "Indenture Trustees"); (b) each Indenture Trustee shall be required to file a proof of claim on account of the applicable Debt Claims on or under the applicable Debt Instruments for which it is the Indenture Trustee, on or before the General Claims Bar Date; and (c) any holder of Notes or Bonds that wishes to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a proof of claim on or before the General Claims Bar Date, unless another exception identified herein applies.

**YOU SHOULD NOT FILE A PROOF OF CLAIM FORM IF YOU DO NOT HAVE A CLAIM AGAINST ANY OF THE DEBTORS OR IF YOUR CLAIM HAS BEEN PAID IN FULL OR OTHERWISE SATISFIED.**

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS BELIEVE THAT YOU HAVE A CLAIM.**

3.   **ASBESTOS-RELATED PERSONAL INJURY CLAIMS AND ASBESTOS-RELATED WRONGFUL DEATH CLAIMS**

*The General Claims Bar Date does not apply to asbestos-related personal injury claims or asbestos-related wrongful death claims, whether or not such claims (a) have been resolved or are subject to resolution pursuant to a settlement agreement, including but not limited to a National Settlement Program ("NSP") Agreement or (b) are based on a judgment.* Asbestos-related personal injury claims or asbestos-related wrongful death claims will be subject to a separate claims process, to be established by the Court, and should not be filed at this time.

## 4.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease as to which the effective date of such rejection is on or before the entry of the General Claims Bar Date, must, if no earlier deadline is fixed in the rejection Order, file a Proof of Claim Form based on such rejection on or before the General Claims Bar Date. Any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease as to which the effective date of such rejection is after the entry of the General Claims Bar Date, must file a Proof of Claim Form of on or before the later of: (i) thirty (30) days after the applicable rejection order is entered; or (ii) the General Claims Bar Date.

## 5.    WHEN AND WHERE TO FILE

To file a claim, you must do the following:

- File with the Claims Agent, as defined below, your claim on the Proof of Claim Form enclosed with this notice. For additional copies of the Proof of Claim Form:

  - Call 1-866-773-8653 or

  - Visit the website at http://www.occlaims.com to download a Proof of Claim Form and instructions for completing the Proof of Claim Form.

- Return your completed Proof of Claim Form(s) to the Claims Agent no later than 4:00 p.m., prevailing Pacific time, **April 15, 2002**. Proof of Claim Forms will be deemed filed only when **actually received** by the Claims Agent. Proof of Claim Forms submitted by electronic submission or by facsimile will not be accepted and will not be deemed filed. If you are returning a Proof of Claim Form by mail, allow sufficient mailing time so that the Proof of Claim Form is received on or before April 15, 2002 at 4:00 p.m., prevailing Pacific time. Proof of Claim Forms that are postmarked before that date but received thereafter will be considered late.

- Proof of Claim Forms should be sent to the Claims Agent at the following address:

  Claims Agent
  In re Owens Corning, et al.
  c/o Robert L. Berger & Associates LLC
  16161 Ventura Boulevard
  PMB 517
  Encino, CA  91436

-6-

49

6.    **WHAT TO FILE**

Your filed Proof of Claim Form must: (i) be written in English; (ii) be denominated in lawful currency of the United States, based upon the exchange rate in effect as of the Petition Date, if applicable; (iii) conform substantially with the Proof of Claim Form provided; and (iv) indicate the specific Debtor against which you are asserting your claim. To expedite the processing of your claim, use the Proof of Claim Form approved for use in these cases and enclosed with this Notice.

You must attach to your completed Proof of Claim Form copies of any writings or other documents upon which your claim is based. Submitted documents will not be returned. Do not attach original documents. If the documents supporting your claim are voluminous, you may attach summaries.

Keep a copy of your completed Proof of Claim Form for your records. You will receive written notification of your Proof of Claim Form and the number assigned to it. Time-stamped copies of Proof of Claim Forms will not be returned.

7.    **CLAIMS AGAINST MULTIPLE DEBTORS**

If you assert claims against more than one Debtor, you must file a separate Proof of Claim Form against each applicable Debtor. If you file a single Proof of Claim Form asserting a claim against more than one Debtor, your claim will be deemed to have been filed against the first Debtor identified only. All additional identified Debtors will be disregarded.

If you wish to assert claims against one or more Debtors other than the Debtor listed on the enclosed Proof of Claim Form(s), you must request an additional Proof of Claim Form to assert such claim(s) by: (a) calling 1-866-773-8653; or (b) visiting the website at http://www.occlaims.com.

