IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Related Docket Nos. 15871 and 15989 |
| | | **Hearing Date: October 24, 2005 at 10:00 a.m. prevailing Eastern Time** |

### INACOM'S MOTION FOR LEAVE TO FILE REPLY TO OBJECTION OF DEBTORS TO INACOM CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

Executive Sounding Board Associates, Inc. as the Plan Administrator (the "Plan

Administrator") for the Inacom Corporation's family of debtors[1] (collectively "Inacom"), hereby

requests, pursuant to Del. Bankr. L. R. 9006-1(d), authority to file Inacom's *Reply To Objection*

*Of Debtors To Inacom Corporation's Motion To Allow The Filing Of A Proof Of Claim After*

*The Deadline For Filing Proofs Of Claim Pursuant To Bankruptcy Rule 9006(B)(1)* (the

"Reply"), a copy of which is attached hereto as Exhibit "1."

       1.      On September 19, 2005, Inacom filed its Motion to Allow the Filing of a

Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy

---

[1] The Inacom Debtors are the following entities: InaCom Corp.; InaCom Latin America; InaCom Solutions, Inc.; InaCom Communications, Inc.; InaCom Financial Services, Inc.; Perigee Communications, Inc.; Networks, Inc.; Gorham Clark, Inc.; InaCom International, Inc.; InaCom Tennessee, Inc.; InaCom Professional Services, Inc.; Kure Associates, Inc.; Office Products of Minnesota, Inc.; Boston Computer Exchange Corporation; PC Technical Services, Inc.; Vanstar Corporation; Computerland International Development, Inc.; Computerport World Trade, Inc.; Vanstar International Corporation; VST West, Inc.; VST Illinois, Inc.; VSTNC, Inc.; Cland Tex, Inc.; InaCom Government Systems, Inc.; Contract Data, Inc.; Computer Professionals, Inc.; Vanstar Professional Technical Resources, Inc.

Docket #__16054__

Date__10-17-05__

Rule 9006(B)(1) (Docket No. 15871) (the "Motion"). On October 7, 2005 the Debtor filed its Objection of Debtors To Inacom Corporation's Motion to Allow the Filing of a Proof of Claim after the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(B)(1) (Docket No. 15989) (the "Objection").

     2.    The Motion is currently scheduled for hearing before the Court on October 24, 2005, at 10:00 a.m. prevailing Eastern time (the "Hearing").

     3.    Inacom seeks to file the Reply in order to respond to new arguments and issues raised by the Debtors in the Objection. Inacom will serve the Debtors via Electronic-mail and hand delivery concurrently with filing this Motion and Reply with the Court.

     WHEREFORE, Inacom respectfully requests the entry of an Order granting it authority to file the Reply.

Dated: October 17, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Samuel R. Maizel (CA Bar No. 189301)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Executive Sounding Board Associates, Inc. as the Plan Administrator for Inacom

227

# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | · Case No. 00-03837 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Related Docket Nos. 15871 and 15989 |

**Hearing Date: October 24, 2005 at 10:00 a.m. prevailing Eastern Time**

### INACOM'S REPLY TO OBJECTION OF DEBTORS TO INACOM CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

Executive Sounding Board Associates, Inc. as the Plan Administrator (the "Plan

Administrator") for the Inacom Corporation's family of debtors[1] (collectively "Inacom"), hereby

replies to the *Objection of Debtors To Inacom Corporation's Motion to Allow the Filing of a*

*Proof of Claim after the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy*

*Rule 9006(B)(1)* (the "Objection") [Docket No. 15989].

#### Reply Argument

1.    The Objection argues that Inacom's Motion to Allow the Filing of a Proof

of Claim after the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(B)(1)

---

[1] The Inacom Debtors are the following entities:  InaCom Corp.; InaCom Latin America; InaCom Solutions, Inc.; InaCom Communications, Inc.; InaCom Financial Services, Inc.; Perigee Communications, Inc.; Networks, Inc.; Gorham Clark, Inc.; InaCom International, Inc.; InaCom Tennessee, Inc.; InaCom Professional Services, Inc.; Kure Associates, Inc.; Office Products of Minnesota, Inc.; Boston Computer Exchange Corporation; PC Technical Services, Inc.; Vanstar Corporation; Computerland International Development, Inc.; Computerport World Trade, Inc.; Vanstar International Corporation; VST West, Inc.; VST Illinois, Inc.; VSTNC, Inc.; Cland Tex, Inc.; InaCom Government Systems, Inc.; Contract Data, Inc.; Computer Professionals, Inc.; Vanstar Professional Technical Resources, Inc.

(the "Motion") [Docket No. 15871] should not be granted because (1) it would open the "flood-gates" to other late filed claims, Objection, at 5-6; (2) other creditors will get a smaller distribution if the claim is eventually allowed, Objection, at 6; (3) the extraordinary circumstances described in the Motion amount to nothing more than "a heavy workload," Objection, at 6-7; (4) the mistakes described by Inacom in the Motion which led it to file the Motion were the kinds of mistakes which cannot be considered "excusable neglect" because Inacom's staff and counsel should have known better, Objection, at 8-9; and (5) Inacom took too long to file the Motion under the circumstances, Objection, at 9-10. Not one of these arguments is consistent with the prevailing legal standard or supported by the facts. Moreover, the decision whether to allow the late filing of a proof of claim is inherently an equitable one, "taking into account all the relevant circumstances surrounding the party's omission." *Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993). The Objection argues to ignore the circumstances surrounding Inacom's acts, and focus solely on the impact on the Debtor and its creditors.

      2.     Inacom – itself a debtor in bankruptcy – has, like the Debtors, responded to motions to allow late filed claims. In those responses Inacom has raised some of the same issues raised by the Debtors in the Objection. The United States District Court for the District of Delaware ruled in Inacom's bankruptcy case on the issue of what is excusable neglect in *Pro-Tec Services, LLC v. Inacom Corp., et al. (In re Inacom Corp., et al.)*, Civil Action No. 04-390-GMS (D. Del. October 4, 2004). A copy of the District Court's Memorandum Opinion (the

2

"Memorandum") is attached hereto as Exhibit "A." The Memorandum, as well as insights from Inacom's own case, provide support for granting the Motion.

**A.    That Other Creditors Might File Claims If The Motion Is Granted Is Not Prejudice To The Debtors**

3.    The Debtors argue that allowing Inacom's late filed claim to be resolved on its merits would encourage creditors to assert a "flood" of late filed claims, and, thus, prejudice the Debtors. *Objection,* at 5-6. However, the Debtors offer no evidence to support such an assertion, and, therefore, ignore that the Third Circuit has stated that prejudice to a debtor in evaluating excusable neglect cannot be an "imagined or hypothetical harm." *In re O'Brien Environmental Energy, Inc.,* 178 F.3d 116, 127 (3rd Cir. 1999). Because there is no evidence to support it, the Debtors' argument is nothing more than a hypothetical risk of increased administrative costs and inconvenience, which is legally insufficient to suffice as to prejudice to the Debtors.

4.    Inacom itself raised the risk of a "flood" of late filed claims in responding to Pro-Tec Services, LLC's appeal from the Bankruptcy Court's denial of its motion to allow a late filed claim. *Memorandum,* at 11. However, the United States District Court for the District of Delaware reversed the Bankruptcy Court and allowed the late claim to be filed. The District Court noted that, at a minimum, some tangible evidence was required to support such an argument. *Memorandum,* at 11. Perhaps more importantly, as a review of Inacom's docket will confirm and its Plan Administrator can attest, in the more than one year since the Memorandum was entered, no other motions to allow a late filed claim were filed by a creditor in the Inacom

3

bankruptcy case. In other words, no flood of late filed claims resulted from the granting of a motion to allow a late filed claim and the risk the Debtors assert is likely nonexistant.

5.     Further, prejudice to a debtor from a late filed claim should not rest on its impact on other creditors' thought processes. Besides being a speculative and hypothetical risk, and being an argument which is offered regardless of the facts of any particular case (and the *Pioneer* test is one which requires "tak[ing] into account all of the relevant circumstances surrounding the party's omission," *Memorandum*, at 5 (*quoting Pioneer*, 507 U.S. at 395)) any prejudice to a debtor must relate to matters such as "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *O'Brien Environmental*, 188 F.3d at 116 (*quoting Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3rd Cir. 1982)). In other words "prejudice is not merely the loss of an advantageous position, but must be something more closely related to the merits of the case." *O'Brien Environmental*, 188 F3d at 116. The argument that other creditors might file motions to allow late filed claims if this Motion is granted has nothing to do with the merits of Inacom's claim.

6.     Finally, the Debtors do not dispute it is a "large, successful company with annual revenues and earnings in the [b]illions and the payment of this claim would not jeopardize the success of [the Debtors'] reorganization. *O'Brien Environmental*, 188 F.3d at 128. Even if some creditors did attempt to file claims late, the Debtors' size and situation demonstrate that the Debtors would not be prejudiced by having to resolve Inacom's claims on their merits.

4

**B.    That Other Creditors May Get A Smaller Distribution If Inacom's Claim Were Adjudicated On Its Merits Is Not Prejudice To The Debtors**

7.    The Debtors argue that requiring them to resolve Inacom's claim on the

merits is unfair to other creditors because other creditors may get a smaller distribution if the

Motion is granted and the claim is subsequently allowed. *Objection*, at 6. This argument is akin

to a slight-of-hand card trick--while the *Pioneer* test talks about prejudice to the other <u>party</u>, the

Debtors want this Court to focus on prejudice to the other <u>creditors</u>. Of course, such an

argument runs afoul of the same issues raised by Inacom in the prior section--it is totally

speculative, has nothing to do with any prejudice to the Debtors' ability to defend on the merits

of Inacom's claim (to the contrary, despite the Debtors' apparently strong belief that Inacom's

claim is subject to overwhelming defenses, this argument <u>only</u> matters if Inacom's claim is

eventually <u>allowed</u>) and is an argument unrelated to the facts of any individual claim. Further,

this argument is inherently inequitable (and the decision whether to find excusable neglect is

inherently a decision based in equity), because it argues for the Debtors' creditors to get a

windfall by denying a creditor with a presumably allowable claim to receive any distribution on

that claim, solely because that creditor neglected to take a required act because of excusable

neglect.

8.    Moreover, as the Debtors must concede, they are still adjudicating claims

in their cases and the total asserted value of those claims still remaining to be resolved are

significantly larger than Inacom's claim. Thus, no creditor in the Debtors' cases can have any

expectation of any certain level of recovery in the Debtors' cases. As the District Court noted in

the *Memorandum*, to require a debtor to consider a late filed claim on the merits does not

5

prejudice other creditors where (i) it is "not clear how many creditors will ultimately hold an allowed claim;" (ii) "final distribution to creditors will vary based on the results of [still unfinished] litigation and the claims resolution process;" (iii) the Debtors did not "allocate funds for each disputed claim" under its plan of reorganization, and (iv) there is no evidence that the Debtors will have to return amounts, if any, already paid under its plan. *Memorandum*, at 7-8.

      9.     In sum, the Debtors cannot point to any prejudice from allowing Inacom to file its claim.

### C.    Inacom's Failure To File Its Claim Results From More Than A Heavy Workload And Its Mistakes Constitute Excusable Neglect

      10.    The Debtors argue that the extraordinary circumstances described in the Motion amount to nothing more than "a heavy workload," *Objection*, at 6-7, and that the mistakes described by Inacom in the Motion were the kinds of mistakes which cannot be considered "excusable neglect" because Inacom's staff and counsel should have known better, *Objection*, at 8-9. As described in the Motion, Inacom was a multi-billion dollar family of corporations which, with only a few days to prepare, laid off virtually all its staff and ceased operations. Counsel and advisors were in flux. Because Inacom's estate was potentially administratively insolvent few employees were retained and offices were closed and records retained precipitously. Inacom itself faced resolving thousands of claims, hundreds of collections and avoidance actions, and disposing of assets, all while in bankruptcy. This is not just a "heavy workload" faced by a creditor which, presumably, makes an economic choice whether or not to hire more staff.

