1    asbestos non-property claims and filed motions for approval

2    of each of the settlements. With respect to the extension

3    itself, Mr. Krull would testify that in his opinion the

4    requested exclusivity extension through January 31, 2006 is

5    reasonable, and that it was intentionally a limited request.

6    The debtors will file a disclosure statement and confirmable

7    plan on or before 12/31/05 and will file a further motion to

8    extend exclusivity to be heard at the regularly scheduled

9    omnibus hearing on January 30th, 2006. By the January omnibus

10   hearing, it is Mr. Krull's belief and his intention that all

11   parties in the Court will have had an opportunity to review

12   the debtors' plan and the Court and the parties will have a

13   better understanding of what issues remain and the time that

14   will be necessary to bring the debtors' plan to confirmation.

15   Mr. Krull believes and hopes that the Court can at that time

16   consider the objections to the debtors' proposed exclusivity

17   time line by the banks or any other party in interest, and

18   the Court can do so with the benefit of knowing what the

19   debtors have proposed and what creditor groups support that

20   proposal. With respect to whether or not the debtors are

21   using the exclusivity to pressure creditors, Mr. Krull would

22   further testify that the debtors' request for an extension of

23   the exclusive periods is not a negotiation tactic intended to

24   do so, but is simply a reflection of the unique facts of

25   these cases and the current procedural status. And with

1    respect to whether or not the requested extension will

2    prejudice creditors, Mr. Krull would testify that to the best

3    of his knowledge, none of the debtors' creditors will be

4    unduly prejudiced by an extension of exclusivity through

5    January 31st.  He is familiar with some of the key terms of

6    the plan proposed by the bank debt holders as outlined in

7    their objection and as ascribed to debtors' counsel and after

8    reviewing the bank's plan with counsel, it is the company's

9    view based on the limited information provided by the banks

10   to date that the bank debt holders' plan is not confirmable.

11   Lastly, Mr. Krull would testify that the Asbestos Claimants

12   Committee, the legal representative for future claimants, the

13   designated members, and the bond bank holders represented by

14   Stroock, Stroock and Lavan do not object to the requested

15   extension and indeed are in support of it.

16          THE COURT: All right.  Anyone have a cross-

17   examination for Mr. Krull.

18          MR. GRAULICH: Good morning, Your Honor.  Timothy

19   Graulich of Weil, Gotshal & Manges for Credit Suisse as

20   agent.  Just as a point of clarification, I don't even know

21   if it would be required to bring Mr. Krull up to the stand

22   for this.  I believe I heard Mr. Pernick indicate that there

23   was a term sheet for a plan that's been circulated.  I just

24   wanted to clarify as to whether or not that it's the debtors'

25   position as to whether or not that term sheet has been

30

1    circulated to the bank group or whether or not it's only been

2    circulated to certain select creditor constituencies.

3            THE COURT: Mr. Pernick.

4            MR. PERNICK: No, Your Honor.  What I stated that

5    Mr. Krull would testify to and I certainly would attest to in

6    my argument, is that we first talked to the banks about their

7    proposal.  That was back in August just shortly after the

8    decision was rendered.  We then did not believe that that

9    proposal was going to be productive, and so we turned to try

10   and develop our own proposal, and we also let the banks and

11   asbestos try to reach an agreement.  When that agreement

12   didn't happen, we moved forward with what we thought would be

13   an appropriate proposal.  We tried to get the Asbestos

14   Claimants Committee and the futures rep on board with that.

15   There have been several iterations of that draft term sheet.

16   Our hope is that we will reach an agreement on that draft

17   term sheet, and then we then intend to take it to the bank

18   holders and the bondholders and see if we can't forge an

19   agreement with everybody.

20           THE COURT: All right.  So, it's not a term sheet in

21   the sense that I think counsel's referring to it as a term

22   sheet that's circulating, i.e., not all parties are on board

23   with it.  What you're doing is using some document as a

24   discussion tool between - with some but not all creditor

25   groups.

31

1          MR. PERNICK: Correct, and our plan is clearly to go

2    and try to get every creditor group on board with it, but it

3    has not been presented yet to the banks because we don't

4    believe we have enough support from the other constituencies

5    yet.

6          THE COURT: Okay.

7          MR. GRAULICH: Thank you for that clarification.

8          THE COURT: Anyone have any questions for Mr. Krull

9    in the nature of cross-examination?  All right.  Any

10   objections to the proffer that has been advocated?  There are

11   no objections.  I will accept the proffer.  No one is asking

12   for cross-examination, so the debtors' evidence is closed.

13   Does anyone wish to present any other witnesses?  No one is

14   asking to present any other testimony.  All right, Mr.

15   Pernick?

16         MR. PERNICK: Thank you, Your Honor.  Your Honor,

17   just to recap quickly the relevant exclusivity hearing.  As

18   the Court may recall at a September 26th hearing, the Court

19   directed that an amended plan and disclosure statement be

20   filed by the end of 2005, and the debtors have stated

21   publicly and again state today, that we will comply with

22   that, and Mr. Krull so testified, which was un-controverted.

23   We did file a motion on September 29th.  We made a very

24   tailored request, and that request was for exclusivity

25   through January 31, 2006 with a commitment to file a plan and

1     a disclosure statement by 12/31 of this year, and we felt as

2     we stated in the motion, as Mr. Krull's testified, that the

3     January 31 date would give the Court an appropriate

4     opportunity to consider the request for a further extension

5     and set an appropriate timetable after reviewing a plan of

6     reorganization and while I certainly didn't expect the banks

7     to say it in their objection, I'm a little surprised to even

8     see the objection or at least see it's still being

9     prosecuted.  I think that was a very tailored request, and it

10    was an intentionally tailored request.  We didn't ask for six

11    months and try to negotiate down to four or something.  We

12    thought we would try to do what was the most reasonable

13    approach, and I still think that that reasonable approach

14    holds.  At the October 24th hearing, we had an agreed order

15    which extended exclusivity until today, and that's where we

16    are.  We do have, I'll note again for the Court, an agreed

17    upon extension through January 31 except for this subset of

18    the banks, it's represented by Weil Gotshal, and I think

19    that's important to note.  The people that at least are

20    supporting or at least not objecting to this request are the

21    Asbestos Claimants Committee and there are people, I believe,

22    here from each of these constituents who will speak to this

23    if the Court deems necessary.  The Asbestos Claimants

24    Committee, the futures rep, the bondholders - what we'll call

25    the designated members that are represented by Anderson Kill

1    and then a group of dual holders, banks and bondholders, who

2    have filed a 2019 saying that they have a blocking position

3    in each one of those debts, the banks and the bonds, who say

4    that they don't object to this requested extension, and Mr.

5    Pasquale is in court today if the Court has any questions of

6    him.  With respect to cause, I think the Court heard in Mr.

7    Krull's testimony what the debtors efforts have been really

8    before August 15th but in particular after August 15th, and

9    after October 24th, which is only a couple of weeks ago.  As

10   the Court is aware now, the banks and the asbestos creditors

11   initially had serious discussions with facilitation by the

12   debtors.  Unfortunately, there is no deal yet, although while

13   I certainly can't prove this, it is the debtors' belief that

14   there was significant progress made, and that it laid the

15   groundwork for a potential deal in this case.  I don't think,

16   and I don't want to indicate that the debtor thinks that

17   those efforts were wasted, they just didn't produce a deal,

18   but there were substantial negotiations, and we believe

19   substantial progress made, and we believe that we'll be able

20   to build on that progress and hopefully reach, if not a

21   confirmable plan, a totally consensual plan.

22           THE COURT: You mean - Wait, say that again.

23           MR. PERNICK: Well, I think we'll get to at least a

24   confirmable plan, but we are hoping to get to a totally

25   consensual plan.

1          THE COURT: Yeah, you said it backwards.  I just

2     wanted to get the record straightened out.

3          MR. PERNICK: No, I appreciate that.  This is one of

4     those ones I don't want to get backwards, Your Honor.  We did

5     discuss during that period possible plan and settlement

6     structures, drafted term sheets for everybody's use and

7     discussion, performed financial and legal analysis.    So,

8     even during that period where the debtors weren't actually in

9     the room, the debtors were trying to do it because we do have

10    the most information.   We were doing a lot of analysis, tax

11    analysis, reorganization of entity analysis, legal analysis

12    for what a plan would look like so that when the parties, if

13    they reached a deal, we could then supplement it.   We

14    actually did draft a term sheet during that period that we

15    thought if the parties made a deal, we would then submit our

16    term sheet to them, modify it to reflect the deal, but it

17    probably would be more filled out then the term sheet that

18    was agreed to by the parties.   Unfortunately, that hasn't

19    happened, but the point is that there was a lot of groundwork

20    that was done by the debtors that we hope will lead to a

21    deal, and we certainly know will lead to a plan that we can

22    file by the end of the year.  With respect to the cost

23    factors, and we submit, Your Honor, that each one weighs in

24    favor of this short reasonable request of extension and that

25    it was very detailed in the motion and very detailed in the

```
 1    proffer, and I'm not going to go through all of them, but I
 2    want to make a couple of highlighted points.  First of all,
 3    the evidence is un-controverted that was presented.  Your
 4    Honor asked whether there was any cross-examination.  There
 5    wasn't.  Your Honor asked whether there was any other
 6    evidence to put in the record, and there wasn't.  So what we
 7    have is Mr. Krull's un-controverted evidence on these points.
 8    I don't think there's much of an argument on size and
 9    complexity of the case.  I don't even think there's much of
10    an argument on need for sufficient time to permit the debtor
11    to negotiate a plan.  I think the debtor has demonstrated to
12    the Court not just at this hearing, but really throughout
13    this case that the debtor has done whatever is necessary to
14    try to get a plan proposed.  The banks can quarrel with the
15    steps that we took, but I think we find it personally
16    offensive that they are arguing that somehow it wasn't in
17    good faith.  With respect to substantive consolidation, Your
18    Honor heard Mr. Epstein for the banks argue for two or three
19    years that two issues needed to be resolved before this case
20    could move forward.  Now, when it's convenient to argue the
21    other way, we're accused of acting in bad faith and of
22    litigating something that a federal district judge agreed
23    with us on, and that when the Third Circuit reversed, the
24    Third Circuit did set a new law.  I don't think on its face
25    that can be argued as bad faith, and I think that the Court
```

1  saw enough of our actions in the pleadings that we filed to
2  know what the real truth is on that.  With respect to the
3  debtor paying its bills as they come due, I mean, that's not
4  even an issue in this case.  Whether or not we've
5  demonstrated reasonable prospects for filing a viable plan of
6  reorganization, I think that Mr. Krull's proffer and my
7  argument have made those points.  Whether or not we've made
8  progress in negotiations with creditors, you know, we've
9  tried to walk the line at each hearing.  We are a public
10  company.  We've tried to say as much as we can on the record
11  while still abiding by those obligations, and we intend to
12  continue doing that, but I do think the record's pretty clear
13  that the debtor has made significant progress, and, Your
14  Honor, I would argue it even the other way.  Even if we
15  haven't, to say that we shouldn't have six more weeks to see
16  whether or not we could do it, seems to us to be almost
17  absurd, and we're not quite sure why we're even arguing about
18  it.  If we were asking for six more months to prove that,
19  maybe that would be a different argument, but that's not what
20  we're asking for.  We're asking for six more weeks to file a
21  plan, and we only asked for the additional 30 days to comport
22  with the Court's schedule.  If the Court wanted to find a
23  different date that we come in and argue exclusivity before
24  the omnibus hearing, that's fine, sometime in January.  We
25  just thought that that wasn't necessary, and we were hoping

1    to sort of use this time and stay productive in our use of

2    the time.  So the big picture in this case is that the

3    debtors will file a confirmable plan by 12/31.  Hopefully, we

4    will have everybody on board, but if not, we will have as

5    many constituencies as possible.  The banks really want

6    exclusivity conditioned on them being able to file a

7    competing plan and exercise their veto power if they don't

8    get what they want.  I'm not sure whether or not they're

9    going to get what they want.  I hope we reach a deal, but

10   really, it seems to me that this argument is premature.  I

11   think that the banks and if I can respectfully suggest the

12   Court might want to wait to see what we file and what we can

13   accomplish and who we can get on board with it before jumping

14   the gun and giving the banks some reason to file a plan that

15   really won't be that productive in this case, and if the

16   Court determines after you see our plan that we're not on the

17   right track, that it can't be confirmed, all these arguments

18   that are being made in the clouds, then you can deal with it

19   at the time.  I don't think there's any serious argument that

20   there will be prejudice between today and the time that you

21   will have that knowledge that supports anything but an

22   extension of the exclusivity period in this case.  The

23   debtors continue to have the best interest of the estate in

24   the forefront, notwithstanding what the banks conveniently

25   argue, depending on which side of an issue that they're on.

