(ii) Status

To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class E4 shall be entitled to vote to accept or reject the Plan.

(c) Class E6: Soltech General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class E6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class E6 Claim becomes an Allowed Class E6 Claim, and (iii) the date on which such Class E6 Claim becomes due and payable pursuant to any agreement between Soltech and a holder of a Class E6 Claim, each holder of an Allowed Class E6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class E6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class E6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class E6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class E6 shall be entitled to vote to accept or reject the Plan.

(d) Class E10: Soltech Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class E10 Claim, each holder of an Allowed Class E10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class E10 Claim (excluding post-petition interest)

(ii) Status

Class E10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class E10 shall be entitled to vote to accept or reject the Plan.

(e) Class E12: Soltech Interests

(i) Treatment

Each holder of an Allowed Interest in Class E12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Class E12 is Unimpaired and holders of Class E12 Interests are thus not entitled to vote to accept or reject the Plan.

8. **<u>OCFT</u> (Classes F1 through F12)**

(a) Class F3: OCFT Convenience Claims

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class F3 Claim becomes an Allowed Class F3 Claim, or (iii) the date on which such Class F3 Claim becomes due and payable pursuant to any agreement between OCFT and a holder of a Class F3 Claim, each holder of an Allowed Class F3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class F3 Claim (a) Cash equal to the amount of such Allowed Class F3 Claim or (b) such other treatment as OCFT and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Class F6 that desires treatment of such Claim as an OCFT Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class F3 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class F3 shall be entitled to vote to accept or reject the Plan.

(b) Class F4: OCFT Bank Holders Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class F4 Claim, each holder of an Allowed Class F4 Claim shall receive the treatment set forth in Section 3.3(b)(ii) of the Plan; *provided, however*, that, solely for purposes of calculating distributions to other holders of Claims against and Interests in OCFT, an amount equal to the Class F4 Distribution Amount shall be, and shall be deemed to be, distributable to the Bank Holders on the Initial Distribution Date on account of their Allowed Class F4 Claims.

(ii)　Status

To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class F4 shall be entitled to vote to accept or reject the Plan.

(c)　Class F6: OCFT General Unsecured Claims

(i)　Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class F6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class F6 Claim becomes an Allowed Class F6 Claim, and (iii) the date on which such Class F6 Claim becomes due and payable pursuant to any agreement between OCFT and a holder of a Class F6 Claim, each holder of an Allowed Class F6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class F6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class F6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii)　Status

Class F6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class F6 shall be entitled to vote to accept or reject the Plan.

(d)　Class F10: OCFT Intercompany Claims

(i)　Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class F10 Claim, each holder of an Allowed Class F10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class F10 Claim (excluding post-petition interest).

(ii)　Status

Class F10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class F10 shall be entitled to vote to accept or reject the Plan.

(e)　Class F12: OCFT Interests

(i)　Treatment

Each holder of an Allowed Interest in Class F12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Class F12 is Unimpaired and holders of Class F12 Interests are thus not entitled to vote to accept or reject the Plan.

9. <u>OC Sweden</u> **(Classes G1 through G12)**

(a) Class G3: OC Sweden Convenience Claims

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class G3 Claim becomes an Allowed Class G3 Claim, or (iii) the date on which such Class G3 Claim becomes due and payable pursuant to any agreement between OC Sweden and a holder of a Class G3 Claim, each holder of an Allowed Class G3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class G3 Claim (a) Cash equal to the amount of such Allowed Class G3 Claim or (b) such other treatment as OC Sweden and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Class G6 that desires treatment of such Claim as an OC Sweden Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class G3 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class G3 shall be entitled to vote to accept or reject the Plan.

(b) Class G4: OC Sweden Bank Holders Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class G4 Claim, each holder of an Allowed Class G4 Claim shall receive the treatment set forth in Section 3.3(b)(ii) of the Plan; *provided, however*, that, solely for purposes of calculating distributions to other holders of Claims against and Interests in OC Sweden, an amount equal to the Class G4 Distribution Amount shall be, and shall be deemed to be, distributable to the Bank Holders on the Initial Distribution Date on account of their Allowed Class G4 Claims.

(ii) Status

To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class G4 shall be entitled to vote to accept or reject the Plan.

(c) Class G6: OC Sweden General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class G6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class G6 Claim becomes an Allowed Class G6 Claim, and (iii) the date on which such Class G6 Claim becomes due and payable pursuant to any agreement between OC Sweden and a holder of a Class G6 Claim, each holder of an Allowed Class G6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class G6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however,* that distributions with respect to Class G6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class G6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class G6 shall be entitled to vote to accept or reject the Plan.

(d) Class G10: OC Sweden Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class G10 Claim, each holder of an Allowed Class G10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class G10 Claim (excluding post-petition interest).

(ii) Status

Class G10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class G10 shall be entitled to vote to accept or reject the Plan.

(e) Class G12: OC Sweden Interests

(i) Treatment

Each holder of an Allowed Interest in Class G12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Class G12 is Unimpaired and holders of Class G12 Interests are thus not entitled to vote to accept or reject the Plan.

**10. IPM (Classes H1 through H12)**

(a) Class H3: IPM Convenience Claims

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class H3 Claim becomes an Allowed Class H3 Claim, or (iii) the date on which such Class H3 Claim becomes due and payable pursuant to any agreement between IPM and a holder of a Class H3 Claim, each holder of an Allowed Class H3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class H3 Claim (a) Cash equal to the amount of such Allowed Class H3 Claim or (b) such other treatment as IPM and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Class H6 that desires treatment of such Claim as an IPM Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class H3 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class H3 shall be entitled to vote to accept or reject the Plan.

(b) Class H4: IPM Bank Holders Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class H4 Claim, each holder of an Allowed Class H4 Claim shall receive the treatment set forth in Section 3.3(b)(ii) of the Plan; *provided, however*, that, solely for purposes of calculating distributions to other holders of Claims against and Interests in IPM, an amount equal to the Class H4 Distribution Amount shall be, and shall be deemed to be, distributable to the Bank Holders on the Initial Distribution Date on account of their Allowed Class H4 Claims.

(ii) Status

To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class H4 shall be entitled to vote to accept or reject the Plan.

(c) Class H6: IPM General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class H6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class H6 Claim becomes an Allowed Class H6 Claim, and (iii) the date on which such Class H6 Claim becomes due and payable pursuant to any agreement between IPM and a holder of a Class H6 Claim, each holder of an Allowed Class H6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class H6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class H6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class H6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class H6 shall be entitled to vote to accept or reject the Plan.

(iii) Status

Class H6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class H6 shall be entitled to vote to accept or reject the Plan.

(d) Class H10: IPM Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class H10 Claim, each holder of an Allowed Class H10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class H10 Claim (excluding post-petition interest).

(ii) Status

Class H10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class H10 shall be entitled to vote to accept or reject the Plan.

(e) Class H12: IPM Interests

(i) Treatment

Each holder of an Allowed Interest in Class H12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Class H12 is Unimpaired and holders of Class H12 Interests are thus not entitled to vote to accept or reject the Plan.

**11. <u>Integrex</u> (Classes I1 through I12)**

(a) Class I3: Integrex Convenience Claims

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class I3 Claim becomes an Allowed Class I3 Claim, or (iii) the date on which such Class I3 Claim becomes due and payable pursuant to any agreement between Integrex and a holder of a Class I3 Claim, each holder of an Allowed Class I3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class I3 Claim (a) Cash equal to the amount of such Allowed Class I3 Claim or (b) such other treatment as Integrex and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Class I6 that desires treatment of such Claim as an Integrex Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class I3 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class I3 shall be entitled to vote to accept or reject the Plan.

