insurance neutral in the sense that they are designed neither to enhance nor to diminish access to coverage for the payment of Asbestos Personal Injury Claims. To the extent that the Plan Proponents and insurers do not resolve their disputes, such issues may be resolved by the Bankruptcy Court or District Court as part of confirmation and/or in separate proceedings or in various arbitral or judicial proceedings in which coverage issues may be adjudicated.

(d)    *Reservation of Rights.* Nothing contained in the Plan, including Section 7.6 of the Plan shall constitute a waiver of any claim, right, or cause of action that the Debtors, the Asbestos Personal Injury Trust, the FB Asbestos Property Damage Trust, or the Reorganized Debtors, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement. Except as otherwise provided in Section 14.10 of the Plan and with the exception of issues that are expressly resolved by the Bankruptcy Court or the District Court in the Plan or Confirmation Order relating to whether or not insurance policies and related settlement agreements may be assigned pursuant to the Plan, nothing in the Plan or Confirmation Order shall preclude by reason of collateral estoppel:

(i)    any insurer from litigating or arbitrating in an appropriate forum (A) any claims for coverage that may be made by OCD, the Asbestos Personal Injury Trust, or anyone else claiming rights under insurance policies issued to OCD; (B) any coverage defenses or counter-claims that such insurer wishes to assert in response to such claims for coverage; (C) the reasonableness of the Asbestos Personal Injury Trust Distribution Procedures; and (D) the amount of asbestos liabilities applicable to such claims for coverage; and

(ii)    OCD, the Asbestos Personal Injury Trust, or anyone else claiming rights under insurance policies issued to OCD from litigating or arbitrating in an appropriate forum (A) any claims for coverage under such insurance policies; (B) any coverage defenses or counter-claims that may be asserted by insurers in response to such claims for coverage; (C) the reasonableness of the Asbestos Personal Injury Trust Distribution Procedures; and (D) the amount of asbestos liabilities applicable to such claims for coverage.

F.    **PROVISIONS GOVERNING DISTRIBUTIONS**

1.    **Distributions for Claims Allowed as of the Initial Distribution Date**

Except as otherwise provided in the Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on, or as soon as practicable after, the Initial Distribution Date. Notwithstanding anything in the Plan to the contrary, distributions on account of Administrative Claims that are Allowed Claims as of the Effective Date shall be made on, or as soon as practicable after, the Effective Date, with no action to enforce a right to such payment until at least thirty (30) days after the Effective Date. Notwithstanding anything in the Plan to the contrary, distributions on account of (i) Class A7 and B8 Claims shall be made in accordance with the terms and conditions of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, and (ii) Class B9 Claims shall be made in accordance with the terms and conditions of the FB Asbestos Property Damage Trust Agreement and the FB Asbestos Property Damage Trust Distribution Procedures. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Section 9.4

of the Plan. Notwithstanding the date on which any distribution of New OCD Securities is actually made to a holder of a Claim that is an Allowed Claim on the Effective Date, as of the date of the distribution such holder shall be deemed to have the rights of a holder of such securities distributed as of the Initial Distribution Date.

### 2.    Interest on Claims

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or the Asbestos Personal Injury Trust Distribution Procedures, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

### 3.    Distributions under the Plan

(a)    The Disbursing Agent or, in the case of the Bondholders Claims, the appropriate Pre-petition Indenture Trustee, shall make all distributions required under the Plan, except to holders of Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims. Asbestos Personal Injury Claims shall be satisfied in accordance with the distribution procedures described in the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. FB Asbestos Property Damage Claims shall be satisfied in accordance with the distribution procedures described in the FB Asbestos Property Damage Trust Agreement and the FB Asbestos Property Damage Trust Distribution Procedures.

(b)    If the Disbursing Agent is an independent third party designated by the Reorganized Debtors to serve in such capacity, such Disbursing Agent shall be entitled to receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan as well as reimbursement of reasonable out-of-pocket expenses incurred in connection with rendering such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 4.    Record Date for Distributions to Holders of Allowed Claims (Other Than Asbestos Personal Injury Claims or FB Asbestos Property Damage Claims)

At the close of business on the Distribution Record Date, the transfer records for Claims (other than Asbestos Personal Injury Claims or FB Asbestos Property Damage Claims), including the Bank Holders Claims and Bondholders Claims, shall be closed, and there shall be no further changes in the record holders of such Claims. None of the Reorganized Debtors, the Disbursing Agent, if any, CSFB, as agent for the Bank Holders nor the applicable Pre-petition Indenture Trustee under the Pre-petition Bond Indenture for the Bondholders shall have any obligation to recognize any transfer of Allowed Claims, including, without limitation, Allowed Bank Holders Claims or Allowed Bondholders Claims, as applicable, occurring after the Distribution Record Date, and they shall be entitled instead to recognize and deal for all purposes

in the Plan with only those record holders as of the close of business on the Distribution Record Date.

Distributions to holders of Bondholder Claims administered by the Pre-petition Indenture Trustees shall be made by means of book-entry exchange through the facilities of the Depository Trust Corporation ("DTC") in accordance with the customary practices of the DTC, as and to the extent practicable. In connection with such book-entry exchange, each Pre-petition Indenture Trustee shall deliver instructions to the DTC directing the DTC to effect distributions (net of Pre-petition Indenture Trustee fees and expenses) on a pro rata basis as provided under the Plan with respect to the Bondholder Claims upon which such Indenture Trustee acts as trustee.

### 5.    Means of Cash Payment

Cash payments made pursuant to the Plan shall be in United States funds by means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the Debtors, the Reorganized Debtors, the Disbursing Agent, or, as applicable, such other payor shall determine in their sole discretion.

### 6.    Fractional New OCD Common Stock; Other Distributions

(a)    No fractional shares of New OCD Common Stock shall be issued or distributed under the Plan. If any distribution pursuant to the Plan would otherwise result in the issuance of New OCD Common Stock that is not a whole number, the actual distribution of shares of such stock shall be rounded to the next higher or lower whole number as follows: (i) fractions of greater than one-half (½) shall be rounded to the next higher whole number, and (ii) fractions of one-half (½) or less shall be rounded to the next lower whole number. The total number of shares of New OCD Common Stock and the Senior Notes to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided for in the Plan.

(b)    No consideration shall be provided in lieu of fractional shares that are rounded down. Unless otherwise agreed by the Debtors, the Senior Notes shall only be issued with a principal amount in multiples of $1,000 or integral multiples thereof. The principal amount of the Senior Notes that would have been distributed in amounts of other than $1,000 shall be rounded as follows: (i) amounts equal to or less than $500 shall be reduced to $0.00 and (ii) amounts greater than $500 shall be increased to $1,000.

(c)    In addition, the payment of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of the fraction to the nearest whole dollar (up and down), with half dollars rounded down.

(d)    The Disbursing Agent, or any agent or servicer, as the case may be, shall not make any payment of less than one hundred dollars ($100.00) with respect to any Claim.

814526.7

191

7.    **Delivery of Distributions**

Distributions to holders of Allowed Claims in all Classes other than Classes A7, B8 and B9 shall be made by the Disbursing Agent or the applicable Pre-petition Indenture Trustee, as the case may be. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made until the Disbursing Agent (or Pre-petition Indenture Trustee as applicable) is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions made by the Disbursing Agent (or the Pre-petition Indenture Trustee as applicable) shall be returned to the Reorganized Debtors until such distributions are claimed. All the claims for undeliverable distributions made by the Disbursing Agent or the Pre-petition Indenture Trustee, as the case may be, must be made on or before the first (1st) anniversary of the Effective Date, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors, Reorganized Debtors, any Disbursing Agent, the Administrative Agent for the Bank Holders or any Pre-petition Indenture Trustee to attempt to locate any holder of an Allowed Claim after the first (1st) anniversary of the Effective Date.

8.    **Surrender of Pre-petition Bonds**

(a)    Pre-petition Bonds

Except as provided in Section 8.8(b) of the Plan in connection with lost, stolen, mutilated or destroyed Pre-petition Bonds, each holder of an Allowed Claim evidenced by a Pre-petition Bond shall tender such Pre-petition Bond to the respective Pre-petition Indenture Trustee in accordance with written instructions to be provided in a letter of transmittal to such holders by the Pre-petition Indenture Trustee as promptly as practicable following the Effective Date. Such letter of transmittal shall specify that delivery of such Pre-petition Bonds will be effected, and risk of loss and title thereto will pass, only upon the proper delivery of such Pre-petition Bonds with the letter of transmittal in accordance with such instructions. Such letter of transmittal shall also include, among other provisions, customary provisions with respect to the authority of the holder of the applicable note or Pre-petition Bonds to act and the authenticity of any signatures required on the letter of transmittal. All surrendered Pre-petition Bonds shall be marked as cancelled and delivered by the respective Pre-petition Indenture Trustee to the Reorganized Debtors.

(b)    Lost, Mutilated or Destroyed Pre-petition Bonds

In addition to any requirements under the applicable certificate or articles of incorporation or bylaws of the applicable Debtor, any holder of indebtedness or obligation of a Debtor evidenced by a Pre-petition Bond that has been lost, stolen, mutilated or destroyed shall, in lieu of surrendering the Pre-petition Bond, deliver to the Pre-petition Indenture Trustee (i) evidence satisfactory to the Pre-petition Indenture Trustee of the loss, theft, mutilation or destruction; and (ii) such indemnity as may be required by the Pre-petition Indenture Trustee to hold the Pre-petition Indenture Trustee harmless from any damages, liabilities or costs incurred in treating such individual as a holder of a Pre-petition Bond.

(c)    Failure to Surrender Cancelled Pre-petition Bonds

Any holder of a Pre-petition Bond that fails to surrender or be deemed to have surrendered such Pre-petition Bond before the first (1st) anniversary of the Effective Date shall have its Claim for a distribution on account of such Pre-petition Bond discharged and shall be forever barred from asserting any such Claim against any Reorganized Debtor or their respective property.

(d)    Distributions upon Receipt of Pre-petition Bonds

No distribution of property under the Plan shall be made to or on behalf of any such holders unless and until such Pre-petition Bond is received by the appropriate Pre-petition Indenture Trustee, or the unavailability of such Pre-petition Bond is established to the reasonable satisfaction of the appropriate Pre-petition Indenture Trustee or such requirement is waived by the Reorganized Debtors.

