IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

In re OWENS CORNING, *et al.*,

| | |
|---|---|
| INACOM CORP., and its related debtors, by and through Executive Sounding Board Associates, Inc. as Plan Administrator,<br><br>               Appellant,<br><br>    v.<br><br>Owens Corning, and its affiliated debtors and debtors in possession,<br><br>               Appellee. | Civil Action No. 05-852 (JPF)<br><br>Bankruptcy Case No. 00-3837<br><br><br>On Appeal from an Order of the United States Bankruptcy Court for the District of Delaware |

## APPENDIX TO OPENING BRIEF OF APPELLANT INACOM CORP., *ET AL.*

### APPENDIX THREE OF THREE

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
  & WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
Sandra G. M. Selzer (Bar No. 4283)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Electronic Mail: ljones@pszyjw.com
                sselzer@pszyjw.com

Counsel for Appellant

# APPENDIX TO OPENING BRIEF OF APPELLANT INACOM CORP., *ET AL.*

## TABLE OF CONTENTS

### APPENDIX ONE

Page

Order Pursuant to Bankruptcy Rule 3003(c)(3): (i) Fixing General Claims
Bar Date for Filing Certain Proofs of Claim; (ii) Approving Proposed Proof
of Claim Form, General Claims Bar Date Notice and Related Publication
Notice Procedures; and (iii) Approving Proposed Employee and Retiree
Claims Notification Procedures ................................................................A1

Notice of Entry of General Claims Bar Date Order Requiring the Filing
of Proofs of Claim ............................................................................A44

Order Conditionally Approving the Disclosure Statement ................................A55

Inacom Corporation's Motion to Allow the Filing of a Proof of Claim
After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy
Rule 9006(B)(1) ...............................................................................A59

Motion of Debtors for Order, Pursuant to 11 U.S.C. § 1121(d), Granting
Further Extension of Exclusive Periods to File and Solicit Acceptances
of Plan of Reorganization ..................................................................A185

Objection of Debtors to Inacom Corporation's Motion to Allow the Filing
of a Proof of Claim After the Deadline for Filing Proofs of Claim
Pursuant to Bankruptcy Rule 9006(B)(1) ...............................................A204

Inacom's Motion for Leave to File Reply to Objection of Debtors to
Inacom Corporation's Motion to Allow the Filing of a Proof of
Claim After the Deadline for Filing Proofs of Claim Pursuant to
Bankruptcy Rule 9006(B)(1) ...............................................................A226

Order, Pursuant to 11 U.S.C. § 1121(d), Further Extending the
Exclusive Periods During Which the Debtors May File Plans of
Reorganization and Solicit Acceptances Thereto .......................................A258

Order Denying Inacom Corporation's Motion to Allow the Filing
of a Proof of Claim After the Deadline for Filing Proofs of Claim
Pursuant to Bankruptcy Rule 9006(B)(1) ...............................................A260

Page

Transcript of Motions Hearing Before the Honorable Judith K.
Fitzgerald on October 24, 2005 at 10:00 a.m. ...........................................A262

Order, Pursuant to 11 U.S.C. § 1121(d), Further Extending the
Exclusive Periods During Which the Debtors May File Plans of
Reorganization and Solicit Acceptances Thereto .......................................A324

Transcript of Proceedings Before the Honorable Judith K.
Fitzgerald on November 14, 2005 at 10:03 a.m. .......................................A330

Notice of Appeal .......................................................................A392

Thirty-Eighth Omnibus (Substantive) Objection of Debtors
to Claims Pursuant to 11 U.S.C. Section 502(b) and
Bankruptcy Rule 3007 - Claims Improperly Asserted
Against One or More Debtors ...........................................................A397

Debtors' Motion to Strike Items Improperly Designated
by InaCom Corporation to be Included in the Record on Appeal
of Order Denying InaCom Corporation's Motion to Allow the
Filing of a Proof of Claim After the Deadline for Filing Proofs of
Claim Pursuant to Bankruptcy Rule 9006(b)(1) ........................................A464

Motion of Debtors for Order, Pursuant to 11 U.S.C. Section 1121(d),
Granting Further Extension of Exclusive Periods to File and
Solicit Acceptances of Plan of Reorganization ........................................A479

Pro-Tec Services, LLC v. Inacom Corp., et al.
(In re: Inacom Corp., et al.), Civ. A. 04-390-GMS,
2004 WL 2283599 (D. Del. Oct. 4, 2004) ..............................................A499

## APPENDIX TWO AND THREE

Disclosure Statement with Respect to Fifth Amended
Joint Plan of Reorganization for Owens Corning
and its Affiliated Debtors and Debtors-in-Possession (with Exhibits) ................A506

## TABLE OF APPENDICES

| Appendix | Name |
|---|---|
| Appendix A | Fifth Amended Joint Plan of Reorganization of Owens Corning and its Affiliated Debtors and Debtors-in-Possession |
| Appendix B | Pro Forma Financial Projections and Reorganization Balance Sheet [To be provided] |
| Appendix C | Liquidation Analysis [To be provided] |
| Appendix D | Owens Corning Annual Report on Form 10-K for the period ending December 31, 2004, and other referenced reports filed with the Securities and Exchange Commission Note: these documents are available, free of charge, through OC's website at www.owenscorning.com. Copies may also be obtained by written request. See the directions set forth at Appendix D. |
| Appendix E-1 | Estimated Claims Summaries |
| Appendix E-2 | Pre-Petition Intercompany Claims |
| Appendix F | Principal Terms and Conditions of Senior Notes [To be provided] |
| Appendix G | Current Corporate Structure of Company [To be provided] |
| Appendix H | Restructuring Transactions [To be provided] |
| Appendix I | Distribution Assumptions |
| Appendix J | Voting Procedures [This Document will be inserted upon approval of Voting Procedures] |
| Appendix K | Letter dated December 30, 2005, from the Bank Steering Committee Supporting the Plan |

**APPENDIX A**

**Fifth Amended Joint Plan of Reorganization of Owens Corning
and its Affiliated Debtors and Debtors-in-Possession**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| OWENS CORNING, et al., | ) | |
| | ) | Case No. 00-03837 (JKF) |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | |

## FIFTH AMENDED JOINT PLAN OF REORGANIZATION FOR OWENS CORNING AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

SAUL EWING LLP
Norman L. Pernick (I.D. # 2290)
J. Kate Stickles (I.D. # 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Charles O. Monk, II
Jay A. Shulman
Lockwood Place
500 E. Pratt Street
Baltimore, MD 21202
(410) 332-8600

Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7777

Attorneys for the Debtors and
Debtors-in-Possession

SIDLEY AUSTIN LLP
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
Dennis M. Twomey
Eric J. Pearson
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Attorneys for the Debtors and
Debtors-in-Possession

COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Mitchell F. Dolin
Anna P. Engh
Washington, D.C. 20004-2401
(202) 662-6000

Special Insurance Counsel to Debtors
and Debtors-in-Possession (as to insurance
matters)

i

KAYE SCHOLER LLP
Jane W. Parver
Andrew A. Kress
Edmund M. Emrich
425 Park Avenue
New York, NY 10022
(212) 836-8000

YOUNG, CONAWAY,
STARGATT & TAYLOR, LLP
James L. Patton, Jr. (I.D. # 2202)
Edwin J. Harron (I.D. # 3396)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Attorneys for James J. McMonagle,
Legal Representative for Future Claimants

Dated as of: December 31, 2005

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th
New York, NY 10152-3500
(212) 319-7125

Peter Van N. Lockwood
Julie W. Davis
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000

CAMPBELL & LEVINE, LLC
Marla Eskin  (I.D. # 2989)
Mark T. Hurford (I.D. # 3299)
Kathleen Campbell Davis
800 King Street
Wilmington, DE 19801
(302) 426-1900
(302) 426-1900

Attorneys for the Official
Committee of Asbestos Claimants

ii

815

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF
            TIME AND GOVERNING LAW ................................................................ 2
    A.      Scope of Definitions ........................................................................ 2
    B.      Definitions........................................................................................ 2
            1.1     "$150 Million Debentures"................................................. 2
            1.2     "$250 Million Notes"........................................................... 2
            1.3     "$300 Million High Coupon Debentures".......................... 2
            1.4     "$400 Million Debentures".................................................. 2
            1.5     "$550 Million Term Notes" ................................................ 2
            1.6     "130 Million DEM Bearer Bonds" ..................................... 2
            1.7     "1997 Credit Agreement".................................................... 3
            1.8     "Administrative Claims"..................................................... 3
            1.9     "Affiliate".............................................................................. 3
            1.10    "Affiliated FM Entities" ..................................................... 3
            1.11    "Affiliated FM Policy"........................................................ 3
            1.12    "Affiliated FM Settlement Agreement".............................. 4
            1.13    "AIG Company Entities" ..................................................... 4
            1.14    "AIG Policies" ..................................................................... 4
            1.15    "AIG Settlement Agreement"............................................. 5
            1.16    "Allianz Entities" ................................................................ 5
            1.17    "Allianz Policies" ................................................................ 5
            1.18    "Allianz Settlement Agreement" ........................................ 6
            1.19    "Allowed"............................................................................. 6
            1.20    "Amended and Restated Bylaws of Reorganized OCD".... 8
            1.21    "Amended and Restated Certificate of Incorporation of
                    Reorganized OCD"............................................................... 8
            1.22    "Asbestos Claimants' Committee"...................................... 8
            1.23    "Asbestos Personal Injury Claims".................................... 8
            1.24    "Asbestos Personal Injury Permanent Channeling
                    Injunction"........................................................................... 8
            1.25    "Asbestos Personal Injury Trust"...................................... 8
            1.26    "Asbestos Personal Injury Trust Agreement" ................... 8
            1.27    "Asbestos Personal Injury Trust Distribution Procedures"........... 9
            1.28    "Asbestos Personal Injury Trustees" ................................ 9
            1.29    "Available Cash".................................................................. 9
            1.30    "Avoidance Actions"............................................................ 9
            1.31    "AXA Entities"..................................................................... 9
            1.32    "AXA Policies" .................................................................. 10
            1.33    "AXA Settlement Agreement".......................................... 10
            1.34    "Ballot"............................................................................... 10
            1.35    "Ballot Date" ..................................................................... 10
            1.36    "Bank Default Interest and Fee Amount"........................ 10