8.    **EFFECT OF NOT FILING A CLAIM**

**IF YOU ARE REQUIRED TO FILE A PROOF OF CLAIM FORM AND DO NOT DO SO ON OR BEFORE THE GENERAL CLAIMS BAR DATE OF APRIL 15, 2002, YOU WILL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST ANY OF THE DEBTORS AND SUCH DEBTORS AND THEIR PROPERTY WILL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM, AND YOU WILL NOT BE PERMITTED TO VOTE ON ANY PLAN OF REORGANIZATION OR PARTICIPATE IN ANY DISTRIBUTION IN SUCH DEBTOR'S CHAPTER 11 CASE ON ACCOUNT OF SUCH CLAIM OR TO RECEIVE FURTHER NOTICES REGARDING SUCH CLAIM.**

-7-

## 9.    THE DEBTORS' AMENDED SCHEDULES AND ACCESS THERETO

You may be listed as the holder of a claim against one or more Debtors in the Debtors' Amended and Restated Schedules of Assets and Liabilities (the "Amended Schedules"), which were filed on November 20, 2001. The Amended Schedules replace and supersede the Debtors' Schedules of Assets and Liabilities filed with the Court in November and December 2000 (the "Original Schedules"). You should not in any way rely upon the information contained in the Original Schedules.

If you are listed on the Amended Schedules, a description of the nature, amount and classification of your claim, as reflected in the Amended Schedules, is set forth in the upper right hand corner of the enclosed Proof of Claim Form(s). If, prior to the filing of the Amended Schedules, you received Court-authorized post-petition payments from any of the Debtors on account of your claim(s), the enclosed Proof of Claim Form(s) should reflect the net amount of your claim(s) (i.e., reduced by the post-petition payments). If the Debtors believe that you may hold or assert claims against more than one Debtor, you will receive a separate Proof of Claim Form for each applicable Debtor, which will reflect the nature, amount and classification of your claim against each such Debtor, as listed in the Amended Schedules. If you agree with the nature, amount and classification of your claim(s) as described in the enclosed Proof of Claim Form(s), you do not need to file a proof of claim unless your claim is designated as "disputed," "contingent" or "unliquidated." If you are not listed in the Amended Schedules, a description of the nature, amount and classification of your claim, if any, is not set forth on the enclosed Proof of Claim Form.

If it is unclear from the Amended Schedules whether your claim is disputed, contingent or unliquidated as to amount, or is otherwise properly listed and classified, or if you believe you hold a claim against one or more of the Debtors and have not been scheduled, you must file a proof of claim on or before the General Claims Bar Date. Any Entity that fails to file a proof of claim in reliance upon the Amended Schedules bears sole responsibility for determining that its claim is accurately listed therein.

Copies of the Amended Schedules may be examined by interested parties: (a) between the hours of 8:00 a.m. and 4:00 p.m., prevailing Eastern time, at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the District of Delaware, Sixth Floor, 824 Market Street, Wilmington, Delaware 19801; and (b) on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at http://www.deb.uscourts.gov.

**YOU MAY WISH TO CONSULT AN ATTORNEY REGARDING WHETHER YOU HAVE CLAIMS AGAINST ONE OR MORE OF THE DEBTORS, THE GENERAL CLAIMS BAR DATE AND WHETHER YOU SHOULD FILE A PROOF OF CLAIM FORM.**

BY ORDER OF THE COURT:

/s/ Judith K. Fitzgerald
United States Bankruptcy Judge

SAUL EWING LLP

COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION

-9-

52

## SCHEDULE 1 -- List of Present and Former dba's and Tradenames

*Note: This list of present and former dba's and tradenames is based on information contained in the Debtors' books and records. This list may be, in certain respects, over-inclusive and/or incomplete. The inclusion of a particular dba or tradename on this list is not an admission that any Debtor utilized such dba or tradename or is otherwise responsible for debts incurred by or under such dba or tradename, and the Debtors reserve all rights regarding same.*