6

11.     Of course Inacom made mistakes here. Inacom candidly described them to the Court in the *Motion*. In the *Objection* the Debtor argues Inacom's mistakes, such as failing to go back and review its books and records well enough to discover its claim, and at one point even writing it off as uncollectible, are not the right kind of mistakes to provide a basis for excusable neglect. *Objection,* at 8-9. However, the Debtors' definition of what could support a finding of excusable neglect is hard to fathom. Certainly the Supreme Court and the Third Circuit do not share the Debtors' narrow definition.

12.     Rather, the Supreme Court has held that merely because a proposed late filer is in some way at fault does not defeat a claim of excusable neglect. *In re Just For Feet,* 299 B.R. 343, 347 (Bankr. D. Del. 2003) (Fitzgerald, J.) (*quoting Pioneer,* 507 U.S. at 387-88). Therefore, the Supreme Court stated that courts are "permitted, where appropriate, to accept late filings caused by <u>inadvertence, mistake or carelessness.</u>" *Id.* (emphasis added). The Third Circuit recognizes that "the concept of excusable neglect clearly anticipates this, *i.e.,* neglect on the part of the one seeking to be excused." *O'Brien Environmental,* 188 F.3d at 128. Neglect is excusable if it results from acts which result in some required conduct being "undone or unattended to, especially through carelessness." *Pioneer,* 507 U.S. at 388. Therefore, excusable neglect encompasses "both simple faultless omissions to act and, <u>more commonly,</u> omissions caused by carelessness." *Id.* (emphasis added). Here the Debtor suggests that the crush of tasks facing a debtor like Inacom is just a heavy workload, and that a large debtor represented by counsel or advisors cannot make mistakes, but these are exactly the kind of circumstances that

7

could cause a creditor to be careless and omit to do an even admittedly important act, like filing a claim.

### D. The Length of Delay Did Not Result In Any Impact on the Debtors' Judicial Proceedings

13.     The Debtors argue that Inacom took too long to discover its claim, and, having done so, took too long to file the Motion. *Objection*, at 10. However, the Debtors' argument misses the point—the issue is not just the amount of time, but rather the impact on the judicial proceedings from that delay in absolute terms. The Debtors' argument that the *Motion* was filed a long time after the bar date thus ignores that the Third Circuit has already rejected a similar argument in *Chemetron Corp. v. Jones*, 72 F.3d 341 (3rd Cir. 1995), where the claim was filed <u>more than two years after</u> the plan was confirmed. In *Pro-Tec*, the creditor did not respond until (i) more than two years and ten months after service of an objection to its filed claim, (ii) two years and nine months after the entry of an order disallowing that claim, (iii) more than eighteen months after a notice that a claim scheduled on behalf of the creditor was being reduced to zero value, and (iv) nine months after confirmation of Inacom's liquidating plan of reorganization. *Memorandum*, at 12. The District Court rejected Inacom's arguments, and found that the delay's effect on the judicial proceedings was a factor supporting allowing the filing of the late claim, because "Inacom was still litigating disputed claims and distributions to creditors are based on Inacom's progress in resolving the claims." *Memorandum*, at 13.

14.     Here the Debtors are still litigating claims, and distributions to their creditors are based on their progress in resolving claims. In fact, the Debtors concede that the amount of any eventual distribution to creditors may be based on potential legislation, as well as

8

42125-003\DOCS_DE:112347.1

any further judicial proceedings. *Objection*, at 6. In such circumstances, the delay does not

prejudice the Debtors' judicial proceedings and this factor weighs in favor of granting the

Motion.

### Conclusion

WHEREFORE, Inacom respectfully requests the Court overrule the Objection

and enter Order granting it authority to file the Claim.

Dated: October 17, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

Laura Davis Jones (Bar No. 2436)
Samuel R. Maizel (CA Bar No. 189301)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for Executive Sounding Board Associates, Inc. as
the Plan Administrator for Inacom

42125-003\DOCS_DE:112347.1

237

# Exhibit A



**FILE COPY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: INACOM CORP., et al., | ) | Chapter 11 |
| Debtors. | ) | Case No. 00-2426 (PJW) |
| | ) | |
| PRO-TEC SERVICES, LLC, | ) | |
| | ) | |
| | ) | Civil Action No. 04-390-GMS |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| INACOM CORP., et al., | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

**MEMORANDUM**

**I.    INTRODUCTION**

On June 16, 2000 (the "Petition Date"), Inacom Corp., *et al.* ("Inacom") filed voluntary

petitions for relief under Chapter 11 of the United States Bankruptcy Code. Pro-Tec Services, LLC

("Pro-Tec") filed a timely Proof of Claim on November 2, 2000. On June 13, 2001, Inacom filed

its Fifth Omnibus Objection to Claims – Objections to Claims filed Against Inacom, Inc. or Its

Affiliates (the "Objection"). On July 13, 2001, the United States Bankruptcy Court for the District

of Delaware (the "Bankruptcy Court") entered an order disallowing Pro-Tec's claim pursuant to

Inacom's Objection. Inacom's plan of liquidation was confirmed on May 23, 2003.

On April 2, 2004, Pro-Tec filed a motion to reconsider its claim. The motion was denied at

a hearing before the Bankruptcy Court on April 20, 2004. Pro-Tec appealed this decision on April

30, 2004. Because the court agrees that Pro-Tec has made a satisfactory showing of excusable

neglect, its motion to reconsider the allowance of its claims should have been granted by the Bankruptcy Court. Further, because the court disagrees with the Bankruptcy Court's analysis of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), as it applies to the facts of this case, the court will reverse the ruling of the Bankruptcy Court and remand the matter for further proceedings consistent with this opinion.

## II.    STANDARD OF REVIEW

In reviewing a case on appeal, the district court reviews the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse. *In re O'Brien Envtl. Energy, Inc.* 188 F.3d 116, 122 (3d Cir. 1999). A bankruptcy court abuses its discretion when its ruling is founded on an error of law or misapplication of law to the facts. *Id.* In determining whether an error exists, the bankruptcy court's application of the law to the facts is reviewed *de novo. Id.*

## III.    BACKGROUND

The basic facts pertinent to Pro-Tec's motion to reconsider the allowance of its claims are not in dispute. On September 18, 1997, Pro-Tec and Vanstar Corporation ("Vanstar") were parties to a computer and communication repair services agreement (the "Agreement"). Subsequent to the execution of the Agreement, Inacom purchased Vanstar, and Pro-Tec continued to provide services to Inacom under the Agreement. From February 1999 to June 2000, Inacom incurred charges for services rendered by Pro-Tec under the Agreement. On June 16, 2000, Inacom filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the District of Delaware. On August 1, 2000, Inacom filed its Schedules of Assets and Liabilities (the "Schedules"). Pro-Tec was listed on Exhibit F-3 of Inacom's Schedules as a creditor holding unsecured non-priority claims in the

2

amount of $195,823.20.

On November 2, 2000, Pro-Tec's counsel timely filed a Proof of Claim (the "Claim"), in the amount of $330,115.61, with Bankruptcy Services, Inc. ("B.S.I."), Inacom's claims agent. On November 6, 2000, B.S.I. stamped the Claim as received, timely, and numbered the Claim 6647. On June 13, 2001, Inacom filed its Objection. The Objection contests approximately 412 claims spread over 96 pages of exhibits. The exhibits are lettered A through H, with some exhibits containing multiple alphabetical listings of objections. Pro-Tec was listed on the first alphabetical list of Exhibit E to the Objection. The Objection contained a Proof of Service, indicating that it was served on Pro-Tec's counsel, William Sullivan, at his office address. Pro-Tec's counsel did not respond to the Objection. On July 13, 2001, the Bankruptcy Court entered an Order Disallowing Claims, Expunging Claims, Altering the Status of Claims, or Allowing the Claims in a Reduced Amount (the "Order").

On July 22, 2002, Inacom filed the Notice of Debtors Twenty-Ninth Amendment of Schedules (the "Twenty-Ninth Amendment"), seeking to amend the Claim from $195,823.20 to $0.00. On May 23, 2003, Inacom's Joint Plan of Liquidation (the "Plan") was confirmed. In February 2004, after Pro-Tec did not receive a distribution under the Plan (which was expected on or about January 30, 2004), Pro-Tec's counsel inquired into the status of distributions. After contacting B.S.I., Pro-Tec was advised of the July 13, 2001 Order disallowing the Claim. Accordingly, Pro-Tec filed its Motion for Reconsideration on April 2, 2004. A hearing on Pro-Tec's motion was held before the Bankruptcy Court on April 20, 2004. The Bankruptcy Court denied Pro-Tec's motion. On April 30, 2004, Pro-Tec appealed the decision.

3

## IV.   DISCUSSION

As a result of the Bankruptcy Court's July 13, 2001 Order, Pro-Tec's Claim in connection with the Agreement was disallowed. It is undisputed that Pro-Tec received the Objection but failed to respond prior to the July 13, 2001 Order, or prior to the May 23, 2003 confirmation of the Plan. Pro-Tec filed a motion for reconsideration pursuant to 11 U.S.C. 502(j) and Fed. R. Bankr. P. 3008. Section 502(j) provides that "a claim that has been allowed or disallowed may be reconsidered for cause." Pro-Tec asserts that a motion for reconsideration based on a claim disallowed as a result of the claimant's failure to appear or to produce evidence is usually decided based on whether the claimant is able to show "excusable neglect." Pro-Tec, therefore, seeks relief from the July 13, 2001 Order under Federal Rule of Civil Procedure Rule 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024. Rule 60(b) states, in pertinent part, "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for mistake, inadvertence, or excusable neglect." The factors a court must consider when determining whether a party has failed to appear or to produce evidence because of excusable neglect were articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). The *Pioneer* factors were adopted and applied by the Third Circuit in *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 125 (3d Cir. 1999). Pro-Tec asserts that its failure to respond to the Objection was the result of excusable neglect, and that the Bankruptcy Court made an inadequate excusable neglect analysis under *Pioneer*. As previously noted, the basic facts pertinent to Pro-Tec's motion are not in dispute. Thus, the court must review *de novo* whether the Bankruptcy Court engaged in a proper analysis under *Pioneer* to make its excusable neglect determination, and whether the Bankruptcy Court abused its discretion in

4

determining that there was no excusable neglect warranting reconsideration of Pro-Tec's claim.

## A. Did the Bankruptcy Court Engage in a Proper *Pioneer* Analysis?

Pro-Tec first argues that the Bankruptcy Court failed to review the totality of the circumstances surrounding Pro-Tec's failure to respond to the Objection and, therefore, failed to adequately apply *Pioneer's* standards for excusable neglect. The court will start with a brief review of *Pioneer* and the excusable neglect factors articulated in that case. In *Pioneer*, the Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the bar date deadline because its failure to timely reply was the result of excusable neglect, within the meaning of Bankruptcy Rule 9006(b)(1). The Court held that the determination of what type of neglect would be considered "excusable" was an equitable one "tak[ing] account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. The Court listed four factors to consider in making the excusable neglect determination: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Under the facts of *Pioneer*, the Court held that the creditor's failure to timely file was inadvertent, and in good faith. There was no danger of prejudice to the debtor because the untimely claim was accounted for in the reorganization plan and was filed prior to the plan's effective date. Lastly, the court noted that notice of the bar date "was outside the ordinary course" because of its "inconspicuous placement" – a single sentence in a document regarding a creditors' meeting – which was not accompanied by a statement of significance and "left a 'dramatic ambiguity' in the notification." *Id.* at 398.