1  All of the constituents in this case agree, and in fact, it's

2  even better than some of the other arguments we've had

3  because we even have a major portion of the bank constituency

4  that agrees with that because they haven't objected to

5  exclusivity to the extension that we've requested, and that's

6  probably the most telling point of today's argument, and

7  that's the big shift.  We have a group of bondholders and

8  bank holders who represent that they have a blocking

9  position, who don't object to this requested extension.  So

10  now we have a subset of the bank group that is still pressing

11  an objection for whatever reasons they think are appropriate

12  from their own tactical prospective, but I think when you

13  step back and you look at this entire case and who is where

14  on this issue, I think the conclusion is pretty evident.

15  Your Honor, I think that's all I have for now.  I think I'll

16  reserve and deal with the objection to the extent it's still

17  being pressed.

18          MR. GRAULICH: Good morning, Your Honor.  Again,

19  it's Timothy Graulich of Weil Gotshal and Manges for Credit

20  Suisse First Boston as Agent.  Listening to Mr. Pernick's

21  comments, I'm curious as to - I think it's important to

22  actually try to reorient the hearing towards what the

23  objection really says and what the limited objection here was

24  trying to accomplish.  We are not trying to accomplish a, you

25  know, injecting chaos into the debtors' cases.  We are not

39

1   saying that the debtors haven't filed numerous claim

2   objections.  We're not even saying that the cases aren't

3   large.  What we're here to say is we need a change of the

4   paradigm of this case in order to get results that are

5   different than what have been obtained so far.  So far,

6   Judge, we've had five years of exclusivity, and we've had

7   five years without a confirmable plan and without a

8   consensus.

9          THE COURT:  Well, wait, that beast can't be laid

10  exclusively at the debtor's door because number one, it was

11  the bank group that convinced me, and in turn Judge Wolin,

12  that the issues ought to be bifurcated and addressed before

13  the plan confirmation hearing, which is the only reason that

14  we went forward with the disclosure statement and then held

15  up the notices until there was a ruling on substantive

16  consolidation.  You're now trying to flip the coin.  It was

17  the bank group that asked to have this result, and now you're

18  saying that it's the debtor's fault that you got what you

19  asked for.  It seems to me that if judicial estoppel

20  principles applied in this kind of context, you'd be

21  judicially estopped from raising this issue.

22         MR. GRAULICH:  Judge, just two responses to that.

23  First of all, none of this is intended as an attack on the

24  debtors.  In fact, we share the debtors' belief that a

25  consensual plan is the best exit to this case.  We share

1    their hope that a consensus will develop here.  The only

2    issue that we're bringing to the Court's attention is whether

3    or not we have placed the cases in the best possible position

4    to have those result obtained.

5            THE COURT: Well, if not, that issue lays squarely

6    at the door of the bank because the banks are the ones who

7    asked that it be done in this process and despite, you know,

8    arguments by a lot of people at the outset, the banks won

9    that issue.  So you've got what you asked for, you have to

10   live with the consequences.

11           MR. GRAULICH: But, Your Honor, I think you're

12   referring to the fact that the substantive consolidation

13   issue was argued prior to plan confirmation.  We'd be in the

14   exact same position had we gone to plan confirmation if the

15   District Court would have reached the same conclusion on Sub-

16   Con (phonetical).  Likely the Third Circuit would have

17   reached the same result anyway, so again, it's –

18           THE COURT: But we wouldn't have an exclusivity

19   issue at that point in time, and that's the difference.  Had

20   we gone through the plan process, we'd known that it was a

21   vote up or down.  We'd know that as a legal matter it was

22   confirmed or not.  We're not in that position because the

23   banks asked that we not be in that position.

24           MR. GRAULICH: The debtors still would have been the

25   position had the plan been submitted for voting, I'm certain

. 41

1    that they would have asked for an extension of exclusivity

2    anyway through the confirmation hearing.  So, I mean -

3            THE COURT: There would have been a confirmed plan.

4    That's how the issue would have gone up on appeal or not a

5    confirmed plan, but a determination one way or the other as

6    to confirmation.  That's how it would have gone on appeal.

7    And at that point in time, there is no exclusivity.  There

8    would have been a ruling on the plan.  The plan was either

9    confirmed or not.

10           MR. GRAULICH: Your Honor, I think we would have

11   been - the Sub-Con issue and the manner in which it was

12   raised, I don't think really makes a difference to where we

13   would be today.  Today really what we should be focusing on,

14   I think, is what will get us to a confirmable plan and what

15   will get us to a consensus, and the bank agent would suggest

16   that if we had a deadline, we've proposed December 31st, it

17   could be January 31st.  The date isn't an issue.  A real

18   deadline for the parties to realize that this is serious -

19   not to suggest that people aren't taking this seriously, but

20   to give it an extra sense of urgency, that this is the time

21   frame that you have to negotiate this plan.

22           THE COURT: I thought I made that pretty clear in

23   September that the debtor had until December 31st to hopefully

24   get all parties on board.  The debtor can't force parties to

25   agree.  It can only attempt to facilitate.

1          MR. GRAULICH: I understand that, and I think that

2    this would aid the debtor, if Your Honor would consider

3    terminating exclusivity –

4          THE COURT: Absolutely under no circumstances will I

5    consider terminating exclusivity now.  I will not do it.

6    It's seems to me that the debtor has done everything I've

7    ordered the debtor to do.  The banks requested the process to

8    go forward this way at the outset.  They won, and now they're

9    unhappy with the fact that because they won the issues –

10   they've been winning all along, and they're unhappy with the

11   fact that they're winning.  I don't know how you make a bank

12   happy if they're not happy when they win.

13         MR. GRAULICH: We just want to help make everybody

14   else win too, Judge.

15         THE COURT: Well, so do I, and the way to do it

16   isn't to put the banks in control.

17         MR. GRAULICH: Well, Your Honor, the fact – what

18   concerns me, and this was my point of clarification earlier,

19   what I'm hopeful for is that we're not going to be in the

20   position, which is what happened last time, which is that

21   essentially the debtors propose a plan that has the support

22   of certain folks and the banks are sort of left out in the

23   cold.  Now –

24         THE COURT: Well, look, that's the issue, Mr.

25   Graulich, that the debtors don't control.  That issue is

43

1    dependent on your client. If they don't like what the debtor

2    proposes, they have to come up with something that is

3    different that's going to make not just the debtor happy but

4    all the other constituent groups, and that's been the problem

5    from the outset. That's the reason why there was this little

6    group of banks that were permitted to have their own counsel

7    to go their own way, and that's what's happened. They've

8    gone their own way, and as a result, nobody else is talking

9    to them because they're not happy with the results. Look,

10   you won. I mean, you won. You got what you asked for, now

11   you have to live with the consequences.

12          MR. GRAULICH: Your Honor, my concern is, and just

13   to restate it again, is that, you know, there's a term sheet

14   apparently that's been circulated. Again, it seems to be

15   circulated to the same group that was the plan proponents of

16   the last plan. We're just trying to avoid the same dynamic

17   that obtained last time which is that a plan gets on file and

18   then it's a race to try and object to that plan as opposed to

19   actually getting the parties together before the plan is

20   filed.

21          THE COURT: All right. Mr. Pernick, with respect to

22   the term sheet issues, I appreciate the fact that you can't

23   put all these folks in a room and throw away the key until

24   they either kill each other or come out with an agreement,

25   because they'd probably end up killing each other first.

1    That's -

2             MR. PERNICK: We actually tried that, Your Honor,

3    and even though it didn't work the first time, we were kind

4    of thinking of doing it again and hoping they do kill each

5    other.

6             THE COURT: Well, maybe it's not such a bad idea to

7    have the debtor actually do a draft of what it thinks the

8    term sheet ought to look like and let people take potshots at

9    it, and if in fact you can't get a consensus, you can't.  If

10   that's still what the debtor thinks is in the best interest

11   of the estate, you file the plan, but that way, what I won't

12   hear when we get to the disclosure statement hearing the next

13   time, is that there has been a group left out in the cold

14   because they would have had an equal opportunity and if they

15   can't agree, then more's the pity.  They can't agree.

16            MR. PERNICK: Your Honor, I thought I was clear, but

17   I apologize if I wasn't.  We are not going to file a plan

18   without talking to each group and giving them the benefit of

19   our ideas about what that plan should be.  What we tried to

20   do - the interesting thing is, the fact that was left out, we

21   went to the banks first.  We really didn't think their idea

22   was one that would work.  We thought it was an interesting

23   one for them from a tactical prospective, but we didn't think

24   it was going to work with the Court, and we didn't think it

25   was going to work with the other constituencies.  We then let

1   them - because they wanted to, try to talk to each other, you

2   know, my mom would have yelled at me for making that mistake

3   again, but we let them try.  And then we said, you know what,

4   we're going to do our own term sheet, and now we're trying to

5   build support and we're making progress.  What this subset of

6   banks wants to do is try to take that away and dictate the

7   process.  They can't even get consensus from their own group,

8   Your Honor.

9        THE COURT:  Well, that's the problem and that's why

10  I was not happy about bifurcating out a group at the outset

11  because it seems to me that every time you, you know,

12  fractionalize things sometimes issue-wise you need to do it,

13  but the more fractionalized things become, the harder it is

14  to build a consensus, and so, I really - that's why I want a

15  legitimate - not legitimate, a detailed - that's what I'm

16  looking for - status report next month about why this process

17  still has to go on because frankly, just to try to build a

18  consensus, if nothing else, I'm starting to think that maybe

19  some of these groups need to be collapsed into one large

20  group.  So -

21       MR. PERNICK:  That's fine, Your Honor.  I mean, I

22  think we will give the Court an even further report at the

23  next hearing about who we've talked to and what's been

24  presented.  I would respectfully suggest to the Court that,

25  you know, I think we can have honest disagreements about

1    what's the right order to go in.  I think everybody would

2    agree that putting everybody in a room together hasn't worked

3    so far.  We don't think that's going to work.  So we're

4    trying to put groups together and get something that

5    everybody can agree to, and I actually think the banks should

6    just relax and wait a little while to see what we propose.

7    They might actually be a little bit surprised, and if they're

8    not, it's like Your Honor said, look, they've won one of the

9    major pieces of litigation.  If they're still not happy and

10   we're doing what comports with that result, which we will do

11   by the way.  We've read the decision.  We know what it means.

12   We're not stupid.  We know what it means, and we're going to

13   incorporate that into a plan.

14        THE COURT:  Okay.  Make sure - this is my order,

15   that the debtor circulates a term sheet to all constituent

16   groups before it files its plan in sufficient time for the

17   constituent groups to react to that term sheet so that in the

18   event that there is a spark of hope that there can be a

19   consensus, that the debtor can then go back to those groups

20   and attempt to, you know, tweak to the extent that it is

21   necessary for that term sheet.  If the effort fails, then it

22   will not be for the debtor's lack of effort.  That's what I

23   want to see, the debtor's effort.  I'm not purporting to

24   suggest to the debtor when and how to go about doing it

25   except to set the time line.  I want it done in enough time

1    that the groups can react and the debtor has some opportunity

2    to renegotiate with other groups based on the comments that

3    its obtained.

4    MR. PERNICK: Absolutely, Your Honor.  That was our

5    plan, and we will execute that in accordance with the Court's

6    orders also.

7    THE COURT: Okay.  Let me hear from Mr. Graulich.

8    Mr. Graulich?

9    MR. GRAULICH: Your Honor, I just wanted to make - I

10   understand Your Honor's rule, and I just wanted to make a

11.  couple of observations though.  Mr. Pernick has just

12   indicated and there's no reason to doubt what he said that

13   the debtors have tried various different things, locking the

14   parties in a room, talking to people separately, talking to

15   people together, and this is not to cast aspersions onto

16   anybody, it's just - and look at the result.  The result is

17   that there wasn't a consensus.

18   THE COURT: Look, this is a minority group.  As far

19   as I understand cram-down still applies.  If you're in a

20   position where there's a cram-down motion you deal with it.

21   That's the end of it.  The debtor has done everything that a

22   debtor ought to do to try to move these cases to conclusion.

23   It's not the debtor's, I guess, it's not anybody's fault.

24   It's not really a fault analysis.  But it's not the debtor's

25   control that led to the issues that went on appeal, that got

1    reversed, that led the whole thing back.  I feel like I ought

2    to be reciting a nursery rhyme that this led to that to the

3    other thing.  But, nonetheless, having said all of that, it

4    seems to me that the debtor is the appropriate entity to

5    retain control of this case through the time when I ordered

6    the debtor to file the plan December 31st and to, if it's

7    going to, ask for another extension of exclusivity to be

8    heard in January, and I'm going to give the debtor that long.

9    Whether I'll extend it or not after that, I don't know, but

10   I'm going to extend it until then.

11        MR. GRAULICH: Your Honor, if I just may pick up on

12   just one comment that Your Honor just made.  As to cram-down,

13   I just wanted to, you know, lay all the issues out.  It's in

14   our objection a bit.   Based upon the fact that the Third

15   Circuit has ruled the way they have, the banks have the

16   majority of the claims down at the subsidiary levels, at

17   least for the important subsidiaries, and one of the things

18   that a bank plan would help get accomplished is the very goal

19   that I think the debtors want here, which is to keep those

20   subsidiaries together and not have a situation where the

21   banks, because of the size of their claims and against who

22   the claims are, that the banks are going to end up

23   effectively being the owners of these subsidiaries.  We're

24   trying to be helpful here, Judge.  We're trying to get the

25   debtors the result that they would want, and they're not

1   going to be able to cram-down a plan at the subsidiary level
2   over the banks' objections.  So, what we're trying to do is
3   both reach a consensus and also reach a point where a
4   confirmable plan will be on file.