(b) Class I4: Integrex Bank Holders Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class I4 Claim, each holder of an Allowed Class I4 Claim shall receive the treatment set forth in Section 3.3(b)(ii) of the Plan; *provided, however*, that, solely for purposes of calculating distributions to other holders of Claims against and Interests in Integrex, an amount equal to the Class I4 Distribution Amount shall be, and shall be deemed to be, distributable to the Bank Holders on the Initial Distribution Date on account of their Allowed Class I4 Claims.

(ii) Status

To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class I4 shall be entitled to vote to accept or reject the Plan.

(c) Class I6: Integrex General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class I6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class I6 Claim becomes an Allowed Class I6 Claim, and (iii) the date on which such Class I6 Claim becomes due and payable pursuant to any agreement between Integrex and a holder of a Class I6 Claim, each holder of an Allowed Class I6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class I6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class I6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class I6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class I6 shall be entitled to vote to accept or reject the Plan.

(d) Class I7: Integrex Asbestos Personal Injury Claims

(i) Treatment

In the event that Class A5 or Class A6-B rejects the Plan and the Bankruptcy Court determines that holders of Class I7 Claims have Allowed Claims against Integrex under the Contribution Agreement or on account of any related successor liability, veil-piercing or related claims, then on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account Cash and New OCD Common Stock (if any) with an aggregate value as of the Effective Date equal to the amount of such Allowed Class I7 Claim (if any) in the Standard Combination.

(ii) Status

Class I7 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class I7 shall be entitled to vote to accept or reject the Plan.

(e) Class I10: Integrex Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class I10 Claim, each holder of an Allowed Class I10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class I10 Claim (excluding post-petition interest).

(ii) Status

Class I10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class I10 shall be entitled to vote to accept or reject the Plan.

(f) Class I12: Integrex Interests

(i) Treatment

On the Effective Date, all of the Class I12 Interests outstanding as of the Effective Date shall be deemed cancelled and extinguished. No holder thereof shall be entitled to, or shall receive or retain, any property or interest in property on account of such Class I12 Interests.

(ii) Status

Class I12 Interests are Impaired. The holders of the Interests in Class I12 are deemed to have rejected the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

**12. <u>CDC</u> (Classes J1 through J12)**

(a) Class J3: CDC Convenience Claims

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class J3 Claim becomes an Allowed Class J3 Claim, or (iii) the date on which such Class J3 Claim becomes due and payable pursuant to any agreement between CDC and a holder of a Class J3 Claim, each holder of an Allowed Class J3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class J3 Claim (a) Cash equal to the amount of such Allowed Class J3 Claim or (b) such other treatment as CDC and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Class J6 that desires treatment of such Claim as a CDC Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class J3 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class J3 shall be entitled to vote to accept or reject the Plan.

(b) Class J6: CDC General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class J6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class J6 Claim becomes an Allowed Class J6 Claim, and (iii) the date on which such Class J6 Claim becomes due and payable pursuant to any agreement between CDC and a holder of a Class J6 Claim, each holder of an Allowed Class J6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class J6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class J6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class J6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class J6 shall be entitled to vote to accept or reject the Plan.

(c) Class J10: CDC Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class J10 Claim, each holder of an Allowed Class J10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class J10 Claim (excluding post-petition interest).

(ii) Status

Class J10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class J10 shall be entitled to vote to accept or reject the Plan.

(d) Class J12: CDC Interests

(i) Treatment

Each holder of an Allowed Interest in Class J12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Class J12 is Unimpaired and holders of Class J12 Interests are thus not entitled to vote to accept or reject the Plan.

**13. <u>OCHT</u> (Classes K1 through K12)**

(a) Class K3: OCHT Convenience Claims

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class K3 Claim becomes an Allowed Class K3 Claim, or (iii) the date on which such Class K3 Claim becomes due and payable pursuant to any agreement between OCHT and a holder of a Class K3 Claim, each holder of an Allowed Class K3 Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class K3 Claim (a) Cash equal to the amount of such Allowed Class K3 Claim or (b) such other treatment as OCHT and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Class K6 that desires treatment of such Claim as a OCHT Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class K3 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class K3 shall be entitled to vote to accept or reject the Plan.

    (b) Class K6: OCHT General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class K6 Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class K6 Claim becomes an Allowed Class K6 Claim, and (iii) the date on which such Class K6 Claim becomes due and payable pursuant to any agreement between OCHT and a holder of a Class K6 Claim, each holder of an Allowed Class K6 Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class K6 Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class K6 Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class K6 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class K6 shall be entitled to vote to accept or reject the Plan.

(c) Class K10: OCHT Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class K10 Claim, each holder of an Allowed Class K10 Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class K10 Claim (excluding post-petition interest).

(ii) Status

Class K10 Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Class K10 shall be entitled to vote to accept or reject the Plan.

(d) Class K12: OCHT Interests

(i) Treatment

Each holder of an Allowed Interest in Class K12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Class K12 is Unimpaired and holders of Class K12 Interests are thus not entitled to vote to accept or reject the Plan.

**14. Convenience Claims with respect to Classes L3 through U3 (treatment of Claims in Classes L3 through U3 are set forth in detail on an individual basis in the Plan)**

(a) Classes L3 through U3

(i) Treatment

On, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such Class L3-U3 Convenience Claims becomes an Allowed Class L3-U3 Convenience Claim, or (iii) the date on which such Class L3-U3 Convenience Claim becomes due and payable pursuant to any agreement between the Debtors and a holder of a Class L3-U3 Convenience Claim, each holder of an Allowed Class L3-U3 Convenience Claim shall receive in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class L3-U3 Claim (a) Cash equal to the amount of such Allowed Class L3-U3 Convenience Claim or (b) such other treatment as the Debtors and such holder shall have agreed in writing.

(ii) Election

Any holder of a Claim in Classes L6-U6 that desires treatment of such Claim as a Convenience Claim shall make such election on the Ballot to be provided to holders of Impaired Claims entitled to vote to accept or reject the Plan (as specified in Section 4.1 of the Plan) and return such Ballot to the address specified therein on or before the Voting Deadline. Any election made after the Voting Deadline shall not be binding on the Debtors unless the Voting Deadline is expressly waived in writing by the Debtors with respect to any such Claim.

(iii) Status

Class L3-U3 Convenience Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Classes L3-U3 shall be entitled to vote to accept or reject the Plan.

**15. General Unsecured Claims with respect to Classes L6 through U6 (treatment of Claims in Classes L6 through U6 are set forth in detail on an individual basis in the Plan)**

(a) Class L6 through U6: General Unsecured Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class L6-U6 General Unsecured Claim, on, or as soon as reasonably practicable after, the latest of (i) the Initial Distribution Date, (ii) the date on which such General Unsecured Claim becomes an Allowed Class L6-U6 General Unsecured Claim, and (iii) the date on which such Class L6-U6 General Unsecured Claim becomes due and payable pursuant to any agreement between the Debtors and a holder of a Class L6-U6 General Unsecured Claim, each

holder of an Allowed Class L6-U6 General Unsecured Claim shall receive Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the amount of such Allowed Class L6-U6 General Unsecured Claim (excluding post-petition interest) in the Standard Combination; *provided, however*, that distributions with respect to Class L6-U6 General Unsecured Claims that become Allowed Claims after the Effective Date shall be made from the Disputed Distribution Reserve, as set forth in Section 9.4(d) of the Plan.

(ii) Status

Class L6-U6 General Unsecured Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Classes L6-U6 shall be entitled to vote to accept or reject the Plan.