### 9.    Withholding and Reporting Requirements

In connection with the Plan and all distributions thereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and backup withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all distributions thereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### 10.    Setoffs

The Debtors and the Reorganized Debtors may, but shall not be required to, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the payments or other distributions to be made pursuant hereto on account of such Claim (before any distribution is made on account of such Allowed Claim), the claims, equity interests, rights and causes of action of any nature whatsoever that the Debtors or the Reorganized Debtors may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim in the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights and causes of action that the Debtors or the Reorganized Debtors may possess against any such holder, except as specifically provided in the Plan.

### G.    PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND DISPUTED INTERESTS

### 1.    Prosecution of Objections to Certain Claims

(a)    Unless otherwise ordered by the Bankruptcy Court, only the Debtors, the Reorganized Debtors or the Disbursing Agent shall have the authority to file objections to Claims, other than with respect to (i) the applications for the allowance of compensation and reimbursement of expenses of professionals

under Section 330 of the Bankruptcy Code, (ii) Asbestos Personal Injury Claims, and (iii) FB Asbestos Property Damage Claims.

(b)     From and after the Confirmation Date, the Reorganized Debtors or the Disbursing Agent may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

(c)     All objections to Claims, other than Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims, must be filed and served on the holders of such Claims by the Claims Objection Deadline. Nothing contained in the Plan, however, shall limit the Debtors' or Reorganized Debtors' right to object to any Claims, other than Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims, filed or amended after the Claims Objection Deadline. If an objection has not been filed to a Proof of Claim or a scheduled Claim, other than Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims, by the Claims Objection Deadline, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been Allowed earlier.

(d)     Notwithstanding anything contained in the Plan to the contrary, the Debtors shall not be required to take any further action with respect to any proofs of claim filed against any of the Debtors on account of asserted Asbestos Personal Injury Claims. As set forth in Sections 5.15(b), 10.4 and 11.4 of the Plan, all Asbestos Personal Injury Claims against any and all of the Debtors shall be exclusively channeled to the Asbestos Personal Injury Trust, and shall be subject to the Asbestos Personal Injury Channeling Injunction.

## 2.     No Distributions Pending Allowance

Notwithstanding any other provision in the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## 3.     Disputed Distribution Reserve

(a)     On, or as soon as practicable after, the Initial Distribution Date, the Reorganized Debtors shall transmit to the Disputed Distribution Reserve Cash in an amount equal to the sum of (i) the Face Amount of each Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Tax Claim, Other Secured Claim and Convenience Claim that is a Disputed Claim as of the Effective Date, or (ii) such lesser amount for any such Disputed Claim that may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtors, or that may be approved by the Bankruptcy Court at or prior to the Confirmation Hearing. The Disbursing Agent shall reserve for the account of each holder of a Disputed Claim described in the immediately preceding sentence, Cash in the Face Amount thereof (or such lesser amount as such holder and the Reorganized Debtors may agree or as may be approved by the Bankruptcy Court at or prior to the Confirmation Hearing); *provided, however,* that the Cash transmitted to, and reserved by, the Disbursing Agent pursuant to Section 9.3(a) of the Plan may be held by the Disbursing Agent in a single interest bearing account, fund or reserve (*provided further, however,* that separate book entries for each Claim shall be maintained by the Disbursing Agent)

to be established and maintained by the Disbursing Agent pending resolution of the Disputed Claims described in Section 9.3(a) of the Plan.

(b)    In addition, on, or as soon as practicable after, the Initial Distribution Date, the Reorganized Debtors shall transmit to the Disputed Distribution Reserve the Reserved OCD Distribution Package.  The Disbursing Agent shall reserve (from the Reserved OCD Distribution Package) for the account of each holder of a Disputed Class A6-A or Class A6-B Claim Cash, New OCD Common Stock, or such other property which would otherwise be distributable to such holder on the Initial Distribution Date in accordance with the Plan were such Disputed Claim an Allowed Claim (in the Face Amount thereof) as of the Effective Date (or property of a lesser value as such holder and the Reorganized Debtors may agree or as may be approved by the Bankruptcy Court).  Moreover, the Reserved OCD Distribution Package shall be set aside and segregated from the property received by the Disbursing Agent pursuant to Sections 9.3(a) and 9.3(c) of the Plan; *provided, however,* that the Cash portion of the Reserved OCD Distribution Package may be held by the Disbursing Agent in a single interest bearing account, fund or reserve (*provided further, however,* that separate book entries for each Claim shall be maintained by the Disbursing Agent) to be established and maintained by the Disbursing Agent pending resolution of the Disputed Claims described in Section 9.3(b) of the Plan.  Without limiting the foregoing, at all times after the Initial Distribution Date, the holders of Disputed Class A6-A and A6-B Claims shall have the sole right to the Reserved OCD Distribution Package in the Disputed Distribution Reserve, and the Disbursing Agent shall not disburse or distribute any portion of such package to any Person prior to the Final Distribution Date (subject to Section 9.5 of the Plan) other than to holders of Disputed Class A6-A or A6-B Claims that become Allowed in accordance with the terms of the Plan subsequent to the Effective Date, without further order of the court.

(c)    In addition, on, or as soon as practicable after, the Initial Distribution Date, the Reorganized Debtors shall transmit to the Disputed Distribution Reserve the Standard Combination of Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to the sum of (i) the Face Amount of each Class B6 through Class U6 Claim that is a Disputed Claim as of the Effective Date, or (ii) such lesser amount for any such Disputed Claim that may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtors, or that may be approved by the Bankruptcy Court at or prior to the Confirmation Hearing.  The Disbursing Agent shall reserve for the account of each holder of a Disputed Claim in each of the respective Classes B6-U6, the Standard Combination of Cash and New OCD Common Stock with an aggregate value as of the Effective Date equal to (i) the Face Amount of such Disputed Claim, or (ii) such lesser amount for any such Disputed Claim that may be agreed upon by the holder of such Disputed Claim and the Reorganized Debtors, or that may be approved by the Bankruptcy Court at or prior to the Confirmation Hearing; *provided, however,* that the Cash transmitted to, and reserved by, the Disbursing Agent pursuant to Section 9.3(c) of the Plan may be held by the Disbursing Agent in a single interest bearing account, fund or reserve (*provided further, however,* that separate book entries for each Claim shall be maintained by the Disbursing Agent) to be established and maintained by the Disbursing Agent pending resolution of the Disputed Claims described in Section 9.3(c) of the Plan.

814526.7

195

4.      **Distributions on Account of Disputed Claims Once They are Allowed**

(a)      On each Quarterly Distribution Date, the Disbursing Agent shall make payments and distributions from the Disputed Distribution Reserve to each holder of a Disputed Claim that has become an Allowed Claim during the preceding calendar quarter.

(b)      Pursuant to Sections 3.1, 3.2, 3.3(a), 3.4(a), 3.5(a), 3.6(a), 3.7(a), 3.8(a), 3.9(a), 3.10(a), 3.11(a), 3.12(a), 3.13(a), 3.14(a), 3.15(a), 3.16(a), 3.17(a), 3.18(a), 3.19(a), 3.20(a), 3.21(a), 3.22(a), and 3.23(a) of the Plan, the Disbursing Agent shall distribute to each holder of a Disputed Claim described in Section 9.3(a) of the Plan, which becomes an Allowed Claim after the Effective Date, Cash from the Distributed Distribution Reserve in an amount equal to the Allowed amount of such Claim.  Any Cash transmitted to the Disputed Distribution Reserve pursuant to Section 9.3(a) of the Plan, which is remaining in the Disputed Distribution Reserve after all distributions on account of Claims described in Section 9.3(a) of the Plan have been made, shall constitute, and shall be deemed to constitute, Excess Available Cash.

(c)      Pursuant to Sections 3.3(d) and 3.3(e) of the Plan, and subject to Section 8.2 of the Plan, the Disbursing Agent shall distribute to each holder of a Disputed Class A6-A or Class A6-B Claim, as the case may be, which becomes an Allowed Claim after the Effective Date, property from the Disputed Distribution Reserve that would have been distributed to the holder of such Claim had such Claim been an Allowed Claim as of the Effective Date, which distribution shall be equal to the product of (x) the Class A6-A Initial Recovery Percentage (in the case of Allowed Class A6-A Claims) or the Class A6-B Initial Recovery Percentage (in the case of Allowed Class A6-B Claims), and (y) such holder's Allowed Claim, and shall be in the Standard Combination of Cash and New OCD Common Stock.

(d)      Pursuant to Sections 3.4(c), 3.5(c), 3.6(c), 3.7(c), 3.8(c), 3.9(c), 3.10(c), 3.11(c), 3.12(b), 3.13(b), 3.14(b), 3.15(b), 3.16(b), 3.17(b), 3.18(b), 3.19(b), 3.20(b), 3.21(b), 3.22(b), and 3.23(b) of the Plan, and subject to Section 8.2 of the Plan, the Disbursing Agent shall distribute to each holder of a Disputed Claim in each of the respective Classes B6-U6, which becomes an Allowed Claim after the Effective Date, the Standard Combination of Cash and New OCD Common Stock from the Disputed Distribution Reserve with an aggregate value as of the Effective Date equal to the Allowed amount of such Claim (excluding post-petition interest).  Any Cash and New OCD Common Stock transmitted to the Disputed Distribution Reserve pursuant to Section 9.3(c) of the Plan, which is remaining in the Disputed Distribution Reserve after all distributions on account of Claims described in Section 9.3(c) of the Plan have been made, shall constitute, and shall be deemed to constitute, Excess Available Cash and Excess New OCD Common Stock, respectively.

5.      **Final Distributions from the Disputed Distribution Reserve**

(a)      On the Final Distribution Date, the Disbursing Agent shall distribute the Excess Available Cash, the Excess New OCD Common Stock and the Excess Litigation Trust Recoveries, if any, from the Disputed Distribution Reserve to holders of Allowed Claims in Classes A5, A6-A and A6-B and to the OC Sub-Account, pursuant to Section 3.3 of the Plan.

(b)      Notwithstanding anything to the contrary in the Plan, Section 8.6(d) of the Plan shall apply with equal force and effect to the distributions from the Disputed Distribution

716

Reserve described in this Article IX. Moreover, if the aggregate value of the Cash, New OCD Common Stock and Litigation Trust Recoveries in the Disputed Distribution Reserve as of the Final Distribution Date is less than $1 million (before taking into account any distributions otherwise payable on such date), then, for purposes of administrative convenience, such Cash, New OCD Common Stock and Litigation Trust Recoveries shall revert to the Reorganized Debtors free of any restrictions thereon.