iii

| | | |
|---|---|---|
| 1.37 | "Bank Holders" | 11 |
| 1.38 | "Bank Holders Action" | 11 |
| 1.39 | "Bank Holders Claims" | 11 |
| 1.40 | "Bankruptcy Code" | 11 |
| 1.41 | "Bankruptcy Court" | 11 |
| 1.42 | "Bankruptcy Rules" | 11 |
| 1.43 | "Board of Directors" | 11 |
| 1.44 | "Bondholders" | 11 |
| 1.45 | "Bondholders Claims" | 11 |
| 1.46 | "Business Day" | 11 |
| 1.47 | "Cash" | 11 |
| 1.48 | "CDC" | 11 |
| 1.49 | "Century Indemnity" | 12 |
| 1.50 | "Chapter 11" | 12 |
| 1.51 | "Chapter 11 Cases" | 12 |
| 1.52 | "Charging Lien" | 12 |
| 1.53 | "Claim" | 12 |
| 1.54 | "Claimant Released Parties" | 12 |
| 1.55 | "Claims Objection Deadline" | 12 |
| 1.56 | "Claims Trading Injunction" | 12 |
| 1.57 | "Class" | 12 |
| 1.58 | "Class [_]4 Distribution Amount" | 13 |
| 1.59 | "Class ___ Final Distribution Percentage" | 13 |
| 1.60 | "Class ___ Initial Distribution Percentage" | 13 |
| 1.61 | "Class A4 Initial Distribution Amount" | 13 |
| 1.62 | "Class A7 Aggregate Amount" | 13 |
| 1.63 | "Class A10 Distribution Amount" | 13 |
| 1.64 | "Class B4 Distribution Amount" | 14 |
| 1.65 | "Class B8 Aggregate Amount" | 14 |
| 1.66 | "Class I4 Distribution Amount" | 14 |
| 1.67 | "Combined [Entity] Distribution Value" | 14 |
| 1.68 | "Combined FB Distribution Value" | 14 |
| 1.69 | "Combined Integrex Distribution Value" | 14 |
| 1.70 | "Combined OCD Distribution Package" | 14 |
| 1.71 | "Combined OCD Distribution Value" | 15 |
| 1.72 | "Combined OCD Supplemental Distribution Package" | 15 |
| 1.73 | "Commercial Claims" | 15 |
| 1.74 | "Committed Claims Account" | 16 |
| 1.75 | "Committees" | 16 |
| 1.76 | "Confirmation Conditions" | 16 |
| 1.77 | "Confirmation Date" | 16 |
| 1.78 | "Confirmation Hearing" | 16 |
| 1.79 | "Confirmation Order" | 16 |
| 1.80 | "Contribution Agreement" | 16 |
| 1.81 | "Convenience Claim" | 16 |
| 1.82 | "CSFB" | 16 |

iv

817

1.83    "Cure" ................................................................................. 16
1.84    "Debt" ................................................................................. 16
1.85    "Debt Agreements" ............................................................ 17
1.86    "Debtors" ........................................................................... 17
1.87    "Debtors-in-Possession" .................................................... 17
1.88    "Demand" ........................................................................... 17
1.89    "Depository Law Firms" ................................................... 17
1.90    "DIP Agent" ....................................................................... 17
1.91    "DIP Facility" .................................................................... 17
1.92    "DIP Facility Claims" ........................................................ 17
1.93    "Disallowed Claim" ........................................................... 17
1.94    "Disbursing Agent" ........................................................... 18
1.95    "Disclosure Statement" ..................................................... 18
1.96    "Disclosure Statement Hearing" ....................................... 18
1.97    "Disputed Claim" .............................................................. 18
1.98    "Disputed Distribution Reserve" ...................................... 18
1.99    "Distribution Record Date" .............................................. 18
1.100   "District Court" ................................................................. 18
1.101   "Effective Date" ................................................................ 18
1.102   "Employee Arrangements" ............................................... 18
1.103   "Encumbrance" .................................................................. 19
1.104   "Engineered Yarns" ........................................................... 19
1.105   "Enjoined Action" .............................................................. 19
1.106   "Environmental Claims" .................................................... 19
1.107   "EPA" ................................................................................. 19
1.108   "ERISA" ............................................................................. 19
1.109   "ESI" .................................................................................. 19
1.110   "Estates" ............................................................................. 20
1.111   "Excess Available Cash" ................................................... 20
1.112   "Excess Litigation Trust Recoveries" .............................. 20
1.113   "Excess New OCD Common Stock" .................................. 20
1.114   "Existing Fibreboard Insurance Settlement Trust Assets" ............ 20
1.115   "Existing OCD Common Stock" ........................................ 20
1.116   "Existing OCD Options" .................................................... 20
1.117   "Existing OCD Preferred Stock" ...................................... 20
1.118   "Exit Facility" ................................................................... 20
1.119   "Face Amount" ................................................................... 20
1.120   "FAIR Act" ........................................................................ 21
1.121   "Falcon Foam" ................................................................... 21
1.122   "FB Asbestos Personal Injury Claim" .............................. 21
1.123   "FB Asbestos Property Damage Claim" ............................ 21
1.124   "FB Asbestos Property Damage Insurance Assets" ......... 22
1.125   "FB Asbestos Property Damage Trust" ............................ 22
1.126   "FB Asbestos Property Damage Trust Agreement" .......... 22
1.127   "FB Asbestos Property Damage Trust Distribution
        Procedures" ....................................................................... 22

v

818

1.128  "FB Asbestos Property Damage Trustee" ........................................... 23
1.129  "FB Indirect Asbestos PI Trust Claim" ............................................... 23
1.130  "FB Indirect Asbestos Property Damage Claim" ............................ 23
1.131  "FB Person" ........................................................................................ 24
1.132  "FB Resolved Asbestos Personal Injury Claim" .............................. 24
1.133  "FB Restricted Cash" ........................................................................ 24
1.134  "FB Reversions" ................................................................................. 24
1.135  "FB Sub-Account" .............................................................................. 24
1.136  "FB Sub-Account Settlement Payment" ........................................... 25
1.137  "Fibreboard" ....................................................................................... 25
1.138  "Fibreboard Insurance Settlement Trust" ...................................... 25
1.139  "Filing" ................................................................................................ 25
1.140  "Final Distribution Date" .................................................................. 25
1.141  "Final Order" ...................................................................................... 25
1.142  "Future Claimants' Representative" ................................................. 25
1.143  "General Unsecured Claim" ............................................................. 25
1.144  "General Unsecured/Senior Indebtedness Claim" ......................... 25
1.145  "Granite State" ................................................................................... 26
1.146  "Hartford Entities" ............................................................................ 26
1.147  "Hartford Policies" ............................................................................ 26
1.148  "Hartford Settlement Agreement" ................................................... 28
1.149  "HOMExperts" .................................................................................... 28
1.150  "Impaired" ........................................................................................... 28
1.151  "Indemnification Obligations" ......................................................... 28
1.152  "Indenture Trustee Fees" .................................................................. 28
1.153  "Initial Bank Holders' Distribution" ............................................... 29
1.154  "Initial Distribution Date" ................................................................ 29
1.155  "Insolvent Insurer PD Rights" ......................................................... 29
1.156  "Insolvent Insurer PI Rights" ........................................................... 29
1.157  "Insurance Guarantee Fund PD Rights" ......................................... 29
1.158  "Insurance Guarantee Fund PI Rights" ........................................... 29
1.159  "Integrex" ............................................................................................ 30
1.160  "Integrex Asbestos Personal Injury Claims" ................................. 30
1.161  "Integrex Minority Interests" ........................................................... 30
1.162  "Intercompany Claim" ...................................................................... 30
1.163  "Interested Party" .............................................................................. 30
1.164  "Interests" ........................................................................................... 30
1.165  "IPM" .................................................................................................... 30
1.166  "IRC" .................................................................................................... 30
1.167  "IRS" ..................................................................................................... 30
1.168  "Jefferson Holdings" .......................................................................... 30
1.169  "Litigation Trust" ............................................................................... 30
1.170  "Litigation Trust Agreement" ........................................................... 30
1.171  "Litigation Trust Assets" ................................................................... 30
1.172  "Litigation Trust Expenses" .............................................................. 31
1.173  "Litigation Trust Initial Deposit" ..................................................... 31

1.174    "Litigation Trust Recoveries"..................................................... 31
1.175    "Litigation Trust Reimbursement Obligation"............................ 31
1.176    "Litigation Trustee"..................................................................... 31
1.177    "Management Arrangements" ..................................................... 31
1.178    "Material Rights of Action"......................................................... 31
1.179    "Merged Plan" ............................................................................ 31
1.180    "MIPS Claims and Interests" ...................................................... 32
1.181    "Mt. McKinley Entities" .............................................................. 32
1.182    "Mt. McKinley Policies".............................................................. 32
1.183    "Mt. McKinley Settlement Agreement" ..................................... 33
1.184    "New OCD Common Stock".......................................................... 33
1.185    "New OCD Securities" ................................................................. 33
1.186    "Non-Debtor Subsidiaries" ......................................................... 33
1.187    "Non-Participating Insurers" ..................................................... 33
1.188    "NSP" .......................................................................................... 33
1.189    "NSP Administrative Deposit Accounts"..................................... 33
1.190    "NSP Agreements"....................................................................... 34
1.191    "Objection Deadline".................................................................. 34
1.192    "OC"............................................................................................ 34
1.193    "OC Asbestos Personal Injury Claim" ....................................... 34
1.194    "OC Asbestos Personal Injury Liability Insurance Assets" ........... 34
1.195    "OC Asbestos Property Damage Claim"...................................... 35
1.196    "OCD".......................................................................................... 35
1.197    "OCD/FB Settlement".................................................................. 35
1.198    "OCD Asbestos Personal Injury Estimation Order" ...................... 35
1.199    "OCD Insurance Escrow".............................................................. 36
1.200    "OCD Interests"........................................................................... 36
1.201    "OCD Restricted Cash" ............................................................... 36
1.202    "OCD Reversions"........................................................................ 36
1.203    "OCFBV Class A11 Claim" .......................................................... 36
1.204    "OCFT" ....................................................................................... 36
1.205    "OCHT"........................................................................................ 36
1.206    "OC Indirect Asbestos PI Trust Claim" ...................................... 36
1.207    "OC Indirect Asbestos Property Damage Claim" ............................ 37
1.208    "OC Overseas".............................................................................. 37
1.209    "OC Person"................................................................................. 37
1.210    "OC Remodeling".......................................................................... 38
1.211    "OC Resolved Asbestos Personal Injury Claim".............................. 38
1.212    "OC Sub-Account" ....................................................................... 38
1.213    "OC Sweden" ............................................................................... 38
1.214    "Other Priority Claims"................................................................ 38
1.215    "Other Secured Claims"................................................................ 38
1.216    "Other Secured Tax Claims"........................................................ 39
1.217    "Person"....................................................................................... 39
1.218    "Petition Date" ........................................................................... 39
1.219    "Plan"........................................................................................... 39