| Debtor: | Present and Former dba's and Tradenames (most commonly used names in bold): |
|---|---|
| **Owens Corning**<br>Case No. 00-3837 | **Owens-Corning Fiberglas Corporation; Owens Corning Corp.; Cultured Stone, a division of Owens Corning (after 12/31/99); OEM Solutions Group; Owens Corning Tanks; O/C Tanks Corporation; Western Fiberglass Inc.; Trumbull Asphalt, a division of Owens Corning; Lloyd A. Fry Roofing Company; The Fiberglas Corporation; Fiberglas, Inc.; Owens-Corning Fiberglas International Corp.; Yellow Jacket, a division of Owens Corning; Western Fiberglass of Texas; Western Fiberglass of Arizona; Fiberglas Engineering & Supply Company of Northern California; Fiberglas Engineering & Supply Company of Northwest Portland, Oregon; Detroit Fiberglas Insulation Company; Fiberglas Contracting & Supply Company of Ohio Valley; Fiberglas Contracting & Supply Company of Toledo, OH; Owens-Corning Fiberglas Export Sales Corporation; Fiberglas Fabrication Sales Corporation; FAB; OC Fiberlite; Fiberlite Corporation; OC Michigan Molded; OC Contracting Division; OC Windows; THB Development, Inc.; Sierra Corp.; Knytex LLC; O/C First Corporation; Derbigum America Corporation; Electric Smith; Owens Corning Industries/ UCI; T Acquisition; Sharp-Schurtz Company; Maicorp, Inc.; Barbcorp, Inc.; Karlcorp; Boraln Testing Service; Distribution Company; Summit Wholesale Supply Company; FSE Inc.; OCF Building Inc.; OC Utah One Corporation; OC Utah Two Corporation; OC Utah Three Corporation; Soltech Acquisition Company; Owens Corning Fabrication.** |
| **CDC Corporation**<br>Case No. 00-3838 | Conwed Designscape |
| **Engineered Yarns America, Inc.,**<br>Case No. 00-3839 | n/a |
| **Falcon Foam Corporation**<br>Case No. 00-3840 | Falcon Manufacturing Acquisition Corp. |
| **Integrex**<br>Case No. 00-3841 | **INTEGREX HOMExperts; Integrex Testing Systems LLC; HOMExperts LLC; Owens Corning HOMExperts; Falco, Inc.; Owens Corning Litigation Management Systems; Owens Corning Integrex; Owens-Corning Testing Services; Integrex Supply Chain Solutions LLC; Integrex Professional Services LLC; Integrex Ventures LLC** |
| **Fibreboard Corporation**<br>Case No. 00-3842 | **Fibreboard Paper Products Corporation; Pabco Products Inc.; Paraffine Companies, Inc.; Fibreboard Box & Millwork; Fibreboard Technologies Corp.; Fibreboard Wood Products Co. Inc.; P Metals; Keystone Bark & Mulch Corp.; Vytec Sales Corporation; Sierra Corp.; Cultured Stone Corporation (prior to 12/31/99); Great American Stoneworks; Stone Products Corporation; Spleco Stone Products; Carriage Hill Stone Products; Pabco, a Division of Fibreboard; Pabco Insulation, a Division of Fibreboard** |
| **Exterior Systems, Inc.**<br>Case No. 00-3843 | **Norandex, Inc.; Fabwel Composites; AmerMark Building Products, Inc.; Fabwel, Inc.; Fabwel Plastics; Owens Corning Metal Systems; Norandex/Reynolds; Norandex/Reynolds Distribution Company; Norandex Bldg. Products; Reynolds Bldg. Products; Norandex Installation Company; Aristocrat Windows; Weather-Tite; Ryan Wholesale Supply; Norandex Sales Company; Tappan Bros., Inc.; Northwest Standard Products Co.; East Range Company; West Range Company; Texas Siding Supply, Inc.; Corn Husker Siding Supply, Inc.; Aluminum Supply Company; Summit Siding Company; Aristocrat Window Co. of Maryland Inc.; Aristocrat Window Co. of New Jersey Inc.; Aristocrat Window Co. of Pittsburgh Inc.; Aristocrat Window Co. of Rhode Island Inc.; Aristocrat Window Co. of Virginia Inc.; Illinois Aristocrat Window Co., Inc.* Aristocrat Window Company; Noranda Exploration Inc.; The Pacific Coast Company; Pacific Coast Realty Corp. of Delaware; Pacific Coast Realty Corp. of Indiana Inc.; Pacific Coast Redevelopment Corporation; Weather-Tite Co. of Alabama Inc.; Weather-Tite Co. of Arkansas Inc.; Weather-Tite Co. of Cincinnati Inc.; Weather-Tite Co. of Colorado Inc.; Weather-Tite Co. of Columbus Inc.; Weather-Tite Co. of Connecticut Inc.; Weather-Tite Co. of Florida Inc.; Weather-Tite Co. of Georgia Inc.; Weather-Tite Co. of Indiana Inc.; Weather-Tite Co. of Iowa Inc.; Weather-Tite Co. of Kansas Inc.; Weather-Tite Co. of Louisiana Inc.; Weather-Tite Co. of Michigan Inc.; Weather-Tite Co. of Minnesota Inc.; Weather-Tite Co. of Missouri Inc.; Weather-Tite Co. of Nebraska Inc.; Weather-Tite Co. of New York Inc.; Weather-Tite Co. of North Carolina Inc.; Weather-Tite Co. of Ohio Inc.; Weather-Tite Co. of Oklahoma Inc.; Weather-Tite Co. of Pennsylvania Inc.; Weather-Tite Co. of South Carolina Inc.; Weather-Tite Co. of Tennessee Inc.; Weather-Tite Co. of Texas Inc.; Weather-Tite Co. of West Virginia Inc.; Weather-Tite Co. of Wisconsin Inc.; Weather-Tite Co. of Indianapolis Inc.; Northwest Thermal Window Company; Master-S, Inc.; Oklahoma Better Homes, Inc.; ITI/TUCO; WGS Acquisition Inc.; OCAA, Inc.; Alsco; Hastings; Wolverine Coil Coating** |