Pro-Tec argues that, while the Bankruptcy Court considered the reason for the delay,

5

including whether it was within the reasonable control of Pro-Tec, and the potential prejudice to Inacom, it did not consider the other *Pioneer* factors. After reviewing the transcript from the April 20, 2004 hearing, the court cannot agree. In making its determination, the Bankruptcy Court made the following findings of fact: (1) overturning the Order would prejudice Inacom because allowing the claims would "open the floodgates to hundreds of these [reconsideration] applications being filed;" (2) allowing the delayed claim "would be a mistake at this very late stage of this case;" and (3) Pro-Tec's counsel was fully responsible for the delay in failing to file a response to the Objection.[1] Tr. at 35-36. Thus, the Bankruptcy Court considered the prejudice to the debtor, the length of the delay and its effect on judicial proceedings, and whether the reason for the delay was in the reasonable control of the movant. The only *Pioneer* factor that the Bankruptcy Court did not consider was the good faith of Pro-Tec's counsel. Inacom, however, acknowledged Pro-Tec's good faith at the April 20, 2004 hearing, which meant that the Bankruptcy Court did not have to consider this factor. For the foregoing reasons, the court finds that the Bankruptcy Court engaged in a proper *Pioneer* analysis.[2]

---

[1] The Bankruptcy Court noted that Pro-Tec's "client's name and your [Pro-Tec's counsel's] name and address with the law firm is [the] first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it." Tr. at 35:6-9.

[2] In this section of its brief, Pro-Tec argues its counsel's diligence upon receiving omnibus objections to its other clients' claims. Pro-Tec also argues that the Bankruptcy Court's Local Rule 3007-1, implemented in September 2002, addresses the difficulties created by the large omnibus claim objections by limiting them to 150, but does not ameliorate the difficulties posed by omnibus objections filed before September 1, 2002 (Inacom's Objection was filed before September 1, 2002). The court will not address these arguments because they are not material to whether the Bankruptcy Court engaged in a proper *Pioneer* analysis.

6

244

**B. Did the Bankruptcy Court Abuse Its Discretion When It Determined There Was No Excusable Neglect?**

Pro-Tec next argues that the Bankruptcy Court abused its discretion in failing to find excusable neglect. In addressing this contention, the court will analyze each of the *Pioneer* factors in turn.

### 1. Danger of Prejudice to the Debtor

The Supreme Court in *Pioneer* noted that lack of any prejudice to the debtor weighs strongly in favor of permitting a tardy claim, but provided little guidance as to what prejudice actually is in the bankruptcy context. The United States Court of Appeals for the Third Circuit has recognized that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999). Under Third Circuit case law, *Pioneer* requires a detailed analysis of more than "whether the Plan set aside money to pay the claim at issue." *Id.* at 126. Thus, the relevant factors for analysis of prejudice under *O'Brien* include: whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; whether payment of the claim would jeopardize the success of the debtor's reorganization; whether allowance of the claim would adversely impact the debtor actually or legally; and whether allowance of the claim would open the floodgates to other future claims. *Id.* at 126-28. Pro-Tec argues that none of the prejudice factors articulated in *O'Brien* serve as potential prejudice to Inacom.

With regard to the first *O'Brien* factor, the court cannot conclude that Inacom was surprised or caught unaware by the assertion of a claim that it had not anticipated. Inacom listed Pro-Tec as

7

245

a creditor holding unsecured non-priority claims in the amount of $195,823.20 in the Schedules. Pro-Tec timely filed the Claim, which was stamped as received and numbered by Inacom's claims agent. The Claim remained scheduled for more than one year after it was disallowed by default, on July 13, 2001. In fact, the Claim remained scheduled by Inacom until it filed the Twenty-Ninth Amendment on July 22, 2002, which sought to amend Pro-Tec's scheduled Claim from $195,823.00 to $0.00. Clearly then, Inacom was aware of the assertion of the Claim.

The second *O'Brien* factor requires the court to consider whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors. Pro-Tec argues that the resolution of the Claim does not impact the recovery being paid to unsecured creditors because Inacom is still litigating the value of many of the unsecured claims. Pro-Tec alleges that unsecured creditors were advised in the Plan that their recovery was uncertain, and, based on the Plan, reconsideration of its Claim will not prejudice other creditors because no creditor will have to return any distribution it may have already received and the ultimate distribution to creditors under the Plan will vary. Inacom notes that the Plan states that "[e]ach holder of a Class 4(a) Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of Available Cash," (Plan at 13, D.I. 4757). However, as Pro-Tec points out, the Plan also states that the recovery of unsecured creditors is uncertain and may vary. Because every creditor is receiving its pro rata share of available amounts, allowing another claim will affect the distribution to each creditor holding an allowed claim. Pro-Tec argues, however, that Inacom is still litigating the value of many of the unsecured claims and does not know at this time which unsecured creditors will recover or what amount each creditor will recover.

Pro-Tec's argument is persuasive. It is not clear how many creditors will ultimately hold an

8

allowed claim. In addition, the final distributions to creditors will vary based on the results of litigation and the claims resolution process. Moreover, Inacom was not required to allocate funds for each disputed claim under the Plan.[3] Thus, any disputed claim that is allowed is paid without regard to what other claims exist. Lastly, absent from the record is any evidence that Inacom will have to return amounts already paid out under the Plan. Based on these facts, the court finds that payment of the claim will not affect the distribution to creditors.

The third *O'Brien* factor is whether payment of the claim would jeopardize the success of the debtor's reorganization. There is no evidence on the record as to whether payment of the claim would jeopardize the success of Inacom's reorganization. In addition, Pro-Tec and Inacom have not made arguments, nor has the Bankruptcy Court made any findings concerning this factor. Thus, the court will treat this consideration as a neutral factor in its analysis.

The fourth *O'Brien* factor is whether allowance of the claim would adversely impact the debtor actually or legally. Pro-Tec argues that there is no prejudice to Inacom created by the delay in litigating the disallowed Claim because the inquiry to be performed in a reconsideration of the Claim is straightforward. Pro-Tec further argues that Inacom is currently reconsidering other

---

[3] Pro-Tec urges that whether the plan set aside money to pay the claim at issue is a factor that the Third Circuit held should not be considered in evaluating potential prejudice. The court disagrees. The court in *O'Brien* stated that *"Pioneer* requires a more detailed analysis of prejudice which would account for more than whether the Plan set aside money to pay the claim at issue." *O'Brien*, 188 F.3d at 126. The Third Circuit, however, did not state that an analysis of prejudice should not include whether the Plan set aside money to pay the claim at issue as one of the factors to consider. Rather, the Third Circuit stated that it should not be the only factor that the Bankruptcy Court considers in determining whether there is potential prejudice to the debtor. The Third Circuit stated "[t]he Bankruptcy Court's prejudice analysis seemed to hinge *solely* on the fact that by virtue of Manus's failure to respond to the Application, its claim was not accounted for in the funding of the plan. We believe that *Pioneer* requires a more detailed analysis which would account for more than whether the Plan set aside money to pay the claim at issue." *Id.* (emphasis added).

creditors' claims. Finally, Pro-Tec asserts that Inacom scheduled its Claim at the outset of the case, a claim that remained scheduled for more than a year after the Bankruptcy Court entered the Order disallowing the Claim. Inacom could not explain why Pro-Tec was listed on the Twenty-Ninth Amendment when Pro-Tec's claim was disallowed a year earlier, negating the need to amend the schedule with respect to Pro-Tec. Tr. at 32:10-20. Because Pro-Tec was still listed on the Twenty-Ninth Amendment, Pro-Tec contends that Inacom ascribed some validity to its claim.[4] While this may be true, this fact is not relevant to the court's analysis of whether allowance of the claim would adversely impact the debtor actually or legally. Regardless, the court finds that Inacom has not alleged that payment of the Claim would adversely impact it. Rather, Inacom alleges only that one of the policies underlying the *Pioneer* analysis is the value of finality in judicial proceedings.

The Third Circuit has addressed Inacom's argument in contexts other than a bankruptcy proceeding. In *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653 (3d Cir. 1982), the court held that "the cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment.'" *Id.* at 656-57. In *O'Brien*, the court highlighted, with approval, its decision in *Feliciano*, stating that "prejudice is not merely the loss of an advantageous position, but must be something more closely tied to the merits of the issue." *O'Brien*, 188 F.3d at 127. Thus, the court finds that the value of finality in judicial proceedings is not sufficient for a finding of prejudice. In addition, there is no evidence in the record showing that payment of Pro-Tec's Claim would

---

[4] At the hearing in the Bankruptcy Court, Inacom argued that it was irrelevant that Pro-Tec was listed on its Twenty-Ninth Amendment. The Bankruptcy Court agreed, acknowledging that "the debtors' 29th amendment is confusing. But, quite frankly, that was a year after the disallowance of this claim and I think it's essentially irrelevant to the issue of excusable neglect."

adversely impact Inacom or affect the finality of Inacom's judicial proceedings. To the contrary, as previously noted, Inacom is still litigating disputed claims. However, even were there such a showing, the court cannot discern a reason why the rationale of the Court of Appeals would be inapposite merely because the scene has shifted to the bankruptcy court. Under the circumstances of this case, the court concludes that allowing the Claim would not adversely impact Inacom.

The final *O'Brien* factor is whether allowance of the claim would open the floodgates to other future claims. The Bankruptcy Court determined that allowing Pro-Tec's Claim might subject Inacom to a large number of additional claims:

> I will observe that given the massive number of claims filed in this case and the equally massive number of objections that were filed with numerous exhibits attached to the objection, I really think that to allow this claim would potentially open the floodgates to hundreds of these applications being filed. And I think that would be a mistake at this very late stage of this case.

Tr. at 35:22-36:3. The court cannot agree. There is no evidence in the record that allowing the Claim would cause a "flood" of motions. Although Inacom argues that it is inconceivable that at least a fraction of the creditors would not file motions for reconsideration if the appeal was granted, Inacom has not asserted that any other creditor whose claim was eliminated by default has filed a motion for reconsideration.

Considering all of the *O'Brien* factors, the court determines that Inacom would not be prejudiced by reconsidering Pro-Tec's Claim. Inacom was not surprised by, or unaware of, the Claim. Inacom is still litigating the value of many of its claims, and still litigating claims objections. Moreover, Inacom has not shown through evidence in the record that it will be adversely impacted if Pro-Tec's claim is reconsidered. Finally, Inacom has not alleged that any other creditor whose motion was denied by default has filed a motion for reconsideration. The court, therefore, finds that

11

there is no prejudice to Inacom.