5        THE COURT:  Well, okay.  I appreciate the fact that
6   the banks collectively - I'm not even sure it's disputed, but
7   at least from the banks' point of view, have the majority of
8   claims at some of the subsidiary levels, all right, based on
9   this ruling.  However, having said that, I am not aware - I
10  don't know the ins and outs of all the banks' agreements with
11  respect to voting.  It seems to me that there still may be
12  cram-down issues that may apply based on what the documents
13  say and if they do and that's what you're faced with, they
14  do, and frankly, that's a risk for the banks.  Why don't you
15  folks - What I really don't understand is five years into
16  this case why you're still fighting about it.  You know, the
17  debtor has finite resources.  The debtor has to satisfy all
18  constituents to some level in some degree.  The Bankruptcy
19  Code basically dictates without substantive consolidation
20  who's going to get paid what levels.  The only issue is from
21  what entity and will you transfer liens to somebody else.
22  You know, this isn't rocket science, folks.

23       MR. GRAULICH:  Your Honor, I cannot disagree, and I
24  think that if we had, you know, a real deadline to have those
25  real serious discussions -

1          THE COURT: I gave you those deadlines.  If you want

2     to honor them, fine.  I've imposed them.  That's the best I

3     can do.

4          MR. GRAULICH: Okay, thank you, Judge.

5          MR. LOCKWOOD: I think there's a line out there,

6     Your Honor.  Given what's been said by the banks or more –

7          THE COURT: Oh, Mr. Lockwood, this isn't the time to

8     challenge their comments really.  I mean –

9          MR. LOCKWOOD: No, no.  I just wanted to say

10     something for the record –

11          THE COURT: Okay.

12          MR. LOCKWOOD:  – about this process.  It is really

13     so much – not so much what they said as what they've

14     insinuated.  Frankly, there will be a term sheet.   I'm

15     confident of it, and it will be soon.  I mean we're working

16     on it, and what the banks' real complaint is, is that the

17     debtor is talking to the asbestos constituency about the

18     draft that's being circulated.  Well, that's because we know

19     what the banks' position is.  We don't need to have

20     discussions about it.  Their position is they get a hundred

21     cents on a dollar plus post-petition interest at a very, very

22     high rate, and we're trying – in many ways the irony of

23     having the banks here complaining that they haven't seen the

24     term sheet, is that frankly, the more difficult aspects of

25     this thing have to do with the non-bank arrangements.  As Mr.

     1    Rahl will probably say, he's got several appeals running here

     2    and whether or not we could ultimately confirm and consummate

     3    a plan without Mr. Rahl's and some of the other bondholders

     4    constituencies' consent, given whether that gets into the

     5    mootness through substantial consummation issues and the

     6    like, is pretty dicey.  So, there's a tremendous incentive on

     7    the debtors and the asbestos side here to try and see if we

     8    can bring people on board, and that's what we're doing, but

     9    it's hard.  It's not simply roll over for the banks and pay

    10    them the interest they want.

    11         THE COURT: Well, I appreciate that.

    12         MR. LOCKWOOD: Mr. Pernick is correct, I believe,

    13    and that the banks are going to have a lot less problems

    14    potentially with any subsequent negotiations between the time

    15    we get a term sheet and the time we file a plan, and so, I

    16    just wanted to state for the record that the asbestos

    17    constituency understands the points that Your Honor's been

    18    making.  We're not trying to play hide the ball.  We're not

    19    trying to give them a term sheet two days before the plan is

    20    filed.  We intend to try and negotiate with all other

    21    constituencies here and come up with something that everybody

    22    can agree on, but failing that, we hope that we and the

    23    debtor and whoever will come up with a confirmable plan and

    24    will certainly - the debtor told us that even if we don't

    25    agree, they will come up with a confirmable plan by December

1    31st.  Thank you.

2        MR. RAHL: Your Honor, just very briefly.  For the

3    record, Andrew Rahl of Anderson Kill & Olick on behalf of the

4    bondholder and trade creditor constituencies.  I just - I

5    heard you loud and clear, this isn't the time to talk about

6    the merits of some of the substantive issues, but I just want

7    to note for the record that we do take very sharp issue with

8    the banks' contention that they are the predominant

9    creditors, in some cases the only creditors, at the

10    subsidiary level, and also, we take issue with the fact that

11    there's no way to cram-down a subset, if you will, of the

12    bank creditors -

13        THE COURT: Right.  I understand.

14        MR. RAHL: - in the context of even an

15    unconsolidated plan of reorganization.

16        THE COURT: Okay.  Thank you for pointing out that

17    it's not agreed that the banks are the major creditors.  That

18    part of this I really don't know about since I didn't hear

19    the litigation, but that's okay.  I'm not deciding anything.

20    The only issue for me today is exclusivity, folks, let's get

21    to it.  If you've got a comment on exclusivity fine.

22    Otherwise, I understand that you all disagree.  That's why I

23    don't have a confirmable and consensual plan on the table.

24        MR. STARK: Your Honor, I don't want to belabor the

25    point.  My name is Robert Stark.  I'm at Brown Rudnick

1    Berlack Israel.  I'm a relative newcomer to this controversy

2    that I'm watching.  I represent an ad hoc committee of

3    preferred and common equity security holders.  We just formed

4    last week.  Your Honor, we didn't have time to file papers

5    and responses.  We formed after the objection deadlines.

6    Your Honor, my *pro hac vice* motions are being prepared and

7    will be in today.  My co-counsel is here to admit me orally,

8    if Your Honor would just want to go on the papers or what

9    have you.

10            THE COURT: I'll accept your - whatever it is that

11    you want to say for today with your ad hoc papers to follow,

12    but -

13            MR. STARK: Your Honor, our 2019 papers have already

14    been filed this morning, and just so everybody in the room

15    knows who we are, we represent 13 institutions that hold 20

16    percent or more of the common stock as well as preferred - a

17    significant percentage of the secured - of the preferred

18    securities.  I don't have that specific percentage today.

19    Your Honor, you're probably unaware and I'll tell you this

20    very briefly, there are 55 million shares outstanding trading

21    at about $3 a share, about 660,000 shares trade a day.

22    There's about 6,900 shareholders of record, and this may be

23    the only large asbestos case out there where there's no

24    equity committee out there, so we haven't had a voice today,

25    notwithstanding the 300 million in market cap that's

54

1    otherwise reflected in the markets.

2            THE COURT: Well, that 300 million in market cap

3    compared to a $7 billion already determined asbestos

4    liability means that the equity is out of the money.  There's

5    not going to be an equity committee from my point of view in

6    this case.  I don't see one.  I don't see the need for it.

7            MR. STARK: Well, Your Honor, I think that my

8    stockholders would like to be heard in this case.  They'd

9    like to have a view.  They have a view with respect to

10   exclusivity.  Your Honor, we do not - We did hear with some

11   degree of humor what Mr. Pernick's proffer and argument was.

12   I heard creditor a lot.  I never heard stockholder.

13           THE COURT: Well, tell me how they're in the money.

14   As soon as you can show me how this is a solvent entity or

15   plural entities whose assets are not going to be essentially

16   entirely devoted to paying its creditors, then maybe I'm

17   willing to hear it.  Until then, telling me that there's 55

18   million shares trading at $3 per share that gives me a market

19   cap of $300 million or $700 million with a $7 billion

20   liability just to one group, tells me you're out of the

21   money.

22           MR. STARK: Well, Your Honor, first of all, we

23   haven't had much of an opportunity to present any arguments

24   to score on anything.  Second of all, the 7 -

25           THE COURT: Hey, that is not so.  Everyone in this

1    case is getting notice.  The dates for hearings and the dates

2    by which to file motions are published a year in advance for

3    the entire calendar year.   Anyone who wants to come and file

4    a motion has an opportunity to do it.  So, it is not true

5    that there has been no opportunity.  This case has been filed

6    in 2001, and that process took effect when I got assigned the

7    case shortly after that.

8         MR. STARK: Your Honor, I understand the point.  Two

9    responses to that: Number one, we only just formed last week.

10        THE COURT: It doesn't matter.  You're not an

11   official committee and unless the U.S. Trustee appoints you

12   as one you're not going to be heard as an official committee.

13        MR. STARK: Well, you know, Your Honor, I think we

14   can still appear as an ad hoc committee –

15        THE COURT: Sure you can.

16        MR. STARK: – either way, and secondarily, I don't

17   believe any issue has been presented at least of late where a

18   valuation of the entire enterprise has been presented before

19   Your Honor.  I could be wrong.  I am a newcomer.  I don't –

20        THE COURT: It's irrelevant.  Unless your going to

21   show me how the debtor has $7 billion right now to pay what

22   the Court has determined, the District Court has determined

23   to be just its asbestos claims, you're out of the money.  You

24   know, I – So what are you telling me?

25        MR. STARK: I'm telling you several things, Your

1   Honor.  First of all, until evaluation of the enterprise has

2   been established before Your Honor, I think it's a little bit

3   premature to determine that we're out of the money.

4   Secondarily, I do believe the estimation that's been

5   presented - that has been ruled by the District Court is up

6   on appeal.  It is subject to dispute, and that may in fact be

7   overturned.  Third of all, Your Honor -

8         THE COURT: Good luck, but okay.  I mean, even if

9   it's overturned, what's the result going to be?  That the

10  liability may be down to a billion dollars, and you have a

11  $700 million market cap.

12        MR. STARK: And if it is a billion dollars, Your

13  Honor, they've got a billion dollars in cash meaning the

14  enterprise value over and above that liability still remains

15  sufficient to substantiate equity, and that's being reflected

16  in the marketplace, Your Honor, substantially reflected in

17  the marketplace.

18        THE COURT: Well, that's good.  I hope the

19  marketplace likes Owens Corning and continues to trade in its

20  shares, I think we can all agree on that.

21        MR. STARK: Okay, Your Honor's made clear your views

22  with respect to my comments.  The only thing that I would add

23  is I do believe that the debtor does have a responsibility to

24  stockholders, and we intend to consider in the future what

25  that responsibility is, includes a fiduciary responsibility.

1    We also ask that we be included with whatever term sheets are

2    disseminated because we think we will have a deal on that.

3            THE COURT: As I understand it, you are not a

4    recognized committee.  There are probably confidential issues

5    that apply.  To the extent the debtor wants to deal with

6    equity, certainly I encourage the debtor to deal with equity,

7    but unless and until you're in the money, don't expect to

8    have a distribution through this plan.  There are enough

9    other issues.  That's not going to be one.

10            MR. STARK: Very well, Your Honor.

11            MR. PERNICK: Your Honor, just to fill in the record

12    a little bit because maybe it's because Mr. Stark is a

13    newcomer.  We've had a plan out there with a disclosure

14    statement that gave our view of what equity's position was

15    and what the assets and liabilities of the NER.  That's been

16    out since 2003 in the public record, and I think our position

17    on it has been out before that.  Notwithstanding that, there

18    apparently was a letter sent to the U.S. Trustee by this

19    group Friday afternoon or Friday evening requesting a

20    committee.  A copy of that actually went to the Sidley firm

21    but didn't go to main debtors' counsel, which is my firm. We

22    did get a copy of it because we have good co-counsel, and

23    we'll respond to it appropriately.  That is just for the

24    Court's information.  The second request that was made to the

25    U.S. Trustee to form an equity committee, I believe there was

1    one maybe nine months or a year ago, and I can get a copy of

2    the exact letter if the Court ever wants to see it, and I

3    don't believe - I know that the U.S. Trustee's Office did not

4    appoint a committee.  I don't know whether they actually

5    turned it down or whether or not they just did not act on

6    it, but they clearly didn't appoint a committee and there was

7    no motion made by that group at that time to overrule the

8    U.S. Trustee's decision.

9         THE COURT: Okay.  Well, I mean, at this point in

10   time, unless there's some reason to suspect that equity is

11   going to be able to get a distribution somehow, then I'm just

12   not sure of the need.  But -

13        MR. PERNICK: I think our view's been pretty clear,

14   but just to let the Court know, in the current scenario, I

15   don't think we believe it's there.  If there's a fair act

16   that's approved at some point in time, we'll have to see what

17   the provisions of that fair act are and then we'll make a

18   determination as to whether or not we think there's an

19   argument for equity in this case, and certainly if there is,

20   you know, we'll consider it, but we've heard the Court's

21   admonition, and we believe the same thing, which is, we deal

22   with the circumstances that we have at hand.  If they change,

23   we will act appropriately, but they haven't changed, and

24   right now, it doesn't look like they're going to change

25   tomorrow.  It's not like there's anything imminent, and

1    there's nothing new.  So, if something new happens, we will

2    deal with it.  Two things: One, with respect to the form of

3    order, I believe that the form of order that was attached to

4    the motion, at least from the debtor's perspective, is

5    acceptable.  I mean, if the court wants to consider that, I

6    don't think there is a need to submit another one unless the

7    Court wants it.

8         THE COURT: No, unless someone has an objection to

9    the extension as the debtor requested through the next

10   hearing with, I think, it's a two-month solicitation process,

11   whatever that period is, I've forgotten.  I think it's two

12   months after that, that's fine.