**16. Intercompany Claims with respect to Classes L10 through U10 (treatment of Claims in Classes L10 through U10 are set forth in detail on an individual basis in the Plan)**

(a) Classes L10 through U10: Intercompany Claims

(i) Treatment

In full satisfaction, release and discharge of, and in exchange for, its Allowed Class L10-U10 Intercompany Claim, each holder of an Allowed Class L10-U10 Intercompany Claim shall be credited with value on, or as soon as reasonably practicable after, the Initial Distribution Date, equal to the amount of such Allowed Class L10-U10 Intercompany Claim (excluding post-petition interest).

(ii) Status

Class L10-U10 Intercompany Claims are Impaired. To the extent and in the manner provided in the Voting Procedures Order, holders of the Claims in Classes L10-U10 shall be entitled to vote to accept or reject the Plan.

**17. Interests with respect to Classes L12 through U12 (treatment of Interests in Classes L12 through U12 are set forth in detail on an individual basis in the Plan)**

(a) Classes L12 through U12: Interests

(i) Treatment

Each holder of an Allowed Interest in Classes L12-U12 shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Interest entitles the holder.

(ii) Status

Classes L12-U12 are Unimpaired and holders of Class L12-U12 Interests are thus not entitled to vote to accept or reject the Plan.

**18. FAIR Act**

(a) FAIR Act Enacted Prior to the Effective Date

If the FAIR Act has been enacted into law prior to the Effective Date (and, in the event the FAIR Act has been challenged in a court of competent jurisdiction within two (2) months after the date of enactment of the FAIR Act, such challenge has been denied pursuant to a Final Order), then there shall be no distribution by the Debtors pursuant to the Plan on account of Asbestos Personal Injury Claims, except (i) the Debtors shall make any distributions as may be required by the FAIR Act, and (ii) the Fibreboard Insurance Settlement Trust shall be administered in accordance with the FAIR Act. In such event, any distributions to holders of Claims and Interests (if any) shall be determined based upon the then distributable value of OCD (net of the required FAIR Act payment described in clause (i) of the preceding sentence). The treatment of Claims and Interests, described in Sections 3.1 through 3.23 of the Plan, are premised upon the assumption that the FAIR Act shall not have been enacted into law prior to the Effective Date.

(b) No Impact on Asbestos Personal Injury Permanent Channeling Injunction

The Asbestos Personal Injury Permanent Channeling Injunction and the other injunctive and related provisions of the Plan, including, without limitation, Sections 3.3, 3.4, 5.14 and 5.15 of the Plan, shall remain in full force and effect to the fullest extent possible under applicable law whether or not the FAIR Act is ever enacted

**19. Reservation of Rights Regarding Claims**

Except as otherwise expressly provided in the Plan, nothing in the Plan shall, or shall be deemed to, affect or impair any of the Debtors' or Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment. The Claims against any particular Debtor that are Unimpaired shall remain the obligations solely of such Debtor and shall not become obligations of any other Debtor or Reorganized Debtor.

## C. ACCEPTANCE OR REJECTION OF THE PLAN

**1. Impaired Classes of Claims and Interests Entitled to Vote**

Subject to Sections 4.3 and 4.4 of the Plan, holders of Claims or Interests in each Impaired Class of Claims or Interests that receive or retain property pursuant to the Plan shall be entitled to vote separately to accept or reject the Plan; *provided, however*, that if the Bank Holders are deemed Impaired and any of Classes A4 through I4 rejects the Plan, then the Bank Holders shall receive the treatment set forth in Section 3.3(b)(ii)(B) of the Plan.

**2. Acceptance by an Impaired Class**

Pursuant to Section 1126(c) of the Bankruptcy Code, but subject to Section 4.3 of the Plan, an impaired Class of Claims shall have accepted the Plan if, after excluding any Claims held by any holder designated pursuant to Section 1126(e) of the Bankruptcy Code, (a) the

holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

**3. Acceptance Pursuant To Section 524 Of The Bankruptcy Code**

Pursuant to Section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code, the respective Classes of Class A7 OC Asbestos Personal Injury Claims, Class I7 Integrex Asbestos Personal Injury Claims and Class B8 FB Asbestos Personal Injury Claims shall be deemed to have accepted the Plan only if the holders of at least 75 percent of those Claims voting in each such Class have voted to accept the Plan.

**4. Presumed Acceptances by Unimpaired Classes**

Classes of Claims or Interests designated as unimpaired are conclusively presumed to have voted to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code, and the votes of such Claim holders will not be solicited.

**5. Classes Deemed to Have Rejected the Plan**

Impaired Classes of Claims or Interests that do not receive or retain property under the Plan are conclusively presumed to have voted to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and the votes of such Claim or Interest holders will not be solicited.

**6. Confirmability and Severability of the Plan**

(a) Consensual Confirmation

The Confirmation requirements of Section 1129(a) of the Bankruptcy Code must be satisfied separately with respect to each Debtor. Therefore, notwithstanding the combination of the separate plans of reorganization of all Debtors in the Plan for purposes of, among other things, economy and efficiency, the Plan shall be deemed a separate Chapter 11 plan for each such Debtor.

(b) Cramdown

With respect to any impaired Class of Claims or Interests that fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, excluding Classes A7, I7 and B8 and including any classes that may be created pursuant to amendments to the Plan, the Plan Proponents request that the Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting classes, in which case or cases, the Plan shall constitute a motion for such relief.

(c) Reservation of Rights

The Plan Proponents reserve the right to modify or withdraw the Plan, any other plan, or the Plan in its entirety, for any reason, including, without limitation, in the event

that any separate plan for a particular Debtor is not confirmed. In addition, should the Plan, or any individual Debtor's plan, fail to be accepted by the requisite number and amount of Claims and Interests voting, as required to satisfy Sections 524(g) (in the case of any Debtor subject to Asbestos Personal Injury Claims) and 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Plan Proponents reserve the right to amend, modify or withdraw the Plan in its entirety.

**D. MEANS FOR IMPLEMENTATION OF THE PLAN**

**1. Continued Corporate Existence**

Following confirmation and consummation of the Plan, the Reorganized Debtors will continue to exist as separate corporate entities in accordance with the laws of their respective states of incorporation and pursuant to their respective certificates or articles of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificates or articles of incorporation and bylaws are amended pursuant to the Plan or as otherwise provided under the Restructuring Transactions. OC intends to implement a restructuring plan which would reorganize OCD and its Subsidiaries along OC's major business lines. The planning for this restructuring is in a preliminary stage. The Restructuring Transactions shall be summarized in Appendix H to this Disclosure Statement, to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline. The Debtors will file a summary of the corporate actions necessary to accomplish the Restructuring Transactions at least ten (10) Business Days prior to the Objection Deadline.

**2. Cancellation of Debt and Debt Agreements**

(a) On the Effective Date, (i) the Debt shall be cancelled and extinguished and (ii) the obligations of the Debtors, CSFB as agent for the Bank Holders and the Pre-petition Indenture Trustees under the Debt Agreements shall be discharged. Notwithstanding the foregoing, each of the Pre-petition Bond Indentures shall continue in effect solely for the purposes of (x) allowing the Pre-petition Indenture Trustee to make distributions to holders of Allowed Class A5 Claims pursuant to the Plan and (y) permitting the Pre-petition Indenture Trustee to maintain any rights or liens it may have for fees, costs, expenses and indemnification under its indenture or other agreement or applicable law, but the foregoing shall not result in any expense or liability to any Reorganized Debtor other than as expressly provided for in the Plan. The Charging Liens of the Pre-petition Indenture Trustees will be discharged solely upon payment in full of the Indenture Trustee Fees, and nothing in the Plan shall be deemed to impair, waive or discharge any Charging Lien for any fees and expenses not paid by the Reorganized Debtors.