### H.    THE ASBESTOS PERSONAL INJURY TRUST

#### 1.    The Asbestos Personal Injury Trust

The Asbestos Personal Injury Trust is intended to be a "qualified settlement fund" within the meaning of Treasury Regulations Section 1.468B-1, *et seq.*, promulgated under Section 468B of the IRC. Pursuant to the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust will have two separate sub-accounts: the OC Sub-Account and the FB Sub-Account. The purpose of the Asbestos Personal Injury Trust shall be to, among other things, (i) exclusively process, liquidate, and pay all Asbestos Personal Injury Claims in accordance with the Plan, the Asbestos Personal Injury Trust Distribution Procedures, and the Confirmation Order and (ii) preserve, hold, manage, and maximize the assets of the Asbestos Personal Injury Trust (including both the OC Sub-Account and the FB Sub-Account) for use in paying and satisfying Asbestos Personal Injury Claims. The Asbestos Personal Injury Trust shall comply in all respects with the requirements set forth in Section 524(g)(2)(B)(i) of the Bankruptcy Code.

#### 2.    Appointment of Asbestos Personal Injury Trustees

On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the individuals selected jointly by the Asbestos Claimants' Committee and the Future Claimants' Representative (as identified in the Asbestos Personal Injury Trust Agreement), with notice to the Debtors, to serve as the Asbestos Personal Injury Trustees for the Asbestos Personal Injury Trust.

#### 3.    Transfers of Property to the Asbestos Personal Injury Trust

(a)    Transfer of the Plan Consideration to the OC Sub-Account of the Asbestos Personal Injury Trust

The Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account the property and consideration set forth in Section 3.3(f)(iii) in the manner and at the times set forth therein.

The Reorganized Debtors will also execute and deliver to the Asbestos Personal Injury Trust such documents as the Asbestos Personal Injury Trustees reasonably request to issue the New OCD Common Stock to be distributed to the Asbestos Personal Injury Trust in the name of the Asbestos Personal Injury Trust or a nominee and transfer and assign to the Asbestos Personal Injury Trust all other assets which constitute the assets of the Asbestos Personal Injury Trust.

814526.7

197

(b)    Transfer of the Plan Consideration to the FB Sub-Account of the Asbestos Personal Injury Trust

The Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust for allocation to the FB Sub-Account the consideration set forth in Section 3.4(d)(iii) of the Plan in the manner and at the times set forth therein.

The Reorganized Debtors will also execute and deliver, or will use all commercially reasonable efforts to cause the trustee of the Fibreboard Insurance Settlement Trust to execute and deliver, to the Asbestos Personal Injury Trust such documents as the Asbestos Personal Injury Trustees reasonably request in connection with the transfer and assignment of the Existing Fibreboard Insurance Settlement Trust Assets and the FB Reversions.

(c)    Transfer and Assignment of Certain Rights Relating to the FB Reversions

On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust all rights, remedies, claims, causes of action, suits or proceedings in respect of the FB Reversions, for allocation to the FB Sub-Account.

(d)    Transfer of Books and Records to the Asbestos Personal Injury Trust

On the Effective Date, or as soon thereafter as is practicable, at the sole cost and expense of the Asbestos Personal Injury Trust and in accordance with written instructions provided to the Reorganized Debtors by the Asbestos Personal Injury Trust, the Reorganized Debtors will transfer and assign, and will use all commercially reasonable efforts to cause the trustee of the Fibreboard Insurance Settlement Trust to transfer and assign, to the Asbestos Personal Injury Trust all books and records of the Debtors and the Fibreboard Insurance Settlement Trust that pertain directly to Asbestos Personal Injury Claims that have been asserted against the Debtors and/or the Fibreboard Insurance Settlement Trust. The Debtors will request that the Bankruptcy Court, in the Confirmation Order, rule that such transfers shall not result in the invalidation or waiver of any applicable privileges pertaining to such books and records.

4.    **Assumption of Certain Liabilities by the Asbestos Personal Injury Trust**

(a)    OC Asbestos Personal Injury Claims

In consideration for the property transferred to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account, and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall, and shall be deemed to, assume any and all obligations, liability and responsibility for the OC Asbestos Personal Injury Claims (regardless of whether such Claims are or may be asserted against OCD or any of the other Debtors), and each of the Debtors, the Reorganized Debtors and each of their respective Related Persons and property shall have no further financial or other obligation, responsibility or liability therefor. The Asbestos Personal Injury Trust shall also assume, and shall be deemed to assume, any and all obligations, liability and responsibility for premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, and any

other charges, costs, fees, or expenses (if any) that become due to any insurer in connection with (i) the OC Asbestos Personal Injury Liability Insurance Assets as a result of OC Asbestos Personal Injury Claims, (ii) asbestos-related personal injury claims against Persons insured under policies included in the OC Asbestos Personal Injury Liability Insurance Assets by reason of vendors' endorsements, or (iii) the indemnification provisions of settlement agreements that OC made prior to the Confirmation Date with any insurers, to the extent that those indemnity provisions relate to Asbestos Personal Injury Claims, and each of the Reorganized Debtors and its respective Related Persons shall have no further financial or other obligation, responsibility or liability for any of the foregoing.

        (b)      FB Asbestos Personal Injury Claims

        . In consideration for the property transferred to the Asbestos Personal Injury Trustees for allocation to the FB Sub-Account, and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall, and shall be deemed to, assume any and all obligations, liability and responsibility for, under or relating to any and all FB Asbestos Personal Injury Claims (regardless of whether such Claims are or may be asserted against Fibreboard or any of the other Debtors), and each of the Debtors, the Reorganized Debtors and each of their respective Related Persons and property shall have no further financial or other obligation, responsibility or liability therefor.

## 5.      Certain Property Held in Trust by the Reorganized Debtors or the Fibreboard Insurance Settlement Trust

        If and to the extent that any assets, claims, rights or other property of the Reorganized Debtors or of the Fibreboard Insurance Settlement Trust to be transferred to the Asbestos Personal Injury Trust, under applicable law or any binding contractual provision, cannot be effectively transferred, or if for any reason after the Effective Date the Reorganized Debtors or the trustees of the Fibreboard Insurance Settlement Trust, as the case may be, shall retain or receive any assets, claims, rights or other property that is owned by the Reorganized Debtors, the Debtors or the Fibreboard Insurance Settlement Trust (as the case may be) and is to be transferred pursuant to the Plan to the Asbestos Personal Injury Trust, then the Reorganized Debtors or the trustees of the Fibreboard Insurance Settlement Trust, as the case may be, shall hold such property (and any proceeds thereof) in trust for the benefit of the party entitled to receive the transfer of such asset under the Plan (or the benefit of such asset) and will take such actions with respect to such property (and any proceeds thereof) as such party entitled to receive the transfer of such asset under the Plan (or the benefit of such asset) shall direct in writing.

## 6.      Cooperation with Respect to Insurance Matters

        The Reorganized Debtors shall cooperate with the Asbestos Personal Injury Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate the transfer of the OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account. By way of enumeration and not of limitation, the Reorganized Debtors each shall be obligated (i) to provide the Asbestos Personal Injury Trust with copies of insurance policies and settlement agreements included within or relating to the OC Asbestos Personal Injury Liability Insurance Assets; (ii) to provide the Asbestos Personal Injury Trust

with information necessary or helpful to the Asbestos Personal Injury Trust in connection with its efforts to obtain insurance coverage for Asbestos Personal Injury Claims; (iii) to execute further assignments or allow the Asbestos Personal Injury Trust to pursue claims relating to the OC Asbestos Personal Injury Liability Insurance Assets in its name (subject to appropriate disclosure of the fact that the Asbestos Personal Injury Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the Asbestos Personal Injury Trust to obtain insurance coverage under the OC Asbestos Personal Injury Liability Insurance Assets for Asbestos Personal Injury Claims; and (iv) to pursue and recover insurance coverage in its own name or right to the extent that the transfer and assignment of the OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust is not able to be fully effectuated. The Asbestos Personal Injury Trust shall be obligated to compensate the Reorganized OCD for all costs and expenses reasonably incurred in connection with providing assistance to the Asbestos Personal Injury Trust pursuant to Section 10.6 of the Plan, including, without limitation, out-of-pocket costs and expenses, consultant fees, and attorneys' fees.

7.    **Asbestos Personal Injury Trust Indemnity Obligations**

The Asbestos Personal Injury Trust shall have the indemnification obligations set forth in the Asbestos Personal Injury Trust Agreement, the full terms and conditions of which are incorporated in the Plan by reference, including those described below.

(a)    OC and the Reorganized Debtors shall be entitled to indemnification from the Asbestos Personal Injury Trust for any expenses, costs, and fees (including reasonable attorneys' fees and costs, but excluding any such expenses, costs and fees incurred prior to the Effective Date), judgments, settlements, or other liabilities arising from or incurred in connection with any action based upon, arising out of, or attributable to Asbestos Personal Injury Claims, including, but not limited to, indemnification or contribution for such claims prosecuted against the Reorganized Debtors.

(b)    Section 10.7 of the Plan is an integral part of the Plan and is essential to its implementation. Each of the Reorganized Debtors, their Related Persons and any other Persons protected by the indemnifications and other provisions set forth in Section 10.7 of the Plan shall have the right to independently seek the enforcement of such indemnifications.

8.    **Authority of the Debtors**

On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively the provisions of the Plan, the Confirmation Order and the Asbestos Personal Injury Trust Agreement.

I.    **FB ASBESTOS PROPERTY DAMAGE TRUST**

1.    **The FB Asbestos Property Damage Trust**

Effective as of the later of (i) the date the FB Asbestos Property Damage Trustee has executed the FB Asbestos Property Damage Trust Agreement and (ii) the Effective Date, the

FB Asbestos Property Damage Trust shall be created. The FB Asbestos Property Damage Trust is intended to be a "qualified settlement fund" within the meaning of Treasury Regulations Section 1.468B-1, *et seq.*, promulgated under Section 468B of the IRC. The purpose of the FB Asbestos Property Damage Trust shall be to, among other things, (i) exclusively process, liquidate, and pay all FB Asbestos Property Damage Claims in accordance with the Plan, the FB Asbestos Property Damage Trust Distribution Procedures, and the Confirmation Order and (ii) preserve, hold, manage, and maximize the assets of the FB Asbestos Property Damage Trust for use in paying and satisfying FB Asbestos Property Damage Claims.