vii

| | | |
|---|---|---|
| 1.220 | "Plan Proponents" | 39 |
| 1.221 | "Pre-petition Bond Indentures" | 39 |
| 1.222 | "Pre-petition Bonds" | 39 |
| 1.223 | "Pre-petition Indenture Trustees" | 40 |
| 1.224 | "Priority Tax Claim" | 40 |
| 1.225 | "Pro Rata" | 40 |
| 1.226 | "Professional Services" | 40 |
| 1.227 | "Proof of Claim" | 40 |
| 1.228 | "Protected Party" | 40 |
| 1.229 | "Quarterly Distribution Date" | 42 |
| 1.230 | "Record Date" | 42 |
| 1.231 | "Reference Order" | 42 |
| 1.232 | "Reinstatement" | 42 |
| 1.233 | "Related Persons" | 42 |
| 1.234 | "Released Actions" | 43 |
| 1.235 | "Released Parties" | 43 |
| 1.236 | "Reorganized Debtors" | 43 |
| 1.237 | "Reorganized Integrex" | 43 |
| 1.238 | "Reorganized OCD" | 44 |
| 1.239 | "Reorganized OCD Board" | 44 |
| 1.240 | "Reorganized Subsidiary Debtors" | 44 |
| 1.241 | "Reserved OCD Distribution Package" | 44 |
| 1.242 | "Resolved Asbestos Personal Injury Claims" | 44 |
| 1.243 | "Restricted Cash" | 44 |
| 1.244 | "Restructuring Transactions" | 44 |
| 1.245 | "Senior Indebtedness Claim" | 44 |
| 1.246 | "Senior Indebtedness Final Distribution Percentage" | 45 |
| 1.247 | "Senior Indebtedness Initial Distribution Percentage" | 45 |
| 1.248 | "Senior Notes" | 46 |
| 1.249 | "Senior Notes Amount" | 46 |
| 1.250 | "SOFAS" | 46 |
| 1.251 | "Soltech" | 46 |
| 1.252 | "Standard Combination" | 46 |
| 1.253 | "Subordinated Claims" | 46 |
| 1.254 | "Subsidiary" | 46 |
| 1.255 | "Subsidiary Debtors" | 46 |
| 1.256 | "Subsidiary Interests" | 47 |
| 1.257 | "Supplemental Excess Available Cash" | 47 |
| 1.258 | "Supplemental Excess Litigation Trust Recoveries" | 47 |
| 1.259 | "Supplemental Excess New OCD Common Stock" | 47 |
| 1.260 | "Supply Chain Solutions" | 47 |
| 1.261 | "TAC" | 47 |
| 1.262 | "Testing Systems" | 47 |
| 1.263 | "Tobacco Causes of Action" | 47 |
| 1.264 | "Total [Entity] Distributable Value" | 48 |
| 1.265 | "Total Enterprise Value" | 48 |

viii

|       |       |                                                                          |    |
|-------|-------|--------------------------------------------------------------------------|----|
|       | 1.266 | "Total Falcon Foam Distributable Value" | 48 |
|       | 1.267 | "Total FB Distributable Value" | 48 |
|       | 1.268 | "Total IPM Distributable Value" | 48 |
|       | 1.269 | "Total OCD Distributable Value" | 49 |
|       | 1.270 | "Total Ventures Distributable Value" | 49 |
|       | 1.271 | "Unclassified Claims" | 49 |
|       | 1.272 | "Unimpaired" | 49 |
|       | 1.273 | "Unpaid FB Resolved Asbestos Personal Injury Claim" | 49 |
|       | 1.274 | "Unpaid OC Resolved Asbestos Personal Injury Claim" | 49 |
|       | 1.275 | "Unsecured Creditors' Committee" | 50 |
|       | 1.276 | "Ventures" | 50 |
|       | 1.277 | "Voting Deadline" | 50 |
|       | 1.278 | "Voting Procedures" | 50 |
|       | 1.279 | "Voting Procedures Order" | 50 |
|       | 1.280 | "Vytec" | 50 |
|       | 1.281 | "Wellington Agreement" | 50 |
| C.    |       | Rules of Interpretation | 50 |
| D.    |       | Computation of Time | 50 |
| E.    |       | Governing Law | 51 |

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS ............................ 51

|       |       |                                                                          |    |
|-------|-------|--------------------------------------------------------------------------|----|
|       | 2.1  | Introduction | 51 |
|       | 2.2  | Owens Corning (Classes A1 through A12) | 52 |
|       | 2.3  | Fibreboard Corporation (Classes B1 through B12) | 53 |
|       | 2.4  | Exterior Systems, Inc. (Classes C1 through C12) | 54 |
|       | 2.5  | Vytec Corporation (Classes D1 through D12) | 54 |
|       | 2.6  | Soltech, Inc. (Classes E1 through E12) | 55 |
|       | 2.7  | Owens-Corning Fiberglas Technology Inc. (Classes F1 through F12) | 56 |
|       | 2.8  | Owens-Corning Fiberglas Sweden Inc. (Classes G1 through G12) | 57 |
|       | 2.9  | IPM, Inc. (Classes H1 through H12) | 58 |
|       | 2.10 | Integrex (Classes I1 through I12) | 58 |
|       | 2.11 | CDC Corporation (Classes J1 through J12) | 60 |
|       | 2.12 | Owens Corning HT, Inc. (Classes K1 through K12) | 60 |
|       | 2.13 | Owens Corning Remodeling Systems, LLC (Classes L1 through L12) | 61 |
|       | 2.14 | Engineered Yarns America, Inc. (Classes M1 through M12) | 61 |
|       | 2.15 | Falcon Foam Corporation (Classes N1 through N12) | 62 |
|       | 2.16 | HOMExperts LLC (Classes O1 through O12) | 63 |
|       | 2.17 | Integrex Professional Services LLC (Classes P1 through P12) | 63 |
|       | 2.18 | Integrex Testing Systems LLC (Classes Q1 through Q12) | 64 |
|       | 2.19 | Integrex Supply Chain Solutions LLC (Classes R1 through R12) | 65 |
|       | 2.20 | Integrex Ventures LLC (Classes S1 through S12) | 66 |
|       | 2.21 | Jefferson Holdings, Inc. (Classes T1 through T12) | 66 |

ix

2.22    Owens-Corning Overseas Holdings, Inc. (Classes U1
        through U12)............................................................................................... 67

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS.................................................. 68
    3.1     Unclassified Claims............................................................................. 68
    3.2     Unimpaired Claims: Other Priority Claims (Classes A1
            through U1), Other Secured Tax Claims (Classes A2-A
            through U2-A) and Other Secured Claims (A2-B through
            U2-B)................................................................................................... 69
    3.3     OCD (Classes A3 through A12) ......................................................... 71
    3.4     Fibreboard (Classes B1 through B12)............................................... 80
    3.5     ESI (Classes C1 through C12) ........................................................... 84
    3.6     Vytec (Classes D1 through D12) ....................................................... 86
    3.7     Soltech (Classes E1 through E12)...................................................... 89
    3.8     OCFT (Classes F1 through F12)......................................................... 91
    3.9     OC Sweden (Classes G1 through G12) .............................................. 93
    3.10    IPM (Classes H1 through H12)........................................................... 95
    3.11    Integrex (Classes I1 through I12) ...................................................... 97
    3.12    CDC (Classes J1 through J12)............................................................ 99
    3.13    OCHT (Classes K1 through K12)...................................................... 101
    3.14    OC Remodeling (Classes L1 through L12)...................................... 102
    3.15    Engineered Yarns (Classes M1 through M12) ................................ 104
    3.16    Falcon Foam (Classes N1 through N12).......................................... 106
    3.17    HOMExperts (Classes O1 through O12) .......................................... 107
    3.18    Professional Services (Classes P1 through P12)............................. 109
    3.19    Testing Systems (Classes Q1 through Q12) .................................... 111
    3.20    Supply Chain Solutions (Classes R1 through R12)......................... 112
    3.21    Ventures (Classes S1 through S12)................................................... 114
    3.22    Jefferson Holdings (Classes T1 through T12) ................................ 116
    3.23    OC Overseas (Classes U1 through U12) .......................................... 117
    3.24    FAIR Act............................................................................................. 119
    3.25    Reservation of Rights Regarding Claims........................................ 119

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ........................................... 120
    4.1     Impaired Classes of Claims and Interests Entitled to Vote .......... 120
    4.2     Acceptance by an Impaired Class .................................................... 120
    4.3     Acceptance Pursuant To Section 524 Of The Bankruptcy
            Code.................................................................................................... 120
    4.4     Presumed Acceptances by Unimpaired Classes.............................. 120
    4.5     Classes Deemed to Have Rejected the Plan .................................... 120
    4.6     Confirmability and Severability of the Plan.................................... 121

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 121
    5.1     Continued Corporate Existence......................................................... 121
    5.2     Cancellation of Debt and Debt Agreements .................................... 122
    5.3     Cancellation of OCD Interests and Integrex Interests .................. 122
    5.4     Certificates of Incorporation and Bylaws........................................ 122

x

823

| | | |
|---|---|---|
| 5.5 | Exculpation and Limitation of Liability | 123 |
| 5.6 | Restructuring Transactions | 123 |
| 5.7 | Issuance of New OCD Securities | 124 |
| 5.8 | Secondary Offerings of New OCD Common Stock | 125 |
| 5.9 | Litigation Trust | 125 |
| 5.10 | Revesting of Assets | 127 |
| 5.11 | Rights of Action | 127 |
| 5.12 | Effectuating Documents; Further Transactions | 128 |
| 5.13 | Exemption from Certain Transfer Taxes | 128 |
| 5.14 | Releases and Injunctions Related to Releases | 128 |
| 5.15 | Permanent Injunctions and Asbestos Personal Injury Permanent Channeling Injunction | 132 |
| 5.16 | Directors and Officers of Reorganized Debtors | 133 |
| 5.17 | Compensation and Benefit Programs | 134 |
| 5.18 | Continuation of Certain Orders | 135 |
| 5.19 | Exit Facility | 135 |