53

## SCHEDULE 1 – List of Present and Former dba's and Tradenames (continued)

*Note: This list of present and former dba's and tradenames is based on information contained in the Debtors' books and records. This list may be, in certain respects, over-inclusive and/or incomplete. The inclusion of a particular dba or tradename on this list is not an admission that any Debtor utilized such dba or tradename or is otherwise responsible for debts incurred by or under such dba or tradename, and the Debtors reserve all rights regarding same.*

| Debtor: | Present and Former dba's and Tradenames (most commonly used names in bold): |
|---|---|
| **Integrex Ventures LLC** Case No. 00-3844 | HOMExperts |
| **Integrex Professional Services LLC** Case No. 00-3845 | n/a |
| **Integrex Supply Chain Solutions LLC** Case No. 00-3846 | n/a |
| **Integrex Testing Systems LLC** Case No. 00-3847 | n/a |
| **HOMEXPERTS LLC** Case No. 00-3848 | n/a |
| **Jefferson Holdings, Inc.** Case No. 00-3849 | n/a |
| **Owens-Corning Fiberglas Technology, Inc.** Case No. 00-3850 | OC Utah Four Corporation |
| **Owens Corning HT, Inc.** Case No. 00-3851 | n/a |
| **Owens-Corning Overseas Holdings, Inc.** Case No. 00-3852 | n/a |
| **Owens Corning Remodeling Systems, LLC** Case No. 00-3853 | n/a |
| **Soltech, Inc.** Case No. 00-3854 | Soltech OEM Solutions; OEM Solutions Group; Fiberflex Inc.; Fiber-flex Company Inc.; Thermacoustics Division; Solar Technology Inc.; Owens Corning Fabrication; SFF1 Acquisition Corporation; SFF2 Acquisition Corporation; Zola Castor Holding Corporation |

54

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| OWENS CORNING, *et al.*, | : | Case No. 00-03837 (JKF) |
| Debtors. | : | Jointly Administered |

Related to Docket No. 10241
Hearing Date: December 1, 2003
Agenda Item 15

## ORDER CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT

Upon consideration of the Disclosure Statement With Respect to Fourth Amended Joint Plan of Reorganization for Owens Corning and its Affiliated Debtors and Debtors-in-Possession, dated November 21, 2003 (as the same has been or may be amended, the "Disclosure Statement"), with respect to the Fourth Amended Joint Plan of Reorganization for Owens Corning and its Affiliated Debtors and Debtors-in-Possession, dated October 24, 2003 (as the same has been or may be amended, the "Plan"); and upon the record at the hearing commenced on June 4, 2003 and continued thereafter (the "Hearing") and all of the proceedings had before the Court; and any objections to the Disclosure Statement having been withdrawn, overruled by the Court, or rendered moot by reason of modifications made to the Disclosure Statement and/or the Plan; and it appearing that the Court has jurisdiction over this matter; and due and sufficient notice of the filing of the Disclosure Statement, the Hearing, and this order as proposed having been provided, and it appearing that no other or further notice need be provided; and just cause existing for the relief granted herein;