## 2. Length of Delay and Potential Impact on Judicial Proceedings

The court next considers the length of the delay and its impact on the judicial proceedings. The Bankruptcy Court found that "it would be a mistake" to allow the Claim because the case was at "a very late stage." While the Bankruptcy Court considered the delay's effect on the judicial proceedings, it did not "consider the length of the delay in absolute terms." *O'Brien*, 188 F.3d at 130. In the present case, Inacom filed the Objection on June 13, 2001. Pro-Tec did not respond. The Order disallowing the Claim issued on July 13, 2001. Pro-Tec still had not responded. Inacom's Twenty-Ninth Amendment was filed on July 22, 2002. Pro-Tec did not respond.[5] Inacom's Plan was confirmed on May 23, 2003, and, as of that time, there was still no response from Pro-Tec. Pro-Tec did not respond until February 2004, after it did not receive its expected distribution under the Plan. On April 2, 2004, Pro-Tec then filed its motion for reconsideration. Pro-Tec's motion was filed almost two years and ten months after the Objection, almost two years and nine months after the Order was served, and nine months after the Plan was confirmed. Pro-Tec argues that the length of the delay has no impact on the implementation of the Plan. Specifically, Pro-Tec asserts that Inacom is still litigating claims subject to the Objection and that creditors have been advised that distributions under the Plan are dependent on the claims resolution process. Pro-Tec also asserts that distributions to unsecured creditors are expected to occur between June 2003 and June 2008, and will be adjusted depending on Inacom's progress in resolving the claims. Lastly, Pro-Tec argues that Inacom is partly responsible for the delay because of the time it took for Inacom to move through the confirmation process. Inacom's Plan was confirmed almost three years after Inacom filed its

---

[5] Pro-Tec alleges that the Twenty-Ninth Amendment was not served on its counsel.

12

petitions.

Inacom argues that Pro-Tec's counsel's failure to respond, in and of itself, weighs in favor of denying the appeal. Inacom further argues that Pro-Tec's failure to respond after the Order warrants denying the appeal. In addition, Inacom argues that Pro-Tec should have attempted to contact Inacom to inquire about the Claim. Lastly, Inacom contends that the fact that it is still litigating and negotiating claims indicates that reconsidering Pro-Tec's Claim will delay closure of the case. The court agrees with Pro-Tec and finds Inacom's arguments unpersuasive. Nowhere in *Pioneer* or *O'Brien*, do the Supreme Court or the Third Circuit find that failure to respond, in and of itself, weighs in favor of denying the Claim. Additionally, there is no finding that the creditor must attempt to make contact with the debtor. When considering the delay's effect on the judicial proceedings in absolute terms, as *O'Brien* instructs, the court concludes that this *Pioneer* factor weighs in favor of Pro-Tec because Inacom is still litigating disputed claims and distributions to creditors are based on Inacom's progress in resolving the claims.

### C. The Reason for the Delay

The Bankruptcy Court determined that the cause of the delay was in Pro-Tec's control, because it is undisputed that Pro-Tec's counsel received the Objection and read it, but missed the objection to Pro-Tec's Claim. The Bankruptcy Court found that Pro-Tec's neglect did not fall within the *Pioneer* standard for excusable neglect:

> In looking at this document, I think it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection. And as I pointed out, your client's name and your name and address with the law firm is first item on Page 11, it's the first Exhibit E in the batch. And I don't see how you could miss it. But apparently you did miss it — I don't say you, someone in your office did, or they didn't even look at the document. And so I don't think that that falls within the *Pioneer* standard for

13

excusable neglect.  Presumably it is neglect.  Indeed, there's no basis for knowing what the young associate did, including the possibility that he lost the document before he ever looked at it or he just put it in a circular file and didn't look at it.  Or that he was otherwise plain remiss in performing his duties.

Tr. at 35:3-17.  It is clear in this case, that the delay was due to Pro-Tec's lack of care.  However, the concept of excusable neglect clearly anticipates neglect on the part of the party seeking to be excused.  *See Pioneer*, 507 U.S. at 388; *O'Brien*, 188 F.3d at 128.  The court, therefore, must decide whether Pro-Tec's delay was excusable.

Pro-Tec urges the court to follow *Pioneer* and *O'Brien*, in which the Supreme Court and the Third Circuit held that the debtors' inadequate notice contributed to the creditors' delay.  Pro-Tec argues that its delay in responding to the Objection was due in part to inadequate notice provided by Inacom.  Pro-Tec asserts that Inacom's Objection contested approximately 412 claims spread over 96 pages plus exhibits A through H.  Pro-Tec further asserts that the exhibits contained multiple lists, some of which were not in alphabetical order.  Pro-Tec argues that this type of notice is ambiguous and that even though its counsel failed to find the objection to its Claim, Inacom is partly responsible, like the debtors in *Pioneer* and *O'Brien*.  Inacom argues that Pro-Tec's comparison of the present case to the facts in *Pioneer* and *O'Brien* "misses the mark."  The Bankruptcy Court recognized that there are multiple schedules within the various exhibits attached to the Objection, some of which were not in alphabetical order, but determined that Inacom's notice was adequate, noting that "your [Pro-Tec's counsel's] client's name and your name and address with the law firm is [the] first item on page 11, it is the first Exhibit E in the batch.  And I don't see how you could miss it."  Tr. at 35:6-9.  The court agrees with the Bankruptcy Court and Inacom.

The notice that Inacom provided Pro-Tec is distinguishable from the notice provided by the

14

252

debtors in both *Pioneer* und *O'Brien*. In *Pioneer*, the Supreme Court held that the debtor's notice was inadequate because the bar date was placed in a notice regarding a creditors' meeting "without any indication of the significance of the bar date." *Pioneer*, 507 U.S. at 398. In *O'Brien*, the debtor gave notice in an application that was twelve pages long, consisting of twenty-four paragraphs. The three important paragraphs, which would provide notice to the contracting parties, were buried in the middle of the document and did not list the relevant contracting parties' names or claims. *O'Brien*, 188 F.3d at 129. The present case is distinguishable from *Pioneer* and *O'Brien* because Inacom's notice was not inconspicuous. Inacom provided notice in its Fifth Omnibus Objection to Claims. Unlike *Pioneer*, in which the bar date appeared in a notice of a creditors' meeting, the title of Inacom's document, which included the word "objection," should have alerted Pro-Tec that its Claim may be affected. Furthermore, unlike *O'Brien*, in which the contracting parties' names and claims were not provided in the relevant document, Pro-Tec's name and address and its counsel's name and address is the first item on Page 11 of the first Exhibit E. The court agrees with the Bankruptcy Court that "it would probably take maybe 15 or 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection."[6] Tr. at 35:4-6. The court finds that this *Pioneer* factor weighs in favor of Inacom.

---

[6] The court is not in accord, however, with the Bankruptcy Court's view that if the notice of objection to Pro-Tec's Claim had been on the second or third Exhibit E list, instead of the first, then it "might be excusable." Tr. at 26:3-6. This seems to suggest that Pro-Tec would have less responsibility for the delay if it had been in the middle of Exhibit E. However, as the Bankruptcy Court noted, "it would probably take maybe 15 to 20 minutes for an informed person to review the document to find out if any of its clients were affected by the objection." Tr. at 35:4-6. Thus, the court cannot see how Pro-Tec's inadvertence would be any more excusable if the notice had been on the second or third Exhibit E list.

### 4. Good Faith

The Bankruptcy court did not make any determination on the issue of whether Pro-Tec acted in good faith because Inacom acknowledged Pro-Tec's good faith at the April 20, 2004 hearing. In view of the agreement of the parties, the court finds that Pro-Tec and its counsel acted in good faith.

## V. CONCLUSION

In the present case, the court cannot say that the Bankruptcy Court failed to apply the *Pioneer* factors. In light of the Bankruptcy Court's consideration and weighing of the facts, the court concludes that the Bankruptcy Court engaged in a proper analysis under *Pioneer*. However, considering the *Pioneer* factors, the facts of the this case, and the equitable nature of excusable neglect, the court concludes that the Bankruptcy Court abused its discretion when it determined that Pro-Tec was not entitled to reconsideration of its Claim based upon excusable neglect. As the court in *Pioneer* observed, "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with . . . good faith . . . [of the appellant and its counsel], weigh strongly in favor of permitting the tardy claim." *Pioneer*, 507 U.S. at 398. In the present case, Pro-Tec has shown that there will be no prejudice to Inacom if its Claim is reconsidered, the delay's effect on judicial proceedings in absolute terms will not prejudice Inacom, and Pro-Tec has acted in good faith. The only *Pioneer* factor that weighs against Pro-Tec is the reason for the delay, for which Pro-Tec was fully responsible.

16

Tho court, therefore, will reverse the Bankruptcy Court's ruling denying Pro-Tec reconsideration of its Claim and remand this case to the Bankruptcy Court for proceedings consistent with this opinion.

Dated: October 4, 2004



UNITED STATES DISTRICT JUDGE

FILED

OCT 4 2004

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

17

255

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Related Docket Nos. 15871 and 15989 |

### ORDER GRANTING INACOM'S CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

Upon Inacom Corporation's Motion to Allow the Filing of a Proof of Claim after

the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(B)(1); and no

previous application for such relief having been made; and upon consideration of the Motion; it

is hereby

ORDERED that the Motion is hereby GRANTED.

Dated: _____, 2005

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Court Judge

42125-003\DOCS_DE:112347.1

256

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | Related Docket Nos. 15871 and 15989 |

### ORDER GRANTING INACOM'S MOTION FOR LEAVE TO FILE REPLY TO OBJECTION OF DEBTORS TO INACOM CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

Upon Inacom's Motion For Leave To File Reply To Objection of Debtors To

Inacom Corporation's Motion to Allow the Filing of a Proof of Claim after the Deadline for

Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(B)(1) (the "Motion for Leave"); and

no previous application for such relief having been made; and upon consideration of the Motion

for Leave; it is hereby

ORDERED that the Motion for Leave is hereby GRANTED.

Dated: _____, 2005

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Court Judge

42125-003\DOCS_DE:112346.1

257

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

**ORIGINAL**

IN RE:                                          :
                                                :
                                                :    Chapter 11
OWENS CORNING, *et al.*,                        :    Case Nos. 00-3837 (JKF)
                                                :    (Jointly Administered)
            Debtors.                            :

                                    **Related to Docket No. 15935
                                    Hearing Date: October 24, 2005 at 10:00 a.m.
                                    Agenda Item 15**

**ORDER, PURSUANT TO 11 U.S.C. § 1121(d), FURTHER
EXTENDING THE EXCLUSIVE PERIODS DURING WHICH
THE DEBTORS MAY FILE PLANS OF REORGANIZATION
AND SOLICIT ACCEPTANCES THERETO**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

having moved this Court by motion, dated September 29, 2005 (the "Motion"),[1] for entry of an

order pursuant to section 1121(d) of the Bankruptcy Code extending the exclusive periods of 11

U.S.C. § 1121 within which no other party may file a plan so that the Debtors may file and solicit

acceptances of a plan of reorganization through and including January 31, 2006, without

prejudice to requests of the Debtors for further extensions of the Exclusive Periods; and Certain

Bondholders ("Certain Bondholders") having filed a response to the Motion (Docket No. 16046);

and Credit Suisse, Acting through its Cayman Branch, as Agent ("Credit Suisse"), having filed a

limited objection to the Motion (Docket No. 16052), and a hearing having been scheduled with

respect to the Motion on October 24, 2005; and the Debtors, Certain Bondholders, and Credit

Suisse having agreed to continue the hearing on the Motion to the next omnibus hearing in these

cases; and the Court having previously entered an order extending the Exclusive Periods through

and including October 24, 2005,; it is hereby

---

[1]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in
       the Motion.

)

521372.1

**Docket #_16144_**

**Date_10-26-05_**

1.    ORDERED that, on consent of the parties, the hearing on the Motion is hereby continued until the next omnibus hearing in these cases which is currently scheduled for November 14, 2005 at 10:00 a.m.

2.    ORDERED that, the Exclusive Periods are, and hereby shall be, extended through and including the next omnibus hearing in these cases which is currently scheduled for November 14, 2005.