13        MR. PERNICK: We actually only asked for an

14   extension of the period through January 31.  So, in our new

15   motion that we'll file once we file a plan - because we

16   actually, to be technical about it, I think the answer is,

17   since we filed a plan already, we are under plan exclusivity,

18   and what - although we couched it as asking for both to be

19   careful, what we really were under was a solicitation

20   exclusivity.  That's what expired today.  That's what we've

21   asked to be extended.  We couched it with both just to be

22   sure that there was no argument that somehow we had

23   solicitation exclusivity on the old plan but not on the new

24   one.

25        THE COURT: Oh, I see.  Okay.

1         MR. PERNICK: I was a little off for being a little

2    general but we did that on purpose so we didn't get an

3    argument the other way.

4         THE COURT: All right.  In any event, I don't see a

5    problem with the extension through January 30th and the debtor

6    can deal with whether you want another extension in order to

7    tee it up for that hearing.

8         MR. PERNICK: Okay.  And related to that, a short

9    procedural issue: If we file on 12/31, which is the outside

10   date, the hearing is January 30th.  I think the technical

11   filing date for a motion for the January hearing for

12   exclusivity would be the 27th.  So if we could shorten that -

13        THE COURT: I'll agree to shorten that to the date

14   you file your plan.

15        MR. PERNICK: Okay, thank you.

16        THE COURT: Mr. Graulich.

17        MR. GRAULICH: Your Honor, I just wanted to make one

18   point of clarification that had to do with a few of the

19   counsel have indicated that the agent represents some subset

20   of the bank group and I just wanted - so that it was clear,

21   we represent Credit Suisse which is the agent under the

22   pre-petition credit facility.  The agent takes direction from

23   a majority of the banks.  So, there may be other holders out

24   there that hold and there may be even according to some

25   papers filed, there's an ad hoc group that represents maybe

1  as much as a third of the bank group, but the agent, just to

2  be clear, represents the majority of the banks and frankly

3  will always represent a majority of the banks because if a

4  majority of the banks disagree with the way the agent is

5  conducting itself, it can give an instruction to change

6  course.

7              THE COURT: Okay.

8              MR. GRAULICH: So, just to be clear, we represent

9  the agent itself with respect to the bank debt.

10             THE COURT: Okay, thank you.

11             MR. PERNICK: Your Honor, from the debtors'

12 perspective, that's all we have for today.

13             THE COURT: Anyone else?

14             MR. PERNICK: Mr. Minuti reminds me if I could ask

15 the Court if the Court could enter the order today and get on

16 the docket since technically it expires today or at least if

17 you can't, if we can bridge it until the Court enters the

18 order.

19             THE COURT: Well, I am granting your request to have

20 exclusivity extended through January 20.  This order is an

21 oral order.  The written order will follow this order.  So,

22 it is granted, but I'll see if my staff can get it

23 electronically stamped and entered today.

24             MR. PERNICK: Thank you very much, Your Honor.

25             THE COURT: Okay.

1          MR. PERNICK: It's January 31st, Your Honor.

2          THE COURT: Yes.  I'm sorry, yes.  Okay.  All right,

3    Owens Corning is adjourned.  Thank you.

4          (Whereupon at 11:22 a.m. the hearing in this matter

5    was concluded for this date.)

6

7

8

9

10

11

12

13

14

15

16

17

18          I, Elaine M. Ryan, approved transcriber for the

19    United States Courts, certify that the foregoing is a correct

20    transcript from the electronic sound recording of the

21    proceedings in the above-entitled matter.

22

23    /s/ Elaine M. Ryan                        11/18/05
      Elaine M. Ryan
      2801 Faulkland Road
      Wilmington, DE 19808
      (302) 683-0221

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| | ) | |
| Debtors. | ) | **Related Docket No. 16289** |

## NOTICE OF APPEAL

The reorganized debtor Inacom Corporation and its related debtors (collectively, "Inacom"), by and through Executive Sounding Board Associates, Inc., as its Plan Administrator and its undersigned counsel, hereby gives notice, pursuant to 28 U.S.C. § 158(a) and Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of its appeal to the United States District Court for the District of Delaware from the final order of the United States Bankruptcy Court for the District of Delaware entitled *Order Denying InaCom Corporation's Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1)* (Docket No. 16289), which order was dated November 9, 2005 and entered on the docket in the above-captioned case on November 10, 2005 (Docket No. 16289). A copy of the Order is attached as Exhibit 1.

Pursuant to Bankruptcy Rule 8004, Inacom hereby requests that the Clerk of the Bankruptcy Court provide notice to counsel of record for the interested parties. The parties to

42125-001\DOCS_DE:112791.4

the judgment appealed from and the names, addresses and telephone numbers of their respective

counsel are as follows:

**INACOM CORPORATION AND ITS RELATED DEBTORS**

Counsel for the Inacom Corporation and its Related Debtors:

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
Laura Davis Jones, Esquire
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Electronic Mail: ljones@pszyjw.com

**OWNENS CORNING, ET AL.**

Counsel for the Debtors:

SAUL EWING LLP
Norman L. Pernick, Esquire
J. Kate Stickles, Esquire
222 Delaware Ave., Suite 1200
PO Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-5865
Electronic Mail: npernick@saul.com
                  kstickles@saul.com

and

SAUL EWING LLP
Adam H. Isenberg, Esquire
Centre Square West
1500 Market St., 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-8662
Facsimile: (215) 972-1853
Electronic Mail: aisenberg@saul.com

Dated: November 15, 2005

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.

_Laura D. M. Selzer_

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Electronic Mail: ljones@pszyjw.com
                  akornfeld@pszyjw.com
                  sselzer@pszyjw.com

2

# EXHIBIT 1

42125-003\DOCS_DE:112791.4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OWENS CORNING, *et al.*, | ) | Case No. 00-03837 (JKF) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | Re: Docket No. 15871 |
| | ) | Hearing Date: October 24, 2005 |
| | ) | Agenda Item 13 |

## ORDER DENYING INACOM CORPORATION'S MOTION TO ALLOW THE FILING OF A PROOF OF CLAIM AFTER THE DEADLINE FOR FILING PROOFS OF CLAIM PURSUANT TO BANKRUPTCY RULE 9006(B)(1)

This matter coming before the Court on Inacom Corporation's Motion to Allow

the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to

Bankruptcy Rule 9006(b)(1) [Docket No. 15871] (the "Motion") filed by Executive Sounding

Board Associates, Inc. as the Plan Administrator (the "Plan Administrator") for the reorganized

debtor Inacom Corporation and its related debtors (collectively, "Inacom"); the Court having

reviewed the Motion and Debtors' objection thereto; and it appearing that this Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of

this proceeding and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409; and

42125-003\DOCS_DE:112595.1

adequate notice of the Motion having been given; and it appearing that no other notice need be

given; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Motion is denied.

Dated: November 9, 2005

Judith K. Fitzgerald

Honorable Judith K. Fitzgerald
United States Bankruptcy Court Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                            :        Chapter 11
                                  :
OWENS CORNING, *et al.*,          :        Case Nos. 00-3837 (JKF)
                                  :
            Debtors.              :        (Jointly Administered)

> Objections Due: January 13, 2006 at 4:00 p.m.
> Hearing Date: January 30, 2006 at 10:00 a.m.
> Before the Honorable Judith K. Fitzgerald
> U.S. Bankruptcy Court
> 824 Market Street
> Wilmington, DE 19801

### THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION OF DEBTORS TO CLAIMS PURSUANT TO 11 U.S.C. § 502(b) AND BANKRUPTCY RULE 3007 – CLAIMS IMPROPERLY ASSERTED AGAINST ONE OR MORE DEBTORS

Owens Corning and its affiliated debtors and debtors-in-possession in the above-caption cases (collectively, the "Debtors") hereby file this thirty-eighth omnibus substantive objection to claims (the "Omnibus Objection") pursuant to 11 U.S.C. § 502(b), Fed. R. Bankr. P. 3007 and Delaware Local Bankruptcy Rule 3007-1 and object to the claims listed on Exhibits "A" through "F" to the proposed order submitted herewith (the "Proposed Order"). In support of this Omnibus Objection, the Debtors respectfully represent as follows:

#### Introduction

1.      On October 5, 2000 (the "Petition Date"), Owens Corning and 17 affiliated debtors and debtors-in-possession (collectively with Owens Corning, the "Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

38ᵗʰ Omnibus Objection
530165.3 12/9/2015

Date 12/9/05
Docket #16433

2.       On October 23, 2000, the United States Trustee appointed the Official Committee of General Unsecured Creditors (the "Creditors' Committee") and the Official Committee of Asbestos Claimants (the "Asbestos Committee" and, together with the Creditors' Committee, the "Committees").

3.       By Order dated September 28, 2001, the Court appointed James J. McMonagle, Esquire, as "Futures Representative" in connection with the Debtors' cases.

4.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.       The statutory predicates for the relief requested herein are Section 502(b) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 3007 and Del.Bankr.LR 3007-1.

### The Business Of The Debtors

6.       Owens Corning, together with its debtor and non-debtor affiliates (collectively, the "Company"), is a world leader in the manufacture and sale of building material systems and composites systems. The Company employs approximately 19,500 persons worldwide and is headquartered in Toledo, Ohio.

7.       The Company produces and sells insulation, roofing systems, exterior systems for the home and glass fiber materials used in composites. The Debtors conduct their manufacturing, distribution and sales operations primarily in the United States, but the Company has operations worldwide.

8.       The Company had net sales of approximately $5 billion per year in the last four years. Excluding provisions for asbestos litigation claims, Owens Corning has been profitable for years.

38ᵗʰ Omnibus Objection
5J0165 3 12/8/05

-2-

9.    The Debtors commenced these Chapter 11 cases to protect the Company's business and value for all of its constituents, and to resolve all claims, including asbestos claims, asserted against it.

## Background

10.    By Order dated October 6, 2000, the Court authorized Robert L. Berger & Associates, LLC n/k/a OMNI Management Group, LLC, to serve as the Debtors' claims agent (the "Claims Agent").

11.    On November 27, 2001, this Court signed an Order Pursuant to Bankruptcy Rule 3003(c)(3): (i) Fixing General Claims Bar Date for Filing Certain Proofs of Claim; (ii) Approving Proposed Proof of Claim Form, General Claims Bar Date Notice and Related Publication Procedures; and (iii) Approving Proposed Employee and Retiree Claims Notification Procedures (the "Bar Date Order"). Pursuant to the Bar Date Order, the deadline for filing proofs of claim, other than certain "Excluded Claims," was April 15, 2002 (the "Bar Date"). Notice of the Bar Date was (a) mailed to all known creditors of the Debtors, other than creditors asserting asbestos-related personal injury and asbestos-related wrongful death claims and (b) published in The Wall Street Journal (National Edition), The New York Times (National Edition) and numerous other newspapers and publications.

12.    To date, over 12,600 proofs of claim (the "Proofs of Claim") have been filed in these cases. These Proofs of Claim are recorded on the official claims registry in these chapter 11 cases (the "Claims Registry"), which is maintained by the Claims Agent.

## Relief Requested

13.    According to the Debtors' books and records, and as further described herein, each of the claims listed on Exhibits "A" through "F" to the Proposed Order (the "Claims" or the

"Disputed Claims") has been asserted against the wrong Debtor or Debtors in these cases. In addition, certain of the Claims have been filed with an incorrect classification and/or in an incorrect amount. By this Omnibus Objection, the Debtors seek entry of an order under 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 modifying such Disputed Claims such that they are deemed asserted against the correct Debtor, in the correct classification, and in the correct amount, as set forth on Exhibits "A" through "F" to the Proposed Order. Assuming such modifications are approved by the Court, the Debtors propose that each of the Disputed Claims, as modified, be "allowed" by the Court.

### Basis For Relief

14. Since the Bar Date, the Debtors and their advisers have been reviewing the Proofs of Claim filed in these cases. Based upon such review the Debtors have determined that it is appropriate to seek an order of the Court (i) reclassifying and reassigning the Disputed Claims listed on Exhibits "A" and "C" against the correct Debtor or Debtors, as set forth therein; (ii) reclassifying and reducing the Disputed Claims listed on Exhibits "B," "D," and "E" as set forth therein; and (iii) reducing and reassigning the Disputed Claims Exhibit "F" against the correct Debtors, as set forth therein.