(b) No Reorganized Debtor shall have any obligations to any Pre-petition Indenture Trustee, agent or service (or to any disbursing agent replacing a Pre-petition Indenture Trustee, agent or service) for any fees, costs or expenses, except as expressly provided in the Plan. Except as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and immediately following the completion of distributions to holders of Claims in Class A5, the Pre-petition Indenture

Trustees shall be released from all duties, without any further action on the part of the Debtors or Reorganized Debtors.

**3. Cancellation of OCD Interests and Integrex Interests**

Except as otherwise expressly provided in the Plan, as of the Effective Date, by virtue of the Plan, and without any action necessary on the part of the holders thereof or any corporate action, except as specified in the Plan, all of the OCD Interests and Integrex Interests outstanding at the Effective Date shall be cancelled, extinguished and retired, and no consideration will be paid or delivered with respect thereto.

**4. Certificates of Incorporation and Bylaws**

The certificate or articles of incorporation and bylaws of each Debtor will be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and will include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code. The Amended and Restated Certificate of Incorporation of Reorganized OCD and the Amended and Restated Bylaws of Reorganized OCD will also include provisions (i) creating the New OCD Common Stock, and (ii), to the extent necessary or appropriate, effectuating the provisions of the Plan. The Amended and Restated Certificate of Incorporation of Reorganized OCD and the Amended and Restated Bylaws of Reorganized OCD shall be in substantially the forms of Exhibit A and Exhibit B, to be filed at least ten (10) Business Days prior to the Objection Deadline.

**5. Exculpation and Limitation of Liability**

(a) No Claimant Released Party or Released Party shall have or incur any liability to any Person that has held, currently holds or may hold a Claim or other obligation, suit, judgment, damages, Demand, debt, right, remedy, cause of action or liability or Interest or other right of an equity security holder, or any other party in interest, or any Person claiming by or through them, or any of their respective Related Persons, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b) Notwithstanding any other provision of the Plan, no Person that has held, currently holds or may hold a Claim or other obligation, suit, judgment, damages, Demand, debt, right, remedy, cause of action or liability or Interest or other right of an equity security holder, no person claiming by or through them, nor any of their respective Related Persons, shall have any Claim or right of action against any Claimant Released Party or any Released Party for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing the Plan, solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the confirmation of the Plan or the

administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

(c) The foregoing exculpation and limitation on liability shall not, however, limit, abridge or otherwise affect the rights of the Reorganized Debtors to enforce, sue on, settle or compromise the rights, claims and other matters retained by Reorganized Debtors pursuant to Section 5.11 of the Plan.

(d) The foregoing exculpation and limitation on liability are an integral part of the Plan and are essential to its implementation. Each Person being exculpated, or whose liability is being limited, pursuant to Section 5.5 of the Plan shall have the right to independently seek the enforcement of the terms of Section 5.5 of the Plan.

### 6. Restructuring Transactions

On or after the Effective Date, any Reorganized Debtor may enter into Restructuring Transactions and may take such actions as may be necessary or appropriate to effect such Restructuring Transactions, as may be determined by such Reorganized Debtor to be necessary or appropriate. The actions to effect the Restructuring Transactions may include: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and such other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree; (iii) the filing of appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable law; and (iv) all other actions which the applicable entities may determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with such transactions. The Restructuring Transactions may include one or more mergers, consolidations, restructures, dispositions, liquidations or dissolutions, as may be determined by the Reorganized Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties and obligations of all or certain of the Reorganized Debtors vesting in one or more surviving, resulting or acquiring corporations. In each case in which the surviving, resulting or acquiring corporation in any such transaction is a successor to a Reorganized Debtor, such surviving, resulting or acquiring corporation will perform the obligations of the applicable Reorganized Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Reorganized Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring corporation, which may provide that another Reorganized Debtor will perform such obligations. OC intends to implement a restructuring plan which would reorganize OCD and its Subsidiaries along OC's major business lines as described in this Disclosure Statement, with a detailed description of the actions and steps required to implement the Restructuring Transactions to be filed at least ten (10) Business Days prior to the Objection Deadline. On or prior to, or as soon as practicable after, the Effective Date, the Debtors or the Reorganized Debtors may take such steps as may be necessary or appropriate to effectuate Restructuring Transactions that satisfy the requirements set forth in Section 5.6 of the Plan.

7.    **Issuance of New OCD Securities**

(a)    On or after the Effective Date, Reorganized OCD shall issue for distribution in accordance with the terms of the Plan (i) the New OCD Common Stock, and (ii) the Senior Notes (if applicable), and may refinance the obligations owed to the Bank Holders under the 1997 Credit Agreement.

(b)    All of the shares of New OCD Common Stock issued pursuant to the Plan on or after the Effective Date, as the case may be, will be fully paid and non-assessable.

(c)    The issuance of all of the New OCD Securities, and the distribution thereof, shall be exempt from registration under applicable securities laws to the extent provided under Section 1145 of the Bankruptcy Code.

(d)    On or after the Effective Date, Reorganized Integrex shall issue 100% of its common stock to Reorganized OCD or one of its Affiliates, pursuant to the Restructuring Transactions and/or a settlement agreement among OCD, Integrex, and holders of Class I7 Claims, the terms and conditions of which shall be set forth in Exhibit I, to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.

8.    **Secondary Offerings of New OCD Common Stock**

(a)    Promptly following the Effective Date, Reorganized OCD shall, at the request of the Asbestos Personal Injury Trust, assist the Asbestos Personal Injury Trust with secondary offerings of the New OCD Common Stock held by the Asbestos Personal Injury Trust, consistent with the registration rights described in Exhibit H to the Plan.

(b)    Reorganized OCD reserves the right to conduct offerings of New OCD Common Stock (and, with respect to the New OCD Common Stock to be distributed to the Asbestos Personal Injury Trust pursuant to Sections 3.3(f), 3.4(d) and 3.11(d) (if any) of the Plan, solely at the request of the Asbestos Personal Injury Trustees) and/or Senior Notes prior to or after the Initial Distribution Date, as it may deem appropriate (subject to the reasonable consent of the other Plan Proponents).

9.    **Litigation Trust**

On the Effective Date, the Reorganized Debtors shall transfer and assign, or shall cause to be transferred and assigned to the Litigation Trust all their right, title and interest in and to the Litigation Trust Assets.

(a)    Appointment of Litigation Trustee

The Litigation Trustee for the Litigation Trust shall be designated by the Plan Proponents and approved by the Bankruptcy Court. On or prior to ten (10) Business Days prior to the Objection Deadline, the Plan Proponents shall file with the Bankruptcy Court a notice designating the Person they have selected as Litigation Trustee and seeking approval of such designation at the Confirmation Hearing. Once approved by the Bankruptcy Court, the

Litigation Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Litigation Trust Agreement.

(b) Transfer of Litigation Trust Assets to the Litigation Trust

On the Effective Date, the Debtors shall irrevocably transfer the Litigation Trust Assets (except such assets as have been previously settled) to the Litigation Trust, for and on behalf of the beneficiaries of the Litigation Trust. Upon such transfer, the Debtors, the Disbursing Agent and the Reorganized Debtors shall have no further interests therein or rights or obligations with respect thereto other than the right of the Reorganized Debtors to recover the Litigation Trust Reimbursement Obligation as set forth in Section 5.9(e) of the Plan and the obligation of the Litigation Trustee to distribute the net amount of the Litigation Trust Recoveries (after the repayment of the Litigation Trust Expenses and the Litigation Trust Reimbursement Obligation) to the Disputed Distribution Reserve as set forth in Section 5.9(e) of the Plan.