      **2.**       **Appointment of FB Asbestos Property Damage Trustee**

On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the individual selected by the Debtors (as identified in the FB Asbestos Property Damage Trust Agreement) to serve as the FB Asbestos Property Damage Trustee for the FB Asbestos Property Damage Trust.

      **3.**       **Transfer of Certain Property to the FB Asbestos Property Damage Trust**

      (a)      Transfer of Books and Records

On the Effective Date, or as soon thereafter as is practicable, at the sole cost and expense of the FB Asbestos Property Damage Trust and in accordance with written instructions provided to the Reorganized Debtors by the FB Asbestos Property Damage Trust, the Reorganized Debtors will transfer and assign to the FB Asbestos Property Damage Trust copies of all books and records of the Debtors that pertain directly to FB Asbestos Property Damage Claims that have been asserted against the Debtors and/or the Fibreboard Insurance Settlement Trust. The Debtors will request that the Bankruptcy Court, in the Confirmation Order, rule that such transfers shall not result in the invalidation or waiver of any applicable privileges pertaining to such books and records.

      (b)      Transfer of Certain Property to the FB Asbestos Property Damage Trust

The Reorganized Debtors shall transfer and assign, or cause to be transferred and assigned, to the FB Asbestos Property Damage Trust the property and consideration set forth in Section 3.4(e)(ii) of the Plan in the manner and at the times set forth therein.

      **4.**       **Assumption of Certain Liabilities by the FB Asbestos Property Damage Trust**

In consideration for the property transferred to the FB Asbestos Property Damage Trust pursuant to Section 11.3 of the Plan, and in furtherance of the purposes of the FB Asbestos Property Damage Trust and the Plan, the FB Asbestos Property Damage Trust shall, and shall be deemed to, assume any and all obligations, liability and responsibility for, under or relating to any and all FB Asbestos Property Damage Claims, and each of the Reorganized Debtors and its respective Related Persons shall have no further financial or other obligations, responsibility or liability therefor. The FB Asbestos Property Damage Trust shall, and shall be deemed to, also assume any and all obligations, liability and responsibility for any and all premiums, deductibles,

retrospective premium adjustments, security or collateral arrangements, and any other charges, costs, fees, or expenses (if any) that become due to any insurer in connection with the FB Asbestos Property Damage Insurance Assets as a result of FB Asbestos Property Damage Claims, asbestos-related property damage claims against Persons insured under policies included in the FB Asbestos Property Damage Insurance Assets by reason of vendors' endorsements, or under the indemnity provisions of settlement agreements that the Debtors made with any insurers prior to the Confirmation Date to the extent that those indemnity provisions relate to FB Asbestos Property Damage Claims, and each of the Reorganized Debtors and its respective Related Persons shall have no further financial or other obligations, responsibility or liability for any of the foregoing; *provided, however,* that such liability of the FB Asbestos Property Damage Trust shall be limited to the extent of the benefits of such insurance policies, as reasonably determined by the FB Asbestos Property Damage Trustee, so that the FB Asbestos Property Damage Trust may elect to terminate such liability in the event that the FB Asbestos Property Damage Trustee determines that the benefits of maintaining the insurance policies are no longer worth the costs.

### 5.    Cooperation with Respect to Insurance Matters

The Reorganized Debtors shall cooperate with the FB Asbestos Property Damage Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate the transfer of the FB Asbestos Property Damage Insurance Assets to the FB Asbestos Property Damage Trust. By way of enumeration and not of limitation, the Reorganized Debtors each shall be obligated (i) to provide the FB Asbestos Property Damage Trust with copies of insurance policies and settlement agreements included within or relating to the FB Asbestos Property Damage Insurance Assets; (ii) to provide the FB Asbestos Property Damage Trust with information necessary or helpful to the FB Asbestos Property Damage Trust in connection with its efforts to obtain insurance coverage for FB Asbestos Property Damage Claims; (iii) to execute further assignments or allow the FB Asbestos Property Damage Trust to pursue claims relating to the FB Asbestos Property Damage Insurance Assets in its name (subject to appropriate disclosure of the fact that the FB Asbestos Property Damage Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the FB Asbestos Property Damage Trust to obtain insurance coverage under the FB Asbestos Property Damage Insurance Assets for FB Asbestos Property Damages Claims; and (iv) to pursue and recover insurance coverage in its own name or right to the extent that the transfer and assignment of the FB Asbestos Property Damage Insurance Assets to the FB Asbestos Property Damage Trust is not able to be fully effectuated. The FB Asbestos Property Damage Trust shall be obligated to compensate the Reorganized Debtors for all costs and expenses reasonably incurred in connection with providing assistance to the FB Asbestos Property Damage Trust pursuant to Section 11.5 of the Plan, including without limitation, out-of-pocket costs and expenses, consultant fees, and attorneys' fees.

### 6.    FB Asbestos Property Damage Trust Indemnity Obligations

Notwithstanding anything to the contrary in the FB Asbestos Property Damage Trust Agreement, the FB Asbestos Property Damage Trust shall have the indemnification obligations set forth below.

(a)    Except as provided in Section 11.6(b) of the Plan with respect to Non-Debtor FB Asbestos Claims (as defined in Section 11.6(b) of the Plan), if, for any reason, on or after the Effective Date, the Reorganized Debtors and/or any of their non-Debtor Affiliates are for any reason held liable for any FB Asbestos Property Damage Claim that is not successfully channeled to the FB Asbestos Property Damage Trust, then the FB Asbestos Property Damage Trust shall fully and completely indemnify the Reorganized Debtors and/or any of their Related Persons, as applicable, in an amount equal to the amount actually paid on such FB Asbestos Property Damage Claim by the Reorganized Debtors and/or their Related Persons, as applicable, plus fees, costs and expenses related to such FB Asbestos Property Damage Claim.

(b)    If, on or after the Effective Date, the Reorganized Debtors and/or any of their Related Persons are held liable for any claim attributable to, directly or indirectly, injuries or other damages caused or allegedly caused by the presence of, or exposure to, asbestos and arising or allegedly arising, in whole or in part, directly or indirectly, from acts or omissions of one or more of the Reorganized Debtors or its Related Persons, (a "Non-Debtor FB Asbestos Claim"), then the FB Asbestos Property Damage Trust shall indemnify the Reorganized Debtors and/or any of their Related Persons in an amount equal to the amount actually paid on such Non-Debtor FB Asbestos Claim by the Reorganized Debtors and/or their Related Persons, as applicable, plus fees, costs and expenses related to such Non-Debtor FB Asbestos Claim.

(c)    Notwithstanding anything to the contrary in Sections 11.6(a) and 11.6(b) of the Plan, if, on or after the Effective Date, the Reorganized Debtors and/or any of their Related Persons are sued on account of an FB Asbestos Property Damage Claim or a Non-Debtor FB Asbestos Claim that may be tendered to an insurance company for handling and payment, then the applicable Reorganized Debtor and/or Related Person shall tender such FB Asbestos Property Damage Claim or Non-Debtor FB Asbestos Claim, as applicable, to the FB Asbestos Property Damage Trust so the FB Asbestos Property Damage Trust can recover from any available insurance to the fullest extent permissible. The FB Asbestos Property Damage Trust shall use its best efforts to have such FB Asbestos Property Damage Claim and/or Non-Debtor FB Asbestos Claim paid by any applicable insurance and, if the FB Asbestos Property Damage Trust obtains any insurance proceeds on account of such claims, the FB Asbestos Property Damage Trust shall promptly remit such proceeds to the applicable Reorganized Debtor and/or Related Person to the extent necessary to fully reimburse all such entities, in the aggregate, for amounts they paid with respect to all such unchanneled FB Asbestos Property Damage Claims and Non-Debtor FB Asbestos Claims.

(d)    Notwithstanding anything to the contrary in the FB Asbestos Property Damage Trust Agreement, the FB Asbestos Property Damage Trust shall be obligated to pay the indemnification as required under the Plan from any and all available assets of the FB Asbestos Property Damage Trust.

(e)    Each of the provisions set forth in Section 11.6 of the Plan is an integral part of the Plan and is essential to its implementation. Each of the Reorganized Debtors, their Related Persons and any other Persons protected by the indemnifications and other provisions set forth in Section 11.6 of the Plan shall have the right to independently seek the enforcement of such indemnifications.

7.    **Authority of the Debtors**

On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively the provisions of the Plan, the Confirmation Order and the FB Asbestos Property Damage Trust Agreement.

J.    **CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

1.    **Conditions to Confirmation**

The Plan shall not be confirmed, and the Confirmation Order shall not be entered, until and unless the Confirmation Conditions set forth below have been satisfied or waived by the Plan Proponents. These Confirmation Conditions, which are designed to, *inter alia*, ensure that the Asbestos Personal Injury Permanent Channeling Injunction shall be effective, binding and enforceable, are as follows:

(a)    the Bankruptcy Court shall have made the following findings of fact and/or conclusions of law, among others, each of which shall be contained in the Confirmation Order in form and substance acceptable to the Plan Proponents:

(i)    The Asbestos Personal Injury Permanent Channeling Injunction is to be implemented in connection with the Asbestos Personal Injury Trust and the Plan.

(ii)    At the time of the order for relief with respect to OC and Fibreboard, OC and Fibreboard had been named as defendants in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

(iii)    The Asbestos Personal Injury Trust, as of the Effective Date, shall assume the liabilities of all of the OC Persons with respect to OC Asbestos Personal Injury Claims, and upon such assumption, the Reorganized Debtors, the OC Persons and each of their respective Related Persons (to the extent such Related Persons constitute Protected Parties) shall have no liability for any OC Asbestos Personal Injury Claims.

(iv)    The Asbestos Personal Injury Trust, as of the Effective Date, shall assume the liabilities of all of the FB Persons with respect to FB Asbestos Personal Injury Claims, and, upon such assumption, the Reorganized Debtors, the FB Persons and each of their respective Related Persons (to the extent such Related Persons constitute Protected Parties) shall have no liability for any FB Asbestos Personal Injury Claims.

(v)    The OC Sub-Account of the Asbestos Personal Injury Trust is to be funded in whole or in part with Cash, New OCD Common Stock, the OCD Insurance Escrow, the OC Asbestos Personal Injury Liability Insurance Assets, certain payments due under the AIG Settlement Agreement and the Affiliated FM Settlement Agreement, and distributable proceeds of the Litigation Trust Assets, and by the obligation of Reorganized OCD to make future payments, including dividends.