ARTICLE VI [Intentionally Omitted] .............................................. 135

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................ 136

| | | |
|---|---|---|
| 7.1 | Assumed Contracts and Leases | 136 |
| 7.2 | Payments Related to Assumption of Contracts and Leases | 136 |
| 7.3 | Rejected Contracts and Leases | 137 |
| 7.4 | Rejection Damages Bar Date | 137 |
| 7.5 | Indemnification Obligations | 137 |
| 7.6 | Insurance Policies and Agreements | 138 |

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ....................... 139

| | | |
|---|---|---|
| 8.1 | Distributions for Claims Allowed as of the Initial Distribution Date | 139 |
| 8.2 | Interest on Claims | 140 |
| 8.3 | Distributions under the Plan | 140 |
| 8.4 | Record Date for Distributions to Holders of Allowed Claims (Other Than Asbestos Personal Injury Claims or FB Asbestos Property Damage Claims) | 140 |
| 8.5 | Means of Cash Payment | 141 |
| 8.6 | Fractional New OCD Common Stock; Other Distributions | 141 |
| 8.7 | Delivery of Distributions | 142 |
| 8.8 | Surrender of Pre-petition Bonds | 142 |
| 8.9 | Withholding and Reporting Requirements | 143 |
| 8.10 | Setoffs | 143 |

ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND DISPUTED INTERESTS ........................ 144

| | | |
|---|---|---|
| 9.1 | Prosecution of Objections to Certain Claims | 144 |
| 9.2 | No Distributions Pending Allowance | 144 |

xi

| | | |
|---|---|---|
| 9.3 | Disputed Distribution Reserve | 144 |
| 9.4 | Distributions on Account of Disputed Claims Once They are Allowed | 146 |
| 9.5 | Final Distributions from the Disputed Distribution Reserve | 147 |

ARTICLE X THE ASBESTOS PERSONAL INJURY TRUST ............................................ 147

| | | |
|---|---|---|
| 10.1 | The Asbestos Personal Injury Trust | 147 |
| 10.2 | Appointment of Asbestos Personal Injury Trustees | 147 |
| 10.3 | Transfers of Property to the Asbestos Personal Injury Trust | 148 |
| 10.4 | Assumption of Certain Liabilities by the Asbestos Personal Injury Trust | 149 |
| 10.5 | Certain Property Held in Trust by the Reorganized Debtors or the Fibreboard Insurance Settlement Trust | 149 |
| 10.6 | Cooperation with Respect to Insurance Matters | 150 |
| 10.7 | Asbestos Personal Injury Trust Indemnity Obligations | 150 |
| 10.8 | Authority of the Debtors | 151 |

ARTICLE XI FB ASBESTOS PROPERTY DAMAGE TRUST ........................................ 151

| | | |
|---|---|---|
| 11.1 | The FB Asbestos Property Damage Trust | 151 |
| 11.2 | Appointment of FB Asbestos Property Damage Trustee | 151 |
| 11.3 | Transfer of Certain Property to the FB Asbestos Property Damage Trust | 151 |
| 11.4 | Assumption of Certain Liabilities by the FB Asbestos Property Damage Trust | 152 |
| 11.5 | Cooperation with Respect to Insurance Matters | 152 |
| 11.6 | FB Asbestos Property Damage Trust Indemnity Obligations | 153 |
| 11.7 | Authority of the Debtors | 154 |

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............................................................ 154

| | | |
|---|---|---|
| 12.1 | Conditions to Confirmation | 154 |
| 12.2 | Conditions to Effective Date | 158 |
| 12.3 | Waiver of Conditions | 160 |

ARTICLE XIII RETENTION OF JURISDICTION ...................................................... 160

| | | |
|---|---|---|
| 13.1 | Exclusive Jurisdiction of the Bankruptcy Court and District Court | 160 |
| 13.2 | Continued Reference to the Bankruptcy Court | 162 |

ARTICLE XIV MISCELLANEOUS PROVISIONS ...................................................... 162

| | | |
|---|---|---|
| 14.1 | Professional Fee Claims | 162 |
| 14.2 | Administrative Claims Bar Date | 163 |
| 14.3 | Payment of Statutory Fees | 163 |
| 14.4 | Modifications and Amendments | 163 |
| 14.5 | Severability of Plan Provisions | 164 |
| 14.6 | Successors and Assigns | 164 |
| 14.7 | Compromises and Settlements | 164 |

xii

| | | |
|---|---|---|
| 14.8 | Corrective Action | 164 |
| 14.9 | Discharge of the Debtors | 164 |
| 14.10 | Non-Binding Effect of Estimation of Asbestos Personal Injury Claims in the Chapter 11 Cases on Certain OCD Insurers | 166 |
| 14.11 | Special Provisions for Warranty Claims, Distributorship Indemnification Claims and Product Coupon Claims | 167 |
| 14.12 | Committees and Future Claimants' Representative | 167 |
| 14.13 | Binding Effect | 168 |
| 14.14 | Revocation, Withdrawal, or Non-Consummation | 168 |
| 14.15 | Plan Exhibits | 168 |
| 14.16 | Notices | 169 |
| 14.17 | Term of Injunctions or Stays | 171 |

826

## SCHEDULES

Schedule I      Schedule of Subsidiary Debtors

Schedule II      Schedule of Non-Debtor Subsidiaries

Schedule III     Schedule of Persons against Whom Claims are Not Released under the Plan

Schedule IV     Schedule of Executory Contracts and Unexpired Leases Not Assumed

Schedule V      [Intentionally Omitted]

Schedule VI     Schedule of Purchasers and Transferees Treated as Protected Parties

Schedule VII    Schedule of Insurance Companies Who Are Protected Parties

Schedule VIII   Schedule of FB Persons and OC Persons

Schedule IX     Schedule of Interested Parties

Schedule X      Schedule of Protected Parties

Schedule XI     List of Insurance Policies to Be Rejected to the Extent Executory Contracts

Schedule XII    Schedule of Estimates

Schedule XIII   [Intentionally Omitted]

Schedule XIV   Schedule of Avoidance Actions and Material Rights of Action Expressly Not
                Released

Schedule XV    Schedule of Fibreboard Insurance Policies Which Are FB Asbestos Property
                Damage Insurance Assets

Schedule XVI   Schedule of OCD Insurance Policies Which Are OC Asbestos Personal Injury
                Liability Insurance Assets

Schedule XVII  Schedule of Non-Indemnified Parties and Actions

Schedule XVIII Schedule of Terms of Tail Insurance

Schedule XIX   Initial Reorganized OCD Board of Directors

## EXHIBITS

Exhibit A       Form of Amended and Restated Certificate of Incorporation of Reorganized OCD

xiv

827

Exhibit B      Form of Amended and Restated Bylaws of Reorganized OCD

Exhibit C      Form of Litigation Trust Agreement

Exhibit D      Form of Asbestos Personal Injury Trust Agreement

Exhibit D-1    Form of Asbestos Personal Injury Trust Distribution Procedures

Exhibit E      Form of FB Asbestos Property Damage Trust Agreement

Exhibit E-1    Form of FB Asbestos Property Damage Trust Distribution Procedures

Exhibit F      Management Arrangements and Employee Arrangements including Summary of
               Incentive Compensation Program

Exhibit G      Principal Terms and Conditions of the Senior Notes

Exhibit H      Principal Terms and Conditions of the New OCD Common Stock

Exhibit I      Principal Terms and Conditions of Integrex Settlement Agreement

xv

# INTRODUCTION

Owens Corning, a Delaware corporation ("OCD"), and those entities listed on Schedule I hereto, together with such other Subsidiaries of OCD as may file for protection under Chapter 11 of the Bankruptcy Code subsequent to the date hereof and prior to the Confirmation Date (collectively, the "Subsidiary Debtors," and, together with OCD, the "Debtors"), James J. McMonagle, the Legal Representative for Future Claimants ("Future Claimants' Representative"), and the Official Committee of Asbestos Claimants ("Asbestos Claimants' Committee"), hereby propose the following amended joint plan of reorganization (the "Plan") for the Debtors in their reorganization cases (the "Chapter 11 Cases") under Chapter 11 of the Bankruptcy Code ("Chapter 11") for the resolution of their creditors' Claims and Demands and their equity holders' Interests. The Debtors, the Asbestos Claimants Committee, and the Future Claimants' Representative (the "Plan Proponents") are the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.[1] The steering committee of Bank Holders supports the Plan, pursuant to the terms of the letter, dated December 30, 2005, appended to the Disclosure Statement as Appendix K.

Although IPM, Inc., Vytec Corporation and Owens-Corning Fibreglas Sweden Inc. have not filed under Chapter 11 at the present time, OCD reserves the right to initiate Chapter 11 proceedings on behalf of some or all of such entities prior to the Confirmation Date, in the event OCD deems it necessary to do so in order to effectuate the terms of the Plan, in which case such entities would be included in the Plan. Certain other of OCD's Subsidiaries (including certain foreign entities and joint ventures) also have not commenced cases under Chapter 11 of the Bankruptcy Code (collectively, the "Non-Debtor Subsidiaries"), and accordingly continue to operate their businesses in the ordinary course. A list of the Non-Debtor Subsidiaries is attached hereto as Schedule II. Although the Non-Debtor Subsidiaries have not filed under Chapter 11 at the present time, one or more of the Non-Debtor Subsidiaries may file for reorganization under Chapter 11 in the future. The timing of any such filing would be determined at a later date, but any such filing would be made to permit the inclusion of such entities as part of the Plan. In the event of such filings, the Debtors reserve the right to file first day motions seeking authority to pay all trade creditors as critical vendors in order to avoid any potential disruption of OC's foreign operations. Moreover, the Plan will provide for full payment of all such trade creditors. In the event that any such additional filings are not required to effectuate the terms of the Plan, the Debtors reserve the right not to cause such entities to file for bankruptcy protection.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3019 and Section 14.4 of the Plan, the Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

---

[1] However, the Debtors' objective is to gain as much support for the Plan from the other creditor constituencies as practicable.

# ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    <u>Scope of Definitions</u>

For purposes of the Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of the Plan, except as expressly provided or unless the context clearly requires otherwise. Whenever the context requires, such meanings shall be equally applicable to both the singular and plural form of such terms, and the masculine gender shall include the feminine and the feminine gender shall include the masculine. Any term used in initially capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

B.    <u>Definitions</u>

1.1    "**$150 Million Debentures**" means the 10% Guaranteed Debentures due 2001 in the aggregate principal amount of $150 Million due 2001, issued by O.C. Funding B.V. under an Indenture, dated as of May 15, 1991 between O.C. Funding B.V., OCD and the Bank of New York, as Trustee, as guaranteed by OCD.