THE COURT HEREBY FINDS AS FOLLOWS:

I.    The Disclosure Statement contains adequate information within the meaning of section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

Docket # *10319*

Date *12-3-03*

II.    Notice of the Hearing was provided to all creditors who timely filed a proof of claim, all creditors listed in the amended and restated schedules of assets and liabilities (as such may have been amended, the "Schedules") of Owens Corning and its affiliated debtors and debtors-in-possession (the "Debtors") as having a noncontingent, liquidated, and undisputed claim, all holders of the Debtors' debt securities, the holders of Owens Corning's equity securities, all parties who have filed notices of appearance in these chapter 11 cases pursuant to Bankruptcy Rule 2002, all parties filing entries of appearance in these cases, the Securities and Exchange Commission, and the Internal Revenue Service and such notice constitutes sufficient notice to all interested parties.

III.    Notice of the Hearing was published once in *The New York Times, The Wall Street Journal, USA Today* and the *Toledo Blade* at least one month prior to the Hearing, and the form and manner of such notice by publication constituted sufficient notice to all unknown creditors and parties in interest consistent with principles of due process.

IV.    The form and manner of notice of the time set for filing objections to, and the time, date and place of the Hearing to consider the approval of the Disclosure Statement was adequate and comports with due process.

V.    Objections to the Disclosure Statement have been withdrawn, overruled by the Court, or rendered moot by reason of modifications made to the Disclosure Statement and/or the Plan. Among other objections, the objections filed by Birmingham Fire Insurance Co. of Pennsylvania, Granite State Insurance Co., Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Mt. McKinley Insurance Company, Allianz Insurance Company, Allianz Underwriters Insurance Company, Affiliated FM Insurance Company, AXA-Belgium Insurance Company, Royal Indemnity Company, Century Indemnity Company, Central National Insurance Company and Pacific Employers Insurance Company were resolved (without prejudice to their confirmation objections) through changes to the Disclosure Statement or through the Court overruling certain such objections.

A:-DS approval order (short form).doc 12/5/03

NOW, THEREFORE, IT IS:

ORDERED, that in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), the Disclosure Statement is hereby APPROVED in all respects, subject to (1) the issuance of an order by the District Court, or such other court with appropriate jurisdiction after notice, that the Disclosure Statement shall be circulated for voting without prejudice to the right of any party in interest to object to the entry of such an order if no order or ruling on substantive consolidation is issued before the Plan and Disclosure Statement are approved for circulation and voting, and (2) the revisions of the Trust Distribution Procedures ordered by the Court on the record on December 1, 2003 with respect to the definition of "foreign claims"; and it is further

ORDERED, that a separate order , after notice, will establish, *inter alia*, (a) the date, time, and place of the hearing on confirmation of the Plan; (b) the deadline and procedures for filing objections to confirmation of the Plan; (c) the deadline and procedures for filing responses to any objections to the Plan; (d) the deadline for casting votes to accept or reject the Plan; (e) the date by which the Debtors are to mail, or cause to be mailed, solicitation packages with respect to the Plan; and (f) the notice and publication procedures with respect to the hearing on confirmation of the Plan and related matters; and it is further

ORDERED, that the record date with respect to voting on the Plan will be established by separate court order; and it is further

ORDERED, that the Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, the Plan and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other related materials prior to the their mailing to parties in interest; and it is further

ORDERED that no Disclosure Statement or Plan shall be mailed or otherwise circulated for voting unless the package distributing the Plan and Disclosure Statement includes a

document duplicated and transmitted at the Debtors' expense, expressing the view of the Official

Committee of Unsecured Creditors ("OCUC") about the Plan and Disclosure Statement, provided that

such document shall be submitted to the Plan Proponents no later than 20 days after the entry of an

order by the applicable court ordering the transmission of the Disclosure Statement and Plan for voting

and further provided that the Plan Proponents shall then have 10 additional days to raise any objection

to the document proposed by the OCUC with the applicable court ordering the transmission of the

Disclosure Statement and Plan for voting.  In the event of any such objection, no Plan or Disclosure

Statement shall be transmitted until such objection shall have been resolved.