3.    ORDERED that, this Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: October 2⁴, 2005

_____
Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

528392.1                                      -2-

259

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| Debtors. | ) | Jointly Administered |
| | ) | Re: Docket No. 15871 |
| | ) | Hearing Date: October 24, 2005 |
| | ) | Agenda Item 13 |

## ORDER DENYING INACOM CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

This matter coming before the Court on Inacom Corporation's Motion to Allow

the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to

Bankruptcy Rule 9006(b)(1) [Docket No. 15871] (the "Motion") filed by Executive Sounding

Board Associates, Inc. as the Plan Administrator (the "Plan Administrator") for the reorganized

debtor Inacom Corporation and its related debtors (collectively, "Inacom"); the Court having

reviewed the Motion and Debtors' objection thereto; and it appearing that this Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of

this proceeding and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409; and

42125-003\DOCS_DE:112595.1

Docket # 16289
Date 11-10-05

adequate notice of the Motion having been given; and it appearing that no other notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is denied.

Dated: November 9 , 2005

Judith K. Fitzgerald

Honorable Judith K. Fitzgerald
United States Bankruptcy Court Judge

42125-003\DOCS_DE:112595.1                    2

261

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                             .        Chapter 11
                                   .
Owens Corning, et al.,             .
                                   .
        Debtor(s).                 .        Bankruptcy #00-3837 (JKF)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
October 24, 2005
10:00 a.m.

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtor(s):                 Norman Pernick, Esq.
                                   Saul, Ewing, LLP
                                   222 Delaware Ave.
                                   Wilmington, DE 19899

                                   Adam H. Isenberg, Esq.
                                   Saul, Ewing, LLP
                                   Centre Square West
                                   1500 Market street-38th Fl.
                                   Philadelphia, PA 19102

                                   Jeffrey C. Steen, ESq.
                                   Sidley Austin Brown
                                   & Wood, LLP
                                   Bank One Plaza
                                   10 South Dearborn Street
                                   Chicago, IL 60603

For Creditor's Committee:          William Sudell, Esq.
                                   Morris, Nichols, Arsht
                                   & Tunnell
                                   1201 North Market Street
                                   Wilmington, DE 19899

Docket # 16299
Date 11-10-05

262

2

| | |
|---|---|
| For Bank of America: | Eric Sutty, Esq.<br>The Bayard Firm<br>222 Delaware Ave.-Ste. 900<br>Wilmington, DE 19899 |
| For Credit Suisse First:<br>Boston | Timothy E. Graulich, Esq.<br>Weil Gotshal & Manges<br>767 Fifth Ave.<br>New York, NY 10153 |
| | Gary M. Becker, Esq.<br>Kramer, Levin, Naftalis<br>& Frankel, LLP<br>919 Third Ave.<br>New York, NY 10022 |
| For Certain Bondholders: | Lewis Kruger, Esq.<br>Stroock Stroock & Lavan<br>180 Maiden Lane<br>New York, NY 10038 |
| | Kenneth Pasquale, Esq.<br>Stroock Stroock & Lavan<br>180 Maiden Lane<br>New York, NY 10038 |
| For Asbestos Claimants: | Marla Eskin, Esq.<br>Campbell & Levine, LLC<br>1201 North Market St.-Ste. 1501<br>Wilmington, DE 19801 |
| For Futures Representative: | Sharon Zieg, Esq.<br>Young, Conaway, Stargatt<br>& Taylor, LLP<br>The Brandywine Bldg.<br>1000 West St.-17th Fl.<br>Wilmington, DE 19801 |
| | Edmund M. Emrich, Esq.<br>Kaye, Scholer, LLP<br>425 Park Ave.<br>New York, NY 10022 |
| For Baron & Budd, Reaud:<br>Morgan & Quinn | Sander L. Esserman, Esq.<br>Stutzman Bromberg Esserman<br>& Pfilka, PC<br>2323 Bryan St.-Ste. 2200<br>Dallas, TX 75201 |

3

| | |
|---|---|
| For Century: | Linda Carmichael, Esq.<br>White & Williams, LLP<br>824 N. Market St.–Ste. 902<br>Wilmington, De 19899 |
| | Joseph Gibbons, Esq.<br>White & Williams, LLP<br>824 N. Market St.–Ste. 902<br>Wilmington, De 19899 |
| For Asbestos Claimants: | Marla Eskin, Esq.<br>Campbell & Levine, LLC<br>1201 North Market St.–Ste. 1501<br>Wilmington, DE 19801 |
| | Peter Lockwood, Esq.<br>Caplin & Drysdale<br>One Thomas Circle, N.W.<br>Washington, DC 20005 |
| For Inacom Corp.: | Laura Davis Jones, Esq.<br>Pachulski Stang Ziehl Young<br>Jones & Weintraub, PC<br>919 N. Market St.–17th Fl.<br>Wilmington, DE 19899 |
| | Alan Kornfeld, Esq.<br>Pachulski Stang Ziehl Young<br>Jones & Weintraub, PC<br>919 N. Market St.–17th Fl.<br>Wilmington, DE 19899 |
| (Via telephone) | |
| For The Debtor:<br>(Via telephone) | Anna Engh, Esq.<br>Covington & Burling<br>1201 Pennsylvania Ave., N.W.<br>Washington, DC 20004 |
| (Via telephone) | Barbara Yglesias, Esq. |
| For Kesington International:<br>Springfield Assoc.<br>(Via telephone) | K. John Shaffer, Esq.<br>Stutman Treister & Glatt, PC<br>1900 Ave. of the Stars–12th Fl.<br>Los Angeles, CA 90067 |

4

|                               |                                     |
|-------------------------------|-------------------------------------|
| (Via telephone)               | Issac M. Pachulski, Esq.<br>Stutman Treister & Glatt, PC<br>1900 Ave. of the Stars-12th Fl.<br>Los Angeles, CA 90067 |
| For AIG Insurance:<br><br>(Via telephone) | Michael Davis, Esq.<br>Davis, Polk & Wardwell<br>450 Lexington Ave.<br>New York, NY 10017 |
| For Foster & Sear, LLP:       | Bruce H. White, Esq.<br>Greenberg Traurig, LLP<br>600 Three Galleria Tower<br>13155 Noel Road<br>Dallas, TX 75240 |
| For The Creditor's Committee:<br><br>(Via telephone) | Lowell Gordon Harris, Esq.<br>Davis, Polk & Wardwell<br>450 Lexington Ave.<br>New York, NY 10017 |
| For Roberta A. DeAngelis:<br>(Acting US Trustee-Reg.3) | David Klauder, Esq.<br>USTP<br>Department of Justice<br>844 King Street-Ste. 2313<br>Lock Box 35<br>Wilmington, DE 19801 |
| Audio Operator:               | Brandon McCarthy                    |
| Transcribing Firm:            | Writer's Cramp, Inc.<br>6 Norton Rd.<br>Monmouth Jct., NJ 08852<br>732-329-0191 |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

265

5

1          THE COURT:  Good morning.  Please be seated.  This is

2    the matter of <u>Owens Corning</u>, #00-3837.  The list of

3    participants I have by phone are Anna Engh, Barbara Yglecias,

4    Gordon Harris, John Shaffer, Joseph Gibbons, Michael Davis,

5    Monty Travis, Bruce White, Marti Murray, Scott Beechert, Daniel

6    Chandra, David Witkin, Rebecca Packholder, Gary Pachulski.  And

7    good morning, Mr. Pernick.

8          MR. PERNICK:  Good morning, Your Honor.  Norman

9    Pernick on behalf of the Debtors.

10          THE COURT:  Why don't I take -- quickly, folks --

11    line up, let's just do introductions now and get the record

12    fixed.

13          MR. ROLEN:  Good morning, Your Honor.  Andrew Rolen

14    on behalf of the Bondholders and Trade Creditors.

15          MS. ESKIN:  Marla Eskin, Campbell & Levine, on

16    behalf of the Asbestos Claimants Committee.

17          MR. BECKER:  Gary Becker on behalf of Credit Suisse

18    First Boston as agent.

19          MR. LOCKWOOD:  Peter Lockwood of Caplin & Drysdale

20    on behalf of the Asbestos Committee.

21          MR. SUDELL:  William Sudell of Morris Nichols on

22    behalf of the Creditors Committee.

23          MR. EMRICH:  Edmund Emrich with Kaye, Scholer for

24    the Futures Representative.

25          MS. ZIEG:  Sharon Zieg of Young, Conaway, Stargatt &

6

1    Taylor, also on behalf of the Asbestos Futures Representative.

2         MS. JONES:   Laura Davis Jones, Pachulski Stang Ziehl

3    Young Jones & Weintraub, on behalf of Inacom.  Your Honor, I

4    would introduce to the Court my partner, Alan Kornfeld.  I did

5    move his admission this morning.

6         THE COURT:   All right.  Thank you.

7         MR. KORNFELD:   Good morning, Your Honor.

8         THE COURT:   Good morning.

9         MR. ESSERMAN:   Morning, Your Honor, Sander L.

10   Esserman for Baron & Budd firm.

11        MR. PASQUALE:   Ken Pasquale from Stroock, for

12   Certain Bondholders.

13        MS. CARMICHAEL:   Good morning, Your Honor.  Linda

14   Carmichael of White & William on behalf of Century Indemnity.

15        MR. GIBBONS:   Good morning, Your Honor, Joseph

16   Gibbons on behalf of Century Indemnity from White & Williams.

17   I think you have me listed as on the phone, but I was able to

18   make it today.

19        THE COURT:   All right.  Thank you.

20        MR. ISENBERG:   Good morning, Your Honor, Adam

21   Isenberg, Saul, Ewing also on behalf of the Debtors.

22        THE COURT:   Okay.  Mr. Pernick.

23        MR. PERNICK:   Good morning, Your Honor.  Your Honor,

24   I have the following matters as being continued to November

25   14th -- that's Item #1, which is the supplement to the Motion

7

1   of the Unsecured Creditors Committee for the Appointment of a

2   Chapter 11 Trustee.  #2, which is related to that, the Debtor's

3   Motion for a Protective Order.  #3, which is the 29th Omnibus

4   Substantive Objection to claims and it's just as to that one

5   Claimant, T.F. -- I apologize if I don't say it right -- Tigert

6   company?  And #15, which is the Debtor's Motion for an Order

7   Pursuant to Section 1121(d) for an extension of exclusivity

8   period.  I'm actually going to deal with that one after I get

9   through the preliminaries.  I have a Form of Consensual Orders

10  to submit to the Court continuing that to the next hearing and

11  I can explain that in a moment.  Item #10, which is the

12  Debtor's Motion for an Order pursuant to 11 -- Section 11 USC

13  Sections 105 and 363 authorizing amendments to certain key

14  employment management severance agreements.  We're gonna need a

15  special hearing for that.  We've actually been in contact with

16  Chambers.  And we'll just renotice that once we get that

17  hearing date set.

18          THE COURT:  All right.

19          MR. PERNICK:  But right now, that's likely to be an

20  evidentiary hearing.  #5, --

21          THE COURT:  Pardon me, Mr. Pernick --

22          MR. PERNICK:  Yes.

23          THE COURT:  -- before you back off of 10.  Were you

24  talking to Pittsburgh staff or Ms. Fellow about a date?

25          MR. PERNICK:  Kate Stickles was handling -- I think

8

1    she talked to Pittsburgh.

2              THE COURT:  Okay.

3              MR. PERNICK:  And I know we have a couple of January

4    dates that are possible that we're just checking out.

5              THE COURT:  All right.

6              MR. PERNICK:  Item #5, which is the 33rd Omnibus

7    Objection of Claims.  We did file a Certification of Counsel on

8    that.  And the same for Item #12 --

9              THE COURT:  Was an Order entered on 5?  I'm sorry --

10             MR. PERNICK:  I did not see an Order on the record.

11   There were a number of Orders entered but that was actually the

12   only one where there was not one entered yet.