15. By this Omnibus Objection, the Debtors seek to have each of the Disputed Claims deemed filed solely against the correct Debtor actually liable thereon, in the proper classification and/or in the correct amount. See Declaration of James A. Gibb, attached hereto.

### A.  Claims Improperly Asserted Against One or More Debtors and/or With an Incorrect Classification

16. The Debtors have determined that each of the Disputed Claims listed on Exhibit "A" should be divided among two or more Debtors and, with respect to Claim #2752 filed by Onsite Companies (the "Onsite Claim"), should be reclassified as a general unsecured claim.

The Debtors do not seek to change the total amount of each of the Disputed Claims listed on Exhibit "A." Rather, the Debtors seek to reassign the Disputed Claims to the correct Debtors and, with respect to the Onsite Claim, reclassify the Onsite Claim as a general unsecured claim.

17.     Accordingly, the Debtors object to the Disputed Claims listed on Exhibit "A" and seek entry of an order (i) reassigning the Disputed Claims to the correct Debtors as reflected on Exhibit "A" under the heading "Debtors Against Which Claim To Be Allowed," and (ii) reclassifying the Onsite Claim as reflected on Exhibit "A" under the heading "Modified Status."

**B.  Claims Improperly Asserted, In Part, Against An Incorrect Debtor,
In An Incorrect Amount and/or With An Incorrect Classification**

18.     Based on the Debtors' books and records, each of the Disputed Claims on Exhibit "B" should, in whole or part, be asserted against one or more different Debtors in the specified amounts set forth on Exhibit "B," which total less than the Claim amount as filed.  In addition, three claims on Exhibit "B" -- Claim #2149 filed by Jefferson Smurfit Corporation, Claim #2549 filed by Tyco Plastics and assigned to Longacre Master Fund, Ltd., and Claim #2323 filed by Williamette Industries, Inc. (the "Exhibit "B" Reclassified Claims") -- should be reclassified as general unsecured claims because these Claims do not qualify as priority claims pursuant to Bankruptcy Code section 507(a).

19.     Accordingly, the Debtors object to the Claims on Exhibit "B" and seek entry of an order (i) reassigning the Disputed Claims to the correct Debtors as reflected on Exhibit "B" under the heading "Debtor(s) Against Which Claim to Be Allowed;" (ii) reducing the Disputed Claims as reflected on Exhibit "B" under the heading "Modified Claim Amount;" and (iii) reclassifying the Exhibit "B" Reclassified Claims as reflected on Exhibit "B" under the heading "Modified Status."

C.    **Claims Asserted Against An Incorrect**
       **Debtor and/or With An Incorrect Classification**

20.    The Debtors have determined that each of the Disputed Claims listed on Exhibit

"C" is asserted against an incorrect Debtor. In addition, four claims listed on Exhibit "C" --

Claim #2459 filed by Al-Win, LLC, Claim #311 filed by Fleming Supply Co., Inc. and assigned

to Amroc Investments, LLC, Claim #5357 filed by EPSCO, Inc. Personnel Service, and Claim

#3686 filed by Quality Stores, Inc. (the "Exhibit "C" Reclassified Claims") -- should be

reclassified as general unsecured claims. The Debtors do not seek to change the amount of any

of the Claims listed on Exhibit "C." Rather, the Debtors seek to reassign the Claims to the

correct Debtors and, with respect to the Exhibit "C" Reclassified Claims, reclassify the Exhibit

"C" Reclassified Claims as general unsecured claims.

21.    Accordingly, the Debtors object to the Claims on Exhibit "C" and seek entry of an

order (i) reassigning the Claims to the correct Debtors as reflected on Exhibit "C" under the

heading "Debtor Against Which Claim to Be Allowed," and (ii) reclassifying the Exhibit "C"

Reclassified Claims as reflected on Exhibit "C" under the heading "Modified Status."

D.    **Claims Improperly Asserted Against Multiple**
       **Debtors, In an Incorrect Amount and/or With An Incorrect Classification**

22.    Each of the Disputed Claims on Exhibit "D" is improperly asserted against all

eighteen of the Debtors, rather than the specific Debtor that, according to the Debtors' books and

records, is liable for the claim. In addition, the amount of each of the Disputed Claims on

Exhibit "D" should be modified, as set forth on Exhibit "D." Moreover, seven of the Claims on

Exhibit "D" -- Claim #5687 filed by American Weather-Seal Co., Claim #428 filed by Central

Wholesale Electrical Distributors, Inc. and assigned to Amroc Investments, LLC, Claim #493

filed by the City of Atlanta, Claim #2210 filed by Industrial Technical Sales & Service, Inc. and

402

assigned to Contrarian Funds, LLC, Claim #234 filed by Engineering Safety Consultants, Inc.,

Claim #2105 filed by Fisher Scientific, and Claim #2080 filed by Stone Container Corp. (the

"Exhibit "D" Reclassified Claims") -- should be reclassified as general unsecured claims because

these Claims do not qualify as priority claims pursuant to Bankruptcy Code section 507(a) or

secured claims pursuant to Bankruptcy Code section 506.

23.    Accordingly, the Debtors object to the Disputed Claims listed on Exhibit "D" and

the Debtors seek entry of an order (i) reassigning the Claims to the correct Debtors as reflected

on Exhibit "D" under the heading "Debtor Against Which Claim to Be Allowed;" (ii) reducing

the Claims as reflected on Exhibit "D" under the heading "Modified Claim Amount;" and

(iii) reclassifying the Exhibit "D" Reclassified Claims as reflected on Exhibit "D" under the

heading "Modified Status."

**E.    Claims Asserted Against an Incorrect Debtor, In an**
**Incorrect Amount and/or With An Incorrect Classification**

24.    Each of the Disputed Claims on Exhibit "E" has been asserted against one or more

incorrect Debtors in an incorrect amount. According to the Debtors' books and records, and as

further detailed on Exhibit "E," each of these Claims should be asserted against a specified

Debtor in a revised amount, which is less than the Claim amount as filed. In addition, two

Claims -- Claim #5685 filed by Danvid Window Company and Claim #6745 filed by

Weyerhauser (the "Exhibit "E" Reclassified Claims") -- should be reclassified as general

unsecured claims because these Claims do not qualify as priority claims pursuant to Bankruptcy

Code section 507(a) or secured claims pursuant to Bankruptcy Code section 506.

25.    Accordingly, the Debtors object to the Disputed Claims listed on Exhibit "E" and

seek entry of an order (i) reassigning the Claims to the correct Debtor as reflected on Exhibit "E"

under the heading "Debtor Against Which Claim to Be Allowed;" (ii) reducing the Claims as

reflected on Exhibit "E" under the heading "Modified Claim Amount;" and (iii) reclassifying the

Exhibit "E" Reclassified Claims as reflected on Exhibit "E" under the heading "Modified Status."

F.    **Claims Improperly Asserted, In Part, Against**
      **One or More Debtors and In An Incorrect Amount**

26.    Each of the Disputed Claims on Exhibit "F" has been asserted against one or more

incorrect Debtors in an incorrect amount. According to the Debtors' books and records, and as

further explained in Exhibit "F," each of these claims should be asserted against the Debtors

specified on Exhibit "F" in the column under the heading "Debtor(s) Against Which Claim to be

Allowed" in the amounts specified in the column entitled "Modified Claim Amount." Such

amounts are less than the Claim amounts as filed.

27.    Accordingly, the Debtors object to the Disputed Claims listed on Exhibit "F" and

seek entry of an order (i) reassigning the Claims to the correct Debtors as reflected on Exhibit

"F" under the heading "Debtor(s) Against Which Claim To Be Allowed;" and (ii) reducing and

allowing the Claims as reflected on Exhibit "F" under the heading "Modified Claim Amount."

**Applicable Authority**

28.    Code Section 502(b) provides in pertinent part that:

> the court, after notice and a hearing, shall determine the amount of
> [a] claim in lawful currency of the United States as of the date of
> the filing of the petition, and shall allow such claim in such
> amount, except to the extent that . . . such claim is unenforceable
> against the debtor and property of the debtor, under any agreement
> or applicable law for a reason other than because such claim is
> contingent or unmatured.

11 U.S.C. § 502(b)(1).

29.    The Claims are unenforceable to the extent described herein because they have

been asserted against an incorrect Debtor in these cases, with an incorrect classification and/or in

the wrong amount. Except as set forth on Exhibits "A" through "F" to the Proposed Order, the

Debtors bear no liability for the Claims. Therefore, pursuant to Code Section 502(b)(1) and Bankruptcy Rule 3007, the Court should modify the Claims as proposed herein.

### Responses To Omnibus Objection

30.    <u>Filing and Service of Responses</u>. To contest this Omnibus Objection, a claimant must file and serve a written response to this Omnibus Objection (a "Response") so that it is <u>received</u> no later than 4:00 p.m. (Eastern Time) on **January 13, 2006**. Claimants should read the Proposed Order and the attached exhibits carefully. A claimant who has timely filed a written Response and wishes to oppose this Omnibus Objection must attend or make other arrangements to participate in the hearing on the objection, which hearing is scheduled to be held on January 30, 2006 at 10:00 a.m. before the Honorable Judith K. Fitzgerald, U.S. Bankruptcy Judge, U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801(the "Hearing").

31.    Every Response shall be filed and served upon the following entities at the following addresses: (a) Office of the Clerk, United States Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801; (b) Saul Ewing LLP, Attn: Norman L. Pernick, Esq., 222 Delaware Avenue, Suite 1200, Wilmington, Delaware 19899, with a copy to Saul Ewing LLP, Attn: Kathleen P. Makowski, Esq., 222 Delaware Avenue, Suite 1200, Wilmington, Delaware 19899; and (c) Adelman Lavine Gold and Lavin, a Professional Corporation, 919 North Market Street, Suite 710, Wilmington, Delaware 19801, Attn: Raymond H. Lemisch, Esq.

32.    <u>Content of Responses</u>. Every Response to this Omnibus Objection must contain at a minimum the following:

> (a)    a caption setting forth the name of the Court, the names of the Debtors, the case number and the title of this Omnibus Objection;

405

(b)    the name of the claimant and description of the basis for the amount of the Disputed Claim;

(c)    a concise statement setting forth the reasons why the claimant's Disputed Claim should not be modified as proposed herein including, but not limited to, the specific factual and legal bases upon which the claimant relies in opposing the relief sought herein;

(d)    all documentation or other evidence supporting the Disputed Claim not included with the proof of claim previously filed with the Bankruptcy Court, upon which the claimant relies in opposing the relief sought herein; and

(e)    the name, address, telephone number and fax number of the person(s) (which may be the claimant or a legal representative thereof) to whom counsel for the Debtors should serve a reply to the Response and who possesses authority to reconcile, settle or otherwise resolve the objection to the Disputed Claim on behalf of the claimant.

33.    Timely Response Required.  If a claimant fails to file and serve a timely Response, then without further notice to the claimant or a hearing, the Debtors will present to the Court an order modifying the claimant's Disputed Claim to the extent proposed herein and authorizing and directing the Claims Agent to modify such claims to the extent proposed herein.

34.    Service Address.  If a Response contains an address for the claimant different from that stated on the claimant's Claim, the address in the Response shall constitute the service address for future service of papers upon the claimant with respect to this Omnibus Objection unless or until counsel for the Debtors receives written notice from the claimant or the claimant's counsel of a changed service address.

## Adjournment Of Hearing

35.    The Debtors reserve the right to adjourn the Hearing on any Objection.  In the event that the Debtors so adjourn the Hearing, they will state that the Hearing on the Objection and/or response has been adjourned on the agenda for the Hearing on this Omnibus Objection,

38th Omnibus Objection
510105.3 12/8/05

-10-

which agenda will be served on the person designated by the claimants in a Response pursuant to paragraphs 32(e) and 34 above.

**Reservation of Rights**

36.    The Debtors expressly reserve the right to amend, modify or supplement this Omnibus Objection, and to file additional objections to the Claims or to any other claims (filed or not) that may be asserted against the Debtors.  Should one or more of the grounds of objection stated in this Omnibus Objection be overruled, the Debtors reserve their rights to object to the Claims on any other ground that bankruptcy or nonbankruptcy law permits.

**Further Information**

37.    Questions about or requests for additional information about this Omnibus Objection should be directed to the Debtors' counsel in writing at the Wilmington addresses listed below.  Claimants should not contact the Clerk of the Court to discuss the merits of their Proofs of Claim or this objection.

**Notice**

38.    In accordance with Rule 2002-1(b) of the Local Rules of the United States Bankruptcy Court for the District of Delaware and the Order Clarifying Case Notice Procedures Pursuant to 11 U.S.C. §§ 102 and 105; Fed.R.Bankr.P. 2002(m) and 9007; and Local Rule 2002-1(b), signed May 16, 2001, (NIBS Docket No. 1838), notice of this Thirty-Eighth Omnibus Substantive Objection to Claims has been given to the (a) the Office of the United States Trustee; (b) counsel for the Creditors' Committee; (c) counsel for the Asbestos Committee; (d) the Office of the United States Attorney for the District of Delaware; (e) Bank of America, N.A., as the Debtors' Post-Petition Lender; (f) Credit Suisse First Boston, as agent with respect to that $2.0 billion Credit Agreement dated June 26, 1997; (g) special counsel to the Creditors' Committee;

(h) the Legal Representative of Future Claimants; (i) counsel for the Legal Representative of Future Claimants; (j) those parties who have requested service of all motions and pleadings pursuant to Bankruptcy Rule 2002; and (k) all holders of claims which are the subject of this Objection. In light of the relief requested herein, the Debtors submit that no further notice is necessary.