(c) The Litigation Trust

(i) Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Litigation Trust Agreement in the form of Exhibit C, as it may be amended up to ten (10) Business Days prior to the Objection Deadline, shall become effective. The Litigation Trustee shall accept the Litigation Trust and sign the Litigation Trust Agreement as of the Effective Date and the Litigation Trust will then be deemed created and effective.

(ii) The Litigation Trustee shall have full authority to take any steps necessary to administer the Litigation Trust Agreement, including, without limitation, the duty and obligation to liquidate the Litigation Trust Assets, to make distributions to the Disputed Distribution Reserve for the benefit of holders of Allowed Claims in Classes A5, A6-A, A6-B, A7 and A11 (for payment to holders of Allowed Claims in Classes A5 and A6-B in accordance with the applicable contractual subordination provisions) to pursue and settle any of the rights and claims with respect to the Litigation Trust Assets.

(iii) All costs and expenses associated with the administration of the Litigation Trust, including those rights, obligations and duties described in Section 5.9 of the Plan, shall be the responsibility of and paid by the Litigation Trust. Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Litigation Trustee and to representatives of the Litigation Trust reasonable access during normal business hours, upon reasonable notice, personnel and books and records of the Reorganized Debtors to enable the Litigation Trustee to perform the Litigation Trustee's tasks under the Litigation Trust Agreement and the Plan; *provided, however*, that the Reorganized Debtors shall not be required to make expenditures in response to such requests determined by them in good faith to be unreasonable.

(iv) The Litigation Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as it may deem necessary, in its sole discretion, to aid in the performance of its

responsibilities pursuant to the terms of the Plan including, without limitation, the liquidation and distribution of Litigation Trust Assets.

(v)    For federal income tax purposes, it is intended that the Litigation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Litigation Trust Assets and then contributed such interests to the Litigation Trust.

(vi)    The Litigation Trustee shall be responsible for filing all federal, state and local tax returns for the Litigation Trust.

(vii)    The Litigation Trustee may invest the corpus of the Litigation Trust in prudent investments in addition to those described in Section 345 of the Bankruptcy Code.

(viii)    The Litigation Trustee may be removed by the Bankruptcy Court for cause shown. In the event of the resignation or removal of the Litigation Trustee, the Bankruptcy Court shall designate a person to serve as successor Litigation Trustee.

(d)    Funding of the Litigation Trust

The Debtors shall deliver the Litigation Trust Initial Deposit to the Litigation Trustee on the Effective Date. The Litigation Trustee shall use the Litigation Trust Initial Deposit consistent with the purpose of the Litigation Trust and subject to the terms and conditions of the Plan and the Litigation Trust Agreement.

(e)    Distributions of Litigation Trust Assets

The Litigation Trustee shall make distributions of Litigation Trust Recoveries in accordance with the Litigation Trust Agreement. The Litigation Trust Agreement shall provide for distributions to be made as soon as practicable after receipt of Litigation Trust Recoveries as follows: (i) first, to pay the Litigation Trust Expenses; (ii) second, to repay the Litigation Trust Reimbursement Obligation until such time as the Litigation Trust Reimbursement Obligation is paid in full; and (iii) third, to the Disputed Distribution Reserve for distribution on the Final Distribution Date to holders of Allowed Claims in each of Classes A5, A6-A and A6-B, and the OC Sub-Account, in accordance with Sections 3.3 and 9.5(a) of the Plan.

**10.    Revesting of Assets**

Pursuant to Section 1141(b) of the Bankruptcy Code, all property of the respective Estate of each Debtor, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court. As of the Effective Date,

all property of each Reorganized Debtor shall be free and clear of all Encumbrances, Claims and Interests, except as specifically provided in the Plan or the Confirmation Order. Without limiting the generality of the foregoing, each Reorganized Debtor may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional services and expenses.

**11. Rights of Action**

Except as otherwise provided in the Plan or the Confirmation Order, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) all rights, claims, causes of action, suits or proceedings accruing to, or for the benefit of, the Debtors or the Estates pursuant to the Bankruptcy Code, or pursuant to any other statute or legal theory, which are not released pursuant to the Plan, including, without limitation, any Avoidance Actions and other actions set forth on Schedule XIV, any other causes of action against Persons set forth in Schedule III of the Plan and any suits or proceedings for recovery under any policies of insurance issued to or on behalf of the Debtors. Except to the extent such rights, title and interest in the Litigation Trust Assets are transferred and assigned to the Litigation Trust, the Reorganized Debtors shall be deemed the appointed representative to, and may pursue, litigate, compromise and settle any such rights, remedies, claims, causes of action, suits or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successors who hold such rights. The Reorganized Debtors will transfer and assign, or cause to be transferred and assigned, all their right, title and interest in and to the Litigation Trust Assets to the Litigation Trust in accordance with Section 5.9 of the Plan , or, if deemed necessary, any right, title and interest in and to Litigation Trust Assets shall be pursued in the name of the Debtors or the Reorganized Debtors for the benefit of the Litigation Trust. Notwithstanding anything in the Plan to the contrary, the Debtors, upon such transfer and assignment, shall forgo any interest they may have in the Litigation Trust Assets, except with respect to the Litigation Trust Reimbursement Obligation.

**12. Effectuating Documents; Further Transactions**

The chairman of the OCD Board of Directors, the chief executive officer, chief restructuring officer, president, chief financial officer or any other appropriate officer of OCD or any applicable Debtor, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of OCD or any applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

**13. Exemption from Certain Transfer Taxes**

Pursuant to Section 1146 of the Bankruptcy Code, any transfers in the United States from a Debtor to a Reorganized Debtor or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate

state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**14. Releases and Injunctions Related to Releases**

(a) Releases by Debtors

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Reorganized Debtors and their respective Estates and each of their respective Related Persons shall be deemed to completely and forever release, waive, void, extinguish and discharge (1) any and all Released Actions (other than the rights to enforce the Plan and any right or obligation under the Plan, and the securities, contracts, instruments, releases, indentures and other agreements or documents delivered thereunder or contemplated thereby) that may be asserted by or on behalf of any of the Debtors or Reorganized Debtors or their respective Estates or each of their respective Related Persons against any of (i) the Released Parties, (ii) [the Pre-petition Indenture Trustees], (iii) the DIP Agent and the holders of DIP Facility Claims and (iv) the Persons who are Related Persons of Persons listed in clauses (ii) – (iii) above, and (2) any and all Avoidance Actions not otherwise released in the foregoing clause (1), with the sole exception of those Avoidance Actions set forth on Schedule XIV. Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and the Debtors having made the Initial Bank Holders' Distribution, for good and valuable consideration, to the fullest extent permissible under applicable law, the Debtors and Reorganized Debtors and their respective Estates and each of their respective Related Persons shall also be deemed to completely and forever release, waive, void, extinguish and discharge any and all Released Actions (other than the rights to enforce the Plan and any right or obligation under the Plan, and the securities, contracts, instruments, releases, indentures and other agreements or documents delivered thereunder or contemplated thereby) that may be asserted by or on behalf of any of the Debtors or Reorganized Debtors or their respective Estates or each of their respective Related Persons (including, without limitation, any and all Avoidance Actions), which have been brought, or may be brought, against any of the Bank Holders.

(b) Releases by Holders of Claims and Interests

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability that is discharged or an Interest or other right of an equity security holder that is terminated, and each of their respective Related Persons, shall be deemed to completely and forever release, waive, void, extinguish and discharge all Released Actions (other than the rights to enforce the Debtors' or the Reorganized Debtors' obligations under the Plan, and any right or obligation of such holder under the Plan, and the securities, contracts, instruments, releases, indentures and other agreements or documents delivered thereunder or contemplated thereby) that otherwise may be asserted against the Claimant Released Parties.