(vi)    The FB Sub-Account is to be funded in whole or in part with the Existing Fibreboard Insurance Settlement Trust Assets, the FB Reversions, the Committed Claims Account, and the FB-Sub-Account Settlement Payment.

(vii)    The Asbestos Personal Injury Trust is to own upon the Initial Distribution Date, a majority of the voting shares of Reorganized OCD.

(viii)    In light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust on behalf of each Protected Party, the Asbestos Personal Injury Permanent Channeling Injunction is fair and equitable with respect to the persons that might subsequently assert Asbestos Personal Injury Claims against any Protected Party.

(ix)    The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to (a) OC Asbestos Personal Injury Claims and (b) FB Asbestos Personal Injury Claims, respectively, that are addressed by the Asbestos Personal Injury Permanent Channeling Injunction.

(x)    The actual amounts, numbers, and timing of such Demands cannot be determined.

(xi)    Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and Demands.

(xii)    The terms of the Asbestos Personal Injury Permanent Channeling Injunction, including any provisions barring actions against the Protected Parties pursuant to Section 524(g)(4)(A), are set forth in conspicuous language in the Plan and in any disclosure statement supporting the Plan.

(xiii)    The Plan establishes, in Classes A7 and B8, separate Classes of claimants whose Claims are to be addressed by the Asbestos Personal Injury Trust.

(xiv)    Class A7 and Class B8 claimants have each voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

(xv)    Pursuant to court orders or otherwise, the Asbestos Personal Injury Trust shall operate through mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of present Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Personal Injury Trust will value, and be in a financial position to pay, present Claims and Demands that involve similar Claims in substantially the same manner.

(xvi)    The Future Claimants' Representative was appointed as part of the proceedings leading to the issuance of the Asbestos Personal Injury Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Asbestos Personal Injury Permanent Channeling Injunction and channeled to and assumed by the Asbestos Personal Injury Trust. The Future Claimants' Representative has in all respects fulfilled his duties, responsibilities,

and obligations as the future representative in accordance with Section 524(g) of the Bankruptcy Code.

(xvii)  Identifying or describing each Protected Party in the Asbestos Personal Injury Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust by or on behalf of any such Protected Party.

(xviii)  The Plan complies in all respects with Section 524(g) of the Bankruptcy Code.

(xix)  The Asbestos Personal Injury Trust is to use its assets and income to pay Asbestos Personal Injury Claims.

(xx)  The Plan and its exhibits constitute a fair, equitable, and reasonable resolution of the liabilities of the Debtors for FB Asbestos Property Damage Claims.

(xxi)  The Plan and its exhibits constitute a fair, equitable, and reasonable resolution of the liabilities of the Debtors for Asbestos Personal Injury Claims.

(xxii)  The confirmation and consummation of the Plan, including the discharge of the Debtors pursuant to the Plan and the issuance of the injunction channeling all FB Asbestos Property Damage Claims to the FB Asbestos Property Damage Trust pursuant to Section 3.4(e) of the Plan, shall not provide the insurers a defense to liability for insurance coverage based upon the alleged elimination of the liability of the insured(s).

(xxiii)  The confirmation and consummation of the Plan, including the discharge of the Debtors pursuant to the Plan and the issuance of Asbestos Personal Injury Permanent Channeling Injunction, shall not provide the insurers a defense to liability for insurance coverage based upon the alleged elimination of the liability of the insured(s).

(xxiv)  The duties and obligations of the insurers that issued policies and their successors and assigns, or, with respect to any insolvent insurers, their liquidators and/or the state insurance guaranty funds that bear responsibility with respect to such rights under such policies which constitute the FB Asbestos Property Damage Insurance Assets are not eliminated or diminished by (i) the discharge, release and extinguishment of all the liabilities of the Debtors or Reorganized Debtors pursuant to the Plan in respect to the FB Asbestos Property Damage Claims; (ii) the assumption of liability for the FB Asbestos Property Damage Claims by the FB Asbestos Property Damage Trust; or (iii) the transfer pursuant to the Plan of such rights to the FB Asbestos Property Damage Insurance Assets as Fibreboard may have.

(xxv)  The duties and obligations of the insurers that issued policies and their successors and assigns, or, with respect to any insolvent insurers, their liquidators and/or the state insurance guaranty funds that bear responsibility with respect to such rights under such policies which constitute the OC Asbestos Personal Injury Liability Insurance Assets are not eliminated or diminished by (i) the discharge, release and extinguishment of

all the liabilities of the Debtors or Reorganized Debtors pursuant to the Plan in respect to the OC Asbestos Personal Injury Claims; (ii) the assumption of liability for the OC Asbestos Personal Injury Claims by the Asbestos Personal Injury Trust; or (iii) the transfer pursuant to the Plan of the such rights to the OC Asbestos Personal Injury Liability Insurance Assets as OC may have.

(xxvi)  All insurers of the Debtors affording insurance coverage that is the subject of the OC Asbestos Personal Injury Insurance Assets and all insurers of the Debtors whose policies provide coverage for the FB Asbestos Property Damage Claims have been given notice and an opportunity to be heard on matters relating to the Plan and its Exhibits.

(xxvii) The Asbestos Personal Injury Permanent Channeling Injunction and each of the other injunctions set forth in Sections 5.14 and 5.15 of the Plan are essential to the Plan and the Debtors' reorganization efforts.

(b)    If and to the extent requested by the Debtors, the Court shall have approved the allocation of the Total Enterprise Value among the individual Debtors on a stand alone basis as of the Effective Date, as set forth in Schedule XII of the Plan.

(c)    If and to the extent requested by the Debtors, the Court shall have approved the allocation of Available Cash among the various Debtors as of the Effective Date, as set forth in Schedule XII of the Plan.

(d)    If and to the extent requested by the Debtors, the Court shall have approved the estimates set forth on Schedule XII of the Plan, including, without limitation, the Bank Default Interest and Fee Amount, the Combined OCD Distribution Package and the Senior Notes Amount.

(e)    The Court shall have estimated the amounts in the NSP Administrative Deposit Accounts in respect of OC Asbestos Personal Injury Claims less any OCD Reversions, to the extent necessary in order to determine the Class A7 Aggregate Amount.

(f)    In the event that Class A5 or Class A6-B rejects the Plan, the Court shall have estimated, for Plan voting and confirmation purposes, the amount to be distributed to the OC Sub-Account on account of the Integrex Asbestos Personal Injury Claims (if any).

(g)    The Court shall have allowed all material Intercompany Claims and Subordinated Claims or otherwise adjudicated any objections to the allowance of such Claims.

(h)    The Court shall have resolved all material issues concerning contractual and equitable subordination claims, in the absence of agreements regarding such claims.

(i)    The Court shall have determined that all causes of action relating to successor liability, piercing the corporate veil and fraudulent transfer shall be released and waived as of, and subject to, the Effective Date, other than such actions which are specifically preserved under the Plan.

814526.7

207

727

(j)    In the event that Class A4 rejects or shall be deemed to have rejected the Plan, the Court shall have determined the aggregate amount of Cash and cash pay Senior Notes that shall be distributed to the Bank Holders on account of their Claims against the various Debtors under the 1997 Credit Agreement as of the Petition Date and the unpaid post-petition interest, fees and expenses, if any, to which the Bank Holders may be entitled under the 1997 Credit Agreement, applicable law, and the facts, circumstances and equities of these cases.

(k)    The Plan and the exhibits and schedules thereto shall in all material respects be in form and substance reasonably satisfactory to the Plan Proponents.

**2.    Conditions to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.3 of the Plan:

(a) The Confirmation Order shall have been entered, shall have become a Final Order, and shall be in form and substance reasonably satisfactory to the Plan Proponents.

(b) The Asbestos Personal Injury Permanent Channeling Injunction shall be in full force and effect.

(c) The rights of any and all members of Classes A4, A5, A6-A and A6-B to pursue, and receive any benefits of, from or under, the pending appeal of the OCD Asbestos Personal Injury Estimation Order shall be deemed to have been waived and released under the Plan and Confirmation Order to the fullest extent permissible under applicable law, unless the Plan Proponents shall have determined, in their sole discretion, that the appeal of the OCD Asbestos Personal Injury Estimation Order shall be effectively mooted by the distribution of property under the Plan and all other relevant facts and circumstances.

(d) All agreements or other instruments which are exhibits to the Plan shall be in form and substance reasonably acceptable to the Plan Proponents and shall have been executed and delivered.

(e) All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

(f) The Asbestos Personal Injury Trustees shall have accepted their appointment as Asbestos Personal Injury Trustees and shall have executed the Asbestos Personal Injury Trust Agreement.

(g) The individuals designated to serve as members of the TAC shall have accepted their appointment as TAC members.

(h) The Future Claimants' Representative shall have agreed to continue to serve in such capacity following the Confirmation Date.

(i) The Reorganized Debtors shall have received either an opinion of counsel or a private letter ruling issued by the IRS relating to the tax status of the Asbestos Personal Injury

814526.7                    208

728

Trust as a "qualified settlement fund," in either case in a form that is reasonably satisfactory to the Plan Proponents.

(j)  The FB Asbestos Property Damage Trustee shall have accepted his appointment as FB Asbestos Property Damage Trustees and shall have executed the FB Asbestos Property Damage Trust Agreement.

(k)  The Reorganized Debtors shall have entered into and shall have credit availability under the Exit Facility in an amount sufficient to meet the needs of Reorganized Debtors, as determined by the Plan Proponents.

(l)  Each of the Exhibits shall be in form and substance acceptable to the Plan Proponents.

(m)The Existing Fibreboard Insurance Settlement Trust Assets shall have been irrevocably assigned and transferred prior to the Effective Date to the Asbestos Personal Injury Trust, for allocation to the FB Sub-Account, or the Reorganized Debtors or the trustees of the Fibreboard Settlement Trust, as the case may be, shall have agreed to treat the Existing Fibreboard Insurance Settlement Trust Assets in accordance with Section 10.5.

(n)  The Reorganized Debtors shall have established tail-coverage insurance for the benefit of the Debtors' directors, officers and employees, in accordance with Section 7.5(b) hereof.