1.2    "**$250 Million Notes**" means the 7% Notes in the aggregate principal amount of $250 million due March 15, 2009, issued by OCD under an Indenture, dated as of May 5, 1997, between OCD and The Bank of New York, as trustee.

1.3    "**$300 Million High Coupon Debentures**" means two series of debentures in the aggregate principal amount of $300 million issued by OCD under an Indenture dated as of May 21, 1992, between OCD and The Bank of New York, as trustee, consisting of (i) 8.875% Debentures in the aggregate principal amount of $150 million due June 1, 2002 (the "8.875% Debentures"), and (ii) 9.375% Debentures in the aggregate principal amount of $150 million due June 1, 2012 (the "9.375% Debentures").

1.4    "**$400 Million Debentures**" means the 7.5% Debentures in the aggregate principal amount of $400 million due August 1, 2018, issued by OCD under the Indenture, dated as of May 5, 1997, between OCD and The Bank of New York, as trustee.

1.5    "**$550 Million Term Notes**" means two series of notes in the aggregate principal amount of $550 million issued by OCD under an Indenture, dated as of May 5, 1997, between OCD and The Bank of New York, as trustee, consisting of (i) 7.5% Term Notes in the aggregate principal amount of $300 million due May 1, 2005 (the "First Series"), and (ii) 7.7% Term Notes in the aggregate principal amount of $250 million due May 1, 2008 (the "Second Series").

1.6    "**130 Million DEM Bearer Bonds**" means the 7.25% DEM Bearer Bonds in the aggregate principal amount of 130 million due December 2, 2000, issued by OCD

2

pursuant to the Underwriting Agreement, dated as of November 15, 1985, between OCD, Dresdner Bank AG and the other banks listed therein, and the Agreement for the Listing, the Trusteeship and the Paying Agency, dated as of November 15, 1985, between OCD and Dresdner Bank AG.

1.7     **"1997 Credit Agreement"** means the Credit Agreement, dated as of June 26, 1997, by and among OCD, the Subsidiary Debtors and Non-Debtor Subsidiaries named therein, the banks listed in Annex A thereto and CSFB, as agent, as amended by Amendment No. 1, dated as of February 20, 1998, and Amendment No. 2, dated as of November 30, 1998.

1.8     **"Administrative Claims"** means claims for payment of an administrative expense of a kind specified in Section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, without limitation, (i) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtors' Estates and operating the businesses of the Debtors or any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business, (ii) all Cure amounts owed in respect of leases and contracts assumed by the Debtors, (iii) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, (iv) any fees or charges assessed against the Estates of the Debtors under Section 1930 of Chapter 123 of Title 28 of the United States Code, and (v) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Section 546(c)(2)(A) of the Bankruptcy Code, but expressly excluding Asbestos Personal Injury Claims, OC Asbestos Property Damage Claims, and FB Asbestos Property Damage Claims.

1.9     **"Affiliate"** of, or a Person **"Affiliated"** with, a specified Person, is a Person that directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, the Person specified; *provided*, that with respect to an "Affiliate" of a Debtor or a Person "Affiliated" with a Debtor, such term shall include, without limiting the foregoing definition, the meaning ascribed thereto in Section 101(2) of the Bankruptcy Code.

1.10    **"Affiliated FM Entities"** means Affiliated FM Insurance Company and (a) all of its past, present, and future parents, subsidiaries, affiliates, controlled entities, predecessors, successors, reorganized companies, holding companies (if any), merged companies, acquired companies, and assigns, and (b) all of the respective employees, officials, representatives, agents, attorneys, officers, and directors, in their capacity as such, of the entities encompassed by clause (a).

1.11    **"Affiliated FM Policy"** means the excess liability policy bearing policy number XL 72515 issued by Affiliated FM Insurance Company to OCD for the policy period July 9, 1974 to October 22, 1976.

3

1.12  **"Affiliated FM Settlement Agreement"** means the settlement agreement between OCD and Affiliated FM Insurance Company, with an effective date of September 23, 2005.

1.13  **"AIG Company Entities"** means Birmingham Fire Insurance Company, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and (a) all of their past, present, and future parents, subsidiaries, affiliates, controlled entities, predecessors, successors, reorganized companies, holding companies (if any), merged companies, acquired companies, and assigns, and (b) all of the respective employees, officials, representatives, agents, attorneys, officers, and directors, in their capacity as such, of the entities encompassed by clause (a).

1.14  **"AIG Policies"** means the following policies issued to OCD:

| Issuer | Policy Period | Policy Number |
| --- | --- | --- |
| Birmingham Fire | 09/01/79 to 09/01/80 | SE6073551 |
| Birmingham Fire | 09/01/80 to 09/01/81 | SE6073686 |
| Birmingham Fire | 09/01/81 to 09/01/82 | SE6073042 |
| Birmingham Fire | 09/01/82 to 09/01/83 | SE6073986 |
| Birmingham Fire | 09/01/82 to 09/01/83 | SE6073985 |
| Birmingham Fire | 09/01/83 to 09/01/84 | SE6074148 |
| Birmingham Fire | 09/01/83 to 09/01/84 | SE6074149 |
| Granite State | 09/01/79 to 09/01/80 | 6179-1549 |
| Granite State | 09/01/79 to 09/01/80 | 6179-1662 |
| Granite State | 09/01/80 to 09/01/81 | 6180-2514 |
| Granite State | 09/01/80 to 09/01/81 | 6180-2515 |
| Granite State | 09/01/82 to 09/01/83 | 6682-3495 |
| Granite State | 09/01/83 to 09/01/84 | 6683-4149 |
| Granite State | 09/01/83 to 09/01/84 | 6683-4150 |
| Landmark | 09/01/79 to 09/01/80 | FE4000221 |
| Lexington | 10/22/75 to 10/22/76 | GC5502955 |
| National Union | 06/18/74 to 10/22/74 | CE1011835 |
| National Union | 10/22/74 to 10/22/75 | CE1011835 |
| National Union | 10/22/75 to 10/22/76 | CE1011835 |
| National Union | 10/22/76 to 10/22/77 | 1189233 |
| National Union | 09/01/79 to 09/01/80 | 1224753 |

4

| | | |
|---|---|---|
| National Union | 09/01/79 to 09/01/80 | 1224754 |
| National Union | 09/01/80 to 09/01/81 | 1226049 |
| National Union | 09/01/80 to 09/01/81 | 1226050 |
| National Union | 09/01/81 to 09/01/82 | 1186421 |
| National Union | 09/01/81 to 09/01/82. | 1186422 |
| National Union | 09/01/82 to 09/01/83 | 1186437 |
| National Union | 09/01/82 to 09/01/83 | 1186438 |
| National Union | 09/01/83 to 09/01/84 | 9605001 |
| National Union | 09/01/83 to 09/01/84 | 9605002 |

"AIG Policies" shall also be deemed to include any policies of primary or excess general liability or products liability insurance issued to OCD prior to December 31, 2001 by Birmingham Fire Insurance Company, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, or National Union Fire Insurance Company of Pittsburgh, PA.

1.15    "AIG Settlement Agreement" means the settlement agreement between OCD and Birmingham Fire Insurance Company, Granite State Insurance Company, Landmark Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA, with an effective date of October 19, 2005.

1.16    "Allianz Entities" means Allianz Global Risks US Insurance Company, formerly known as Allianz Insurance Company, and Allianz Underwriters Insurance Company, formerly known as Allianz Underwriters, Inc.; as well as (a) all of their past, present, and future parents, subsidiaries, affiliates, controlled entities, predecessors, successors, reorganized companies, holding companies (if any), merged companies, acquired companies, and assigns, and (b) of the respective employees, officials, representatives, agents, attorneys, officers and directors, in their capacity as such, of the entities encompassed by clause (a).

1.17    "Allianz Policies" means the following policies issued to OCD by Allianz Insurance Company or Allianz Underwriters, Inc.:

| Policy Number | Policy Period |
|---|---|
| UMB 599515 | March 9, 1979 - September 1, 1979 |
| AU 5003102 | September 1, 1979 - September 1, 1980 |
| AUX 5200169 | September 1, 1980 - September 1, 1981 |
| AUX 5200178 | September 1, 1980 - September 1, 1981 |
| AUX 5201229 | September 1, 1981 - September 1, 1982 |
| AUX 5201230 | September 1, 1981 - September 1, 1982 |
| AUX 5202023 | September 1, 1984 - September 1, 1985 |
| AUX 5202024 | September 1, 1984 - September 1, 1985 |

5

"Allianz Policies" shall also be deemed to include any other liability insurance policies, whether known or unknown, issued by Allianz Insurance Company or Allianz Underwriters, Inc. to OCD prior to January 1, 2001.

1.18    **"Allianz Settlement Agreement"** means the settlement agreement between OCD and Allianz Global Risks US Insurance Company, formerly known as Allianz Insurance Company, and Allianz Underwriters Insurance Company, formerly known as Allianz Underwriters, Inc. with an effective date of December 13, 2005, for which approval by the Bankruptcy Court is pending as of the filing of this Plan.

1.19    **"Allowed"** means:

(a)     with respect to any Claim, other than an Administrative Claim, an Asbestos Personal Injury Claim or an FB Asbestos Property Damage Claim, proof of which was filed within the applicable period of limitation fixed in accordance with Federal Rule of Bankruptcy Procedure 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to the allowance thereof has been interposed on or before the Initial Distribution Date and as to which the Debtors have not sent a notice to the holder of such Claim by the Initial Distribution Date that the Claim is under review for possible objection, or (ii) as to which no objection is filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or a Final Order of the Bankruptcy Court, to the extent asserted in the proof of such Claim or (iii) as to which an objection has been interposed, to the extent that such Claim has been allowed in whole or in part by a Final Order of the Bankruptcy Court;

6

834

(b)    with respect to any Claim, other than an Administrative Claim, an Asbestos Personal Injury Claim or an FB Asbestos Property Damage Claim, as to which no Proof of Claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or a Final Order of the Bankruptcy Court, to the extent that such Claim has been listed by one of the Debtors in its SOFAS as liquidated in amount and not disputed or contingent and (i) as to which no objection to the allowance thereof has been interposed on or before the Initial Distribution Date and as to which the Debtors have not sent a notice to the holder of such Claim by the Initial Distribution Date that the Claim is under review for possible objection, or (ii) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or a Final Order of the Bankruptcy Court or (iii) as to which an objection has been interposed, to the extent that such Claim has been allowed in whole or in part by a Final Order of the Bankruptcy Court;

(c)    with respect to any other Claim that is asserted to constitute an Administrative Claim, other than a Claim of a professional person employed under Section 327 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code, (a) that represents an actual or necessary expense of preserving the Estate or operating the business of the Debtors, to the extent that such Claim is reflected as a postpetition liability of any of the Debtors on the Debtors' books and records as of the Effective Date, or (b) that the Debtors dispute, to the extent that such Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is deemed, pursuant to a Final Order of the Bankruptcy Court, to constitute a cost or expense of administration under Sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(d)    with respect to any other Claim that is asserted to constitute an Administrative Claim that represents a Claim of a professional person employed under Section 327 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code, to the extent that such Claim is allowed by a Final Order of the Bankruptcy Court under Section 330 of the Bankruptcy Code; or

(e)    with respect to any FB Asbestos Property Damage Claim, proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, such Claim to the extent that it is Allowed in accordance with the procedures established

7

pursuant to the FB Asbestos Property Damage Trust Agreement and the FB Asbestos Property Damage Trust Distribution Procedures.