Dated:  __12/2__ , 2003

_Judith K. Fitzgerald_
THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

ASDS approval order (short form).doc 12/2-03

58

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### INACOM CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

Executive Sounding Board Associates, Inc. as the Plan Administrator (the "Plan Administrator") for the reorganized debtor Inacom Corporation and its related debtors[1] (collectively, "Inacom") hereby moves for an order allowing it to file a claim in the above referenced bankruptcy cases after the deadline for filing such claims, based upon the following:

### I.
### THE FACTS

At one time, InaCom was one of the world's leading technology services companies, distributing and configuring personal computer and related information technology products to businesses together with the provision of related support services to such businesses, with nearly $7 billion in revenues, approximately 90 company-owned business centers, approximately 875 independent dealers, and more than 12,500 employees.

---

[1]    The Inacom Debtors were the following entities:  InaCom Corp.; InaCom Latin America; InaCom Solutions, Inc.; InaCom Communications, Inc.; InaComp Financial Services, Inc.; Perigee Communications, Inc.; Networks, Inc.; Gorham Clark, Inc.; InaCom International, Inc.; InaCom Tennessee, Inc.; InaCom Professional Services, Inc.; Kure Associates, Inc.; Office Products of Minnesota, Inc.; Boston Computer Exchange Corporation; PC Technical Services, Inc.; Vanstar Corporation; Computerland International Development, Inc.; Computerport World Trade, Inc.; Vanstar International Corporation; VST West, Inc.; VST Illinois, Inc.; VSTNC, Inc.; Cland Tex, Inc.; InaCom Government Systems, Inc.; Contract Data, Inc.; Computer Professionals, Inc.; Vanstar Professional Technical Resources, Inc.

42125-003\DOCS_LA:144146.1

Docket #_15871_
Date_9-19-05_

In February 1999 Inacom merged with Vanstar, a competitor. However, the merger proved difficult to consummate and many accounting systems were never merged. Deteriorating industry conditions combined with the millions of dollars of unanticipated costs from the Vanstar merger resulted in very large losses for the merged companies in 1999 and the loss of access to lines of credit and other financing critical to sustaining the operations. Inacom's Board of Directors recognized the severity of the problems and brought in a new executive management team in the fourth quarter of 1999. The new team quickly realized that Inacom could not continue to operate in the highly competitive computer hardware distribution industry. Inacom engaged an investment banking firm to assist in a sale of the distribution business that had to be completed prior to the complete collapse of the already fragile financing arrangements. Fortunately, Compaq Computer Corporation ("Compaq") wanted to retain the billions of dollars of annual sales of their product that went through Inacom and were seeking to develop direct a sales program.

A transaction was put together very quickly and closed mid-February 2000. Through this sale, Inacom was drastically reduced in scale, having shed a significant percentage of its annual revenues and thousands of employees. The separation was difficult. Many of Inacom's accounting systems, including accounts receivable for the hardware distribution business, were sold to Compaq, thereby limiting Inacom's ability to access critical information regarding hundreds of millions of dollars of assets. These problems culminated in acrimonious litigation between Compaq, Inacom, and Inacom's agent bank when nearly $100 million of money due to Compaq was inadvertently paid to Inacom by Compaq's customers and then swept by the agent

bank and used to reduce Inacom's bank debt. This litigation further reduced Inacom's ability to manage its assets, particularly, to manage and collect its receivables.

Management's vision for Inacom for the shrunken company was to become a service business – providing services such as help desk, computer maintenance and installation, and a myriad of other services to its existing customer base and other companies in the Fortune 1000. At the time of the sale to Compaq, Inacom retained a significant service business. Unfortunately, Inacom was not able to stop its losses and continued to lose millions of dollars a month in the months after the sale, resulting in defaults on its senior debt. Beginning in early 2000, Inacom was entering into forbearance agreements with their agent bank to enable the operations to continue while management sought a buyer for the business.

During the early part of 2000, Inacom's accounting department endeavored to issue its Form 10K and Annual Report for the year ended December 31, 1999. Due to problems related to the sale, an investigation of the recording of certain transactions that would have required the restatement of the 1998 annual report and the 1999 quarterly reports, and the rapidly accumulating losses, those financial statements were never issued.