13             THE COURT:  Okay.  And what's next, 12?

14             MR. PERNICK:  Item #12 is the Motion of Century

15   Indemnity Company to Compel Assumption or Rejection of the

16   Wellington Agreements.  And we actually filed a Certification

17   of Counsel on that with a Consensual Order also.  And I believe

18   that if Your Honor has any questions, Anna Engh from Covington

19   & Burling is on the phone, to respond to those.

20             THE COURT:  Yes, I have not seen either -- I guess,

21   5 -- I thought I did see 5.  That was submitted -- I thought --

22   a while ago.  I'm -- so I'm surprised the Order isn't entered.

23   But I haven't seen the Certification on 12.

24             MR. PERNICK:  And 5 may be entered, it just didn't

25   show up on the docket yet, Your Honor.

9

1          THE COURT:  Okay.  So yes, I would like to know

2     what's happening with 12.

3          MR. PERNICK:  Okay.

4          MS. ENGH:  Okay.  Your Honor, Anna Engh on behalf of

5     the Debtors.  The -- Century filed a Motion to Compel

6     Assumption or Rejection of Wellington Agreement as executory

7     contract and for stay of arbitration pending assumption or

8     rejection of Wellington Agreement.  This relates to a pending

9     Wellington ADR coverage proceeding.  And we were able to reach

10    a consensual stipulation and the effect of the stipulation

11    would be that both Century and Owens Corning reserve on the

12    question of whether the Wellington Agreement is or is not an

13    executory contract and whether any cure amounts are due.  But

14    the Debtor agrees that it will not reject the Wellington

15    Agreement as an executory contract, that rulings in the

16    Wellington will be binding to the extent provided for in the

17    Wellington Agreement.  And that there will not be a stay of the

18    pending coverage ADR proceeding.  And that is a stipulation

19    that we filed together with the Certification of Counsel on

20    Friday.

21          THE COURT:  All right.  Thank you.  Good morning.

22          MR. GIBBONS:  Morning, Your Honor, Joseph Gibbons

23    for Century.  I agree with Mrs. Engh's presentation of the

24    stipulation.

25          THE COURT:  Okay.  I'll take a look at it when I see

10

1  it so that I can take a look at -- so that I can more fully

2  understand the terms of what you've agreed to.  It sounds as

3  though I'll enter it, but I want to see it.

4          MS. ENGH:  Okay, thank you, Your Honor.

5          THE COURT:  Thank you.

6          MR. PERNICK:  Your Honor, the Court did enter orders

7  on #4, #6, #7, #8, #9, #11 and #14.  That leaves us with a

8  couple of items.  I have as going forward item #13, which is

9  Inacom's Motion to Allow the Filing of a Late Proof-of-Claim

10  and #16, which is really just a status conference.  And then

11  #15 which is the Exclusivity Order.  So I think I'd like to

12  deal with 15 and 16, 'cause I think they'll be quick --

13          THE COURT:  All right.

14          MR. PERNICK:  -- and that'll leave us with Inacom.

15  On item #15, as the Court may recall, the Exclusivity Order

16  that's in effect right now extends exclusivity through today

17  and the banks at the end of the week suggested that we continue

18  the hearing with the Court's -- if the Court's agreeable to the

19  November 14th hearing.  I'm pleased to report the parties are

20  still talking, the negotiations are still substantive and the

21  parties are hopeful that we'll be able to reach a resolution.

22  No matter what, the commitment that the Court required and that

23  we are still making is that no matter what, the Debtor will be

24  filing a Confirmable Plan by the end of the year.  We're still

25  on track to do that.

271

11

1      And the only other statement just for the record is

2    there's obviously a fair number of statements in the bank's

3    pleading that they filed, which are objectionable to the Debtor

4    and we don't believe are accurate.  I don't think it's

5    productive to deal with those today.  It's one of the reasons

6    that we've all agreed with the Court's consent to continue the

7    hearing over.  Hopefully we won't have a full hearing on the

8    14th.  We'll either have a Plan far enough along that the

9    parties won't be contesting the short extension that the Debtor

10   requested, but I can't say that right now so that's everybody's

11   hope or at least a possibility.  And we're just gonna take this

12   step by step.

13          THE COURT:  Right.  Does anyone object to an

14   extension until November 14th?

15          MR. PERNICK:  We have passed the Form of Order,

16   which I'll hand up to the Court in a moment with permission, to

17   all of the key constituents and everybody's agreeable to the

18   Form of Order.

19          THE COURT:  All right.  I'll take it.  Thank you.

20   And just for the benefit of the Court and the parties in the

21   Courtroom, the Order is very short and sweet.  It says that on

22   consent of the parties, the hearing on the motion is continued

23   to the November 14th hearing at 10 a.m., that the exclusive

24   periods are extended through and including the next omnibus

25   hearing in these cases, which is currently scheduled for the

12

1  14th.  And it's ordered that the Court shall retain

2  jurisdiction to hear and determine all matters arising from the

3  implementation of the Order.

4          THE COURT:  Okay.  You gave me several copies.  Do

5  you need signed copies back?

6          MR. PERNICK:  No, I don't.  I just gave you an

7  original and one.  I don't know if you need the second one or

8  not.  I'm sorry.

9          THE COURT:  Okay.  Thank you.

10         MR. PERNICK:  Item #16 is the status conference

11  regarding the Official Committee of Unsecured Creditors

12  Professionals.  I know the report was filed during the week

13  last week.  I don't know if the Court has any questions but I

14  believe that counsel for the parties is here to deal with that.

15         THE COURT:  Actually, unless there's some

16  supplement, I think at this point in time it's not productive

17  for me to make a change, so I don't expect to do anything

18  except ask for another status report next month.  If there's no

19  change, you can just tell me orally that there's no change.  If

20  you're negotiating I'm comfortable keeping this the way it is,

21  but when the negotiations -- on the Plan, that is -- stop and

22  at some point in time then I still want to look at this issue.

23  So unless there's some supplement, I'll hear it from you next

24  month rather than this month.

25         MR. LOCKWOOD:  Understood, Your Honor.

273

13

1          THE COURT:  Okay.

2          MR. PERNICK:  Your Honor, just to clarify.  So even

3   if there is no change, you would still like the Committee or

4   counsel to file a quick statement that says that just so you're

5   aware?  Or not?

6          THE COURT:  I think it would be helpful for me just

7   to have somebody say, you know, nothing's changed.  And I am

8   confident that with certain issues on appeal and some other

9   matters that you're going to intend to litigate in the event

10  that you can't consensually resolve it, that for now you need

11  separate counsel.  I've been saying I think at some point that

12  has to end.  I don't -- I'm not comfortable that this is the

13  time to end it.  But I'd still like you folks to be analyzing

14  that month by month so that I can analyze it month by month.

15  So, yes, I would -- except for next month based on the fact

16  that your negotiations are under way, something that simply

17  says there's no material change and that's fine.  Then for the

18  month after that, I want another status report to find out how

19  you're doing.  Okay?

20          MR. LOCKWOOD:  Your Honor, we'll undertake to do

21  that.

22          THE COURT:  Okay.  Thanks.

23          MR. PERNICK:  Thank you, Your Honor.  That leaves us

24  with item #16 and I'll turn the podium over.  Oh, I'm sorry.

25  Item #13, I apologize.

14

 1      (Pause in proceedings)

 2            THE COURT:  Good morning.

 3            MS. JONES:  Good morning, Your Honor.  For the

 4   record, Laura Davis Jones of Pachulski Stang Ziehl Young Jones

 5   & Weintraub on behalf of the Inacom Corporation.  Your Honor,

 6   we have filed a Motion to Allow the Filing of a Late Claim in

 7   this case.  The Debtor has filed an objection and we have filed

 8   a reply.  Your Honor, from the papers, I think Your Honor can

 9   see that we all agree on what the four standards are that need

10   to be considered in determining whether excusable neglect

11   exists here.  And looking at those standards, Your Honor,

12   there's been no assertion of bad faith so I don't think we'll

13   have to deal with that issue.  And I think we both agree that

14   the Debtor's case is still in process, a Plan has not been

15   finally confirmed.  And claims are still being reviewed.  We

16   agree that Inacom is late with its claim, but the Debtor does

17   not agree that there is an excusable neglect for that delay,

18   which we assert there is.

19      Your Honor, we have a witness, Alaine Agie of Inacom, who

20   is here to provide evidence to the Court on why there was a

21   delay in Inacom filing its claim, and after the testimony I

22   would offer --

23            THE COURT:  I never take testimony on motions days,

24   Ms. Jones.  I don't have time.  You know, I start at 8:30 in

25   the morning, and I go until 6:30 at night with no witnesses,

15

1    and my Bench Order and my Case Administration Orders, and my

2    web site are all very clear about that.  So if you need an

3    evidentiary hearing you can ask for one, but today's not it.

4            MS. JONES:  Your Honor, I think it would be helpful

5    to the Court if we did provide you with the evidence.  We have

6    talked with counsel to see if we could reach an agreement on

7    filing the claim late and then later work through the numbers,

8    or whether we could work through the numbers first, and if the

9    amount of the claim made sense then later proceed with this

10   motion.

11       Debtor did want to proceed with the motion today, and we

12   were obviously willing to do that being it is our motion.  Your

13   Honor, so in terms of testimony, we will do what the Court

14   wants.  I believe the testimony that we would provide through

15   Ms. Agie would be about 10 minutes, and I expect there to be

16   some limited cross, but it would be mainly on why it was their

17   delay on filing the claim, which I think we have to burden to

18   prove to the Court.

19           THE COURT:  Mr. Isenberg?

20           MR. ISENBERG:  Yes, Your Honor.  Your Honor, for the

21   record, Adam Isenberg, Saul Ewing on behalf of the Debtors.

22   Your Honor, I will try to be brief, and I will try not to

23   repeat what I put in our objection to this motion.  As

24   Ms. Jones said, we did file an objection to this motion.  Your

25   Honor, just a couple of preliminary points.  This is not a

16

1   situation where a Creditor is a couple days, a couple weeks, or
2   a couple of months late.  We're 3½ years past the bar date,
3   Judge.

4       Second, Your Honor, this is not a situation where a Debtor
5   is trying to take advantage of the Creditor's mistake to
6   realize a windfall.  This is a claim that is vigorously
7   contested.  We scheduled this claim as disputed for a reason,
8   and we lay out that reason in the papers that we filed.

9       Finally, Judge, a couple of points regarding excusable
10  neglect.  We do not think these facts here could come close to
11  constituting excusable neglect.  For a couple of reasons.  Here
12  are the facts that I think Inacom admits in its papers, Judge.
13  I don't think these are controverted.  That Inacom's accounts
14  receivable collection team knew that the Owens Corning accounts
15  receivable was one of Inacom's largest receivables.  That
16  Inacom contacted its counsel to discuss the filing of a Proof
17  of Claim against Owens Corning, but that -- and I'll quote from
18  the motion, {quote} "Follow up by either Inacom employees or
19  counsel did not occur," {end quote}.  That Inacom received
20  notice of the Owens Corning bar date.  That Inacom actually
21  looked at its books and records in late 2001 to see if it had
22  any claims against Owens Corning, but {quote}, and I'll quote
23  from their motion again, "Apparently due to a misunderstanding
24  the Owens Corning accounts receivable were written off in
25  December of 2000, resulting in a loss of disability and follow

17

1  up," {unquote}. And that the it was only after being contacted

2  by a claims trader in November of 2004, about 10 months ago or

3  11 months ago, Judge, that they started looking into this.