## Compliance With Delaware Bankruptcy Local Rule 3007-1

39.     Each of the undersigned counsel certifies that he/she has reviewed the requirements of Del.Bank.LR 3007-1 and that, to the best of his/her knowledge, information and belief, this Omnibus Objection complies with the requirements of such Rule except as such requirements may have been modified by Order of the Court. To the extent necessary and applicable, waiver of such Local Rules is hereby requested.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) modifying the Claims as proposed herein and authorizing the Claims Agent to revise the Claims Registry accordingly; and (ii) granting the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
        December 9, 2005

                              SAUL EWING LLP

                    By: _____
                              Norman L. Pernick (No. 2290)
                              J. Kate Stickles (No. 2917)
                              Kathleen P. Makowski (No. 3648)
                              222 Delaware Avenue, Suite 1200
                              Wilmington, Delaware 19899
                              (302) 421-6800

                                   and

                              ADELMAN LAVINE GOLD AND LEVIN
                              A Professional Corporation

                    By: _____
                              Bradford J. Sandler (No. 4142)
                              919 North Market Street, Suite 710
                              Wilmington, DE 19801
                              (302) 654-8200

                    Attorneys for Debtors and
                    Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| OWENS CORNING, *et al.,* | : | Case Nos. 00-3837 (JKF) |
| | : | |
| Debtors. | : | (Jointly Administered) |

Objections Due: January 13, 2006 at 4:00 p.m.
Hearing Date: January 30, 2006 at 10:00 a.m.
Before the Honorable Judith K. Fitzgerald
U.S. Bankruptcy Court
824 Market Street
Wilmington, DE 19801

## NOTICE OF DEBTORS' (SUBSTANTIVE) THIRTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS PURSUANT TO 11 U.S.C. § 502(d)(2) AND BANKRUPTCY RULE 3007 – CLAIMS IMPROPERLY ASSERTED AGAINST ONE OR MORE DEBTORS

TO:

PARTIES LISTED ON EXHIBIT
"A" THROUGH "F" TO THE
PROPOSED FORM OF ORDER
ATTACHED HERETO

Elihu Inselbuch, Esq.
Rita Tobin. Esq.
Caplin & Drysdale, Chartered
399 Park Avenue
New York, NY 10022-4614
(Counsel to Asbestos Committee)

Marla Eskin, Esq.
Mark Hurford, Esq.
Campbell & Levine, LLC
800 King Street
Wilmington, DE 19801
(Counsel to Asbestos Committee)

William H. Sudell, Jr., Esq.
Morris, Nichols, Arsht and Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(Counsel to Creditors' Committee)

James I. McClammy, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
(Creditors' Committee)

D. J. Baker, Esq.
Skadden Arps, et al.
Four Times Square
New York, NY 10036
(Special Counsel to the Debtors)

Mark S. Chehi, Esq.
Skadden Arps, et al.
One Rodney Square
P.O. Box 636
Wilmington, DE 19899
(Special Counsel to the Debtors)

Ellen W. Slights, Esq.
Assistant U.S. Attorney
Chase Manhattan Centre
1201 Market Street, Suite 1100
P.O. Box 2046
Wilmington, DE 19899-2046
(US Attorney, District of DE)

J. Andrew Rahl, Jr., Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(Special Counsel to Creditors
Committee)

Edmund Emrich, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(Counsel to Futures Representative)

James J. Patton, Esq.
Young Conaway, et al.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(Counsel to Futures Representative)

James J. McMonagle, Esq.
24 Walnut Street
Chagrin Falls, OH 44022
(Futures Representative)

38th Omnibus Objection
530165 3 158 05

Kenneth H. Eckstein, Esq.
Gary M. Becker, Esq.
Kramer Levin, et al.
1177 Avenue of the Americas
New York, NY 10036
(Bank Group)

Mark Collins, Esq.
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(Bank Group)

Benjamin Feder, Esq.
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022-6030
(Bank Group)

Francis A. Monaco, Jr., Esq.
Walsh Monzack & Monaco, P.A.
1201 Orange Street, Suite 400
Wilmington, DE 19801
(Special Counsel to Committee)

Martin Bienenstock, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(Counsel to Bank Debt Holders)

Richard Cobb, Esq.
Rebecca Butcher, Esq.
Landis, Rath & Cobb, LLP
919 Market Street, Suite 600
Wilmington, DE 19810
(Counsel to Bank Debt Holders)

James F. Conlan, Esquire
Larry J. Nyhan, Esquire
Kenneth P. Kansa, Esquire
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn St.
Chicago, IL 60603
(Co-Counsel to the Debtors)

David M. Klauder, Esq.
Office of the U.S. Trustee
Federal Bldg. 2nd Floor
844 King Street
Wilmington, DE 19801
(US Trustee)

All Parties on 2002 Service List

On December 9, 2005, Owens Corning, *et al.* (the "Debtors"), filed their **Thirty-Eighth Omnibus (Substantive) Objection to Claims, Pursuant to 11 U.S.C. § 502(b) and Bankruptcy Rule 3007 – Claims Improperly Asserted Against One Or More Debtors** (the "Omnibus Objection"), which seeks to alter the rights of the parties listed on Exhibits "A" through "F" to the proposed order attached hereto, as further described in the Omnibus Objection.

You are required to file any response to the Omnibus Objection on or before **4:00 p.m. on January 13, 2006.**

At the same time, you must also serve a copy of the response upon the Debtors' attorneys, at the address listed below, so that it is *received* by **4:00 p.m. on January 13, 2006:**

Norman L. Pernick, Esquire
J. Kate Stickles, Esquire
Kathleen P. Makowski, Esquire
SAUL EWING LLP
222 Delaware Avenue, 12th Floor
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800 (ph)
(302) 421-6813 (fax)
npernick@saul.com/kstickles@saul.com

and

38th Omnibus Objection
330165.3 12/8/05

-2-

Raymond H. Lemisch, Esquire
Bradford J. Sandler, Esquire
ADELMAN LAVINE GOLD AND LEVIN
A Professional Corporation
919 North Market Street, Suite 710
Wilmington, DE 19801
(302) 654-8200 (ph)
(302) 654-8217 (fax)
rlemisch@adelmanlaw.com
bsandler@adelmanlaw.com

A HEARING ON THE OMNIBUS OBJECTION IS SCHEDULED FOR
**JANUARY 30, 2006, AT 10:00 A.M.**, BEFORE THE HONORABLE JUDITH K.
FITZGERALD, U.S. BANKRUPTCY JUDGE, U.S. BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE, 824 MARKET STREET, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT
MAY GRANT THE RELIEF DEMANDED BY THE THIRTY-EIGHTH OMNIBUS
OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: December 9, 2005

SAUL EWING LLP

By: _____
Norman L. Pernick (No. 2290)
J. Kate Stickles (No. 2917)
Kathleen P. Makowski (No. 3648)
222 Delaware Avenue
P.O. Box 1266
Wilmington, Delaware 19899-1266
(302) 421-6800

and

ADELMAN LAVINE GOLD AND LEVIN
A Professional Corporation

By: _____
Bradford J. Sandler (No. 4142)
919 North Market Street, Suite 710
Wilmington, DE 19801
(302) 654-8200

Counsel to Owens Corning, *et al.*,
Debtors and Debtors-in-Possession

412

**EXHIBIT A**

Owens Corning, et al.
Case nos 00-3837 to 00-3854 (JKF)

**EXHIBIT A – CLAIMS TO BE MODIFIED**
**THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION**
Claims Improperly Asserted Against One or More Debtors and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 16 and 17 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| ALIG LLC Successor by merger to Messer Griesheim Industries, Inc. | 6993 | 37 | UNS | $ 48,594.70 | 37<br>43 | UNS<br>UNS | $ 2,040.72<br>$ 46,553.98 | Claim incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
| AMROC INVESTMENTS, LLC, Transferee | 708 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 46,820.96 | 37<br>43<br>54 | UNS<br>UNS<br>UNS | $ 13,176.00<br>$ 1,724.73<br>$ 31,919.23 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
| BELLSOUTH | 2393 | 37 | UNS | $ 60,259.98 | 37<br>43<br>51<br>54 | UNS<br>UNS<br>UNS<br>UNS | $ 53,352.66<br>$ 928.71<br>$ 3,278.88<br>$ 2,699.73 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
| BOISE CASCADE OFFICE PRODUCTS | 24 | 37 | UNS | $ 67,466.85 | 37<br>41<br>43 | UNS<br>UNS<br>UNS | $ 22,804.67<br>$ 4,741.74<br>$ 39,920.34 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
| CONTRARIAN FUNDS, LLC, Transferee | 3071 | 37 | UNS | $ 608,387.63 | 37<br>54 | UNS<br>UNS | $ 506,917.65<br>$ 101,469.88 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
| EMPLOYEE INFORMATION SERVICES | 8015 | 37 | UNS | $ 25,288.20 | 37<br>43<br>51<br>54 | UNS<br>UNS<br>UNS<br>UNS | $ 24,073.20<br>$ 324.00<br>$ 405.00<br>$ 485.00 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
| FORPLAX EASTERN INC. | 4466 | 54 | UNS | $ 22,497.81 | 37<br>54 | UNS<br>UNS | $ 10,107.36<br>$ 12,390.45 | Claimant incorrectly asserted entire claim against Soltech, Inc. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |

***Key
| PRI | PRIORITY |
|---|---|
| UNS | GENERAL UNSECURED NON-PRIORITY |

* See final page of Exhibit for table of Debtors' cases
** The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

Page 1 of 3

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JKF)

EXHIBIT A – CLAIMS TO BE MODIFIED
THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted Against One or More Debtors and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 16 and 17 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| KELLY SERVICES INC., Transferor | 708 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 48,820.96 | 37<br>43<br>54 | UNS<br>UNS<br>UNS | $  13,178.00<br>$   1,724.73<br>$  31,916.23 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |
| LONGACRE MASTER FUND, LTD, Transferee | 12282 | 37 | UNS | $ 99,544.15 | 37<br>41<br>42 | UNS<br>UNS<br>UNS | $  62,091.40<br>$   9,274.30<br>$  28,178.45 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |
| MILAN EXPRESS CO., INC. | 2629 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 2,900.18 | 37<br>43<br>54 | UNS<br>UNS<br>UNS | $      58.34<br>$     600.00<br>$   2,241.84 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |
| MORGAN ADHESIVES CO., Transferor | 3071 | 37 | UNS | $ 608,387.83 | 37<br>54 | UNS<br>UNS | $ 506,917.95<br>$ 101,469.88 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |
| MULLER MULLER RICHMOND HARMS | 6742 | 37 | UNS | $ 1,984.73 | 37<br>43 | UNS<br>UNS | $   1,494.73<br>$     490.00 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY | 2203 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 78,877.38 | 37<br>43 | UNS<br>UNS | $  10,482.37<br>$  68,514.99 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |
| OLSTEN CORP A.K.A. ADD STAFFING, INC. | 323 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 7,012.77 | 43<br>54 | UNS<br>UNS | $   2,457.09<br>$   4,555.68 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. |

***Key
PRI  PRIORITY
UNS  GENERAL UNSECURED NON-PRIORITY

* See first page of Exhibit for table of Debtors' cases
** The Debtors are represented with respect to their objection in this claim by Adelman Lavine Gold and Levin, A Professional Corporation

415

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JKF)

**EXHIBIT A – CLAIMS TO BE MODIFIED**
**THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION**
**Claims Improperly Asserted Against One or More Debtors and/or With An Incorrect Classification**

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 16 and 17 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| *ONSITE COMPANIES | 2752 | 37 | PRI | $ 164,398.21 | 37 | UNS | $ 129,061.30 | Claim does not qualify as priority claim under 11 U.S.C. § 507(a). Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
|  |  |  |  |  | 43 | UNS | $ 25,334.91 |  |
| PENSKE TRUCK LEASING INC | 8009 | 37 | UNS | $ 37,882.26 | 37 | UNS | $ 21,979.68 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
|  |  |  |  |  | 43 | UNS | $ 14,612.50 |  |
|  |  |  |  |  | 54 | UNS | $ 1,400.08 |  |
| RILEY MCNULTY HEWITT & SWEITZER PC, Transferor | 12292 | 37 | UNS | $ 93,544.15 | 37 | UNS | $ 62,091.40 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. |
|  |  |  |  |  | 41 | UNS | $ 9,274.30 |  |
|  |  |  |  |  | 42 | UNS | $ 28,178.45 |  |

*Debtor
37 OWENS CORNING
38 CDC CORPORATION
39 ENGINEERED YARNS AMERICA, INC.
40 FALCON FOAM CORPORATION
41 INTEGREX
42 FIBREBOARD CORPORATION
43 EXTERIOR SYSTEMS, INC.
44 INTEGREX VENTURES LLC
45 INTEGREX PROFESSIONAL SERVICES LLC

46 INTEGREX SUPPLY CHAIN SOLUTIONS LLC
47 INTEGREX TESTING SYSTEMS LLC
48 HOMEXPERTS LLC
49 JEFFERSON HOLDINGS, INC.
50 OWENS CORNING FIBERGLASS TECHNOLOGY INC.
51 OWENS CORNING HT, INC.
52 OWENS CORNING OVERSEAS HOLDINGS, INC.
53 OWENS CORNING REMODELING SYSTEMS, LLC
54 SOLTECH, INC.