(c)    Injunction Related to Releases

Except as otherwise provided in the Plan or in the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, each Person that has held, currently holds or may hold a Claim that is released pursuant to Section 5.14 of the Plan or other obligation, suit, judgment, damages, debt, right, remedy, cause of action, liability, Interest or other right of an equity security holder released pursuant to Section 5.14 of the Plan, and each other party in interest and each of their respective Related Persons, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise on account of or based on the subject matter of any such released Claims or other released obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities or Interests or other rights of an equity security holder:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, to any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Encumbrance; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person released under Section 5.14(a) or Section 5.14(b) of the Plan, as applicable; and (v) commencing or continuing in any manner, in any place of any action, which in any such case does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

(d)    Injunction Relating to Certain Insurers

Except as to any rights with respect to which the Debtors explicitly declined to give a release to the Hartford Entities pursuant to Section VI of the Hartford Settlement Agreement, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, for good and valuable consideration, pursuant to Section 105(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined pursuant to 11 U.S.C. §105(a) from taking any action or seeking any recovery against or from any of the Hartford Entities that seeks to enforce any rights under, through or related to the Hartford Policies.

Except as to any rights with respect to which the Debtors explicitly declined to give a release to the Mt. McKinley Entities pursuant to the Mt. McKinley Settlement Agreement, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and the conditions of the Mt. McKinley Settlement Agreement, for good and valuable consideration, pursuant to Section 105(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined pursuant to 11 U.S.C. §105(a) from taking any action or seeking any recovery against or from any of the Mt. McKinley Entities that seeks to enforce any rights under, through or related to the Mt. McKinley Policies.

Except as to any rights with respect to which the Debtors explicitly declined to give a release to the AIG Company Entities pursuant to the AIG Settlement Agreement, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and the conditions of the AIG Settlement Agreement, for good and valuable consideration, pursuant to Section 105(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined pursuant to 11 U.S.C. §105(a) from taking any action or seeking any recovery against or from any of the AIG Company Entities that seeks to enforce any rights under, through or related to the AIG Policies.

Except as to any rights with respect to which the Debtors explicitly declined to give a release to the Affiliated FM Entities pursuant to the Affiliated FM Settlement Agreement, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and the conditions of the Affiliated FM Settlement Agreement, for good and valuable consideration, pursuant to Section 105(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined pursuant to 11 U.S.C. §105(a) from taking any action or seeking any recovery against or from any of the Affiliated FM Entities that seeks to enforce any rights under, through or related to the Affiliated FM Policy.

If the Allianz Settlement Agreement is approved at or prior to the Confirmation Date, except as to any rights with respect to which the Debtors explicitly declined to give a release to the Allianz Entities pursuant to the Allianz Settlement Agreement, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and the conditions of the Allianz Settlement Agreement, for good and valuable consideration, pursuant to Section 105(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined pursuant to 11 U.S.C. §105(a) from taking any action or seeking any recovery against or from any of the Allianz Entities that seeks to enforce any rights under, through or related to the Allianz Policies.

(e)    Supplementary Section 105(a) Injunction

Pursuant to Section 105(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, each holder of a Bank Holders Claim shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined pursuant to 11 U.S.C. §105(a) from taking any Enjoined Action against any of the Non-Debtor Subsidiaries after the Effective Date with respect to any obligations, liabilities or responsibilities whatsoever arising under or related to the 1997 Credit Agreement, any of the guaranties, instruments or other documents executed or delivered in connection therewith, or otherwise.

(f)    Deemed Consent

By submitting a Ballot and not electing to withhold consent to the releases of the Released Parties by marking the appropriate box on the Ballot, each holder of a Claim

shall be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the releases and injunctions set forth in Sections 5.14(b) and (c) of the Plan.

(g) No Waiver

The release set forth in Subsection (a) of Section 5.14 of the Plan shall not, however, limit, abridge or otherwise affect the rights of the Reorganized Debtors to enforce, sue on, settle or compromise the rights, claims and other matters retained by Reorganized Debtors pursuant to the Plan.

(h) Integral to Plan

Each of the releases and injunctions provided in Section 5.14 of the Plan is an integral part of the Plan and is essential to its implementation. Each of the Persons being released under, or protected by the injunctions set forth in, Section 5.14 of the Plan shall have the right to independently seek the enforcement of such release and injunction.

**15. Permanent Injunctions and Asbestos Personal Injury Permanent Channeling Injunction**

(a) General Injunction

In order to supplement, where necessary, the injunctive effect of the discharge as provided in Section 1141 of the Bankruptcy Code, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons and any Person claiming by or through them, that have held, currently hold or may hold a Claim or other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability (other than a Demand) that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan shall be permanently, forever and completely stayed, restrained, prohibited and enjoined from taking any Enjoined Action against any of the Released Parties or Claimant Released Parties whether directly or indirectly, derivatively or otherwise for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any such discharged Claim or other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability (including, without limitation, any OC Asbestos Property Damage Claim or any FB Asbestos Property Damage Claim), or terminated Interest or right of an equity security holder on account of, or based on the subject matter of, any such discharged Claims, obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities or terminated Interests or rights of an equity security holder.

(b) Asbestos Personal Injury Permanent Channeling Injunction

**PURSUANT TO SECTION 524(g) OF THE BANKRUPTCY CODE AND PURSUANT TO AND IN CONJUNCTION WITH THE CONFIRMATION ORDER, ALL PERSONS SHALL BE PERMANENTLY, FOREVER AND COMPLETELY STAYED, RESTRAINED, PROHIBITED, BARRED AND ENJOINED FROM TAKING ANY ENJOINED ACTION, OR PROCEEDING IN ANY MANNER IN**

**ANY PLACE WITH REGARD TO ANY MATTER THAT IS SUBJECT TO RESOLUTION PURSUANT TO THE ASBESTOS PERSONAL INJURY TRUST AGREEMENT, INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ASBESTOS PERSONAL INJURY CLAIM OR ANY RESOLVED ASBESTOS PERSONAL INJURY CLAIM AGAINST ANY OF THE DEBTORS, ANY OF THE REORGANIZED DEBTORS, ANY PROTECTED PARTY OR ANY PROPERTY OR INTERESTS IN PROPERTY OF ANY DEBTOR, REORGANIZED DEBTOR OR PROTECTED PARTY, WHETHER DIRECTLY OR INDIRECTLY, DERIVATIVELY OR OTHERWISE, FOR THE PURPOSE OF, DIRECTLY OR INDIRECTLY, COLLECTING, RECOVERING OR RECEIVING PAYMENT OF, ON OR WITH RESPECT TO ANY ASBESTOS PERSONAL INJURY CLAIMS OR ANY RESOLVED ASBESTOS PERSONAL INJURY CLAIMS (OTHER THAN PURSUANT TO THE PROVISIONS OF THE ASBESTOS PERSONAL INJURY TRUST AGREEMENT OR TO ENFORCE THE PROVISIONS OF THE PLAN).**

(c) No Waiver

Nothing contained in the Asbestos Personal Injury Permanent Channeling Injunction shall be deemed a waiver of any claim, right, remedy or cause of action that the Debtors, the Reorganized Debtors or the Asbestos Personal Injury Trust may have against any Person in connection with or arising out of an Asbestos Personal Injury Claim.

(d) Integral to Plan

Each of the injunctions provided in Section 5.15 of the Plan is an integral part of the Plan and is essential to its implementation. Each of the Released Parties, Claimant Released Parties, the Protected Parties and any other Persons being protected by the injunctions set forth in Section 5.15 of the Plan shall have the right to independently seek the enforcement of such injunctions.