3.    **Waiver of Conditions**

Notwithstanding anything contained in Section 12.2 of the Plan, the Plan Proponents hereby reserve, in their sole discretion, the right to waive in writing the occurrence of any of the foregoing conditions precedent to the Effective Date or to modify any of such conditions precedent.  Any such written waiver of a condition precedent set forth in this section may be effected at any time by the Plan Proponents, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Plan Proponents decide that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in the manner set forth above, then the Plan Proponents shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

K.    **RETENTION OF JURISDICTION**

1.    **Exclusive Jurisdiction of the Bankruptcy Court and District Court**

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the District Court, together with the Bankruptcy Court to the extent of any reference made to it by the District Court and the Reference Order, shall, and shall be deemed to, retain exclusive

jurisdiction, to the fullest extent permissible, over any and all matters arising out of, under or related to, the Chapter 11 Cases or the Plan, including, without limitation, jurisdiction to:

(a)     interpret, enforce, and administer the terms of the Asbestos Personal Injury Trust Agreement and the FB Asbestos Property Damage Trust Agreement (including all annexes and exhibits thereto);

(b)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (other than an Asbestos Personal Injury Claim and an FB Asbestos Property Damage Claim) or Interest not otherwise Allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(c)     hear and determine all applications for compensation and reimbursement of expenses of professionals under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date, the payment of the fees and expenses of the retained professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(d)     hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(e)     effectuate performance of and payments under the provisions of the Plan;

(f)     hear and determine all matters with respect to the performance by the Disbursing Agent, the Asbestos Personal Injury Trust (to the extent provided in the Asbestos Personal Injury Trust Agreement) and the FB Asbestos Property Damage Trust of their respective obligations to make distributions under the Plan;

(g)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, other than the Released Actions;

(h)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(i)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(j)     consider any modifications of the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

814526.7                                 210

(k)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(l)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(m)     hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n)     enforce all orders, judgments, discharges, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases, including, without limitation, those set forth in Sections 5.5, 5.14, 5.15, 7.5, 10.7, 11.6, and 14.9 of the Plan;

(o)     hear and determine any matters related to the Asbestos Personal Injury Trust's indemnification obligations under Section 10.7 of the Plan (subject to the terms and conditions of the Asbestos Personal Injury Trust Agreement) FB Asbestos Property Damage Trust's indemnification obligations under Section 11.6 of the Plan;

(p)     except as otherwise limited in the Plan, recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(q)     hear and determine all questions and disputes regarding title to the assets of the Debtors, their Estates, the Asbestos Personal Injury Trust, or the FB Asbestos Property Damage Trust, including, without limitation, the NSP Administrative Deposit Accounts.

(r)     hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(s)     hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(t)     hear and determine such other matters as may be provided in or that may arise in connection with the Plan, Confirmation Order, the Claims Trading Injunction, the Asbestos Personal Injury Permanent Channeling Injunction, and each of the other injunctions set forth in Sections 5.14 and 5.15 of the Plan, or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(u)     enter a final decree closing the Chapter 11 Cases; and

(v)     hear and determine all objections to the termination of the Asbestos Personal Injury Trust and/or the FB Asbestos Property Damage Trust.

(w)     Continued Reference to the Bankruptcy Court

211

(x)    Notwithstanding entry of the Confirmation Order and/or the occurrence of the Effective Date, the reference to the Bankruptcy Court pursuant to the Reference Order shall continue, but subject to any modifications or withdrawals of the reference specified in the Confirmation Order, Reference Order, Case Management Order or other Order of the District Court; *provided, however*, that nothing in the Plan, the Reference Order or other Order shall, or shall be deemed to, affect the procedures established pursuant to the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures, the FB Asbestos Property Damage Trust Agreement and the FB Asbestos Property Damage Trust Distribution Procedures.

## L.    MISCELLANEOUS PROVISIONS

### 1.    Professional Fee Claims

All final requests for compensation or reimbursement of the fees of any professional employed in the Chapter 11 Cases pursuant to Section 327 or 1103 of the Bankruptcy Code or otherwise, including the professionals seeking compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date in connection with the Chapter 11 Cases, pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtors, the Unsecured Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants' Representative, the advisors to the Bank Holders' sub-committee and the advisors to the Bondholders' and trade creditors' sub-committee prior to the Effective Date and Claims for making a substantial contribution under Section 503(b)(4) of the Bankruptcy Code must be filed and served on the Reorganized Debtors and their counsel not later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel and the requesting professional or other entity not later than twenty (20) days after the date on which the applicable application for compensation or reimbursement was served. Nothing in the Plan shall be construed as limiting the right of the United States Trustee to be heard under Section 307 or 502(a) of the Bankruptcy Code with regard to any Professional Fee Claims or other similar claims or requests for payment of administrative expenses.

### 2.    Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than as set forth in Sections 3.1 and 14.1 of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Debtors not later than forty-five (45) days after the Effective Date. Unless the Debtors object to an Administrative Claim within forty-five (45) days after receipt, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by a Debtor in the ordinary course of business.

814526.7

212

732

3.    **Payment of Statutory Fees**

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Reorganized Debtors shall pay all required fees pursuant to Section 1930 of title 28 of the United States Code or any other statutory requirement and comply with all statutory reporting requirements.

4.    **Modifications and Amendments**

The Plan Proponents may alter, amend or modify the Plan or any exhibits or schedules thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Plan Proponents may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and to seek approval of such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

5.    **Severability of Plan Provisions**

If, prior to the Confirmation Date, any term or provision in the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of . the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions in the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision in the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

6.    **Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, trustee or assign of such Person.

7.    **Compromises and Settlements**

Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), the Debtors may compromise and settle various Claims (other than Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims) against them and/or claims that they may have against other Persons. The Debtors shall have the right (with Bankruptcy Court approval, following

appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors pursuant to the provisions of Article V of the Plan.

### 8.    Corrective Action

The Debtors are authorized to take such actions as necessary and appropriate to carry out the Plan, including the correction of mistakes or other inadvertent action. In making distributions or transfers under the Plan, the Debtors may seek return of transfers to the extent of any errors, notwithstanding that the transfer is otherwise irrevocable under the Plan.

### 9.    Discharge of the Debtors

(a)    Except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan and the treatment of the Claims thereunder shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities (other than Demands), or Interests or other rights of an equity security holder, relating to any of the Debtors or the Reorganized Debtors or their respective Estates, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities (other than Demands), or Interests or other rights of an equity security holder, and upon the Effective Date, the Debtors and the Reorganized Debtors shall (i) be deemed discharged under Section 1141(d)(1)(A) of the Bankruptcy Code and released from any and all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities or Interests or other rights of an equity security holder of any nature whatsoever, including, without limitation, liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate all rights and interests of holders of OCD Interests and the Integrex Interests; *provided, however,* that the discharge provided in respect of the Bank Holders' Claims pursuant to clause (i) above shall become effective immediately upon the Debtors' delivery of the Initial Bank Holders' Distribution.

(b)    As of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons shall be precluded from asserting against each of the Debtors, the Reorganized Debtors and their respective Related Persons any other or further Claims or other obligations, suits, judgments, damages, debts, Demands, rights, remedies, causes of action or liabilities or Interests or other rights of an equity security holder relating to any of the Debtors or the Reorganized Debtors or their respective Estates based upon any act, omission, transaction or other activity of any nature that occurred prior to the Confirmation Date; *provided, however,* that the foregoing shall apply to the Bank Holders immediately upon the Debtors' delivery of the Initial Bank Holders' Distribution. In accordance with the foregoing, except as otherwise provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a

814526.7

214

judicial determination of discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities (other than Demands) or Interests or other rights of an equity security holder against the Debtors or the Reorganized Debtors or their respective Estates and termination of all OCD Interests and Integrex Interests, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against any of the Debtors or the Reorganized Debtors or their respective Estates at any time, to the extent that such judgment relates to a discharged Claim or terminated OCD Interest or Integrex Interest.

(c)    Pursuant to 11 U.S.C. § 1141(d)(1), the Debtors and the Internal Revenue Service agree that the confirmation of the Plan does not discharge any liabilities to the Internal Revenue Service that may be due from the any of Debtors after the Petition Date and prior to the Confirmation Date. Should any such tax liabilities be determined by the Internal Revenue Service to be due from any of the Debtors, such liabilities shall be determined administratively or in a judicial forum in the manner in which such liabilities would have been resolved had the Chapter 11 Cases not been commenced. Any resulting liabilities shall be paid as if the Chapter 11 Cases had not been commenced.

(d)    The foregoing discharge, release and injunction is an integral part of the Plan and is essential to its implementation. Each of the Debtors and the Reorganized Debtors shall have the right to independently seek the enforcement of the discharge, release and injunction set forth in Section 14.9 of the Plan.

10.    **Non-Binding Effect of Estimation of Asbestos Personal Injury Claims in the Chapter 11 Cases on Certain OCD Insurers**

(a)    The estimation of the OC Asbestos Personal Injury Claims as set forth in the OCD Asbestos Personal Injury Estimation Order shall not be binding on, and shall have no collateral estoppel effect on, the Non-Participating Insurers regarding the insurance coverage obligations of the Non-Participating Insurers (or any of them) in any coverage dispute or coverage litigation. In addition, the estimation set forth in the OCD Asbestos Personal Injury Estimation Order shall not be offered into evidence or cited or argued to a jury (or other trier of fact in an alternative dispute resolution pursuant to the Wellington Agreement) by any of the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representatives or the Asbestos Personal Injury Trust in any coverage litigation, alternative dispute resolution, or other coverage proceeding with the Non-Participating Insurers. Further, none of the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representatives or the Asbestos Personal Injury Trust, nor any entities created pursuant to this Plan may argue or assert, in any court proceeding (or alternative dispute resolution pursuant to the Wellington Agreement) involving the Non-Participating Insurers and issues related to insurance coverage, that any findings or conclusions contained in the OCD Asbestos Personal Injury Estimation Order or referenced in any decision, order, finding, conclusion or judgment of the Bankruptcy Court or the District Court (including the Confirmation Order) constitutes a judgment, adjudication, final order, settlement, or finding of liability binding upon any Debtor for any purpose concerning insurance coverage under any policies issued by the Non-Participating Insurers for any Asbestos Personal Injury Claims. The District Court's findings in the OCD Asbestos Personal Injury Estimation

Order, with respect to the Non-Participating Insurers, shall apply only to Plan confirmation issues and not to issues of insurance coverage.

(b)    The provisions set forth in Section 14.10(a) of the Plan shall not apply in favor of any specific Non-Participating Insurer that argues in a coverage proceeding that a negative inference should be drawn from the failure of the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representatives or the Asbestos Personal Injury Trust to offer into evidence or to cite to a jury (or other trier of fact in an alternative dispute resolution pursuant to the Wellington Agreement) or argue to a jury (or other trier of fact in an alternative dispute resolution pursuant to the Wellington Agreement) an estimation decision from the Chapter 11 Cases.