1.20   **"Amended and Restated Bylaws of Reorganized OCD"** means the Amended and Restated Bylaws of Reorganized OCD to be in effect upon the Effective Date, substantially in the form to be filed as Exhibit B at least ten (10) Business Days prior to the Objection Deadline.

1.21   **"Amended and Restated Certificate of Incorporation of Reorganized OCD"** means the Amended and Restated Certificate of Incorporation of Reorganized OCD to be in effect upon the Effective Date, substantially in the form to be filed as Exhibit A at least ten (10) Business Days prior to the Objection Deadline.

1.22   **"Asbestos Claimants' Committee"** means the official creditors' committee representing holders of asbestos claims appointed on October 23, 2000, by the United States Trustee for the District of Delaware pursuant to Section 1102(a) of the Bankruptcy Code, as thereafter modified or reconstituted.

1.23   **"Asbestos Personal Injury Claims"** means, collectively, OC Asbestos Personal Injury Claims and FB Asbestos Personal Injury Claims.

1.24   **"Asbestos Personal Injury Permanent Channeling Injunction"** means an order or orders of the Bankruptcy Court (which may be incorporated in the Confirmation Order), based on and issued pursuant to Section 5.15(b) of the Plan and Section 524(g) of the Bankruptcy Code, pursuant to which all Persons shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any Enjoined Action or proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Personal Injury Trust Agreement, including, without limitation, with respect to any Asbestos Personal Injury Claim or any Resolved Asbestos Personal Injury Claim, against any of the Debtors, any of the Reorganized Debtors, any Protected Party or any property or interests in property of any Debtor, Reorganized Debtor or Protected Party, whether directly or indirectly, derivatively or otherwise, for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Personal Injury Claim or any Resolved Asbestos Personal Injury Claim (other than pursuant to the provisions of the Asbestos Personal Injury Trust Agreement or to enforce the provisions of the Plan).

1.25   **"Asbestos Personal Injury Trust"** means the trust established pursuant to the Asbestos Personal Injury Trust Agreement.

1.26   **"Asbestos Personal Injury Trust Agreement"** means the Asbestos Personal Injury Trust Agreement executed by the Debtors and the Asbestos Personal Injury Trustees, substantially in the form of the agreement filed as Exhibit D, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.

8

1.27    **"Asbestos Personal Injury Trust Distribution Procedures"** means the Asbestos Personal Injury Trust Distribution Procedures to be implemented by the Asbestos Personal Injury Trustees pursuant to the terms and conditions of the Plan and the Asbestos Personal Injury Trust Agreement to process, liquidate, and pay Asbestos Personal Injury Claims, substantially in the form of Exhibit D-1, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.

1.28    **"Asbestos Personal Injury Trustees"** means the persons confirmed by the Bankruptcy Court to serve as trustees of the Asbestos Personal Injury Trust, pursuant to the terms of the Asbestos Personal Injury Trust Agreement, or as subsequently may be appointed pursuant to the provisions of the Asbestos Personal Injury Trust Agreement.

1.29    **"Available Cash"** means Cash in the amount of the sum of (i) all Cash that would be shown as cash or cash equivalents on a consolidated balance sheet of OC as of the last day of the month prior to the month in which the Effective Date occurs, prepared in accordance with United States generally accepted accounting principles consistent with the past practices of OC, and (ii) the OCD Reversions which are Cash as of the Effective Date, and excluding (a) the OCD Insurance Escrow, (b) Restricted Cash, (c) the Existing Fibreboard Insurance Settlement Trust Assets, (d) the FB Reversions, (e) the Cash portion of the FB Sub-Account Settlement Payment, (f) the Litigation Trust Assets, and (g) necessary reserves for working capital and pension contributions as determined by the Debtors and approved by the other Plan Proponents, an aggregate estimate of which as of the Effective Date shall be set forth in Schedule XII, to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.

1.30    **"Avoidance Actions"** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by, or on behalf of, the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, and including, without limitation, the Bank Holders Action.

1.31    **"AXA Entities"** means Abeille Paix, AGP Benelux, Ardenne Prévoyante, Assurance Liégeoise, AXA Belgium, AXA Industry, Belgique Industrielle Association d'Assurances Mutuelles (BIAAM), Belgique Industrielle Caisse Commune (BICC), Caisse Générale d'Assurances et de Réassurances, Caisse Patronale, Drouot Belgium, Equity & Law, Kortrijkse Verzekering (La Courtraisienne), La Belgique S.A., La Famille, La Prévoyance, Le Foyer Belge, Le Patrimoine, Lloyd Belge, Lloyd Européen, Royale, Royale Belge Incendie Réassurance, Royale Belge Ré S.A. de Réassurance, Royale Belge S.A., Royale Belge Vie Accident, Secours de Belgique, UAB, UAP Sverige, Union Belge, Union des Propriétaires de Belgique (UPB), Urbaine UAP, and Victoire Belgium (collectively the "AXA Member Companies"); as well as (a) all of their predecessors, successors, assigns, subsidiaries, affiliates, holding companies (if

9

any), parent companies (if any), merged companies and acquired companies; and (b) all of the respective employees, officials, agents, attorneys, representatives, officers, and directors, in their capacity as such, of the entities encompassed by clause (a).

1.32 **"AXA Policies"** means the following policies issued to OCD by Royale Belge S.A.:

| Policy Period | Policy Number |
|---|---|
| September 1, 1979 to September 1, 1980 | 1250965/79 |
| September 1, 1980 to September 1, 1981 | 1250965/80 |
| September 1, 1981 to September 1, 1982 | 1250965/81 |
| September 1, 1982 to September 1, 1983 | 1250965/82 |
| September 1, 1983 to September 1, 1984 | 1250965/83 |

"AXA Policies" shall also be deemed to include policy number 1250965/84 issued by Royale Belge S.A. to OCD for the policy period September 1, 1984 to September 1, 1985 and all other insurance policies that were issued, prior to October 5, 2000, by and in the name of one of the AXA Member Companies to OCD, including primary, umbrella, excess, or other insurance policies, contracts, and/or agreements of any nature, type, or kind (including but not limited to: all Comprehensive General Liability policies; General Liability policies; Casualty policies; Environmental Liability policies; Environmental Impairment policies; Difference in Conditions policies; Directors' and Officers' Liability Policies; Errors and Omissions Liability policies; Contractual Liability policies; Automobile Liability policies; Products Liability policies; and Workers' Compensation policies). Notwithstanding any of the foregoing and for the avoidance of any doubt, "AXA Policies" shall not include policies issued by the AXA Member Companies (a) to Persons other than OCD or (b) that exclusively insure property or other risks located outside of the United States.

1.33 **"AXA Settlement Agreement"** means the settlement agreement between OCD and AXA Belgium S.A., approved by the Bankruptcy Court on October 4, 2004.

1.34 **"Ballot"** means the ballot form(s) distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in Section 4.1 of the Plan, in connection with the solicitation of acceptance of the Plan.

1.35 **"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots must be received.

1.36 **"Bank Default Interest and Fee Amount"** means the sum of (i) the amount of interest accrued through the Effective Date on the principal amount outstanding under the 1997 Credit Agreement as of the Petition Date, when calculated at the floating Base Rate (as defined in the 1997 Credit Agreement) plus 2% on a compounding basis (computed quarterly), and (ii) the amount of any accrued and unpaid post-petition fees payable under the 1997 Credit Agreement through the

10

838

Effective Date, including letter of credit fees and Facility Fees (as defined in the 1997 Credit Agreement), an estimate of which as of the Effective Date shall be set forth in <u>Schedule XII</u>, to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline.

1.37    **"Bank Holders"** means the holders of the Debtors' obligations under the 1997 Credit Agreement.

1.38    **"Bank Holders Action"** means the action entitled Owens *Corning, et al. v. Credit Suisse First Boston, et al.*, in the United States District Court for the District of Delaware, A-02-5829, as such action may be amended.

1.39    **"Bank Holders Claims"** means those Claims of Bank Holders arising under or as a result of the Debtors' obligations under the 1997 Credit Agreement and related agreements.

1.40    **"Bankruptcy Code"** means Title 11 of the United States Code, as amended and in effect from time to time.

1.41    **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Case to the extent of any reference made to it by the District Court pursuant to 28 U.S.C. §157 as a unit of such District Court pursuant to 28 U.S.C. §151.

1.42    **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as amended, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

1.43    **"Board of Directors"** means the board of directors or its equivalent of a corporation or other legal entity, including managers of a limited liability company, general partners of a partnership or trustees of a business trust, or any duly authorized committee thereof.

1.44    **"Bondholders"** means the registered holders of Pre-petition Bonds.

1.45    **"Bondholders Claims"** means the Claims held by the Bondholders arising under or as a result of the Debtors' obligations under the Pre-petition Bonds.

1.46    **"Business Day"** means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Federal Rule of Bankruptcy Procedure 9006(a)) on which commercial banks are open for business in New York, New York.

1.47    **"Cash"** means legal tender of the United States or equivalents thereof.

1.48    **"CDC"** means CDC Corporation, a Wisconsin corporation.

11

1.49    **"Century Indemnity"** means Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Central National Insurance Company.

1.50    **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

1.51    **"Chapter 11 Cases"** means the reorganization cases of the Debtors under Chapter 11.