In early 2000 (after the closing of the sale to Compaq) Inacom was negotiating a sale of substantially all of its remaining assets (primarily the service business described above) as a going concern to Compucom Systems Inc. However, in late May 2000, just prior to the intended closing date and after documentation and due diligence had been substantially completed, the potential buyer refused to proceed with the transaction because Inacom could not issue its 1999 Form 10K and, under the SEC rules, this would have prevented the potential buyer from

3

accessing the capital markets in the future. In light of the failure of the sale transaction and the refusal of the agent bank to advance any funds under Inacom's revolving line of credit, Inacom was compelled to suddenly, and with minimal planning, cease operations, file a chapter 11 bankruptcy petition and liquidate its assets for the benefit of its creditors.

Inacom filed its chapter 11 cases (collectively, the "Case") in the United States Bankruptcy Court for the District of Delaware (the "Inacom Court") on June 16, 2000. The Case was jointly administered under Case No. 00-2426 (PJW).

Immediately after the commencement of its case, Inacom terminated all but 140 of its approximately 5,000 employees. Concurrent with the commencement of its case and the termination of these employees, Inacom shut down all of its operations, and ceased operating as a business enterprise. For a period of two weeks 40 of the retained employees worked to complete the customer billing process for May and the first half of June. Once that was completed, they were released and a core group of 100 employees remained, all of whom were located in Inacom's offices in Omaha, Nebraska and Atlanta, Georgia. After June 16, 2000 Inacom operated solely to wind up and liquidate its business. However, because of the precipitous way in which Inacom had been forced to cease operations, books and records were simply in disarray, boxed and stored in a disorganized fashion in locations remote from its few remaining operational offices, or had been abandoned or destroyed when field offices were closed. Moreover, virtually all Inacom's employees from field offices had their employment terminated immediately so that their knowledge of the books and records, or even the location of key billing records was lost to Inacom.

4

Additionally, within a few months after filing its petition, Inacom (1) was being run by Bridge Associates LLC as their bankruptcy consultants, and (2) had its primary bankruptcy Willkie, Farr & Gallagher replaced by Pachulski, Stang, Ziehl, Young, Jones & Weintraub. These changes contributed to further difficulties in assessing claims against other debtors because these firms were not retained until after the June 16 shutdown and were never able to coordinate with the now terminated employees in a meaningful way. Neither firm participated in the decisions of whom to retain as employees for the liquation and whom to discharge when Inacom ceased operations.

A small group of eight employees who managed accounts receivable from Atlanta continued in their function during the bankruptcy. This group had been supplemented by field personnel who managed the billing and collection of many accounts, particularly the larger accounts such as Owens Corning. None of these employees were retained and the continuity of knowledge of the accounts receivable was lost in many cases, including Owens Corning. As of the bankruptcy, Inacom had to reorganize to collect approximately 5,350 accounts totaling over $137,919,487. Fortunately, with supplementation by Bridge Associates and collection agencies and thousands of hours of intensive labor, Inacom collected enough money to pay secured, priority and administrative claims in full and to make significant distributions to general unsecured creditors. Any funds collected by Inacom from its valid receivables due from Owens Corning would also go to pay the more than 14,500 scheduled and filed claims against the Inacom estate, totaling more than $4,320,002,619 in claims.

5

42125-003\DOCS_LA:144146.1

At the time it filed its petition, Inacom had a contract with Owens Corning to provide computer hardware and services to Owens Corning locations domestically as well as internationally; the hardware and services were provided pursuant to a Master Agreement, which was in place at the time Inacom filed its bankruptcy petition.

On October 5, 2000 Owens Corning and its related debtors filed the above referenced bankruptcy cases, jointly administered under Case No. 00-03837 (JFK) in the United States Bankruptcy Court for the District of Delaware (the "Owens Corning Court").

Owens Corning filed Amended Schedules on November 20, 2001. In its various schedules, Owens Corning scheduled the following claims owed by it to Inacom:

| Inacom Entity/Location | Amount | Status |
|---|---|---|
| Inacom/Vanstar Philadelphia, PA | $ 317,590.66 | Disputed |
| Inacom/Vanstar Palatine, IL | $ 6,272.80 | Disputed |
| Inacom Chicago, IL | $ 36,173.39 | Disputed |
| Inacom North Central Chicago, IL | $ 822,672.67 | Disputed |
| Inacom Information Systems Philadelphia, PA | $1,966,683.00 (originally scheduled as $4,133,330.49) | Disputed |
| Inacom Central Area Atlanta, GA | $ 47,439.36 | Disputed |
| Inacom/Vanstar Philadelphia, PA | $ 1,945.81 | Disputed |
| Inacom Information Systems Philadelphia, PA | $ 76,168.50 | Disputed |

Additionally, Owens Corning scheduled undisputed claims as owed by it to various Inacom entities, but all the undisputed claims were listed as having an amount of "$0.00."