4        Those are the facts that they admit, Judge.  I want to

5  just make a couple of observations regarding these facts, which

6  might help get at the equities of this, which is really the

7  underlying Pioneer standard.

8        First, Judge, Inacom seeks exculpation for its failure to

9  timely file a Proof of Claim, because of its downsizing.  It

10  says that it lost a bunch of employees because of its own

11  financial problems.  Couple of observations, Judge.  First,

12  this downsizing, again, based on an admitted statement in the

13  Inacom motion did not prevent Inacom from getting its bills out

14  for May and June of 2000, which is the relevant time frame

15  vis-a-vis this claim.

16        Second, Judge, this downsizing occurred in June of 2000.

17  The Owens Corning bar date was April 15, 2002, which was a

18  considerable period of time later, to the extent folks made a

19  mistake in writing off this claim, seemingly they would have

20  had plenty of time to fix that mistake.

21        Your Honor, Inacom explains that it did not file a Proof

22  of Claim, as I said, because it mistakenly wrote off this

23  account receivable.  Whether or not that happened is a fair

24  point, Judge, but you have to keep in mind that the bar date

25  materials that Owens Corning sent out specifically listed the

18

1   specific amount of these Proofs of Claims.  This is not a

2   situation where blank Proof of Claim forms would have been sent

3   to Creditors, Your Honor.  If the Court recalls, Owens Corning

4   amended and restated its schedules right around the time it

5   filed its motion for the establishment of a bar date.  The two

6   worked together, and --

7              MS. JONES:  Your Honor, I'm sorry, I hate to

8   interrupt, but -- and I really tried to be patient here.  Your

9   Honor suggested that we should not go forward with facts today

10  --

11             THE COURT:  No, I did not.  I said we should not go

12  forward with an evidentiary hearing.  I certainly expect to

13  hear the arguments on these motions, because frankly, based on

14  the admissions I don't know that I need an evidentiary hearing.

15  I really don't know that I need one.  If there is some

16  supplemental fact, Ms. Jones, that you have a witness here to

17  present, I think you should make me a proffer as to what that

18  witness is going to say so that I can see whether it's going to

19  change the analysis that's already in the papers.  Because I

20  think your briefs are very clear, the admissions are of record,

21  Inacom certainly had notice, it certainly investigated this

22  claim, it certainly decided affirmatively not to file one.  I

23  don't see how that's neglect at all, let alone excusable

24  neglect.  So if there's some fact that's going to show me that

25  that -- the conclusions from the papers are incorrect I'd like

19

1   to hear it.  Otherwise, I don't think we're going to get too
2   far with this.

3          MS. JONES:  Okay.  And I would like to offer that to
4   Your Honor, and I apologize to counsel for interrupting him,
5   but I did not understand that we were gonna go into him
6   characterizing our facts.  So, Your Honor, if I -- I don't know
7   if you want counsel to finish what he's saying -- I think he's
8   almost finished his closing arguments.  It would be helpful for
9   us to give you a very brief Offer of Proof on what our client
10  would say, and I think it is excusable neglect, Your Honor.

11         THE COURT:  All right.  Mr.  Isenberg, why don't I
12  stop your recitation, let Ms. Jones make me a proffer as to
13  what her witness would say, and then let you pick up your
14  recitation, because I'm not sure at this point how anything is
15  going to change what they've admitted.  But --

16         MR. ISENBERG:  Your Honor, of course that's fine.  We
17  did have concerns -- we have not -- we did not want to take the
18  -- we thought this was very clear that this is not excusable
19  neglect, and as a result we did not take discovery, we have not
20  done depositions, we have not seen documents.  We would like to
21  reserve the right to do that, Your Honor.  I mean, they're
22  gonna present a one-sided -- and I'm -- you know, that's our
23  view of the facts.  Maybe that's true maybe those facts are not
24  quite as stated, or maybe there are other facts, and obviously
25  we're not having an opportunity today to present that.

20

1          THE COURT:  Well, I agree, and as I stated, my web

2     site can't be clearer that I do not do testimony on evidentiary

3     -- or on motions days.  If you can read you can understand that

4     premise, and therefore I'm not going to take any testimony

5     today.  But nonetheless, it seems to me that if there is some

6     material fact as to which you do need discovery we ought to

7     look at that issue, and if -- even if the witness is called

8     it's not going to change my mind from what I see in the

9     admissions then I think we ought to just deal with it today.

10          MR. ISENBERG:  Thank you, Your Honor.

11          THE COURT:  Mr. Cart -- Cartwright, I'm sorry.

12          MR. KORNFELD:  It's Alan Kornfeld, Your Honor.

13          THE COURT:  Kornfeld, I'm sorry, okay.

14          MR. KORNFELD:  Thank you, no problem.  The witness we

15     have in Court today is Alaine Agie, who is Inacom's Vice

16     President of Operations, pre-petition, who is continued

17     post-Inacom's petition.  The date of Inacom's petition was June

18     16, 2000, to be responsible for, among other things, the

19     collection of accounts receivable.  Ms. Agie, if called as a

20     witness, would testify as following -- as follows.

21          That the Inacom bankruptcy was in essence a free fall

22     unplanned bankruptcy that arose out of the failure of Inacom to

23     find a solution to its enormous financial problems, as we

24     explained in our paper, that prior to the period of June 16,

25     2000, Inacom had $7 billion of yearly business, that in 1999

21

1    Inacom merged with a competitor, that merger is very relevant

2    to what we're here on today because as a result of that merger

3    there was an effort to merge accounting systems.  The effort to

4    merge accounting systems was a failure.  That failure created

5    problems with respect to the collectibility and the ability the

6    monitor accounts receivable.

7        In February of 2000, Ms. Agie would testify, there was a

8    sale of the hardware distribution business to Compac Computers.

9            THE COURT:  I'm sorry, when was that?

10           MR. KORNFELD:  February of 2000.

11           THE COURT:  All right.

12           MR. KORNFELD:  In the February 2000 sale that sale

13   also created accounting challenges, in particular, challenges

14   with respect to the collectibility and monitoring of accounts

15   receivable because the sale meant that certain accounts

16   receivable monitoring systems went to Compac, that sale of

17   accounts receivable monitoring systems was certainly anything

18   but smooth, as a result of accounting systems going to Compac

19   and Inacom still having to collect accounts that it had that it

20   had not sold there was even more dislocation and chaos in the

21   Inacom accounts receivable function.

22       Ms. Agie would testify in general about Inacom's

23   accounting, that Inacom's accounting was anything but

24   centralized, that as a result of the lack of centralization

25   there were problems in monitoring accounts receivable also.

22

1      Post-Inacom's petition, that is post-June 16, 2000, Inacom

2   was faced with a bankruptcy that was an unplanned bankruptcy.

3   The lack of planning and the loss of thousands of employees,

4   over 5,000 employees, certainly led to challenges with respect

5   to accounting systems in general and ability to collect

6   accounts receivable in particular.  Those accounting challenges

7   including the challenge of trying to remain on top of 5,370

8   accounts receivable, $138 million in accounts receivable that

9   Inacom had to collect, while at the same time being faced with

10   claims that were in excess of $4.3 billion.

11      All of the dislocation that Ms. Agie would describe that

12   happened pre-petition with respect to the accounting systems,

13   and if you will, chaos that was the Inacom bankruptcy planning,

14   or should I say lack of bankruptcy planning, would be the

15   subject of testimony and also tied into the fact that accounts

16   receivable monitoring was certainly not what Inacom would have

17   wanted, not what any company would have wanted, and Inacom was

18   left with a skeleton staff of employees to monitor accounts

19   receivable.  As we pointed out in our paper, the accounts

20   receivable function went over to a restructuring advisor,

21   Bridge & Associates, and they began to take over that function.

22      Now, with respect to the Owens Corning claim, let me

23   explain one critical problem that Ms. Agie would discuss with

24   the Court, and that is after the petition accounting systems

25   were moved from one computer system to another, from an

23

1    Oracle-type centralized system to a PC-based system.  As a

2    result of that movement accounts receivables were, if you will,

3    lost.  There was extensive effort made to monitor all of the

4    accounts receivable in this environment, but there were some

5    failures.  Owens was one of those failures.

6        Let's talk about what happened with Owens in particular.

7    Ms. Agie would testify that the responsibility for Owens was

8    Bridge & Associates responsibility, coordinated by Jeff

9    Williams.  Ms. Agie was also involved in the Owens accounts

10   receivable, and critically, as that accounts receivable was

11   being monitored, Owens filed for bankruptcy in October of 2000,

12   as the Court is well aware.  Inacom became aware that Owens had

13   filed for bankruptcy.  Inacom was aware that its claims were

14   scheduled.  But Inacom had by that time a system in place to

15   try to monitor its claims in bankruptcies of companies where it

16   had AR.  And Owens was part of that monitoring system.

17   Unfortunately, and perhaps, Your Honor, the most critical

18   mistake here, was that the Owens claim was listed on the

19   schedule, and that was a scheduled prepared by a paralegal at

20   our firm and discussed with Ms. Agie on frequent occasions,

21   almost on a weekly basis, critically on that schedule the Owens

22   claim was listed, but unfortunately it was listed as a claim

23   that had been filed in the Owens bankruptcy.  So that claim was

24   on a schedule, everybody thought it had been filed in the Owens

25   bankruptcy, and as we all know it was not.

24

1          THE COURT:  Wait.  This happened when the Debtor

2    filed bankruptcy in October and Inacom is in its own bankruptcy

3    and knows that a claim's bar date is being set and doesn't get

4    a claims bar date notice and yet thinks it's filed a claim?

5          MR. KORNFELD:  Inacom had scheduled its claims in

6    bankruptcies, Your Honor, that's correct.  It got the claims

7    bar date notice, it looked on its schedule --

8          THE COURT:  You got the bar date notice two years

9    later --

10          MR. KORNFELD:  It got the bar date notice two years

11    later, and I was -- and Ms. Agie would testify that once it got

12    the claims bar date notice Inacom did what any Debtor would do.

13    It would look on its schedule, it had about 30 bankruptcies it

14    was monitoring and scheduling.  It would look on the schedule,

15    the schedule would show Owens Corning, and then the schedule

16    has a line item that says, "Claim filed."  And that is, in

17    essence, the critical mistake.  And the reason for the --

18          THE COURT:  Well, it's a mistake, but the question is

19    is it excusable neglect?  It's clearly not neglect because

20    someone took the effort to determine that the claim was filed,

21    and as a result there's no neglect at all.  So I don't even

22    have to get to the question of whether it's excusable.  It's

23    not neglectful.

24          MR. KORNFELD:  Well, Your Honor, raises a good

25    question.  And the answer to that question is that it was

25

1   neglect because the source of that mistake was, as we

2   discussed, a change in computer systems when the information

3   was --

4           THE COURT:  So what?

5           MR. KORNFELD:  Well, when the information was

6   migrated from the large system to the PC-based system the

7   information didn't get transferred correctly.

8           THE COURT:  So it's another mistake, but it's still

9   not neglect.  You know, the problem is that somebody is dealing

10  on a deliberate basis with this Owens Corning claim.  If they

11  made a mistake, they made a mistake.  But the question is, is

12  there neglect?  The standard in <u>Pioneer</u> is excusable neglect.