***The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

***Key
PRI   PRIORITY
UNS   GENERAL UNSECURED NON-PRIORITY

**EXHIBIT B**

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JKF)

## EXHIBIT B – CLAIMS TO BE MODIFIED
## THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted, In Part, Against An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| ABF FREIGHT SYSTEM, INC. | 31 | 37 | UNS | $ 89,728.43 | 37 | UNS | $ 40,433.60 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #331120081 in the amount of $58.00, and Post Petition Invoice #331120081 in the amount of $215.43 were paid by check #006026 dated as of 11/29/2000. Pre Petition Invoice #108545626 in the amount of $120.40 was paid by check #206578 dated as of 8/22/2000. |
| | | | | | 38 | UNS | $ 14,064.27 | |
| | | | | | 43 | UNS | $ 30,490.37 | |
| | | | | | 51 | UNS | $ 4,348.33 | |
| ACCOUNTEMPS | 2754 | 37 | UNS | $ 6,440.76 | 37 | UNS | $ 5,765.85 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #03720894 in the amount of $473.49 was paid by check #051933 dated as of 1/18/2001. |
| | | | | | 43 | UNS | $ 201.42 | |
| AMROC INVESTMENTS, LLC, Transferee | 5804 | 37 | UNS | $ 184,877.46 | 37 | UNS | $ 84,557.35 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #480012611 in the amount of $92.70, Post Petition Invoice #880240311 in the amount of $97.12, Post Petition Invoice #880241011 in the amount of $43.98, and Post Petition Invoice #880241311 in the amount of $100.10 were paid by check #017533 dated as of 12/18/2000. Post Petition Invoice #880284111 in the amount of $133.33, Post Petition Invoice #880284122 in the amount of $324.08, Post Petition Invoice #880284132 in the amount of $122.63, Post Petition Invoice #880287011 in the amount of $35.04, Post Petition Invoice #880287012 in the amount of $56.40, Post Petition Invoice #880305312 in the amount of $282.79, and Post Petition Invoice #880305411 in the amount of $56.40 were paid by check #020588 dated as of 12/14/2000. Post Petition Invoice #880287711 in the amount of $572.53, Post Petition Invoice #880320111 in the amount of $503.73, and Post Petition Invoice #880320112 in the amount of $2.40 were paid by check #020908 dated as of 12/14/2000. Post Petition Invoice #880192512 in the amount of $95.12 was paid by check #022913 dated as of 12/15/2000. Post Petition Invoice #880217712 in the amount of $1,105.68, Post Petition Invoice #880340711 in the amount of $28.10, Post Petition Invoice #880342811 in the amount of $95.00, Post Petition Invoice #880371412 in the amount of $245.08, Post Petition Invoice #880392412 in the amount of $35.55, Post Petition (continued on Page 2) |
| | | | | | 51 | UNS | $ 11,228.84 | |

(continued on Page 2)

\* See final page of Exhibit for table of Debtors' cases
\*\* The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

***Key
PRI  PRIORITY
UNS  GENERAL UNSECURED NON-PRIORITY

Page 1 of 10

418

Owens Corning, et al
Case nos. 00-3837 to 00-3854 (JKF)

**EXHIBIT B – CLAIMS TO BE MODIFIED**
**THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION**
Claims Improperly Asserted, In Part, Against An Incorrect Debtor, In An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| AMROC INVESTMENTS, LLC, Transferee | | | | | | | | Invoice #880039711 in the amount of $171.29, and Post Petition Invoice #880407322 in the amount of $47.33 were paid by check #024737 dated as of 12/18/2000. Post Petition Invoice #880240511 in the amount of $8.85, Post Petition Invoice #880240711 in the amount of $58.20, Post Petition Invoice #880241111 in the amount of $48.52, Post Petition Invoice #880305511 in the amount of $128.64, Post Petition Invoice #880348711 in the amount of $133.76, Post Petition Invoice #880407311 in the amount of $97.62, Post Petition Invoice #880424611 in the amount of $104.63, Post Petition Invoice #880487412 in the amount of $79.17, Post Petition Invoice #880510211 in the amount of $95.00, and Post Petition Invoice #880518511 in the amount of $120.00 were paid by check #029455 dated as of 12/19/2000. Post Petition Invoice #880264112 in the amount of $282.75, Post Petition Invoice #880371311 in the amount of $707.75, Post Petition Invoice #880455811 in the amount of $240.98, Post Petition Invoice #880457411 in the amount of $327.56, and Post Petition Invoice #880407411 in the amount of $240.12, and Post Petition Invoice #880525411 in the amount of $300.13 were paid by check #025516 dated as of 12/19/2000. Post Petition Invoice #880371422 in the amount of $19.51, Post Petition Invoice #880407411 in the amount of $45.76, Post Petition Invoice #880424612 in the amount of $95.31, Post Petition Invoice #880533211 in the amount of $153.17, Post Petition Invoice #880533212 in the amount of $29.26, Post Petition Invoice #880533511 in the amount of $130.50, and Post Petition Invoice #880905011 in the amount of $253.82 were paid by check #028056 dated as of 12/20/2000. Post Petition Invoice #880534511 in the amount of $54,105.40, and Post Petition Invoice #880544422 in the amount of $34.97 were paid by check #028118 dated as of 12/21/2000. Post Petition Invoice #880544912 in the amount of $34.57, Post Petition Invoice #880544412 in the amount of $29.11, Post Petition Invoice #880558211 in the amount of $236.59, Post Petition Invoice #880558511 in the amount of $81.48, and Post Petition Invoice #880558612 in the amount of $21.60 were paid by check #029920 dated as of 12/22/2000. Post Petition Invoice #880407312 in the amount of $848.25 was paid by check #029098 dated as of 12/22/2000. Post Petition Invoice #880012711 in the amount of $15,591.96 was paid by check #023909 dated as of 12/26/2000. (continued on Page 3) |

* See final page of Exhibit for table of Debtors' cases
** The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

***Key
PRI  PRIORITY
UNS  GENERAL UNSECURED NON-PRIORITY

Page 2 of 10

419

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JPF)

**EXHIBIT B – CLAIMS TO BE MODIFIED**
**THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION**
Claims Improperly Asserted, In Part, Against An Incorrect Debtor, In An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| AMROC INVESTMENTS, LLC, Transferee | | | | | | | | Post Petition Invoice #4830128'11 in the amount of $13,505.99, Post Petition Invoice #8800.5500 in the amount of $124.44, Post Petition Invoice #860247511 in the amount of $119.47, Post Petition Invoice #880340712 in the amount of $28.10, Post Petition Invoice #880340812 in the amount of $146.59, Post Petition Invoice #880392411 in the amount of $1,223.16, Post Petition Invoice #880510111 in the amount of $105.25, Post Petition Invoice #880644111 in the amount of $513.77, Post Petition Invoice #880571611 in the amount of $84.43, Post Petition Invoice #880588511 in the amount of $159.71, and Post Petition Invoice #880568512 in the amount of $12.59 were paid by check #032810 dated as of 12/29/2000.  Post Petition Invoice #8804657'12 in the amount of $704.40, and Post Petition Invoice #880644433 in the amount of $41.48 were paid by check #032886 dated as of 12/27/2000.  Post Petition Invoice #880377411 in the amount of $2,840.42, and Post Petition Invoice #880447411 in the amount of $35,387.39 were paid by check #033393 dated as of 12/29/2000. Post Petition Invoice #890177511 in the amount of $863.04, Post Petition Invoice #880162311 in the amount of $9505.84, Post Petition Invoice #880238422 in the amount of $200.00, Post Petition Invoice #880238423 in the amount of $2,463.24, Post Petition Invoice #880247512 in the amount of $70.67, Post Petition Invoice #880328911 in the amount of $1,235.57, Post Petition Invoice #880340722 in the amount of $204.45, Post Petition Invoice #880340811 in the amount of $271.44, Post Petition Invoice #880342711 in the amount of $1,071.32, Post Petition Invoice #880483511 in the amount of $129.30, Post Petition Invoice #880529522 in the amount of $55.85, Post Petition Invoice #880529622 in the amount of $453.60, and Post Petition Invoice #880240811 in the amount of $308.77 were paid by check #033384 dated as of 12/28/2000. Post Petition Invoice #880240311 in the amount of $48.52, Post Petition Invoice #880592611 in the amount of $908.73, Post Petition Invoice #880652311 in the amount of $15500.  (continued on Page 4) |

* See first page of Exhibit for table of Debtor cases

** The Debtors are represented with respect to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

***Key
PRI    PRIORITY
UNS    GENERAL UNSECURED NON-PRIORITY

Page 3 of 10

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JKF)

## EXHIBIT B – CLAIMS TO BE MODIFIED
### THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted, In Part, Against An Incorrect Debtor, In An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| AMROC INVESTMENTS, LLC, Transferee / ATOFINA CHEMICALS INC, Transferor | 0984 | 37 | UNS | $ 2,049,892.00 | 37 / 43 | UNS / UNS | $ 544,076.00 / $ 1,386,891.00 | Post Petition Invoice #8800223811 in the amount of $2,043.10, and Post Petition Invoice #6800223633 in the amount of $1,820.15 were paid by check #038418 dated as of 12/28/2000. Post Petition Invoice #8800217711 in the amount of $570.67 was paid by check #039888 dated as of 1/4/2001. Post Petition Invoice #33223811 in the amount of $225.74 was paid by check #042023 dated as of 1/8/2001. Post Petition Invoice #48001181 in the amount of $12,659.86 was paid by check #05772# dated as of 1/23/2001. Post Petition Invoice #88892541 in the amount of $95.70 was paid by check #092536 dated as of 1/26/2001. Post Petition Invoice #48005301 in the amount of $540.40 was paid by check #093038 dated as of 2/13/2001. Post Petition Invoice #40001281 in the amount of $946.15 was paid by check #43881 dated as of 4/12/2001. Post Petition Invoice #88989401 in the amount of $54.14, Post Petition Invoice #88992511 in the amount of $283.89, Post Petition Invoice #88990911 in the amount of $77.74, and Post Petition Invoice #88985311 in the amount of $577.85 were paid by check #10283 dated as of 12/11/2000. Post Petition Invoice #53184811 in the amount of $244.10, and Post Petition Invoice #53184711 in the amount of $131.18 were paid by check #24423 dated as of 11/17/2000. Pre Petition Invoice #88558031 in the amount of $34.97 was paid by check #527405 dated as of 10/4/1998. Pre Petition Invoice #88534751 in the amount of $2,073.55 was paid by check #89593 dated as of 5/18/2000. |
| BASF CORPORATION | 2756 | 37 | UNS | $ 1,645,725.22 | 37 / 43 | UNS / UNS | $ 15,580.11 / $ 1,505,100.01 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. $119,038.10 of claim paid/settled pursuant to Reclamation Claim by check # 525877 and #525878 all dated as of 04/20/2002. |

* See first page of Exhibit for table of Debtors' cases

** The Debtors are represented with respect to their objection to this claim by Ackerman Levine Gold and Lewin, A Professional Corporation

***Key
PRI    PRIORITY
UNS    GENERAL UNSECURED NON-PRIORITY

421

Owens Corning, et al
Case nos. 00-3837 to 00-3854 (JKF)