**16. Directors and Officers of Reorganized Debtors**

(a) Directors of Reorganized Debtors

(i) *Appointment.* The identities of the individuals who shall serve on the Reorganized OCD Board on and immediately following the Effective Date shall be disclosed on Schedule XIX, to be filed no later than five (5) Business Days prior to the Disclosure Statement hearing, subject to such further modifications, revisions and supplementation as may be satisfactory in form and substance to the Debtors, the Asbestos Claimants' Committee and the Future Claimants' Representative up to ten (10) Business Days prior to the Objection Deadline.

(ii) *Terms.* Commencing on the Effective Date, the members of the Reorganized OCD Board shall serve for initial terms set forth in the Amended and Restated Certificate of Incorporation of Reorganized OCD and the Amended and Restated By-Laws of Reorganized OCD, as approved in the Confirmation Order.

(iii) *Vacancies.* The procedures for filling any vacancy in the directorship prior to the expiration of the initial term shall be as set forth in the Amended and Restated Certificate of Incorporation of Reorganized OCD and the Amended and Restated By-Laws of Reorganized OCD, as approved in the Confirmation Order.

(b) Non-Voting Board Observers

As long as the Asbestos Personal Injury Trust owns 20% of the outstanding shares of New OCD Common Stock, the TAC and the Future Claimants' Representative shall each be entitled to designate a non-voting board observer, each of whom shall be reasonably acceptable to Reorganized OCD, except that James J. McMonagle is hereby acknowledged to be acceptable without further consideration by Reorganized OCD. The board observers will be entitled to participate in all of the Reorganized OCD's Board of Directors meetings. The board observers shall receive (i) notice of each meeting of the Board of Directors at the same time that notice is provided to members of the Board of Directors, and (ii) copies of all materials distributed to members of the Board of Directors prior to any such meeting. The board observers shall not be entitled to directors fees, but shall be entitled to reimbursement from Reorganized OCD of all out-of-pocket expenses incurred in connection with attending and participating in Board of Directors meetings. Each of the board observers shall, as a condition of their appointment, agree to receive and maintain in confidence by agreement mutually agreeable to each of the Plan Proponents (a) all information and materials distributed to board members of which they receive copies and (b) all discussions, proposals, and proceedings of all meetings of the Board of Directors, and shall, if requested by Reorganized OCD, execute and deliver a confidentiality agreement in a form approved by the Reorganized OCD, the TAC and the Future Claimants' Representative pertaining to the foregoing materials.

(c) Officers of Reorganized Debtors

The existing senior officers of OCD who will serve initially in the same capacities after the Effective Date for Reorganized OCD shall be identified in a disclosure filed by the Debtors with the Bankruptcy Court on a date not less than ten (10) Business Days prior to the Objection Deadline, and shall designate the Chief Executive Officer. The executive officers of the other Reorganized Debtors shall consist of executive officers as determined by Reorganized OCD on the Effective Date or thereafter.

**17. Compensation and Benefit Programs**

(a) Except and to the extent previously assumed or rejected by an order of the Bankruptcy Court, on or before the Confirmation Date, but subject to the occurrence of the Effective Date, all employee compensation and benefit programs of the Debtors as amended or modified, including programs subject to Sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed except for (i) executory contracts or plans specifically rejected pursuant to the Plan, and (ii) executory contracts or plans as have previously been rejected, are the subject of a motion to reject or have been specifically waived by the beneficiaries of any plans or contracts; *provided, however*, that the Debtors may pay all "retiree benefits" (as defined in Section 1114(a) of the Bankruptcy Code).

(b) OCD and any other of the Reorganized Debtors whose employees are covered by the Merged Plan shall assume and continue the Merged Plan, satisfy the minimum funding standards pursuant to 26 U.S.C. § 412 and 29 U.S.C. § 1082, and administer the Merged Plan in accordance with its terms and the provisions of ERISA. Further, nothing in the Plan of Reorganization shall be construed in any way as discharging, releasing or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, or any party, in any capacity, from liability imposed under any law or regulatory provision with respect to the Merged Plan or Pension Benefit Guaranty Corporation.

(c) On the Effective Date, Reorganized OCD will adopt Management Arrangements, the terms and conditions of which shall be summarized in greater detail in Exhibit F, to be filed at least five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline. On the Effective Date, management and designated employees of Reorganized OCD and the other Reorganized Debtors shall receive the benefits provided under such Management Arrangements on the terms and conditions provided for therein.

(d) All full-time employees and regular part-time employees of OCD and its Affiliates as of the Effective Date (excluding any employee who participates in the management incentive program portion of the Management Arrangements described in Section 5.17(c) of the Plan as of the Effective Date) shall be eligible to receive a grant of 100 shares of New OCD Common Stock, or appropriate equivalent interest, upon the Effective Date. Each award of 100 shares of New OCD Common Stock shall vest in its entirety on the third anniversary of the Effective Date, subject to accelerated vesting for OCD-approved retirements or in the event that OCD (or its applicable Affiliate) terminates the employee's employment without cause. Accordingly, OCD shall reserve 1,800,000 shares of New OCD Common Stock for issuance to such employees (assuming 18,000 eligible employees worldwide), which shares represent approximately 1.4% of the primary number of shares of New OCD Common Stock to be outstanding immediately after the Effective Date (assuming issuance of approximately 130.8 million shares on the Effective Date). The terms and conditions of this employee incentive program shall be described more fully in the Employee Arrangements set forth on Exhibit F to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.[15]

**18. Continuation of Certain Orders**

Notwithstanding anything in the Plan to the contrary, the Debtors will continue to pay any Claims authorized to be paid by an order of the Bankruptcy Court during the Chapter 11 Cases, pursuant to the terms and conditions of any such order.

[15] The Debtors reserve the right to propose an additional or other form of employee benefit or incentive program as part of the Employee Arrangements, the terms and conditions of which would be disclosed on Exhibit F, to be filed no later than five (5) Business Days prior to the Disclosure Statement hearing, subject to such further modifications, revisions and supplementation as may be satisfactory in form and substance to the Reorganized Debtors (and any other Plan Proponents) up to ten (10) Business Days prior to the Objection Deadline.

**19. Exit Facility**

On or prior to the Effective Date, OCD and those Subsidiaries which are parties to the Exit Facility shall enter into all necessary and appropriate documentation to obtain, and in connection with, the Exit Facility.

**E. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**1. Assumed Contracts and Leases**

(a) Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by such Debtor, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion pending before the Bankruptcy Court as of the Confirmation Date to assume or reject such contract or lease or (iv) is listed on Schedule IV, to be filed at least ten (10) Business Days prior to the Objection Deadline, as being an executory contract or unexpired lease to be rejected; *provided*, *however*, that the Plan Proponents reserve the right, at any time prior to the Confirmation Date, to amend Schedule IV to add or delete any unexpired lease or executory contract. The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365 of the Bankruptcy Code approving the contract and lease assumptions described above, as of the Effective Date.

(b) Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affect such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

**2. Payments Related to Assumption of Contracts and Leases**

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default will be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtors or the assignee of a Debtor assuming such contract or lease, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (iii) any other matter pertaining to assumption, Cure will occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be. The Confirmation Order shall contain provisions for notices of proposed assumptions and proposed Cure amounts to be sent to

applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. If no proposed Cure amount is proposed by the Debtors, it shall be presumed that the Debtors are asserting that no Cure amount is required to be paid under Section 365(b)(1) of the Bankruptcy Code.