(c)    Century Indemnity, having participated in the estimation of asbestos liabilities in the Chapter 11 Cases, shall be fully bound by the OCD Asbestos Personal Injury Estimation Order in the Chapter 11 Cases and in any coverage proceeding (including, without limitation, the pending alternative dispute resolution pursuant to the Wellington Agreement between OCD and Century Indemnity Company.

### 11.    Special Provisions for Warranty Claims, Distributorship Indemnification Claims and Product Coupon Claims

(a)    The Debtors (or, as the case may be, the Reorganized Debtors) shall have the right after the Confirmation Date to fulfill any pre-Petition Date and pre-Confirmation Date warranty claims based on the Debtors' (or, as the case may be, the Reorganized Debtors') business judgment notwithstanding discharge of the Claims and release of the Debtors pursuant to the Bankruptcy Code and the Plan; *provided, however*, that neither the Debtors nor the Reorganized Debtors shall assume (or shall be deemed to have assumed) any warranty or other obligations, responsibilities, or liabilities relating to underground storage tanks.

(b)    The Debtors (or as the case may be the Reorganized Debtors) shall have the right after the Confirmation Date to fulfill any pre-Petition Date product coupons issued in settlement of asbestos property damage actions based on the Debtors' (or, as the case may be, the Reorganized Debtors') business judgment notwithstanding discharge of the Claims and release of the Debtors pursuant to the Bankruptcy Code and the Plan.

(c)    The Debtors shall have the right after the Confirmation Date to fulfill any pre-Petition Date and pre-Confirmation Date distributorship indemnification claims that are not Asbestos Personal Injury Claims or FB Asbestos Property Damage Claims based on the Debtors' business judgment notwithstanding discharge of the Claims and release of the Debtors pursuant to the Bankruptcy Code and the Plan.

### 12.    Committees and Future Claimants' Representative

(a)    Committees

On the Effective Date, each of the Unsecured Creditors' Committee and the Asbestos Claimants' Committee shall dissolve, and its respective members shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases,

except for the purpose of completing any matters, including, without limitation, litigation or negotiations, pending as of the Effective Date. The professionals retained by each of the Unsecured Creditors' Committee and the Asbestos Claimants' Committee and the respective members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except (i) as authorized in the preceding sentence or (ii) to the extent such services are rendered in connection with the hearing on final allowances of compensation pursuant to Section 330 of the Bankruptcy Code.

        (b)     Future Claimants' Representative

        On the Effective Date, the existence of the Future Claimants' Representative and his rights to ongoing reimbursement of expenses and the rights of his professionals to ongoing compensation and reimbursement of expenses shall continue after the Effective Date only for (i) the purposes set forth in the Asbestos Personal Injury Trust Agreement and the annexes thereto and (ii) the purposes of completing any matters, including, without limitation, litigation or negotiations, pending as of the Effective Date, and shall otherwise terminate on the Effective Date.

    **13.**    **Binding Effect**

        The Plan shall be binding upon and inure to the benefit of each of the Debtors and Reorganized Debtors and their respective Estates and each of their respective Related Persons and any Person claiming by or through them, and any Person that has held, currently holds or may hold a Claim or other obligation, suit, judgment, damages, Demand, debt, right, remedy, cause of action or liability or Interest or any right of an equity security holder, against or in the Debtors whether or not such Person will receive or retain any property or interest in property under the Plan and each of their respective successors and assigns; in each case, including, without limitation, all parties-in-interest in the Chapter 11 Cases.

    **14.**    **Revocation, Withdrawal, or Non-Consummation**

        The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent or further amended plans of reorganization. If the Plan Proponents revoke or withdraw the Plan, or if confirmation or consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or any other Person, (b) prejudice in any manner the rights of the Plan Proponents, any Debtor or any Person in any further proceedings involving a Debtor, or (c) constitute an admission of any sort by the Plan Proponents, any Debtor or any other Person.

814526.7

15. **Plan Exhibits**

Any and all exhibits to the Plan or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least ten (10) Business Days prior to the Objection Deadline, unless the Plan provides otherwise. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors in accordance with Section 14.16 of the Plan, or the Company may make such documents available on the Company's website. The Plan Proponents explicitly reserve the right to modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Objection Deadline.

1.2 **Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## VIII. THE ASBESTOS PERSONAL INJURY TRUST

The following summarizes the terms of the governing documents for the Asbestos Personal Injury Trust. These documents consist of the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures. The following is intended only to be a summary and is qualified in its entirety by reference to the full text of such documents. In the event of any inconsistency between the provisions of these documents and the summary contained herein, the terms of such documents will control. Interested parties should therefore review the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, copies of which are attached to the Plan as Exhibits D and D-1, respectively.

**THE ATTACHED ASBESTOS PERSONAL INJURY TRUST AGREEMENT AND ASBESTOS PERSONAL INJURY TRUST DISTRIBUTION PROCEDURES ARE IN DRAFT FORM AND ARE NOT COMPLETE. THEY ARE IN THE PROCESS OF BEING REVIEWED BY THE ASBESTOS CLAIMANTS' COMMITTEE AND THE FUTURE CLAIMANTS' REPRESENTATIVE, AND HAVE NOT BEEN APPROVED BY EITHER OF THEM OR BY THE DEBTORS. ALL RIGHTS WITH RESPECT TO THESE DOCUMENTS AND EACH OF THE PROVISIONS THEREOF ARE FULLY RESERVED.**

### A.    General Description of the Asbestos Personal Injury Trust

### 1.    Purposes of the PI Trust

The Asbestos Personal Injury Trust will be established pursuant to the Asbestos Personal Injury Trust Agreement. The purposes of the Asbestos Personal Injury Trust are: (a) to assume all liabilities of the Debtors, their successors in interest, and certain of their Affiliates with respect to OC and Fibreboard Asbestos Personal Injury Claims; (b) to use its assets and income to pay holders of valid OC and Fibreboard Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Distribution Procedures in such a way that such holders are treated fairly, equitably and reasonably in light of the limited assets available to satisfy such claims; and (c) to comply in all respects with the requirements for the Asbestos Personal Injury Trust that are described in section 524(g)(2)(B)(i) of the Bankruptcy Code.

### 2.    The Trustees

The individuals who will serve as the initial Trustees of the Asbestos Personal Injury Trust will be identified, and a complete biography for each initial Trustee will be provided, to the Bankruptcy Court prior to the Confirmation Hearing. The Trustees will serve staggered initial terms of five (5), four (4) and three (3) years from the effective date of the Asbestos Personal Injury Trust Agreement. Thereafter each Trustee will serve a five-year term.

Each Trustee will serve until the end of the Trustee's term, his or her death, resignation or removal, or the termination of the Asbestos Personal Injury Trust. Any Trustee may be removed by the unanimous vote of the remaining Trustees and with the approval of the Bankruptcy Court, in the event he or she becomes unable to discharge his or her duties due to accident or physical or mental deterioration, or for good cause, including any substantial failure to comply with the general administration provisions of the Asbestos Personal Injury Trust Agreement. In the event of a vacancy in a Trustee position, the remaining Trustees will consult with the Trust Advisory Committee and the Future Claimants' Representative concerning appointment of a successor Trustee. The vacancy will be filled by the unanimous vote of the remaining Trustees unless a majority of the Trust Advisory Committee or the Future Claimants' Representative vetoes the appointment. In that event, the Bankruptcy Court will make the appointment.

The Trustees shall receive compensation from the PI Trust for their services as Trustees in the amount of $60,000.00 per annum, except that the Managing Trustee shall receive $75,000.00 per annum for his or her service. All Trustees shall also receive a per diem allowance for meetings or other Asbestos Personal Injury Trust business performed in the amount of $1,500.00 and out-of-pocket costs and expenses. The Trustees' annual and per diem compensation will be reviewed every three years and appropriately adjusted with the approval of the Bankruptcy Court.

The Trustees may sit on the Board of Directors of the Reorganized Debtors, but they will not receive additional compensation for their service on such board over and above the compensation they receive as Trustees. The Trustees will receive from the Asbestos Personal Injury Trust, however, the same per diem allowance as the Reorganized Debtors pay their directors for attendance at meetings. Subject to a number of limitations set forth in the Asbestos

Personal Injury Trust Agreement, the Trustees have the power to take any and all actions that are necessary to fulfill the purposes of the Asbestos Personal Injury Trust and need not obtain Bankruptcy Court approval to do so.

### 3.     The Trust Advisory Committee

The Asbestos Personal Injury Trust Agreement provides for the establishment of a Trust Advisory Committee ("TAC"). The initial members of the TAC will be identified, and a complete biography for each such initial member will be provided, to the Bankruptcy Court prior to the Confirmation Hearing. The members of the TAC will serve until his or her death, resignation or removal, or the termination of the Asbestos Personal Injury Trust. Any TAC member may be removed by the remaining TAC members with the approval of the Bankruptcy Court in the event he or she becomes unable to discharge his or her duties due to accident or physical or mental deterioration, or for good cause, including any substantial failure to comply with the general administration provisions of the Asbestos Personal Injury Trust Agreement.

In the event of a vacancy caused by the resignation or death of a TAC member, his or her successor shall be pre-selected by the resigning or deceased TAC member, or by his or her law firm in the event that such member has not pre-selected a successor. If neither the member nor the law firm exercises the right to make such a selection, the successor shall be chosen by a majority vote of the remaining TAC members. If a majority of the remaining members cannot agree, the Bankruptcy Court shall appoint the successor. In the event of a vacancy caused by the removal of a TAC member, the remaining members of the TAC by majority vote shall name the successor. If the majority of the remaining members of the TAC cannot reach agreement, the Bankruptcy Court shall appoint the successor.

The Trustees are required to consult with the TAC on the appointment of successor Trustees, the general implementation and administration of the Asbestos Personal Injury Trust and the Asbestos Personal Injury Trust Distribution Procedures, and on various other matters required by the Asbestos Personal Injury Trust Agreement. The Trustees must also obtain the consent of a majority of TAC members on a variety of matters, including material amendments to the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, merger or participation with other claims resolution facilities, and termination of the Asbestos Personal Injury Trust under certain conditions specified in the Asbestos Personal Injury Trust Agreement.