1.52    **"Charging Lien"** means any lien or other priority in payment to which the Pre-petition Indenture Trustees are each entitled, pursuant to the Pre-petition Bond Indentures, against distributions to be made to holders of Bondholder Claims for payment of any Indenture Trustee Fees.

1.53    **"Claim"** means any right to payment from a Debtor whether or not any such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, whether or not asserted, including, without limitation, any "claim" (as defined in Section 101(a)(5) of the Bankruptcy Code). Claims shall not be deemed to include Demands.

1.54    **"Claimant Released Parties"** means (i) the Debtors, the Reorganized Debtors and their respective predecessors, successors and assigns (whether by operation of law or otherwise) and additionally (ii) if the Person submits a Ballot and does not elect to withhold consent to releases of the Released Parties by marking the appropriate box on the Ballot, the Released Parties.

1.55    **"Claims Objection Deadline"** means the last day for filing objections to Disputed Claims, which day shall be one hundred and eighty (180) days after the Effective Date, unless extended by order of the Bankruptcy Court.

1.56    **"Claims Trading Injunction"** means an order or orders of the Bankruptcy Court permanently and forever staying, restraining, and enjoining any Person from, directly or indirectly, purchasing, selling, transferring, assigning, conveying, pledging, or otherwise acquiring or disposing of any Asbestos Personal Injury Claim, *provided, however,* that the foregoing shall not apply to (i) the transfer of an Asbestos Personal Injury Claim to the holder of an OC Indirect Asbestos PI Trust Claim or FB Indirect Asbestos PI Trust Claim solely as a result of such holder's satisfaction of such Asbestos Personal Injury Claim, or (ii) the transfer of an Asbestos Personal Injury Claim by will or under the laws of descent and distribution. Any such order or orders also will provide that any action taken in violation thereof will be void *ab initio.*

1.57    **"Class"** means a category of holders of Claims or Interests, as described in Articles II and III of the Plan.

12

840

1.58    **"Class [_]4 Distribution Amount"** means, with respect to distributions to the Bank Holders on account of their Allowed Claims against Soltech, OCFT, OC Sweden, IPM, ESI and Vytec, respectively, an amount equal to the difference between (i) the Combined [Entity] Distribution Value (calculated as of the Effective Date) and (ii) the aggregate amount of all Allowed Claims in Classes [_]6 and [_]10, and Disputed Claims in Class [_]6, as of the Effective Date.

1.59    **"Class ____ Final Distribution Percentage"** means for each applicable Class (Class A5, A6-A, A6-B and A7), the percentage determined, as of the Final Distribution Date, by dividing the total amount of all Allowed Claims in such Class (or, in the case of Class A7, the Class A7 Aggregate Amount) by the sum of (i) the aggregate amount of all Allowed Claims in Classes A5, A6-A, A6-B and A11 and (ii) the Class A7 Aggregate Amount.

1.60    **"Class ____ Initial Distribution Percentage"** means for each applicable Class (Class A5, A6-A, A6-B and A7), the percentage determined as of the Effective Date by dividing the total amount of all Allowed Claims in such Class (or, in the case of Class A7, the Class A7 Aggregate Amount) as of the Effective Date by the sum of (i) the aggregate amount of all Allowed Claims in Classes A5, A6-A, A6-B and A11, (ii) the Class A7 Aggregate Amount, and (iii) the aggregate amount of all Disputed Claims in Classes A6-A and A6-B, in each case as of the Effective Date.

1.61    **"Class A4 Initial Distribution Amount"** means an amount equal to the Combined OCD Distribution Value multiplied by a fraction, the numerator of which is the total amount of Allowed Class A4 Claims as of the Effective Date, and the denominator of which equals the sum of (i) the aggregate amount of all Allowed Claims in Classes A4, A5, A6-A, A6-B, A10 and A11 as of the Effective Date, (ii) the Class A7 Aggregate Amount, and (iii) the aggregate amount of all Disputed Claims in Classes A6-A and A6-B as of the Effective Date.

1.62    **"Class A7 Aggregate Amount"** means $7 billion, less the sum of (i) the amount of any distribution made by Integrex on account of the Class I7 Claims (if any), (ii) the amounts in the OCD Insurance Escrow as of the Effective Date, (iii) the amounts then due under the AIG Settlement Agreement and the Affiliated FM Settlement Agreement, and (iv) the aggregate amount in the NSP Administrative Deposit Accounts in respect of OC Asbestos Personal Injury Claims less any OCD Reversions, as such amount in clause (iv) shall be estimated by the Bankruptcy Court or the District Court at or prior to the Confirmation Hearing.

1.63    **"Class A10 Distribution Amount"** means an amount equal to the Combined OCD Distribution Value multiplied by a fraction, the numerator of which is the total amount of Allowed Class A10 Claims as of the Effective Date, and the denominator of which equals the sum of (i) the aggregate amount of all Allowed Claims in Classes A4, A5, A6-A, A6-B, A10 and A11 as of the Effective Date, (ii) the Class A7 Aggregate Amount, and (iii) the aggregate amount of all Disputed Claims in Classes A6-A and A6-B as of the Effective Date.

13

1.64    **"Class B4 Distribution Amount"** means an amount equal to the difference between (i) the Combined FB Distribution Value (calculated as of the Effective Date) and (ii) the aggregate amount of all Allowed Claims in Classes B6 and B10, and Disputed Claims in Class B6, as of the Effective Date.

1.65    **"Class B8 Aggregate Amount"** means, solely for purposes of the Plan (but not for Allowance or distribution purposes), $3.2 billion.

1.66    **"Class I4 Distribution Amount"** means, with respect to distributions to the Bank Holders on account of their Allowed Claims against Integrex, an amount equal to the difference between (i) the Combined Integrex Distribution Value (calculated as of the Effective Date) and (ii) the aggregate amount of all Allowed Claims in Classes I6, I7 (if any) and I10, and Disputed Claims in Class I6, as of the Effective Date

1.67    **"Combined [Entity] Distribution Value"** means, with respect to each Debtor other than OCD, Fibreboard and Integrex, the total value, as of the Effective Date, distributable or to be distributed under the Plan on or after the Initial Distribution Date on account of Allowed Claims against such Debtor in Classes [_]4 (if applicable), [_]6 and [_]10; and which value shall at all times be equal to the Total [Entity] Distributable Value minus the sum of all amounts distributed on or after the Effective Date on account of Unclassified Claims, Unimpaired Claims, Other Priority Claims, Other Secured Tax Claims, Other Secured Claims and Allowed Class [_]3 Claims, against such Debtor, if any.

1.68    **"Combined FB Distribution Value"** means the total value, as of the Effective Date, distributable or to be distributed under the Plan on or after the Initial Distribution Date on account of Allowed Claims in Classes B4, B6, and B10; and which value shall at all times be equal to the Total FB Distributable Value minus the sum of all amounts distributed, or to be distributed, by Fibreboard on or after the Effective Date on account of Unclassified Claims, Unimpaired Claims, Other Priority Claims, Other Secured Tax Claims, Other Secured Claims and Allowed Class B3 Claims against Fibreboard, if any.

1.69    **"Combined Integrex Distribution Value"** means the total value, as of the Effective Date, distributable or to be distributed under the Plan on or after the Initial Distribution Date on account of Allowed Claims in Classes I4, I6, and I10 and Claims in Class I7 (if any); and which value shall at all times be equal to the Total Integrex Distributable Value minus the sum of all amounts distributed, or to be distributed, by Integrex on or after the Effective Date on account of Unclassified Claims, Unimpaired Claims, Other Priority Claims, Other Secured Tax Claims, Other Secured Claims and Allowed Class I3 Claims against Integrex, if any.

1.70    **"Combined OCD Distribution Package"** means the combination of total Available Cash and New OCD Common Stock to be paid or issued under the Plan on a Pro Rata basis to (i) holders of Allowed Claims in Classes A5, A6-A and A6-

14

B (and including that which would have been paid or issued to holders of Allowed Claims in Class A11, but which shall be paid or issued to Classes A4, A5 and/or A6-B in accordance with the subordination provisions of the applicable agreements or instruments subordinating such Claims) and (ii) the OC Sub-Account on account of the Class A7 Aggregate Amount, respectively, the exact composition of which shall be set forth in Schedule XII, to be filed no later than five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline; and, as of the Effective Date, the aggregate value of such combination of total Available Cash and New OCD Common Stock shall be equal to: the difference between (i) the Combined OCD Distribution Value and (ii) the sum of the Class A4 Initial Distribution Amount and the Class A10 Distribution Amount.

1.71    "**Combined OCD Distribution Value**" means the total value, as of the Effective Date, distributable or to be distributed under the Plan on or after the Initial Distribution Date on account of the Class A7 Aggregate Amount and Allowed Claims in Classes A4, A5, A6-A, A6-B, A10 and A11; and which value shall at all times be equal to the Total OCD Distributable Value minus the sum of all amounts distributed, or to be distributed, by OCD on or after the Effective Date on account of Unclassified Claims, Unimpaired Claims, Other Priority Claims, Other Secured Tax Claims, Other Secured Claims and Allowed Class A3 Claims against OCD, if any.

1.72    "**Combined OCD Supplemental Distribution Package**" means the portion of the Combined OCD Distribution Package equal to the Senior Indebtedness Initial Distribution Percentage.

1.73    "**Commercial Claims**" means rights, remedies, causes of action, suits or proceedings (whether arising out of contract, tort or otherwise) accruing to or for the benefit of any Debtor for the payment and collection of money or other consideration or the enforcement of rights and remedies in connection with, resulting from or arising out of, any commercial transaction with any of the Debtors or the performance of services by or for any of the Debtors. Commercial Claims shall include, without limitation, claims arising from damage or alleged damage to property of any Debtor, or personal injuries sustained by any employee, contractor or other business agent of any Debtor (other than Asbestos Personal Injury Claims) in any case resulting from or arising out of the conduct of business by such Debtor, the collection of debts owed to any Debtor from purchasers of goods and services from any Debtor or the collection of money or other consideration from vendors, suppliers or other parties for breaches of contract in commercial relationships with any of the Debtors or the recovery of money based on such other commercial relationship of a Debtor that arise in the ordinary course of business. Commercial Claims shall not include Avoidance Actions or any other rights, remedies, claims, causes of action, suits or proceedings created by title 11 of the United States Code.