6

On November 27, 2001 the Owens Corning Court set April 15, 2000 as the deadline for filing claims in the Owens Corning cases. Notice of the deadline for filing claims was served upon Inacom at various sites. However, during the period during which claims against Owens Corning were to be prepared and filed, the very small Inacom staff was reviewing and assisting in the preparation of objections to the more than 10,000 claims either scheduled by or filed against the Inacom estates, assisting in litigation to bring hundreds of collection actions and avoidance actions, and disposing of assets.

After Owens Corning filed for bankruptcy, Inacom's accounts receivable collection team identified that the Owens Corning receivable was one of the largest receivables. At that time, the team had not determined what process to follow in order to file a proof of claim as this was the first instance that they had identified. Counsel was contacted but the follow-up by either Inacom employees or counsel did not occur and, apparently due to a misunderstanding, the Owens Corning accounts receivable were written off in December 2000 resulting in a loss of visibility and follow-up.

While Inacom reviewed its books and records in late 2001 to determine whether it had claims against Owens Corning, the confused state of the books and records did not reveal any evidence of significant claims against Owens Corning. The only claim disclosed by this search was a relatively small claim which the Inacom staff quickly concluded was subject to an offset by Owens Corning greatly exceeding the value of the claim. Thus, no claims were filed by Inacom against the Owens Corning estates.

7

Inacom operated as debtors in possession pursuant to sections 1107(a) and 1108 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), until Inacom's Joint Plan of Liquidation was confirmed on May 23, 2003 ("Liquidating Plan"). The Plan Administrator was appointed pursuant to the Liquidating Plan.

On October 24, 2003 Owens Corning and other interested parties filed an Amended Joint Plan of Reorganization. That plan provides for partial payment of all unsecured creditors claims in the form of new common stock and notes of the reorganized company, and cash. The general unsecured class, Class 6A, was estimated to have between $109-$475 million in allowed claims. The estimated recovery for creditors in this class is between 48.5% and 17.3%.

In November 2004 Inacom's Plan Administrator was contacted by a "claims trader" seeking to purchase Inacom's claims against Owens Corning. This inquiry caused the Plan Administrator to start another review of Inacom's books and records for evidence of potential claims against Owens Corning. This search, conducted by Inacom's few remaining staff members after more than three years of working through the Inacom books and records, and reconciling those with information provided from Owens Corning, re-identified Inacom's heretofore lost account receivable due to Inacom from the Owens Corning estate. Since that time, Inacom, the Plan Administrator, and counsel have thoroughly researched the claim, have made inquiries of all the parties who may have been involved in the events surrounding the failure to file a timely proof of claim, and in contacting Owens Corning and their counsel about this matter.

8

Specifically, representatives of Inacom contacted Owens Corning representatives by telephone and electronic mail, and were initially informed that its claims were scheduled and would be paid. Later, however, after further communications with Owens Corning, and upon further review of the numerous schedules, Inacom concluded that its claims were, in fact, disputed. Inacom's representatives contacted representatives of Owens Corning to determine whether the parties could reach an accommodation vis-à-vis Inacom filing a late claim to avoid the two debtors incurring additional legal fees to the detriment of their respective creditors, but that approach was rebuffed. Thus, Inacom concluded it would have to file this Motion.

If this motion is granted and Inacom is permitted to file a late proof of claim, Inacom will file a proof of claim for approximately $2.5 million for service and maintenance unpaid accounts receivables and professional services unpaid accounts receivables. A copy of the proposed proof of claim is attached hereto as Exhibit A.

Inacom was a creditor in more than 70 other bankruptcy cases around the nation. After it filed its own bankruptcy case it established a mechanism by which its remaining staff would, upon notification of the filing of a petition by a company or the receipt of a notice of the deadline for filing claims, against which Inacom would have a claim, review its books and records and communicate with its attorneys as to the existence of potential claims against other bankrupt companies. Inacom's attorneys filed numerous proofs of claims on behalf of Inacom in other bankruptcy cases across the country during its own chapter 11 case. Thus, Inacom was fulfilling its obligations as a debtor in its own case and as a creditor in other cases in good faith. However,

9

42125-003\DOCS_LA:144146.1