13  Not every mistake that somebody makes.

14          MR. KORNFELD:  Well, Your Honor, in terms of the

15  argument, let me get to one more point factually, and then we

16  can address your argument but certainly in terms of

17  carelessness, and <u>Pioneer</u> talks about carelessness in the

18  <u>Bryant</u> case after <u>Pioneer</u> talks about carelessness.  There

19  can't be a more classic case of mistakes/carelessness/neglect

20  than this one.  This is a company that due to its bankruptcy

21  filing, this company being Inacom, that due to its bankruptcy

22  filing and due to the problems with its accounts receivable

23  system, and due to its problems trying to deal with the claims

24  that are filed in its bankruptcy case, with a skeleton staff is

25  doing everything possible to try to get its shop in order.  And

26

1   certainly when a company is trying to do that in the magnitude

2   --

3            THE COURT:  Every Chapter 11 Debtor is trying to do

4   that.  Some with less reduction in staff than others, and

5   sometimes even when the companies start to do well with an

6   increase in staff, but very few Debtors file Chapter 11,

7   maintain the same staff, don't get down to some skeleton crew,

8   especially when they're attempting to liquidate, don't have

9   problems with accounts receivable.  If anything, the heightened

10  duty that the officers and directors of that company have to

11  their own Shareholders and Creditors would mean that they'd

12  monitor this with more care, not less.

13           MR. KORNFELD:  Absolutely, and they --

14           THE COURT:  I absolutely can't see how this is

15  neglectful.  It was deliberate course of events.  They simply

16  made a mistake.

17           MR. KORNFELD:  Your Honor, I simply disagree that

18  this was --

19           THE COURT:  Well, you've got an appeal right.

20           MR. KORNFELD:  Well, this was not a deliberate course

21  of events.  What this company --

22           THE COURT:  Well, it certainly was.  You just

23  described the deliberation.  You were meeting on a nearly

24  weekly basis to discuss the Owens claim.  The accounting people

25  were aware of it.  They knew about the bankruptcy, they knew it

27

1   was disputed.  They got the Proof of Claim.  They checked to

2   determine whether, in their own system, they needed to do

3   something and determined that they didn't, when in fact they

4   did.  That is not neglectful.  That is deliberate.

5          MR. KORNFELD:  Your Honor, the neglect is they

6   thought they had filed a claim.

7          THE COURT:  But that's -- that --

8          MR. KORNFELD:  When they thought they had filed a

9   claim they discussed whether they filed a claim, they looked on

10  the records where they were supposed to monitor claims --

11         THE COURT:  <u>Pioneer</u> does not open up the entire world

12  for everybody's mistakes.  There are other remedies for

13  mistakes.  Go collect on your other remedies for the mistakes.

14         MR. KORNFELD:  Your Honor --

15         THE COURT:  Filing a Proof of Claim here isn't the

16  remedy.

17         MR. KORNFELD:  Your Honor, let me go into some other

18  facts that I think might be of interest to the Court.

19         THE COURT:  Quickly, because you're already past the

20  10 minutes of testimony that I was told this would be.  It's

21  already been 20 minutes, and you're still making a proffer.

22  So, all right, let's get to it.

23         MR. KORNFELD:  If I may, Your Honor.  The other fact

24  was this only became a subject of Inacom's awareness in

25  November '04 when Inacom was contacted by claims traders --

28

1    THE COURT:  No, it became a subject of awareness at
2    least by April of 2002, or approximately then when the bar date
3    expired, not to mention when it got notice that it was listed
4    as a disputed Creditor in Owens' bankruptcy case in October of
5    2000, and then again in 2004 when it was contacted by a claims
6    trader.  It had notice of the bankruptcy in 2000, it had a bar
7    date in 2002, and then it had this effort to purchase a claim
8    which no longer exist because it wasn't timely filed in 2004.

9    MR. KORNFELD:  Your Honor, when it had notice of the
10   claims bar date it looked on its claims schedule, and on it
11   claims --

12   THE COURT:  We've been past that.  I've already ruled
13   on that.

14   MR. KORNFELD:  -- schedule -- but in November of '04,
15   Your Honor, when Inacom was contacted by a claims trader Inacom
16   began looking into the process of trying to sell this claim.
17   And what Inacom did, and Ms. Agie would testify, she picked up
18   the phone and she called Owens Corning, and she spoke to a
19   Jeremy Miller at Owens Corning, and she asked Mr. Miller the
20   status of the Inacom claims, and he was told you have a claim
21   in the amount of roughly $3 million.  And apparently, Your
22   Honor, Owens Corning also thought that Inacom had a claim.
23   Only upon --

24   THE COURT:  The standard isn't whether Owens thinks
25   anything.  The question is was the claim timely filed, and if

29

1   not, was the lack of filing excusable neglect, not by the

2   Debtor.  The Debtor already listed this as a disputed claim.

3   The Debtor did everything it had to do.  But by Inacom.

4        MR. KORNFELD:  Your Honor, this is a case where a

5   company tried to do -- Inacom tried to do everything within its

6   power --

7        THE COURT:  Well, it may have.

8        MR. KORNFELD:  -- to stay on top of this bankruptcy.

9        THE COURT:  But it made mistakes.

10        MR. KORNFELD:  It did make mistakes, and Your Honor,

11   we would respectfully submit that these are the type mistakes

12   that come within the standard of Pioneer.

13        THE COURT:  And I've already said I disagree.  There

14   is nothing, a) excusable in the fact that you don't double

15   check a record to make sure that a claim has been filed when

16   you've got outside counsel apparently working with you on that

17   issue.  You certainly can pick up the phone and call counsel

18   and say, "Did you really file the claim?"  That's #1.  But even

19   if you don't do that, relying on your own records when you are

20   telling me that your records are in such a shambles that

21   they're not reliable is itself not excusable.

22        MR. KORNFELD:  Your Honor --

23        THE COURT:  And that may be neglectful, but it's

24   certainly not excusable.

25        MR. KORNFELD:  Your Honor, the record that was being

30

1   relied upon was a schedule that was prepared by counsel, that

2   was exchanged with the company, that everybody looked at and

3   frequently discussed.

4           THE COURT:  That's what I said.

5           MR. KORNFELD:  And of all --

6           THE COURT:  There may be other remedies, but the late

7   filing of the claim in this case isn't it.  So I see no need

8   under this proffer for an evidentiary hearing, because even if

9   all of those facts were produced in evidence by a witness, even

10  without cross examination, I would not find that they rise to

11  the level of excusable neglect for the reasons that I've

12  already expressed.  Mr. Isenberg, do you still need some

13  discovery?  I'm prepared to make this ruling.

14          MR. ISENBERG:  I don't think so, Your Honor.

15          THE COURT:  All right.  I will take an Order from --

16  I don't -- Ms. Jones, do you want to prepare it with

17  Mr. Pernick and submit it on a certification that will deny the

18  motion to file the late claim?  I'm not asking for your

19  consent, I just want to make sure that it reflects the record

20  correctly.

21          MS. JONES:  We'll do that, Your Honor.

22          THE COURT:  All right.  Mr. Pernick?

23          MR. PERNICK:  Your Honor, the Debtor has nothing

24  further.

25          THE COURT:  Housekeeping matters?

31

```
1          ALL:  (No verbal response).

2          THE COURT:  Okay, we're adjourned.  Thank you.

3          MR. PERNICK:  Thank you, Your Honor.

4      (Court adjourned)

5

6                      CERTIFICATION
7   I certify that the foregoing is a correct transcript from the
8   electronic sound recording of the proceedings in the above-
9   entitled matter.
10

11   𝓛𝑒𝑤𝑖𝑠 𝒫𝑎𝑟ℎ𝑎𝑚                    11/1/05

12   _____        _____
13   Signature of Transcriber              Date
```

292

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        .          Chapter 11
                              .
Owens Corning, et al.,        .
                              .
        Debtor(s).            .          Bankruptcy #00-3837 (JKF)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Wilmington, DE
October 24, 2005
10:00 a.m.


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JUDITH K. FITZGERALD
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For The Debtor(s):                 Norman Pernick, Esq.
                                   Saul, Ewing, LLP
                                   222 Delaware Ave.
                                   Wilmington, DE 19899

                                   Adam H. Isenberg, Esq.
                                   Saul, Ewing, LLP
                                   Centre Square West
                                   1500 Market street-38th Fl.
                                   Philadelphia, PA 19102

                                   Jeffrey C. Steen, ESq.
                                   Sidley Austin Brown
                                   & Wood, LLP
                                   Bank One Plaza
                                   10 South Dearborn Street
                                   Chicago, IL 60603

For Creditor's Committee:          William Sudell, Esq.
                                   Morris, Nichols, Arsht
                                   & Tunnell
                                   1201 North Market Street
                                   Wilmington, DE 19899

293

2

For Bank of America:           Eric Sutty, Esq.
                               The Bayard Firm
                               222 Delaware Ave.-Ste. 900
                               Wilmington, DE 19899

For Credit Suisse First:       Timothy E. Graulich, Esq.
Boston                         Weil Gotshal & Manges
                               767 Fifth Ave.
                               New York, NY 10153

                               Gary M. Becker, Esq.
                               Kramer, Levin, Naftalis
                               & Frankel, LLP
                               919 Third Ave.
                               New York, NY 10022

For Certain Bondholders:       Lewis Kruger, Esq.
                               Stroock Stroock & Lavan
                               180 Maiden Lane
                               New York, NY 10038

                               Kenneth Pasquale, Esq.
                               Stroock Stroock & Lavan
                               180 Maiden Lane
                               New York, NY 10038

For Asbestos Claimants:        Marla Eskin, Esq.
                               Campbell & Levine, LLC
                               1201 North Market St.-Ste. 1501
                               Wilmington, DE 19801

For Futures Representative:    Sharon Zieg, Esq.
                               Young, Conaway, Stargatt
                               & Taylor, LLP
                               The Brandywine Bldg.
                               1000 West St.-17th Fl.
                               Wilmington, DE 19801

                               Edmund M. Emrich, Esq.
                               Kaye, Scholer, LLP
                               425 Park Ave.
                               New York, NY 10022

For Baron & Budd, Reaud:       Sander L. Esserman, Esq.
Morgan & Quinn                 Stutzman Bromberg Esserman
                               & Pfilka, PC
                               2323 Bryan St.-Ste. 2200
                               Dallas, TX 75201

3

| | |
|---|---|
| For Century: | Linda Carmichael, Esq.<br>White & Williams, LLP<br>824 N. Market St.-Ste. 902<br>Wilmington, De 19899 |
| | Joseph Gibbons, Esq.<br>White & Williams, LLP<br>824 N. Market St.-Ste. 902<br>Wilmington, De 19899 |
| For Asbestos Claimants: | Marla Eskin, Esq.<br>Campbell & Levine, LLC<br>1201 North Market St.-Ste. 1501<br>Wilmington, DE 19801 |
| | Peter Lockwood, Esq.<br>Caplin & Drysdale<br>One Thomas Circle, N.W.<br>Washington, DC 20005 |
| For Inacom Corp.: | Laura Davis Jones, Esq.<br>Pachulski Stang Ziehl Young<br>Jones & Weintraub, PC<br>919 N. Market St.-17th Fl.<br>Wilmington, DE 19899 |
| | Alan Kornfeld, Esq.<br>Pachulski Stang Ziehl Young<br>Jones & Weintraub, PC<br>919 N. Market St.-17th Fl.<br>Wilmington, DE 19899 |
| (Via telephone) | |
| For The Debtor:<br>(Via telephone) | Anna Engh, Esq.<br>Covington & Burling<br>1201 Pennsylvania Ave., N.W.<br>Washington, DC 20004 |
| (Via telephone) | Barbara Yglesias, Esq. |
| For Kesington International:<br>Springfield Assoc.<br>(Via telephone) | K. John Shaffer, Esq.<br>Stutman Treister & Glatt, PC<br>1900 Ave. of the Stars-12th Fl.<br>Los Angeles, CA 90067 |