EXHIBIT B – CLAIMS TO BE MODIFIED
THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted, In Part, Against An Incorrect Debtor, In An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| CAMERON & BARKLEY CO., Transferor | 5804 | 37 | UNS | $ 184,877.49 | 37 | UNS | $ 84,557.35 | See Reason for Modification listed above for claim number 5804, Amroc Investments, LLC, Transferee. |
| | | | | | 51 | UNS | $ 11,228.94 | |
| COMBO CO. | 63 | 37 | UNS | $ 159,750.85 | 37 | UNS | $ 152,733.61 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #11984002 in the amount of $2,182.17 was paid by check 6005443 dated as of 11/28/2000. Post Petition Invoice #04031176000 in the amount of $2,105.20 was paid by check #011538 dated as of 12/6/2000 |
| | | | | $       * | 43 | UNS | $ 2,719.17 | |
| CONFIDENTIAL COMMUNICATIONS INTERNA | 9114 | 41 | UNS | $ 34,212.87 | 37 | UNS | $ 20,433.56 | Claimant incorrectly asserted entire claim against Integrae. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." in the amounts indicated, based on the Debtors' books and records. Pre Petition Invoice #24261 in the amount of $38.40 was paid by check #113786 dated as of 6/19/2000. Pre Petition Invoice #27398 in the amount of $18.85, Pre Petition Invoice #27393 in the amount of $19.55, Pre Petition Invoice #27394 in the amount of $20.50, Pre Petition Invoice #27395 in the amount of $18.87, Pre Petition Invoice #27399 in the amount of $21.30, Pre Petition Invoice #27401 in the amount of $25.15, Pre Petition Invoice #27402 in the amount of $38.70, and Pre Petition Invoice #27403 in the amount of $19.90 were paid by check #9765 dated as of 6/19/2000. |
| | | | | | 41 | UNS | $ 303.75 | |
| | | | | | 42 | UNS | $ 13,217.34 | |
| CONTRARIAN CAPITAL MANAGEMENT LLC, Transferee | 449 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 535,039.21 | 37 | UNS | $ 310,110.61 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $35,028.59 of claim paid/settled pursuant to Reclamation Claim by check #516693 and #516695 both dated as of 04/15/2002. Post Petition Invoice #025087 in the amount of $25,920.00 was paid by check #038442 dated as of 1/2/2001. |
| | | | | | 43 | UNS | $ 182,978.83 | |

***Key
PRI    PRIORITY
UNS   GENERAL UNSECURED NON-PRIORITY

* See final page of Exhibit for table of Debtors' cases
** The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

Page 6 of 10

422

Owens Corning, et al.
Case nos 00-3837 to 00-3854 (JKF)

## EXHIBIT B – CLAIMS TO BE MODIFIED
### THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted, In Part, Against An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim To Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| CRANE AMERICAN SERVICES | 0310 | 37 | UNS | $ 59,319.99 | 37<br>43 | UNS<br>UNS | $ 750.00<br>$ 47,341.70 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Pre Petition Invoice #01900050 in the amount of $1,510.00, Pre Petition Invoice #01900014 in the amount of $2,498.00, Pre Petition Invoice #01900323 in the amount of $750.28, Pre Petition Invoice #01900824 in the amount of $4,791.17, Pre Petition Invoice #01900826 in the amount of $5450.00, Pre Petition Invoice #01900827 in the amount of $5385.59, Pre Petition Invoice #01900693 in the amount of $437.46, and Pre Petition Invoice #01900563 in the amount of $383.47 were paid by check #0335892 dated as of 8/4/2000. |
| EULER HERMES ACI ASSIGNEE of Morgan Lumber Sales Company (Inc.) | 8862 | 37 | UNS | $ 425,912.47 | 37<br>54 | UNS<br>UNS | $ 412,276.16<br>$ 1,500.00 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed," in the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #226197 in the amount of $3,198.72 was paid by check #009072 dated as of 12/4/2000. Post Petition Invoice #223735 in the amount of $3,757.20 was paid by check #016457 dated as of 12/26/2000. Post Petition Invoice #226218 in the amount of $5,180.40 was paid by check #21212 dated as of 11/14/2000. |
| EULER AMERICAN CREDIT INDEMNITY ASSIGNEE of SSI Holdings, D.B.A. Sumark Services Inc. | 6864 | 37 | UNS | $ 99,632.25 | 37<br>51 | UNS<br>UNS | $ 87,243.40<br>$ 8,305.09 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #7507055911 in the amount of $576.25, Post Petition Invoice #7507055911 in the amount of $491.25, Post Petition Invoice #7507055829 in the amount of $425.30, Post Petition Invoice #7507059243 in the amount of $497.15, and Post Petition Invoice #7507056264 in the amount of $386.79 were paid by check #12870 dated as of 11/9/2000. Post Petition Invoice #7507055830 in the amount of $5525.30 was paid by check #20556 dated as of 11/14/2000. |
| FABRENE INC. Transferor | 4696 | 37 | UNS | $ 882,835.03 | 37<br>51 | UNS<br>UNS | $ 802,222.92<br>$ 15,891.20 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $74,622.11 of the claim paid/asserted pursuant to Reclamation Claim by check #016933 dated as of 04/15/2002. |

***Key
PRI  PRIORITY
UNS  GENERAL UNSECURED NON-PRIORITY

* See last page of Exhibit for state of Debtor cases.
** The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

423

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JKF)

**EXHIBIT B -- CLAIMS TO BE MODIFIED**
**THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION**
Claims Improperly Asserted, In Part, Against An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| G & K SERVICES | 51 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 6,901.92 | 37<br>43 | UNS<br>UNS | $ 4,936.49<br>$ 1,155.34 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Pre-Petition Invoice #489999 in the amount of $37.35, Pre Petition Invoice #501184 in the amount of $37.42, Pre Petition Invoice #501985 in the amount of $231.15, Pre Petition Invoice #504484 in the amount of $39.69, Pre Petition Invoice #504865 in the amount of $304.81, and Pre Petition Invoice #507547 in the amount of $57.82 were paid by check #764646 dated as of 8/17/2000. |
| GRAINGER | 2934 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 118,097.07 | 37<br>41<br>43<br>50<br>51<br>54 | UNS<br>UNS<br>UNS<br>UNS<br>UNS<br>UNS | $ 77,504.97<br>$ 2,943.58<br>$ 33,569.99<br>$ 198.26<br>$ 446.68<br>$ 1,775.01 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Pre Petition Invoice #973051674 in the amount of $920.14 was paid by check #552731 dated as of 11/30/1999, Pre Petition Invoice #918877820 in the amount of $914.63 was paid by check #611507 dated as of 1/28/2000. Pre Petition Invoice #408503356 in the amount of $80.91 was paid by check #751216 dated as of 7/28/2000. Pre Petition Invoice #333950868 in the amount of $42.12 was paid by check #786156 dated as of 9/15/2000. |
| GRINNELL FIRE PROTECTION | 2934 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 1,780.49 | 37<br>43 | UNS<br>UNS | $ 491.71<br>$ 931.48 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtor' books and records. Pre Petition Invoice #1642270 in the amount of $355.80 was paid by check #745892 dated as of 7/24/2000. |
| HONEYWELL, INTERNATIONAL, Transferor | 449 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 535,035.21 | 37<br>43 | UNS<br>UNS | $ 310,110.81<br>$ 182,976.63 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $33,028.99 of claim paid/passed pursuant to Reclamation Claim by check #516993 and #516988 both dated as of 4/12/2002. Post Petition Invoice #825087 in the amount of $25,920.00 was paid by check #838442 dated as of 1/3/2001. |

***Key
PRI  PRIORITY
UNS  GENERAL UNSECURED NON-PRIORITY

* See final page of Exhibit for code of Debtor cases
** The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

Owens Corning, et al.
Case nos. 00-3837 to 00-3854 (JKF)

## EXHIBIT B — CLAIMS TO BE MODIFIED
### THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted, In Part, Against An Incorrect Debtor, In An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification [See also paragraphs 18 and 19 of the Objection] |
|---|---|---|---|---|---|---|---|
| JEFFERSON SMURFIT CORPORATION | 37, 39, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | PRI | $ 352,388.08 | 37 | UNS | $ 5,000.15 | Claim does not qualify as priority claim under 11 U.S.C. § 507(a). Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $51,724.04 of claim paid/settled pursuant to Reclamation Claim by check #0000789541 dated as of 11/22/2002, check #519591 and check #519589 both dated as of 04/15/2002. |
| | | | | 43 | UNS | $ 295,194.49 | |
| LONGACRE MASTER FUND, LTD., Transferee | 37 | PRI | $ 85,741.69 | 37 | UNS | $ 66,691.84 | Claim does not qualify as priority claim under 11 U.S.C. § 507(a). Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $10,819.20 of claim paid/settled pursuant to Reclamation Claim by check #519593 dated as of 06/06/2002. |
| | | | | 43 | UNS | $ 5,701.10 | |
| | | | | 54 | UNS | $ 2,529.75 | |
| LONGACRE MASTER FUND, LTD., Transferee | 37 | UNS | $ 892,635.53 | 37 | UNS | $ 802,322.82 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $74,622.11 of claim paid/settled pursuant to Reclamation Claim by check #519693 dated as of 04/19/2002. |
| | | | | 51 | UNS | $ 15,691.20 | |
| LONGACRE MASTER FUND, LTD., Transferee | 37 | UNS | $ 2,049,692.00 | 37 | UNS | $ 544,076.00 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $55,925.00 of claim paid/settled pursuant to Reclamation Claim by check #0000789547 dated as of 11/22/2002. Post Petition Invoice #90427675 in the amount of $73,200.00 was paid by check #009910 dated as of 12/4/2000. |
| | | | | 43 | UNS | $ 1,356,691.00 | |
| ONDEO NALCO COMPANY | 37 | UNS | $ 312,119.32 | 37 | UNS | $ 305,976.18 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $2,211.42 of claim paid/settled pursuant to Reclamation Claim by check #0000072154 dated as of 08/22/2002. Post Petition Invoice #90391950 in the amount of $1,038.00 was paid by check #021470 dated as of 12/14/2000. |
| | | | | 43 | UNS | $ 2,892.72 | |

***Key:
PRI    PRIORITY
UNS   GENERAL UNSECURED NON-PRIORITY

* See final page of Exhibit for table of Debtors' cases
** The Debtors are represented with respect to their objection to this claim by Adelman Lavine Gold and Levin, A Professional Corporation

Page 6 of 10

425

Owens Corning, et al
Case nos. 00-3837 to 00-3854 (JKF)

## EXHIBIT B – CLAIMS TO BE MODIFIED
### THIRTY-EIGHTH OMNIBUS (SUBSTANTIVE) OBJECTION
Claims Improperly Asserted, In Part, Against An Incorrect Debtor, In An Incorrect Amount and/or With An Incorrect Classification

| Name of Claimant | Claim Number | Debtor(s) Against Which Claims Asserted* | Status*** | Claim Amount | Debtor(s) Against Which Claim to Be Allowed* | Modified Status*** | Modified Claim Amount | Reason for Modification (See also paragraphs 18 and 19 of the Objection) |
|---|---|---|---|---|---|---|---|---|
| PACKAGING CORPORATION OF AMERICA | 5686 | 37 | UNS | $ 390,778.89 | 37<br>43<br>54 | UNS<br>UNS<br>UNS | $ 303,886.53<br>$ 22,485.66<br>$ 19,678.17 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. $34,416.53 of claim paid/settled pursuant to Reclamation Claim by check #0000773588 dated as of 10/30/2002, check #0000786539 dated as of 11/22/2002, check #0000789542 dated as of 11/22/2002 and check #0000773592 dated as of 10/30/2002. |
| SUBURBAN PROPANE, L.P. | 422 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 19,240.74 | 37<br>43 | UNS<br>UNS | $ 17,659.01<br>$ 683.85 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Pre Petition Invoice #694784 in the amount of $955.76, and Pre Petition Invoice #686021 in the amount of $201.13 were paid by check #7781236 dated as of 6/22/2000. |
| SUMMIT ACE HARDWARE | 284 | 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 | UNS | $ 1,597.43 | 37<br>50 | UNS<br>UNS | $ 1,360.61<br>$ 179.27 | Claimant incorrectly asserted claim against Owens Corning, et al. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Pre Petition Invoice #90721 in the amount of $57.55 was paid by check #871614 dated as of 4/10/2001. |
| TENNANT COMPANY | 6527 | 37 | UNS | $ 13,417.40 | 37<br>43 | UNS<br>UNS | $ 8,728.93<br>$ 3,884.51 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #80982822 in the amount of $237.54 was paid by check #041943 as of 1/8/2001. Post Petition Invoice #80957383 in the amount of $418.38 was paid by check #80978 dated as of 11/2/2000. Post Petition Invoice #80950403 in the amount of $171.10 was paid by check #141874 dated as of 4/10/2001. |
| TIME INDUSTRIAL INC | 5873 | 37 | UNS | $ 13,555.44 | 37<br>54 | UNS<br>UNS | $ 150.31<br>$ 5,109.79 | Claimant incorrectly asserted entire claim against Owens Corning. Claim should be divided among the Debtors specified in the column entitled "Debtor(s) Against Which Claim To Be Allowed." In the amounts indicated, based on the Debtors' books and records. Post Petition Invoice #00133560 in the amount of $1,273.40, Post Petition Invoice #00133580 in the amount of $101.76, Post Petition Invoice #00134127 in the amount of $3,213.92, and Post Petition Invoice #00134391 in the amount of $4,004.28 were paid by check #13352 dated as of 11/9/2000. |

**Key
PRI   PRIORITY
UNS   GENERAL UNSECURED NON-PRIORITY

* See final page of Exhibit for table of Debtors' cases
** The Debtors are represented with respect to their objection to the claim by Ashman Levine Gold and Lovin, A Professional Corporation