**3. Rejected Contracts and Leases**

On the Effective Date, each executory contract and unexpired lease that is listed on Schedule IV, shall be rejected pursuant to Section 365 of the Bankruptcy Code. Each contract or lease listed on Schedule IV shall be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. The Plan Proponents reserve their right, at any time prior to the Confirmation Date, to amend Schedule IV to delete any unexpired lease or executory contract therefrom or add any unexpired lease or executory contract thereto. To the extent that an executory contract or unexpired lease (i) is not listed on Schedule IV, (ii) has not been previously rejected or (iii) is not subject to a motion to reject at the time of the Confirmation Date, such executory contract or unexpired lease shall be deemed assumed. Listing a contract or lease on Schedule IV shall not constitute an admission by a Debtor nor a Reorganized Debtor that such contract or lease is an executory contract or unexpired lease or that such Debtor or Reorganized Debtor has any liability thereunder. Without limiting the foregoing, any agreement entered into prior to the Petition Date by or on behalf of the Debtors with a holder of an Asbestos Personal Injury Claim with respect to the settlement of any OC Asbestos Personal Injury Claim or FB Asbestos Personal Injury Claim shall be deemed rejected as of the Effective Date to the extent such settlement agreement is deemed to be an executory contract within the meaning of Section 365(a) of the Bankruptcy Code. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections as of the Effective Date, pursuant to Section 365 of the Bankruptcy Code.

**4. Rejection Damages Bar Date**

If the rejection by a Debtor, pursuant to the Plan, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor, or the properties of any of them, unless a Proof of Claim is filed and served upon counsel to the Debtors, counsel to the Unsecured Creditors' Committee and counsel to the Asbestos Claimants' Committee, within thirty (30) days after service of the notice that the executory contract or unexpired lease has been rejected.

**5. Indemnification Obligations**

(a) Indemnification Obligations shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to Section 365 of the Bankruptcy Code under the Plan as of the Effective Date, and such obligations shall survive confirmation of the Plan, remain unaffected by the Plan and shall not be discharged or impaired by the Plan, irrespective of whether the indemnification or reimbursement obligation is owed in connection with an event occurring before, on or after the Petition Date, except as may otherwise be provided in Schedule XVII, to be filed no later than ten (10) Business Days prior to the Objection Deadline; *provided, however*, that, except as otherwise provided in the Plan, indemnification obligations that are not Indemnification Obligations shall be deemed to be, and

shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code as of the Effective Date.

(b) In addition to the foregoing, as of the Effective Date, the Reorganized Debtors shall obtain and maintain in full force tail insurance covering such risks as are presently covered for the benefit of all Persons who are or were officers or directors of the Debtors on the Petition Date or thereafter, except as may otherwise be provided in Schedule XVII, to be filed no later than ten (10) Business Days prior to the Objection Deadline, in a minimum amount and for a minimum period as shall be set forth in Schedule XVIII, to be filed no later than ten (10) Business Days prior to the Objection Deadline.

(c) Each of the provisions set forth in Section 7.5 of the Plan is an integral part of the Plan and is essential to its implementation. Each Person entitled to indemnification and insurance pursuant to Section 7.5 of the Plan shall have the right to independently seek the enforcement of each of the terms of Section 7.5 of the Plan.

**6. Insurance Policies and Agreements**

(a) Assumed Insurance Policies and Agreements. The Debtors do not believe that the insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date constitute executory contracts. To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in Section 7.1 or 7.3 of the Plan to the contrary, the Plan shall constitute a motion to assume such insurance policies and agreements (except for those set forth on Schedule XI in accordance with Section 7.6(b) of the Plan), and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor, its Estate, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement. To the extent that the Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Debtors reserve the right to seek rejection of such insurance policy or agreement or other available relief. In accordance with the Plan, the rights of the Debtors under the insurance policies and agreements constituting (i) the OC Asbestos Personal Injury Liability Insurance Assets shall, to the extent necessary, be deemed assigned to the OC Sub-Account of the Asbestos Personal Injury Trust as of the Effective Date and (ii) the FB Asbestos Property Damage Insurance Assets shall, to the extent necessary, be deemed assigned to the FB Asbestos Property Damage Trust as of the Effective Date, and, pursuant to Section 365 of the Bankruptcy Code, the Debtors shall have no further liability thereunder from and after June 18, 2001.

(b) *Rejected Insurance Policies and Agreements*. If the Wellington Agreement is determined to be an executory contract, OCD has agreed that it will not reject the Wellington Agreement as an executory contract. To the extent that any or all of the insurance policies and agreements set forth on Schedule XI, to be filed no later than ten (10) Business Days prior to the Objection Deadline, are considered to be executory contracts, then, notwithstanding

anything contained in Section 7.1 or 7.3 of the Plan to the contrary, the Plan shall constitute a motion to reject the insurance policies and agreements set forth on Schedule XI, and the entry of the Confirmation Order shall constitute approval of such rejection pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected insurance policy or agreement set forth on Schedule XI is burdensome and that the rejection thereof is in the best interest of each Debtor, its estate, and all parties in interest in the Chapter 11 Cases.

(c) *Insurer Objections.* Certain insurers who have contested their obligations to OC with respect to coverage for Asbestos Personal Injury Claims have objected to various aspects of the Plan as violative of their rights under policies of insurance and otherwise, including rights they claim to be subject to resolution outside the bankruptcy proceedings. In particular, certain insurers have criticized aspects of the Plan that: (i) assign OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust, (ii) provide for estimation, resolution, and payment of Asbestos Personal Injury Claims, (iii) allegedly eliminate their ability to pursue counterclaims or set-off defenses in coverage actions initiated by OC, and (d) condition confirmation on the Bankruptcy Court or District Court making certain findings contained in the Plan that may relate to insurance. Certain insurers assert that the issues of (i) whether or not insurance policies or settlement agreements relating to insurance policies are executory contracts, (ii) the assignment pursuant to the Plan of rights under insurance policies, and (iii) the reasonableness of the Asbestos Personal Injury Trust Distribution Procedures as to the insurers are coverage questions that must be decided in a separate coverage action in a court of competent jurisdiction or a Wellington ADR proceeding, and cannot be resolved by the Bankruptcy Court (or the District Court) because they do not constitute core proceedings. The insurers further contend that nothing in the Plan, including, without limitation, exhibits, schedules and documents created pursuant to the Plan (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable, or contractual rights of the insurers, whose coverage (pursuant to their policies and the Wellington Agreement) is intended by Debtors to be included in the OC Asbestos Personal Injury Liability Assets. The Plan Proponents disagree with such assertions of these insurers. Certain insurers assert that the Plan must be made so-called insurance neutral. Certain insurers also assert that there will be complete defenses to coverage and that there will be no additional OC Asbestos Personal Injury Insurance Liability Assets available to the Asbestos Personal Injury Trust. Certain insurers further assert that the OCD insurance policies that the Debtors will attempt to assign to the Asbestos Personal Injury Trust have been exhausted and/or there is no coverage available under the policies for various current or future Asbestos Personal Injury Claims. While the Debtors strongly dispute these assertions and intend to vigorously pursue their rights to such assets, the availability, the feasibility of the Plan does not depend on the availability of OC Asbestos Personal Injury Insurance Liability Assets and the projections of potential recoveries under the Plan do not assume any value for the OC Asbestos Personal Injury Insurance Liability Assets. Nonetheless, if the position of the Debtors is sustained, the availability of the OC Asbestos Personal Injury Insurance Liability Assets to the Asbestos Personal Injury Trust might significantly enhance the distributions to holders of OC Asbestos Personal Injury Claims. The Plan Proponents believe that many of the insurers' criticisms -- while ostensibly advanced in support of insurance neutrality -- seek to alter provisions that are already insurance neutral in purpose or effect and thereby to place insurance rights at jeopardy rather than to assure true neutrality. The Plan Proponents do not believe that provisions should be eliminated that are either usual and customary in bankruptcy plans or are