The members of the TAC will be entitled to receive compensation from the Asbestos Personal Injury Trust for their services as TAC members in the form of a per diem allowance for attendance at meetings or other conduct of Asbestos Personal Injury Trust business in the same amount as the per diem paid the Trustees for carrying out Asbestos Personal Injury Trust business. The members of the TAC will also be reimbursed promptly for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties hereunder.

### 4.     The Future Claimants' Representative

The Asbestos Personal Injury Trust Agreement provides for the appointment of a Future Claimants' Representative, James J. McMonagle, Esq., who will serve in a fiduciary

814526.7

220

capacity, representing the interests of the holders of Demands against the Asbestos Personal Injury Trust for the purposes of protecting the rights of such persons.

The Future Claimants' Representative will serve until his death, resignation or removal, or the termination of the Asbestos Personal Injury Trust. The Future Claimants' Representative may resign at any time by written notice to the Trustees and may be removed by the Bankruptcy Court in the event he becomes unable to discharge his duties due to accident or physical or mental deterioration, or for good cause, including any substantial failure to comply with the general administration provisions of the Asbestos Personal Injury Trust Agreement.

A vacancy caused by death or resignation shall be filled with an individual nominated prior to the death or the effective date of the resignation by the deceased or resigning Future Claimants' Representative, and a vacancy caused by removal of the Future Claimants' Representative shall be filled with an individual nominated by the Trustees in consultation with the TAC, subject to the approval of the Bankruptcy Court. In the event a majority of the Trustees cannot agree, or a nominee has not been pre-selected, the successor shall be chosen by the Bankruptcy Court.

The Trustees are required to consult with the Future Claimants' Representative on the appointment of successor Trustees, the general implementation and administration of the Asbestos Personal Injury Trust and the Asbestos Personal Injury Trust Distribution Procedures, and on various other matters required by the Asbestos Personal Injury Trust Agreement. The Trustees must also obtain the consent of the Future Claimants' Representative on a variety of matters, including material amendments to the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, merger or participation with other claims resolution facilities, and termination of the Asbestos Personal Injury Trust under certain conditions specified in the Asbestos Personal Injury Trust Agreement.

The Future Claimants' Representative will be entitled to receive compensation from the Asbestos Personal Injury Trust in the form of payment at the Future Claimants' Representative's normal hourly rate for services performed and will be reimbursed by the Asbestos Personal Injury Trust for all reasonable out-of-pocket costs and expenses incurred by the Future Claimants' Representative in connection with the performance of his duties hereunder.

5.    **Transfer of Assets to the PI Trust**

On the Effective Date and on the Final Distribution Date, or as soon thereafter as is practicable, the Asbestos Personal Injury Trust will receive the consideration described in Sections 3.3 and 3.4 of the Plan.

On the Effective Date, or as soon thereafter as is practicable, at the sole cost and expense of the Asbestos Personal Injury Trust and in accordance with written instructions provided to the Reorganized Debtors by the Asbestos Personal Injury Trust, the Reorganized Debtors will transfer and assign, and will use all commercially reasonable efforts to cause the trustee of the Fibreboard Insurance Settlement Trust to transfer and assign, to the Asbestos Personal Injury Trust all books and records of the Debtors and the Fibreboard Insurance Settlement Trust that pertain directly to Asbestos Personal Injury Claims that have been asserted

814526.7                              221

against the Debtors and/or the Fibreboard Insurance Settlement Trust. The Debtors will request that the Bankruptcy Court, in the Confirmation Order, rule that such transfers shall not result in the invalidation or waiver of any applicable privileges pertaining to such books and records.

The Reorganized Debtors shall cooperate with the Asbestos Personal Injury Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate the transfer of the OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account. By way of enumeration and not of limitation, the Reorganized Debtors shall be obligated (i) to provide the Asbestos Personal Injury Trust with copies of insurance policies and settlement agreements included within or relating to the OC Asbestos Personal Injury Liability Insurance Assets; (ii) to provide the Asbestos Personal Injury Trust with information necessary or helpful to the Asbestos Personal Injury Trust in connection with its efforts to obtain insurance coverage for Asbestos Personal Injury Claims; (iii) to execute further assignments or allow the Asbestos Personal Injury Trust to pursue claims relating to the OC Asbestos Personal Injury Liability Insurance Assets in its name (subject to appropriate disclosure of the fact that the Asbestos Personal Injury Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the Asbestos Personal Injury Trust to obtain insurance coverage under the OC Asbestos Personal Injury Liability Insurance Assets for Asbestos Personal Injury Claims; and (iv) to pursue and recover insurance coverage in its own name or right to the extent that the transfer and assignment of the OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust is not able to be fully effectuated. The Asbestos Personal Injury Trust shall be obligated to compensate Reorganized OCD for costs reasonably incurred in connection with providing assistance to the Asbestos Personal Injury Trust pursuant to the Plan, including, without limitation, out-of-pocket costs and expenses, consultant fees, and attorneys' fees.

6.    **Establishment of the OC Sub-Account and the Fibreboard Sub-Account**

On the Effective Date or as soon thereafter as is practicable, the Asbestos Personal Injury Trust will establish two Sub-Accounts, the OC Sub-Account and the Fibreboard Sub-Account, and will transfer to the OC Sub-Account the consideration described in Section 3.3(f)(iii) of the Plan, and will transfer to the Fibreboard Sub-Account the consideration described in Section 3.4(d)(iii) of the Plan.

All OC Asbestos Personal Injury Claims (which includes OC Indirect Asbestos Personal Injury Claims and Unpaid OC Resolved Asbestos Personal Injury Claims) and all OC Resolved Asbestos Personal Injury Claims shall be payable from the assets of the OC Sub-Account. All Fibreboard Asbestos Personal Injury Claims (which include Fibreboard Indirect Asbestos Personal Injury Claims and Unpaid Fibreboard Resolved Asbestos Personal Injury Claims) and all Fibreboard Resolved Asbestos Personal Injury Claims shall be payable from the assets of the Fibreboard Sub-Account. In all cases, such payments shall be made pursuant to the terms of the Asbestos Personal Injury Trust Distribution Procedures.

7.    **Asbestos Personal Injury Trust Termination Provisions**

The Asbestos Personal Injury Trust is irrevocable, but will terminate ninety (90) days after the first to occur of any of the following events:

- the Trustees decide to terminate the Asbestos Personal Injury Trust because (a) they deem it unlikely that new asbestos claims will be filed against the Asbestos Personal Injury Trust, (b) all OC and Fibreboard Asbestos Personal Injury Claims duly filed with the Asbestos Personal Injury Trust have been liquidated and paid to the extent provided in the Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures or disallowed by a final, non-appealable order, to the extent possible based upon the funds available through the Plan, and (c) twelve (12) consecutive months have elapsed during which no new asbestos claim has been filed with the Asbestos Personal Injury Trust; or

- if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Asbestos Personal Injury Trust in a manner consistent with this Asbestos Personal Injury Trust Agreement and the Asbestos Personal Injury Trust Distribution Procedures, the date on which the Bankruptcy Court enters an order approving such insurance and other arrangements and such order becomes a final order; or

- to the extent that any rule against perpetuities will be deemed applicable to the Asbestos Personal Injury Trust, twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendents of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

On the termination date, after payment of all the Asbestos Personal Injury Trust's liabilities have been provided for, all monies remaining in the Asbestos Personal Injury Trust estate will be given to such organization(s) exempt from federal income tax under Section 501(c)(3) of the IRC, which tax-exempt organization(s) will be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) will be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related lung disorders, and (ii) the tax-exempt organization(s) will not bear any relationship to Reorganized Debtors within the meaning of Section 468(d)(3) of the IRC. The Plan Proponents believe that the likelihood of any monies remaining in the Asbestos Personal Injury Trust after the Asbestos Personal Injury Trust terminates is extremely remote.

8.    **Amendment of the Asbestos Personal Injury Trust Documents**

The Trustees, subject to the TAC's and the Future Claimants' Representative's consent, may modify or amend certain provisions of the Asbestos Personal Injury Trust

Agreement or any document annexed thereto. However, the Asbestos Personal Injury Trust provisions may not be modified or amended in any way that could jeopardize, impair, or modify the applicability of Section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the injunction entered thereunder, or the Asbestos Personal Injury Trust's qualified settlement fund status within the meaning of Treasury Regulations Section 1.468B-1, et seq., promulgated under Section 468B of the IRC.

**B.     Asbestos Personal Injury Trust Distribution Procedures**

**1.     Asbestos Personal Injury Trust Goals**

The Trustees will implement and administer the Asbestos Personal Injury Trust Distribution Procedures, which are attached to the Plan as <u>Exhibit D-1</u>. These procedures have been adopted after lengthy negotiations between and among the Asbestos Claimant's Committee, the Future Claimants' Representative and the Debtors. Nothing approaching full payment of all OC and Fibreboard Asbestos Personal Injury Claims is possible in light of the value of all such claims that could be filed against the Asbestos Personal Injury Trust, both currently and in the future, and the value of the Asbestos Personal Injury Trust assets.

The goal of the Asbestos Personal Injury Trust is to treat all claimants equitably. The Asbestos Personal Injury Trust Distribution Procedures further that goal by setting forth procedures for processing and paying claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all claimants over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[16]

To this end, the Asbestos Personal Injury Trust Distribution Procedures establish for both OC Asbestos Personal Injury Claims and Fibreboard Asbestos Personal Injury Claims a schedule of eight asbestos-related diseases ("Disease Levels"), all of which have presumptive medical and exposure requirements ("Medical/Exposure Criteria"). The Asbestos Personal Injury Trust Distribution Procedures also establishes two separate schedules with liquidated values ("Scheduled Values"), anticipated average values ("Average Values"), and caps on liquidated values ("Maximum Values") for the various Disease Levels. These separate schedules or matrices of values are applicable to OC and Fibreboard Asbestos Personal Injury Claims, respectively.

The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values and Maximum Values have all been selected and derived with the intention of achieving a fair allocation of the Asbestos Personal Injury Trust funds among claimants suffering from different disease processes in light of the best available information considering the settlement history of OCD or Fibreboard and the rights claimants would have in the tort system absent the bankruptcy.

---

[16]     As used in the Asbestos Personal Injury Trust Distribution Procedures, the phrase "in the tort system" shall include only claims asserted by way of litigation and not claims asserted against a trust established pursuant to Section 524(g) and/or Section 105 of the Bankruptcy Code or any other applicable law.