15

1.74  **"Committed Claims Account"** means the remaining balance of the account established pursuant to a certain Agreement Between Fibreboard and Continental Casualty Corporation On Remaining Issues dated December 13, 1999, which was the subject of a Stipulation and Agreed Order Between Debtors and Continental [Casualty Company] Regarding Status and Disposition of Funds in Committed Claims Account and Related Matters Under Buckets Agreement, entered by the Bankruptcy Court on June 27, 2001.

1.75  **"Committees"** means the Asbestos Claimants' Committee and the Unsecured Creditors' Committee.

1.76  **"Confirmation Conditions"** means those conditions to confirmation of the plan set forth in <u>Section 12.1</u> of the Plan.

1.77  **"Confirmation Date"** means the date of entry of the Confirmation Order by the clerk of the Bankruptcy Court.

1.78  **"Confirmation Hearing"** means the hearing on confirmation of the Plan scheduled by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3017(c).

1.79  **"Confirmation Order"** means the order entered by the Bankruptcy Court confirming the Plan.

1.80  **"Contribution Agreement"** means the Contribution Agreement, dated as of December 24, 1997, between OC and Faloc, Inc., n/k/a Integrex.

1.81  **"Convenience Claim"** means a Claim against any of the Debtors that would otherwise be classified as a Class [_]6 Claim or a Class B9 Claim, which (i) is in an amount that is equal to or less than $5,000 or (ii) on the Ballot has been reduced to $5,000 by the holder of such Claim.

1.82  **"CSFB"** means Credit Suisse First Boston, the agent for the Bank Holders under the 1997 Credit Agreement.

1.83  **"Cure"** means, with respect to the assumption of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code, the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.84  **"Debt"** means the Pre-petition Bonds and any other promissory note, bond, indenture, or other instrument or document evidencing any indebtedness for borrowed money or capital lease obligation of a Debtor existing prior to the Effective Date, other than any such instrument or document that

16

evidences or creates (i) any Intercompany Claim or (ii) any executory contract or lease that has been assumed or will be assumed pursuant to the Plan.

1.85    **"Debt Agreements"** means the 1997 Credit Agreement, the Pre-petition Bonds, the Pre-Petition Bond Indentures and any other agreements, indentures or other instruments or documents governing, evidencing or creating any Debt.

1.86    **"Debtors"** means, collectively, OCD and the Subsidiary Debtors.

1.87    **"Debtors-in-Possession"** means the Debtors, each in its respective capacity as a debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code.

1.88    **"Demand"** means a present or future demand for payment that (i) was not a Claim during the Chapter 11 Cases; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Personal Injury Permanent Channeling Injunction; and (iii) pursuant to the Plan, is to be paid or otherwise resolved by the Asbestos Personal Injury Trust.

1.89    **"Depository Law Firms"** means law firms which maintained NSP Administrative Deposit Accounts in respect of OC Asbestos Personal Injury Claims and/or FB Asbestos Personal Injury Claims, including, without limitation, (a) Baron & Budd, (b) Foster & Sear, (c) Waters & Kraus and (d) Weitz & Luxenberg.

1.90    **"DIP Agent"** means Bank of America, N.A., as administrative agent of the DIP Facility.

1.91    **"DIP Facility"** means the debtor-in-possession credit facility pursuant to the Post-Petition Credit Agreement, dated December 8, 2000, by and among the financial institutions named therein, as the lenders, Bank of America, N.A., as the agent, and OCD and the Subsidiaries of OCD named therein, as the borrowers, as amended pursuant to the First Amendment to Post-Petition Credit Agreement by and among OCD as Borrower Representative on behalf of the borrowers under the Post-Petition Credit Agreement, Bank of America, N.A., as agent, and the lenders signatory thereto, dated as of October 28, 2002, and the Second Amendment to Post-Petition Credit Agreement by and among OCD as Borrower Representative on behalf of the borrowers under the Post-Petition Credit Agreement, Bank of America, N.A., as agent, and the lenders signatory thereto, dated as of September 20, 2004 as further amended, modified, renewed or otherwise in effect from time to time.

1.92    **"DIP Facility Claims"** means those Claims arising under or as a result of the DIP Facility.

1.93    **"Disallowed Claim"** means (i) all or such part of a Claim, other than an Asbestos Personal Injury Claim and an FB Asbestos Property Damage Claim, that is disallowed by a Final Order of the Bankruptcy Court or other court of competent

17

jurisdiction, or (ii) an FB Asbestos Property Damage Claim that is disallowed in its entirety pursuant to the FB Asbestos Property Damage Trust Distribution Procedures.

1.94    **"Disbursing Agent"** means, as applicable, Reorganized OCD or any Person designated by the Plan Proponents to hold and distribute the consideration to be distributed to the holders of Allowed Claims (other than Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims) or Allowed Interests under the Plan. Disbursing Agent does not include the Pre-petition Indenture Trustees.

1.95    **"Disclosure Statement"** means the disclosure statement with respect to the Plan filed or to be filed in the Bankruptcy Court by the Plan Proponents, as it may be amended from time to time, in connection with the Plan pursuant to Section 1125 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3018.

1.96    **"Disclosure Statement Hearing"** means the hearing before the Bankruptcy Court to be held in connection with the approval of the Disclosure Statement.

1.97    **"Disputed Claim"** means any Class A1, Class A2-A, Class A2-B, Class [_]3, Class [_]4, Class A5, Class [_]6, Class A6-A, Class A6-B, or Class [_]11 Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim.

1.98    **"Disputed Distribution Reserve"** means the reserve established pursuant to Section 9.3 of the Plan.

1.99    **"Distribution Record Date"** means the record date for purposes of making distributions under the Plan on account of Allowed Claims (other than Asbestos Personal Injury Claims or FB Asbestos Property Damage Claims), which date shall be the Confirmation Date or such other date as may be designated in the Confirmation Order.

1.100    **"District Court"** means the United States District Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases.

1.101    **"Effective Date"** means the Business Day on which all conditions to the consummation of the Plan have been satisfied or waived as provided in Article XII of the Plan, and on which date all acts, events, terms and conditions contemplated under the Plan to occur on the Effective Date or as soon as practicable thereafter shall be deemed to have occurred simultaneously.

1.102    **"Employee Arrangements"** means, collectively, the employee compensation and benefit plans or programs as summarized in Exhibit F, to be filed at least five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline, and the documents governing such plans, to be filed up to ten (10) Business Days prior to the Objection Deadline.

18

1.103 **"Encumbrance"** means, with respect to any property, whether tangible or intangible, any mortgage, lien, pledge, charge, security interest, assignment, or encumbrance of any nature in respect of such property (including, without express or implied limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

1.104 **"Engineered Yarns"** means Engineered Yarns America, Inc., a Massachusetts corporation.

1.105 **"Enjoined Action"** means any claim, demand, suit, proceeding or cause of action, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, including, but not limited to: (i) the commencement, conduct, or continuation in any manner, directly or indirectly (including an action directly against a provider of insurance), of any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) the enforcement, attachment (including, without limitation, any prejudgment attachment), collection or seeking to recover any judgment, award, decree, or other order; (iii) the creation, perfection or enforcement in any manner, directly or indirectly, of any Encumbrance; (iv) the setting off, seeking reimbursement of, contribution from, or subrogation against, or other recoupment in any manner, directly or indirectly, of any amount against any liability owed to any Protected Parties; and (v) the commencement or continuation, in any manner, in any place, of any action which, in any such case, does not comply with or is inconsistent with the provisions of the Plan.

1.106 **"Environmental Claims"** means, with respect to conduct of the Debtors prior to the Petition Date, (i) Claims against the Debtors by the EPA for the costs of environmental investigation and clean up of sites that may have been contaminated as a result of releases of hazardous substances by the Debtors, including releases at third-party disposal sites used by the Debtors; (ii) similar Claims by state and local environmental agencies; (iii) Claims by private parties against the Debtors asserting contribution or indemnification claims with respect to cleanup costs under statutory law or contractual agreements; and (iv) enforcement actions by federal, state and local environmental agencies with respect to alleged violations of environmental law; *provided, however,* that this definition excludes any Claim in clauses (i) - (iv) treated as an Administrative Claim.

1.107 **"EPA"** means the United States Environmental Protection Agency.

1.108 **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1462.

1.109 **"ESI"** means Exterior Systems, Inc., a Delaware corporation.

19

1.110 **"Estates"** means the Debtors' bankruptcy estates created pursuant to Section 541 of the Bankruptcy Code.

1.111 **"Excess Available Cash"** means the sum of (a) the amount of Available Cash, if any, together with interest earned thereon (if any), remaining in the Disputed Distribution Reserve after all Disputed Claims shall have been Allowed and paid or Disallowed pursuant to a Final Order of the Bankruptcy Court, and (b) any OCD Reversions delivered to OCD after the Effective Date.

1.112 **"Excess Litigation Trust Recoveries"** means the amount of Litigation Trust Recoveries, if any, together with interest earned thereon (if any), remaining in the Disputed Distribution Reserve after all Disputed Claims shall have been Allowed and paid or Disallowed pursuant to a Final Order of the Bankruptcy Court.

1.113 **"Excess New OCD Common Stock"** means the aggregate number of shares of New OCD Common Stock, if any, remaining in the Disputed Distribution Reserve after all Disputed Claims shall have been Allowed and paid or Disallowed pursuant to a Final Order of the Bankruptcy Court.

1.114 **"Existing Fibreboard Insurance Settlement Trust Assets"** means all of the assets of the Fibreboard Insurance Settlement Trust as of the Effective Date, net of accrued administrative fees and expenses.

1.115 **"Existing OCD Common Stock"** means the common stock, par value $0.10 per share, of OCD, of which 100 million shares were authorized and 55,423,132 shares were issued and outstanding as of September 30, 2000.

1.116 **"Existing OCD Options"** means any options, warrants, conversion rights, rights of first refusal or other rights, contractual or otherwise, to acquire or receive any Existing OCD Common Stock, Existing OCD Preferred Stock or any other capital stock of OCD outstanding as of the Petition Date.

1.117 **"Existing OCD Preferred Stock"** means the preferred stock, without par value, of OCD, of which 8,000,000 shares were authorized and none were outstanding as of the Petition Date.

1.118 **"Exit Facility"** means such bank financing agreements and commitments as the Debtors shall have arranged on the Effective Date, including term loans and revolving credit facilities, for general working capital and corporate purposes, in such amounts and on such terms as are satisfactory to the Debtors and the Plan Proponents.

1.119 **"Face Amount"** means (i) when used in reference to a Disputed Claim, the full stated amount claimed by the holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

20