Bankruptcy Court at or prior to the Confirmation Hearing; *provided, however,* that the Cash transmitted to, and reserved by, the Disbursing Agent pursuant to this Section 9.3(c) may be held by the Disbursing Agent in a single interest bearing account, fund or reserve (*provided further, however,* that separate book entries for each Claim shall be maintained by the Disbursing Agent) to be established and maintained by the Disbursing Agent pending resolution of the Disputed Claims described in this Section 9.3(c).

### 9.4    Distributions on Account of Disputed Claims Once They are Allowed

(a) On each Quarterly Distribution Date, the Disbursing Agent shall make payments and distributions from the Disputed Distribution Reserve to each holder of a Disputed Claim that has become an Allowed Claim during the preceding calendar quarter.

(b) Pursuant to Sections 3.1, 3.2, 3.3(a), 3.4(a), 3.5(a), 3.6(a), 3.7(a), 3.8(a), 3.9(a), 3.10(a), 3.11(a), 3.12(a), 3.13(a), 3.14(a), 3.15(a), 3.16(a), 3.17(a), 3.18(a), 3.19(a), 3.20(a), 3.21(a), 3.22(a), and 3.23(a) of the Plan, the Disbursing Agent shall distribute to each holder of a Disputed Claim described in Section 9.3(a) above, which becomes an Allowed Claim after the Effective Date, Cash from the Distributed Distribution Reserve in an amount equal to the Allowed amount of such Claim. Any Cash transmitted to the Disputed Distribution Reserve pursuant to Section 9.3(a) above, which is remaining in the Disputed Distribution Reserve after all distributions on account of Claims described in Section 9.3(a) have been made, shall constitute, and shall be deemed to constitute, Excess Available Cash.

(c) Pursuant to Sections 3.3(d) and 3.3(e) of the Plan, and subject to Section 8.2 of the Plan, the Disbursing Agent shall distribute to each holder of a Disputed Class A6-A or Class A6-B Claim, as the case may be, which becomes an Allowed Claim after the Effective Date, property from the Disputed Distribution Reserve that would have been distributed to the holder of such Claim had such Claim been an Allowed Claim as of the Effective Date, which distribution shall be equal to the product of (x) the Class A6-A Initial Recovery Percentage (in the case of Allowed Class A6-A Claims) or the Class A6-B Initial Recovery Percentage (in the case of Allowed Class A6-B Claims), and (y) such holder's Allowed Claim, and shall be in the Standard Combination of Cash and New OCD Common Stock.

(d) Pursuant to Sections 3.4(c), 3.5(c), 3.6(c), 3.7(c), 3.8(c), 3.9(c), 3.10(c), 3.11(c), 3.12(b), 3.13(b), 3.14(b), 3.15(b), 3.16(b), 3.17(b), 3.18(b), 3.19(b), 3.20(b), 3.21(b), 3.22(b), and 3.23(b) of the Plan, and subject to Section 8.2 of the Plan, the Disbursing Agent shall distribute to each holder of a Disputed Claim in each of the respective Classes B6-U6, which becomes an Allowed Claim after the Effective Date, the Standard Combination of Cash and New OCD Common Stock from the Disputed Distribution Reserve with an aggregate value as of the Effective Date equal to the Allowed amount of such Claim (excluding post-petition interest). Any Cash and New OCD Common Stock transmitted to the Disputed Distribution Reserve pursuant to Section 9.3(c) above, which is remaining in the Disputed Distribution Reserve after all distributions on account of Claims described in Section 9.3(c) have been made, shall constitute, and shall be deemed to constitute, Excess Available Cash and Excess New OCD Common Stock, respectively.

146

**9.5    Final Distributions from the Disputed Distribution Reserve**

(a) On the Final Distribution Date, the Disbursing Agent shall distribute the Excess Available Cash, the Excess New OCD Common Stock and the Excess Litigation Trust Recoveries, if any, from the Disputed Distribution Reserve to holders of Allowed Claims in Classes A5, A6-A and A6-B and to the OC Sub-Account, pursuant to Section 3.3 of the Plan.

(b) Notwithstanding anything to the contrary herein, Section 8.6(d) of the Plan shall apply with equal force and effect to the distributions from the Disputed Distribution Reserve described in this Article IX. Moreover, if the aggregate value of the Cash, New OCD Common Stock and Litigation Trust Recoveries in the Disputed Distribution Reserve as of the Final Distribution Date is less than $1 million (before taking into account any distributions otherwise payable on such date), then, for purposes of administrative convenience, such Cash, New OCD Common Stock and Litigation Trust Recoveries shall revert to the Reorganized Debtors free of any restrictions thereon.

## ARTICLE X

### THE ASBESTOS PERSONAL INJURY TRUST

**10.1    The Asbestos Personal Injury Trust**

The Asbestos Personal Injury Trust is intended to be a "qualified settlement fund" within the meaning of Treasury Regulations Section 1.468B-1, *et seq.*, promulgated under Section 468B of the IRC. Pursuant to the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust will have two separate sub-accounts: the OC Sub-Account and the FB Sub-Account. The purpose of the Asbestos Personal Injury Trust shall be to, among other things, (i) exclusively process, liquidate, and pay all Asbestos Personal Injury Claims in accordance with the Plan, the Asbestos Personal Injury Trust Distribution Procedures, and the Confirmation Order and (ii) preserve, hold, manage, and maximize the assets of the Asbestos Personal Injury Trust (including both the OC Sub-Account and the FB Sub-Account) for use in paying and satisfying Asbestos Personal Injury Claims. The Asbestos Personal Injury Trust shall comply in all respects with the requirements set forth in Section 524(g)(2)(B)(i) of the Bankruptcy Code.

**10.2    Appointment of Asbestos Personal Injury Trustees**

On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the individuals selected jointly by the Asbestos Claimants' Committee and the Future Claimants' Representative (as identified in the Asbestos Personal Injury Trust Agreement), with notice to the Debtors, to serve as the Asbestos Personal Injury Trustees for the Asbestos Personal Injury Trust.

975

**10.3    Transfers of Property to the Asbestos Personal Injury Trust**

     (a)    *Transfer of the Plan Consideration to the OC Sub-Account of the Asbestos Personal Injury Trust*

The Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account the property and consideration set forth in Section 3.3(f)(iii) in the manner and at the times set forth therein.

The Reorganized Debtors will also execute and deliver to the Asbestos Personal Injury Trust such documents as the Asbestos Personal Injury Trustees reasonably request to issue the New OCD Common Stock to be distributed to the Asbestos Personal Injury Trust in the name of the Asbestos Personal Injury Trust or a nominee and transfer and assign to the Asbestos Personal Injury Trust all other assets which constitute the assets of the Asbestos Personal Injury Trust.

     (b)    *Transfer of the Plan Consideration to the FB Sub-Account of the Asbestos Personal Injury Trust*

The Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust for allocation to the FB Sub-Account the consideration set forth in Section 3.4(d)(iii) in the manner and at the times set forth therein.

The Reorganized Debtors will also execute and deliver, or will use all commercially reasonable efforts to cause the trustee of the Fibreboard Insurance Settlement Trust to execute and deliver, to the Asbestos Personal Injury Trust such documents as the Asbestos Personal Injury Trustees reasonably request in connection with the transfer and assignment of the Existing Fibreboard Insurance Settlement Trust Assets and the FB Reversions.

     (c)    *Transfer and Assignment of Certain Rights Relating to the FB Reversions*

On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall irrevocably transfer and assign to the Asbestos Personal Injury Trust all rights, remedies, claims, causes of action, suits or proceedings in respect of the FB Reversions, for allocation to the FB Sub-Account.

     (d)    *Transfer of Books and Records to the Asbestos Personal Injury Trust*

On the Effective Date, or as soon thereafter as is practicable, at the sole cost and expense of the Asbestos Personal Injury Trust and in accordance with written instructions provided to the Reorganized Debtors by the Asbestos Personal Injury Trust, the Reorganized Debtors will transfer and assign, and will use all commercially reasonable efforts to cause the trustee of the Fibreboard Insurance Settlement Trust to transfer and assign, to the Asbestos Personal Injury Trust all books and records of the Debtors and the Fibreboard Insurance Settlement Trust that pertain directly to Asbestos Personal Injury Claims that have been asserted against the Debtors and/or the Fibreboard Insurance Settlement Trust. The Debtors will request that the Bankruptcy Court, in the Confirmation Order, rule that such transfers shall not result in the invalidation or waiver of any applicable privileges pertaining to such books and records.

148

**10.4    Assumption of Certain Liabilities by the Asbestos Personal Injury Trust**

(a)    *OC Asbestos Personal Injury Claims*

In consideration for the property transferred to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account, and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall, and shall be deemed to, assume any and all obligations, liability and responsibility for the OC Asbestos Personal Injury Claims (regardless of whether such Claims are or may be asserted against OCD or any of the other Debtors), and each of the Debtors, the Reorganized Debtors and each of their respective Related Persons and property shall have no further financial or other obligation, responsibility or liability therefor. The Asbestos Personal Injury Trust shall also assume, and shall be deemed to assume, any and all obligations, liability and responsibility for premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, and any other charges, costs, fees, or expenses (if any) that become due to any insurer in connection with (i) the OC Asbestos Personal Injury Liability Insurance Assets as a result of OC Asbestos Personal Injury Claims, (ii) asbestos-related personal injury claims against Persons insured under policies included in the OC Asbestos Personal Injury Liability Insurance Assets by reason of vendors' endorsements, or (iii) the indemnification provisions of settlement agreements that OC made prior to the Confirmation Date with any insurers, to the extent that those indemnity provisions relate to Asbestos Personal Injury Claims, and each of the Reorganized Debtors and its respective Related Persons shall have no further financial or other obligation, responsibility or liability for any of the foregoing.

(b)    *FB Asbestos Personal Injury Claims*

In consideration for the property transferred to the Asbestos Personal Injury Trustees for allocation to the FB Sub-Account, and in furtherance of the purposes of the Asbestos Personal Injury Trust and the Plan, the Asbestos Personal Injury Trust shall, and shall be deemed to, assume any and all obligations, liability and responsibility for, under or relating to any and all FB Asbestos Personal Injury Claims (regardless of whether such Claims are or may be asserted against Fibreboard or any of the other Debtors), and each of the Debtors, the Reorganized Debtors and each of their respective Related Persons and property shall have no further financial or other obligation, responsibility or liability therefor.

**10.5    Certain Property Held in Trust by the Reorganized Debtors or the Fibreboard Insurance Settlement Trust**

If and to the extent that any assets, claims, rights or other property of the Reorganized Debtors or of the Fibreboard Insurance Settlement Trust to be transferred to the Asbestos Personal Injury Trust, under applicable law or any binding contractual provision, cannot be effectively transferred, or if for any reason after the Effective Date the Reorganized Debtors or the trustees of the Fibreboard Insurance Settlement Trust, as the case may be, shall retain or receive any assets, claims, rights or other property that is owned by the Reorganized Debtors, the Debtors or the Fibreboard Insurance Settlement Trust (as the case may be) and is to be transferred pursuant to the Plan to the Asbestos Personal Injury Trust, then the Reorganized Debtors or the trustees of the Fibreboard Insurance Settlement Trust, as the case may be, shall

149

hold such property (and any proceeds thereof) in trust for the benefit of the party entitled to receive the transfer of such asset under the Plan (or the benefit of such asset) and will take such actions with respect to such property (and any proceeds thereof) as such party entitled to receive the transfer of such asset under the Plan (or the benefit of such asset) shall direct in writing.

### 10.6    Cooperation with Respect to Insurance Matters

The Reorganized Debtors shall cooperate with the Asbestos Personal Injury Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate the transfer of the OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust for allocation to the OC Sub-Account. By way of enumeration and not of limitation, the Reorganized Debtors each shall be obligated (i) to provide the Asbestos Personal Injury Trust with copies of insurance policies and settlement agreements included within or relating to the OC Asbestos Personal Injury Liability Insurance Assets; (ii) to provide the Asbestos Personal Injury Trust with information necessary or helpful to the Asbestos Personal Injury Trust in connection with its efforts to obtain insurance coverage for Asbestos Personal Injury Claims; (iii) to execute further assignments or allow the Asbestos Personal Injury Trust to pursue claims relating to the OC Asbestos Personal Injury Liability Insurance Assets in its name (subject to appropriate disclosure of the fact that the Asbestos Personal Injury Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the Asbestos Personal Injury Trust to obtain insurance coverage under the OC Asbestos Personal Injury Liability Insurance Assets for Asbestos Personal Injury Claims; and (iv) to pursue and recover insurance coverage in its own name or right to the extent that the transfer and assignment of the OC Asbestos Personal Injury Liability Insurance Assets to the Asbestos Personal Injury Trust is not able to be fully effectuated. The Asbestos Personal Injury Trust shall be obligated to compensate the Reorganized OCD for all costs and expenses reasonably incurred in connection with providing assistance to the Asbestos Personal Injury Trust pursuant to this Section 10.6, including, without limitation, out-of-pocket costs and expenses, consultant fees, and attorneys' fees.

### 10.7    Asbestos Personal Injury Trust Indemnity Obligations

The Asbestos Personal Injury Trust shall have the indemnification obligations set forth in the Asbestos Personal Injury Trust Agreement, the full terms and conditions of which are incorporated herein by reference, including those described below.

(a)    OC and the Reorganized Debtors shall be entitled to indemnification from the Asbestos Personal Injury Trust for any expenses, costs, and fees (including reasonable attorneys' fees and costs, but excluding any such expenses, costs and fees incurred prior to the Effective Date), judgments, settlements, or other liabilities arising from or incurred in connection with any action based upon, arising out of, or attributable to Asbestos Personal Injury Claims, including, but not limited to, indemnification or contribution for such claims prosecuted against the Reorganized Debtors.

(b)    This Section 10.7 is an integral part of the Plan and is essential to its implementation. Each of the Reorganized Debtors, their Related Persons and any other Persons

150

protected by the indemnifications and other provisions set forth in this <u>Section 10.7</u> shall have the right to independently seek the enforcement of such indemnifications.

### 10.8    Authority of the Debtors

On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively the provisions of the Plan, the Confirmation Order and the Asbestos Personal Injury Trust Agreement.

**ARTICLE XI**

**FB ASBESTOS PROPERTY DAMAGE TRUST**

### 11.1    The FB Asbestos Property Damage Trust

Effective as of the later of (i) the date the FB Asbestos Property Damage Trustee has executed the FB Asbestos Property Damage Trust Agreement and (ii) the Effective Date, the FB Asbestos Property Damage Trust shall be created.  The FB Asbestos Property Damage Trust is intended to be a "qualified settlement fund" within the meaning of Treasury Regulations Section 1.468B-1, *et seq.*, promulgated under Section 468B of the IRC.  The purpose of the FB Asbestos Property Damage Trust shall be to, among other things, (i) exclusively process, liquidate, and pay all FB Asbestos Property Damage Claims in accordance with the Plan, the FB Asbestos Property Damage Trust Distribution Procedures, and the Confirmation Order and (ii) preserve, hold, manage, and maximize the assets of the FB Asbestos Property Damage Trust for use in paying and satisfying FB Asbestos Property Damage Claims.

### 11.2    Appointment of FB Asbestos Property Damage Trustee

On the Confirmation Date, effective as of the Effective Date, the Bankruptcy Court shall appoint the individual selected by the Debtors (as identified in the FB Asbestos Property Damage Trust Agreement) to serve as the FB Asbestos Property Damage Trustee for the FB Asbestos Property Damage Trust.

### 11.3    Transfer of Certain Property to the FB Asbestos Property Damage Trust

(a)    *Transfer of Books and Records*

On the Effective Date, or as soon thereafter as is practicable, at the sole cost and expense of the FB Asbestos Property Damage Trust and in accordance with written instructions provided to the Reorganized Debtors by the FB Asbestos Property Damage Trust, the Reorganized Debtors will transfer and assign to the FB Asbestos Property Damage Trust copies of all books and records of the Debtors that pertain directly to FB Asbestos Property Damage Claims that have been asserted against the Debtors and/or the Fibreboard Insurance Settlement Trust.  The Debtors will request that the Bankruptcy Court, in the Confirmation Order, rule that such transfers shall not result in the invalidation or waiver of any applicable privileges pertaining to such books and records.

151

(b)     *Transfer of Certain Property to the FB Asbestos Property Damage Trust*

The Reorganized Debtors shall transfer and assign, or cause to be transferred and assigned, to the FB Asbestos Property Damage Trust the property and consideration set forth in Section 3.4(e)(ii) in the manner and at the times set forth therein.

### 11.4     Assumption of Certain Liabilities by the FB Asbestos Property Damage Trust

In consideration for the property transferred to the FB Asbestos Property Damage Trust pursuant to Section 11.3 hereof, and in furtherance of the purposes of the FB Asbestos Property Damage Trust and the Plan, the FB Asbestos Property Damage Trust shall, and shall be deemed to, assume any and all obligations, liability and responsibility for, under or relating to any and all FB Asbestos Property Damage Claims, and each of the Reorganized Debtors and its respective Related Persons shall have no further financial or other obligations, responsibility or liability therefor.  The FB Asbestos Property Damage Trust shall, and shall be deemed to, also assume any and all obligations, liability and responsibility for any and all premiums, deductibles, retrospective premium adjustments, security or collateral arrangements, and any other charges, costs, fees, or expenses (if any) that become due to any insurer in connection with the FB Asbestos Property Damage Insurance Assets as a result of FB Asbestos Property Damage Claims, asbestos-related property damage claims against Persons insured under policies included in the FB Asbestos Property Damage Insurance Assets by reason of vendors' endorsements, or under the indemnity provisions of settlement agreements that the Debtors made with any insurers prior to the Confirmation Date to the extent that those indemnity provisions relate to FB Asbestos Property Damage Claims, and each of the Reorganized Debtors and its respective Related Persons shall have no further financial or other obligations, responsibility or liability for any of the foregoing; *provided, however,* that such liability of the FB Asbestos Property Damage Trust shall be limited to the extent of the benefits of such insurance policies, as reasonably determined by the FB Asbestos Property Damage Trustee, so that the FB Asbestos Property Damage Trust may elect to terminate such liability in the event that the FB Asbestos Property Damage Trustee determines that the benefits of maintaining the insurance policies are no longer worth the costs.

### 11.5     Cooperation with Respect to Insurance Matters

The Reorganized Debtors shall cooperate with the FB Asbestos Property Damage Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate the transfer of the FB Asbestos Property Damage Insurance Assets to the FB Asbestos Property Damage Trust.  By way of enumeration and not of limitation, the Reorganized Debtors each shall be obligated (i) to provide the FB Asbestos Property Damage Trust with copies of insurance policies and settlement agreements included within or relating to the FB Asbestos Property Damage Insurance Assets; (ii) to provide the FB Asbestos Property Damage Trust with information necessary or helpful to the FB Asbestos Property Damage Trust in connection with its efforts to obtain insurance coverage for FB Asbestos Property Damage Claims; (iii) to execute further assignments or allow the FB Asbestos Property Damage Trust to pursue claims relating to the FB Asbestos Property Damage Insurance Assets in its name (subject to appropriate disclosure of the fact that the FB

152

Asbestos Property Damage Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the FB Asbestos Property Damage Trust to obtain insurance coverage under the FB Asbestos Property Damage Insurance Assets for FB Asbestos Property Damages Claims; and (iv) to pursue and recover insurance coverage in its own name or right to the extent that the transfer and assignment of the FB Asbestos Property Damage Insurance Assets to the FB Asbestos Property Damage Trust is not able to be fully effectuated.  The FB Asbestos Property Damage Trust shall be obligated to compensate the Reorganized Debtors for all costs and expenses reasonably incurred in connection with providing assistance to the FB Asbestos Property Damage Trust pursuant to this Section 11.5, including without limitation, out-of-pocket costs and expenses, consultant fees, and attorneys' fees.

### 11.6    FB Asbestos Property Damage Trust Indemnity Obligations

Notwithstanding anything to the contrary in the FB Asbestos Property Damage Trust Agreement, the FB Asbestos Property Damage Trust shall have the indemnification obligations set forth below.

(a)    Except as provided in Section 11.6(b) below with respect to Non-Debtor FB Asbestos Claims (as defined in Section 11.6(b)), if, for any reason, on or after the Effective Date, the Reorganized Debtors and/or any of their non-Debtor Affiliates are for any reason held liable for any FB Asbestos Property Damage Claim that is not successfully channeled to the FB Asbestos Property Damage Trust, then the FB Asbestos Property Damage Trust shall fully and completely indemnify the Reorganized Debtors and/or any of their Related Persons, as applicable, in an amount equal to the amount actually paid on such FB Asbestos Property Damage Claim by the Reorganized Debtors and/or their Related Persons, as applicable, plus fees, costs and expenses related to such FB Asbestos Property Damage Claim.

(b)    If, on or after the Effective Date, the Reorganized Debtors and/or any of their Related Persons are held liable for any claim attributable to, directly or indirectly, injuries or other damages caused or allegedly caused by the presence of, or exposure to, asbestos and arising or allegedly arising, in whole or in part, directly or indirectly, from acts or omissions of one or more of the Reorganized Debtors or its Related Persons, (a "Non-Debtor FB Asbestos Claim"), then the FB Asbestos Property Damage Trust shall indemnify the Reorganized Debtors and/or any of their Related Persons in an amount equal to the amount actually paid on such Non-Debtor FB Asbestos Claim by the Reorganized Debtors and/or their Related Persons, as applicable, plus fees, costs and expenses related to such Non-Debtor FB Asbestos Claim.

(c)    Notwithstanding anything to the contrary in Sections 11.6(a) and 11.6(b), if, on or after the Effective Date, the Reorganized Debtors and/or any of their Related Persons are sued on account of an FB Asbestos Property Damage Claim or a Non-Debtor FB Asbestos Claim that may be tendered to an insurance company for handling and payment, then the applicable Reorganized Debtor and/or Related Person shall tender such FB Asbestos Property Damage Claim or Non-Debtor FB Asbestos Claim, as applicable, to the FB Asbestos Property Damage Trust so the FB Asbestos Property Damage Trust can recover from any available insurance to the fullest extent permissible.  The FB Asbestos Property Damage Trust shall use its best efforts to have such FB Asbestos Property Damage Claim and/or Non-Debtor FB Asbestos Claim paid by

153

any applicable insurance and, if the FB Asbestos Property Damage Trust obtains any insurance proceeds on account of such claims, the FB Asbestos Property Damage Trust shall promptly remit such proceeds to the applicable Reorganized Debtor and/or Related Person to the extent necessary to fully reimburse all such entities, in the aggregate, for amounts they paid with respect to all such unchanneled FB Asbestos Property Damage Claims and Non-Debtor FB Asbestos Claims.

(d)     Notwithstanding anything to the contrary in the FB Asbestos Property Damage Trust Agreement, the FB Asbestos Property Damage Trust shall be obligated to pay the indemnification as required under the Plan from any and all available assets of the FB Asbestos Property Damage Trust.

(e)     Each of the provisions set forth in this Section 11.6 is an integral part of the Plan and is essential to its implementation. Each of the Reorganized Debtors, their Related Persons and any other Persons protected by the indemnifications and other provisions set forth in this Section 11.6 shall have the right to independently seek the enforcement of such indemnifications.

### 11.7   Authority of the Debtors

On the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively the provisions of the Plan, the Confirmation Order and the FB Asbestos Property Damage Trust Agreement.

## ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

### 12.1   Conditions to Confirmation

The Plan shall not be confirmed, and the Confirmation Order shall not be entered, until and unless the Confirmation Conditions set forth below have been satisfied or waived by the Plan Proponents. These Confirmation Conditions, which are designed to, *inter alia*, ensure that the Asbestos Personal Injury Permanent Channeling Injunction shall be effective, binding and enforceable, are as follows:

(a) the Bankruptcy Court shall have made the following findings of fact and/or conclusions of law, among others, each of which shall be contained in the Confirmation Order in form and substance acceptable to the Plan Proponents:

(i)     The Asbestos Personal Injury Permanent Channeling Injunction is to be implemented in connection with the Asbestos Personal Injury Trust and the Plan.

(ii)    At the time of the order for relief with respect to OC and Fibreboard, OC and Fibreboard had been named as defendants in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

154

982

(iii)   The Asbestos Personal Injury Trust, as of the Effective Date, shall assume the liabilities of all of the OC Persons with respect to OC Asbestos Personal Injury Claims, and upon such assumption, the Reorganized Debtors, the OC Persons and each of their respective Related Persons (to the extent such Related Persons constitute Protected Parties) shall have no liability for any OC Asbestos Personal Injury Claims.

(iv)   The Asbestos Personal Injury Trust, as of the Effective Date, shall assume the liabilities of all of the FB Persons with respect to FB Asbestos Personal Injury Claims, and, upon such assumption, the Reorganized Debtors, the FB Persons and each of their respective Related Persons (to the extent such Related Persons constitute Protected Parties) shall have no liability for any FB Asbestos Personal Injury Claims.

(v)    The OC Sub-Account of the Asbestos Personal Injury Trust is to be funded in whole or in part with Cash, New OCD Common Stock, the OCD Insurance Escrow, the OC Asbestos Personal Injury Liability Insurance Assets, certain payments due under the AIG Settlement Agreement and the Affiliated FM Settlement Agreement, and distributable proceeds of the Litigation Trust Assets, and by the obligation of Reorganized OCD to make future payments, including dividends.

(vi)   The FB Sub-Account is to be funded in whole or in part with the Existing Fibreboard Insurance Settlement Trust Assets, the FB Reversions, the Committed Claims Account, and the FB-Sub-Account Settlement Payment.

(vii)  The Asbestos Personal Injury Trust is to own upon the Initial Distribution Date, a majority of the voting shares of Reorganized OCD.

(viii) In light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust on behalf of each Protected Party, the Asbestos Personal Injury Permanent Channeling Injunction is fair and equitable with respect to the persons that might subsequently assert Asbestos Personal Injury Claims against any Protected Party.

(ix)   The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to (a) OC Asbestos Personal Injury Claims and (b) FB Asbestos Personal Injury Claims, respectively, that are addressed by the Asbestos Personal Injury Permanent Channeling Injunction.

(x)    The actual amounts, numbers, and timing of such Demands cannot be determined.

(xi)   Pursuit of such Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and Demands.

(xii)  The terms of the Asbestos Personal Injury Permanent Channeling Injunction, including any provisions barring actions against the Protected Parties pursuant to

155

Section 524(g)(4)(A), are set forth in conspicuous language in the Plan and in any disclosure statement supporting the Plan.

(xiii)   The Plan establishes, in Classes A7 and B8, separate Classes of claimants whose Claims are to be addressed by the Asbestos Personal Injury Trust.

(xiv)   Class A7 and Class B8 claimants have each voted, by at least 75 percent (75%) of those voting, in favor of the Plan.

(xv)   Pursuant to court orders or otherwise, the Asbestos Personal Injury Trust shall operate through mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and values of present Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Personal Injury Trust will value, and be in a financial position to pay, present Claims and Demands that involve similar Claims in substantially the same manner.

(xvi)   The Future Claimants' Representative was appointed as part of the proceedings leading to the issuance of the Asbestos Personal Injury Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Asbestos Personal Injury Permanent Channeling Injunction and channeled to and assumed by the Asbestos Personal Injury Trust.  The Future Claimants' Representative has in all respects fulfilled his duties, responsibilities, and obligations as the future representative in accordance with Section 524(g) of the Bankruptcy Code.

(xvii)   Identifying or describing each Protected Party in the Asbestos Personal Injury Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Personal Injury Trust by or on behalf of any such Protected Party.

(xviii)   The Plan complies in all respects with Section 524(g) of the Bankruptcy Code.

(xix)   The Asbestos Personal Injury Trust is to use its assets and income to pay Asbestos Personal Injury Claims.

(xx)   The Plan and its exhibits constitute a fair, equitable, and reasonable resolution of the liabilities of the Debtors for FB Asbestos Property Damage Claims.

(xxi)   The Plan and its exhibits constitute a fair, equitable, and reasonable resolution of the liabilities of the Debtors for Asbestos Personal Injury Claims.

(xxii)   The confirmation and consummation of the Plan, including the discharge of the Debtors pursuant to the Plan and the issuance of the injunction channeling all FB Asbestos Property Damage Claims to the FB Asbestos Property Damage Trust pursuant to Section 3.4(e) of the Plan, shall not provide the insurers a defense to

156

984

liability for insurance coverage based upon the alleged elimination of the liability of the insured(s).

(xxiii)  The confirmation and consummation of the Plan, including the discharge of the Debtors pursuant to the Plan and the issuance of Asbestos Personal Injury Permanent Channeling Injunction, shall not provide the insurers a defense to liability for insurance coverage based upon the alleged elimination of the liability of the insured(s).

(xxiv)  The duties and obligations of the insurers that issued policies and their successors and assigns, or, with respect to any insolvent insurers, their liquidators and/or the state insurance guaranty funds that bear responsibility with respect to such rights under such policies which constitute the FB Asbestos Property Damage Insurance Assets are not eliminated or diminished by (i) the discharge, release and extinguishment of all the liabilities of the Debtors or Reorganized Debtors pursuant to the Plan in respect to the FB Asbestos Property Damage Claims; (ii) the assumption of liability for the FB Asbestos Property Damage Claims by the FB Asbestos Property Damage Trust; or (iii) the transfer pursuant to the Plan of such rights to the FB Asbestos Property Damage Insurance Assets as Fibreboard may have.

(xxv)  The duties and obligations of the insurers that issued policies and their successors and assigns, or, with respect to any insolvent insurers, their liquidators and/or the state insurance guaranty funds that bear responsibility with respect to such rights under such policies which constitute the OC Asbestos Personal Injury Liability Insurance Assets are not eliminated or diminished by (i) the discharge, release and extinguishment of all the liabilities of the Debtors or Reorganized Debtors pursuant to the Plan in respect to the OC Asbestos Personal Injury Claims; (ii) the assumption of liability for the OC Asbestos Personal Injury Claims by the Asbestos Personal Injury Trust; or (iii) the transfer pursuant to the Plan of the such rights to the OC Asbestos Personal Injury Liability Insurance Assets as OC may have.

(xxvi)  All insurers of the Debtors affording insurance coverage that is the subject of the OC Asbestos Personal Injury Insurance Assets and all insurers of the Debtors whose policies provide coverage for the FB Asbestos Property Damage Claims have been given notice and an opportunity to be heard on matters relating to the Plan and its Exhibits.

(xxvii)  The Asbestos Personal Injury Permanent Channeling Injunction and each of the other injunctions set forth in Sections 5.14 and 5.15 of the Plan are essential to this Plan and the Debtors' reorganization efforts.

(b)  If and to the extent requested by the Debtors, the Court shall have approved the allocation of the Total Enterprise Value among the individual Debtors on a stand alone basis as of the Effective Date, as set forth in Schedule XII of the Plan.

157

985

(c)  If and to the extent requested by the Debtors, the Court shall have approved the allocation of Available Cash among the various Debtors as of the Effective Date, as set forth in Schedule XII of the Plan.

(d)  If and to the extent requested by the Debtors, the Court shall have approved the estimates set forth on Schedule XII of the Plan, including, without limitation, the Bank Default Interest and Fee Amount, the Combined OCD Distribution Package and the Senior Notes Amount.

(e)  The Court shall have estimated the amounts in the NSP Administrative Deposit Accounts in respect of OC Asbestos Personal Injury Claims less any OCD Reversions, to the extent necessary in order to determine the Class A7 Aggregate Amount.

(f)  In the event that Class A5 or Class A6-B rejects the Plan, the Court shall have estimated, for Plan voting and confirmation purposes, the amount to be distributed to the OC Sub-Account on account of the Integrex Asbestos Personal Injury Claims (if any).

(g)  The Court shall have allowed all material Intercompany Claims and Subordinated Claims or otherwise adjudicated any objections to the allowance of such Claims.

(h)  The Court shall have resolved all material issues concerning contractual and equitable subordination claims, in the absence of agreements regarding such claims.

(i)  The Court shall have determined that all causes of action relating to successor liability, piercing the corporate veil and fraudulent transfer shall be released and waived as of, and subject to the occurrence of, the Effective Date, other than such actions which are specifically preserved under the Plan.

(j)  In the event that Class A4 rejects or shall be deemed to have rejected the Plan, the Court shall have determined the aggregate amount of Cash and cash pay Senior Notes that shall be distributed to the Bank Holders on account of their Claims against the various Debtors under the 1997 Credit Agreement as of the Petition Date and the unpaid post-petition interest, fees and expenses, if any, to which the Bank Holders may be entitled under the 1997 Credit Agreement, applicable law, and the facts, circumstances and equities of these cases.

(k)  The Plan and the exhibits and schedules thereto shall in all material respects be in form and substance reasonably satisfactory to the Plan Proponents.

### 12.2    Conditions to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.3 of the Plan:

(a) The Confirmation Order shall have been entered, shall have become a Final Order, and shall be in form and substance reasonably satisfactory to the Plan Proponents.

(b) The Asbestos Personal Injury Permanent Channeling Injunction shall be in full force and effect.

158

(c) The rights of any and all members of Classes A4, A5, A6-A and A6-B to pursue, and receive any benefits of, from or under, the pending appeal of the OCD Asbestos Personal Injury Estimation Order shall be deemed to have been waived and released under the Plan and Confirmation Order to the fullest extent permissible under applicable law, unless the Plan Proponents shall have determined, in their sole discretion, that the appeal of the OCD Asbestos Personal Injury Estimation Order shall be effectively mooted by the distribution of property under the Plan and all other relevant facts and circumstances.

(d) All agreements or other instruments which are exhibits to the Plan shall be in form and substance reasonably acceptable to the Plan Proponents and shall have been executed and delivered. .

(e) All actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

(f) The Asbestos Personal Injury Trustees shall have accepted their appointment as Asbestos Personal Injury Trustees and shall have executed the Asbestos Personal Injury Trust Agreement.

(g) The individuals designated to serve as members of the TAC shall have accepted their appointment as TAC members.

(h) The Future Claimants' Representative shall have agreed to continue to serve in such capacity following the Confirmation Date.

(i) The Reorganized Debtors shall have received either an opinion of counsel or a private letter ruling issued by the IRS relating to the tax status of the Asbestos Personal Injury Trust as a "qualified settlement fund," in either case in a form that is reasonably satisfactory to the Plan Proponents.

(j) The FB Asbestos Property Damage Trustee shall have accepted his appointment as FB Asbestos Property Damage Trustees and shall have executed the FB Asbestos Property Damage Trust Agreement.

(k) The Reorganized Debtors shall have entered into and shall have credit availability under the Exit Facility in an amount sufficient to meet the needs of Reorganized Debtors, as determined by the Plan Proponents.

(l) Each of the Exhibits shall be in form and substance acceptable to the Plan Proponents.

(m) The Existing Fibreboard Insurance Settlement Trust Assets shall have been irrevocably assigned and transferred prior to the Effective Date to the Asbestos Personal Injury Trust, for allocation to the FB Sub-Account, or the Reorganized Debtors or the trustees of the Fibreboard Settlement Trust, as the case may be, shall have agreed to treat the Existing Fibreboard Insurance Settlement Trust Assets in accordance with Section 10.5.

159

(n) The Reorganized Debtors shall have established tail-coverage insurance for the benefit of the Debtors' directors, officers and employees, in accordance with Section 7.5(b) hereof.

### 12.3    Waiver of Conditions

Notwithstanding anything contained in Section 12.2 hereof, the Plan Proponents hereby reserve, in their sole discretion, the right to waive in writing the occurrence of any of the foregoing conditions precedent to the Effective Date or to modify any of such conditions precedent. Any such written waiver of a condition precedent set forth in this section may be effected at any time by the Plan Proponents, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Plan Proponents decide that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in the manner set forth above, then the Plan Proponents shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

## ARTICLE XIII

## RETENTION OF JURISDICTION

### 13.1    Exclusive Jurisdiction of the Bankruptcy Court and District Court

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the District Court, together with the Bankruptcy Court to the extent of any reference made to it by the District Court and the Reference Order, shall, and shall be deemed to, retain exclusive jurisdiction, to the fullest extent permissible, over any and all matters arising out of, under or related to, the Chapter 11 Cases or the Plan, including, without limitation, jurisdiction to:

(a) interpret, enforce, and administer the terms of the Asbestos Personal Injury Trust Agreement and the FB Asbestos Property Damage Trust Agreement (including all annexes and exhibits thereto);

(b) allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (other than an Asbestos Personal Injury Claim and an FB Asbestos Property Damage Claim) or Interest not otherwise Allowed under the Plan, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(c) hear and determine all applications for compensation and reimbursement of expenses of professionals under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date, the payment of the fees and expenses of the retained professionals of the Reorganized Debtors

160

shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(d) hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(e) effectuate performance of and payments under the provisions herein;

(f) hear and determine all matters with respect to the performance by the Disbursing Agent, the Asbestos Personal Injury Trust (to the extent provided in the Asbestos Personal Injury Trust Agreement) and and the FB Asbestos Property Damage Trust of their respective obligations to make distributions under the Plan;

(g) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, other than the Released Actions;

(h) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions herein and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(i) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(j) consider any modifications of the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(l) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(m) hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n) enforce all orders, judgments, discharges, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases, including, without limitation, those set forth in Sections 5.5, 5.14, 5.15, 7.5, 10.7, 11.6, and 14.9;

161

(o) hear and determine any matters related to the Asbestos Personal Injury Trust's indemnification obligations under Section 10.7 of the Plan (subject to the terms and conditions of the Asbestos Personal Injury Trust Agreement) FB Asbestos Property Damage Trust's indemnification obligations under Section 11.6 of the Plan;

(p) except as otherwise limited herein, recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(q) hear and determine all questions and disputes regarding title to the assets of the Debtors, their Estates, the Asbestos Personal Injury Trust, or the FB Asbestos Property Damage Trust, including, without limitation, the NSP Administrative Deposit Accounts.

(r) hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(s) hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(t) hear and determine such other matters as may be provided in or that may arise in connection with the Plan, Confirmation Order, the Claims Trading Injunction, the Asbestos Personal Injury Permanent Channeling Injunction, and each of the other injunctions set forth in Sections 5.14 and 5.15 of the Plan, or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(u) enter a final decree closing the Chapter 11 Cases; and

(v) hear and determine all objections to the termination of the Asbestos Personal Injury Trust and/or the FB Asbestos Property Damage Trust.

## 13.2    Continued Reference to the Bankruptcy Court

Notwithstanding entry of the Confirmation Order and/or the occurrence of the Effective Date, the reference to the Bankruptcy Court pursuant to the Reference Order shall continue, but subject to any modifications or withdrawals of the reference specified in the Confirmation Order, Reference Order, Case Management Order or other Order of the District Court; *provided, however*, that nothing in this Plan, the Reference Order or other Order shall, or shall be deemed to, affect the procedures established pursuant to the Asbestos Personal Injury Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures, the FB Asbestos Property Damage Trust Agreement and the FB Asbestos Property Damage Trust Distribution Procedures.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

## 14.1    Professional Fee Claims

All final requests for compensation or reimbursement of the fees of any professional employed in the Chapter 11 Cases pursuant to Section 327 or 1103 of the Bankruptcy Code or

162

otherwise, including the professionals seeking compensation or reimbursement of costs and expenses relating to services performed after the Petition Date and prior to and including the Effective Date in connection with the Chapter 11 Cases, pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtors, the Unsecured Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants' Representative, the advisors to the Bank Holders' sub-committee and the advisors to the Bondholders' and trade creditors' sub-committee prior to the Effective Date and Claims for making a substantial contribution under Section 503(b)(4) of the Bankruptcy Code must be filed and served on the Reorganized Debtors and their counsel not later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors and their counsel and the requesting professional or other entity not later than twenty (20) days after the date on which the applicable application for compensation or reimbursement was served. Nothing herein shall be construed as limiting the right of the United States Trustee to be heard under Section 307 or 502(a) of the Bankruptcy Code with regard to any Professional Fee Claims or other similar claims or requests for payment of administrative expenses.

### 14.2    Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than as set forth in Sections 3.1 and 14.1 of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Debtors not later than forty-five (45) days after the Effective Date. Unless the Debtors object to an Administrative Claim within forty-five (45) days after receipt, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by a Debtor in the ordinary course of business.

### 14.3    Payment of Statutory Fees

All fees payable pursuant to Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. After the Effective Date, the Reorganized Debtors shall pay all required fees pursuant to Section 1930 of title 28 of the United States Code or any other statutory requirement and comply with all statutory reporting requirements.

### 14.4    Modifications and Amendments

The Plan Proponents may alter, amend or modify the Plan or any exhibits or schedules thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Plan Proponents may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and to seek approval of such matters as may be necessary to carry out the

991

purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

### 14.5    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision herein is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision herein, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.6    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, trustee or assign of such Person.

### 14.7    Compromises and Settlements

Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), the Debtors may compromise and settle various Claims (other than Asbestos Personal Injury Claims and FB Asbestos Property Damage Claims) against them and/or claims that they may have against other Persons. The Debtors shall have the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors pursuant to the provisions of Article V of the Plan.

### 14.8    Corrective Action

The Debtors are authorized to take such actions as necessary and appropriate to carry out the Plan, including the correction of mistakes or other inadvertent action. In making distributions or transfers under the Plan, the Debtors may seek return of transfers to the extent of any errors, notwithstanding that the transfer is otherwise irrevocable under the Plan.

### 14.9    Discharge of the Debtors

(a) Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan and the treatment of the Claims thereunder shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge, and

164

992

release of, all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities (other than Demands), or Interests or other rights of an equity security holder, relating to any of the Debtors or the Reorganized Debtors or their respective Estates, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities (other than Demands), or Interests or other rights of an equity security holder, and upon the Effective Date, the Debtors and the Reorganized Debtors shall (i) be deemed discharged under Section 1141(d)(1)(A) of the Bankruptcy Code and released from any and all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities or Interests or other rights of an equity security holder of any nature whatsoever, including, without limitation, liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate all rights and interests of holders of OCD Interests and the Integrex Interests; *provided, however,* that the discharge provided in respect of the Bank Holders' Claims pursuant to clause (i) above shall become effective immediately upon the Debtors' delivery of the Initial Bank Holders' Distribution.

(b) As of the Confirmation Date, except as otherwise provided herein or in the Confirmation Order, all Persons shall be precluded from asserting against each of the Debtors, the Reorganized Debtors and their respective Related Persons any other or further Claims or other obligations, suits, judgments, damages, debts, Demands, rights, remedies, causes of action or liabilities or Interests or other rights of an equity security holder relating to any of the Debtors or the Reorganized Debtors or their respective Estates based upon any act, omission, transaction or other activity of any nature that occurred prior to the Confirmation Date; *provided, however,* that the foregoing shall apply to the Bank Holders immediately upon the Debtors' delivery of the Initial Bank Holders' Distribution. In accordance with the foregoing, except as otherwise provided herein or in the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities (other than Demands) or Interests or other rights of an equity security holder against the Debtors or the Reorganized Debtors or their respective Estates and termination of all OCD Interests and Integrex Interests, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against any of the Debtors or the Reorganized Debtors or their respective Estates at any time, to the extent that such judgment relates to a discharged Claim or terminated OCD Interest or Integrex Interest.

(c) Pursuant to 11 U.S.C. § 1141(d)(1), the Debtors and the Internal Revenue Service agree that the confirmation of the Plan does not discharge any liabilities to the Internal Revenue Service that may be due from the any of Debtors after the Petition Date and prior to the Confirmation Date. Should any such tax liabilities be determined by the Internal Revenue Service to be due from any of the Debtors, such liabilities shall be determined administratively or in a judicial forum in the manner in which such liabilities would have been resolved had the Chapter 11 Cases not been commenced. Any resulting liabilities shall be paid as if the Chapter 11 Cases had not been commenced.

165

(d) The foregoing discharge, release and injunction is an integral part of the Plan and is essential to its implementation. Each of the Debtors and the Reorganized Debtors shall have the right to independently seek the enforcement of the discharge, release and injunction set forth in this Section 14.9.

### 14.10   Non-Binding Effect of Estimation of Asbestos Personal Injury Claims in the Chapter 11 Cases on Certain OCD Insurers

(a) The estimation of the OC Asbestos Personal Injury Claims as set forth in the OCD Asbestos Personal Injury Estimation Order shall not be binding on, and shall have no collateral estoppel effect on, the Non-Participating Insurers regarding the insurance coverage obligations of the Non-Participating Insurers (or any of them) in any coverage dispute or coverage litigation. In addition, the estimation set forth in the OCD Asbestos Personal Injury Estimation Order shall not be offered into evidence or cited or argued to a jury (or other trier of fact in an alternative dispute resolution pursuant to the Wellington Agreement) by any of the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representatives or the Asbestos Personal Injury Trust in any coverage litigation, alternative dispute resolution, or other coverage proceeding with the Non-Participating Insurers. Further, none of the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representatives or the Asbestos Personal Injury Trust, nor any entities created pursuant to this Plan may argue or assert, in any court proceeding (or alternative dispute resolution pursuant to the Wellington Agreement) involving the Non-Participating Insurers and issues related to insurance coverage, that any findings or conclusions contained in the OCD Asbestos Personal Injury Estimation Order or referenced in any decision, order, finding, conclusion or judgment of the Bankruptcy Court or the District Court (including the Confirmation Order) constitutes a judgment, adjudication, final order, settlement, or finding of liability binding upon any Debtor for any purpose concerning insurance coverage under any policies issued by the Non-Participating Insurers for any Asbestos Personal Injury Claims. The District Court's findings in the OCD Asbestos Personal Injury Estimation Order, with respect to the Non-Participating Insurers, shall apply only to Plan confirmation issues and not to issues of insurance coverage.

(b) The provisions set forth in Section 14.10(a) shall not apply in favor of any specific Non-Participating Insurer that argues in a coverage proceeding that a negative inference should be drawn from the failure of the Debtors, the Asbestos Claimants' Committee, the Future Claimants' Representatives or the Asbestos Personal Injury Trust to offer into evidence or to cite to a jury (or other trier of fact in an alternative dispute resolution pursuant to the Wellington Agreement) or argue to a jury (or other trier of fact in an alternative dispute resolution pursuant to the Wellington Agreement) an estimation decision from the Chapter 11 Cases.

(c) Century Indemnity, having participated in the estimation of asbestos liabilities in the Chapter 11 Cases, shall be fully bound by the OCD Asbestos Personal Injury Estimation Order in the Chapter 11 Cases and in any coverage proceeding (including, without limitation, the pending alternative dispute resolution pursuant to the Wellington Agreement between OCD and Century Indemnity Company).

166

**14.11  Special Provisions for Warranty Claims, Distributorship Indemnification Claims and Product Coupon Claims**

(a)  The Debtors (or, as the case may be, the Reorganized Debtors) shall have the right after the Confirmation Date to fulfill any pre-Petition Date and pre-Confirmation Date warranty claims based on the Debtors' (or, as the case may be, the Reorganized Debtors' )business judgment notwithstanding discharge of the Claims and release of the Debtors pursuant to the Bankruptcy Code and the Plan; *provided, however,* that neither the Debtors nor the Reorganized Debtors shall assume (or shall be deemed to have assumed) any warranty or other obligations, responsibilities, or liabilities relating to underground storage tanks.

(b)  The Debtors (or as the case may be the Reorganized Debtors) shall have the right after the Confirmation Date to fulfill any pre-Petition Date product coupons issued in settlement of asbestos property damage actions based on the Debtors' (or, as the case may be, the Reorganized Debtors') business judgment notwithstanding discharge of the Claims and release of the Debtors pursuant to the Bankruptcy Code and the Plan.

(c)  The Debtors shall have the right after the Confirmation Date to fulfill any pre-Petition Date and pre-Confirmation Date distributorship indemnification claims that are not Asbestos Personal Injury Claims or FB Asbestos Property Damage Claims based on the Debtors' business judgment notwithstanding discharge of the Claims and release of the Debtors pursuant to the Bankruptcy Code and the Plan.

**14.12  Committees and Future Claimants' Representative**

(a)  *Committees*

On the Effective Date, each of the Unsecured Creditors' Committee and the Asbestos Claimants' Committee shall dissolve, and its respective members shall be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases, except for the purpose of completing any matters, including, without limitation, litigation or negotiations, pending as of the Effective Date.  The professionals retained by each of the Unsecured Creditors' Committee and the Asbestos Claimants' Committee and the respective members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except (i) as authorized in the preceding sentence or (ii) to the extent such services are rendered in connection with the hearing on final allowances of compensation pursuant to Section 330 of the Bankruptcy Code.

167

    (b)    *Future Claimants' Representative*

On the Effective Date, the existence of the Future Claimants' Representative and his rights to ongoing reimbursement of expenses and the rights of his professionals to ongoing compensation and reimbursement of expenses shall continue after the Effective Date only for (i) the purposes set forth in the Asbestos Personal Injury Trust Agreement and the annexes thereto and (ii) the purposes of completing any matters, including, without limitation, litigation or negotiations, pending as of the Effective Date, and shall otherwise terminate on the Effective Date.

### 14.13  Binding Effect

The Plan shall be binding upon and inure to the benefit of each of the Debtors and Reorganized Debtors and their respective Estates and each of their respective Related Persons and any Person claiming by or through them, and any Person that has held, currently holds or may hold a Claim or other obligation, suit, judgment, damages, Demand, debt, right, remedy, cause of action or liability or Interest or any right of an equity security holder, against or in the Debtors whether or not such Person will receive or retain any property or interest in property under the Plan and each of their respective successors and assigns; in each case, including, without limitation, all parties-in-interest in the Chapter 11 Cases.

### 14.14  Revocation, Withdrawal, or Non-Consummation

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent or further amended plans of reorganization.  If the Plan Proponents revoke or withdraw the Plan, or if confirmation or consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, any Debtor or any other Person, (b) prejudice in any manner the rights of the Plan Proponents, any Debtor or any Person in any further proceedings involving a Debtor, or (c) constitute an admission of any sort by the Plan Proponents, any Debtor or any other Person.

### 14.15  Plan Exhibits

Any and all exhibits to the Plan or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least ten (10) Business Days prior to the Objection Deadline, unless the Plan provides otherwise.  Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors in accordance with Section 14.16 of the Plan, or the Company may make such documents available on the Company's website.  The Plan Proponents explicitly reserve the right

168

to modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Objection Deadline.

### 14.16  Notices

Any notice, request or demand required or permitted to be made or provided to or upon a Debtor or Reorganized Debtor or the Plan Proponents under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first-class mail or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> OWENS CORNING
> One Owens Corning Parkway
> Toledo, OH 43659
> Att'n:  Corporate Secretary
> Telephone: (419) 248-7201
> Facsimile:  (419) 248-8445
>
> with a copy to:
>
> Law Department
> OWENS CORNING
> One Owens Corning Parkway
> Toledo, OH 43659
> Telephone:  (419) 248-8650
> Facsimile:  (419) 325-4650
>
> SAUL EWING LLP
> 222 Delaware Avenue
> P.O. Box 1266
> Wilmington, DE 19899-1266
> Att'n:  Norman L. Pernick, Esq.
> Telephone:  (301) 421-6800
> Facsimile:  (301) 421-6813
>
> Lockwood Place
> 500 E. Pratt Street
> Baltimore, MD 21202
> Att'n:  Charles O. Monk II, Esq.
> Telephone:  (410) 332-8600
> Facsimile:  (410) 332-8862
>
> SIDLEY AUSTIN LLP
> 1 South Dearborn Street
> Chicago, IL 60603

169

Att'n: James F. Conlan, Esq.
   Larry J. Nyhan, Esq.
   Jeffrey C. Steen, Esq.
   Dennis M. Twomey, Esq.
   Eric J. Pearson, Esq.
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

**Asbestos Claimants' Committee:**

CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th
New York, NY 10152-3500
Att'n:  Elihu Inselbuch, Esq.
Telephone: (212) 319-7125
Facsimile:  (212) 644-6755

One Thomas Circle, N.W.
Washington, D.C. 20005
Att'n:  Peter Van N. Lockwood
Julie W. Davis
Telephone: (202) 862-5000
Facsimile:  (202) 420 -3301

CAMPBELL & LEVINE, LLC
800 King Street
Wilmington, DE 19801
Att'n:  Marla Eskin, Esq.
Telephone: (302) 426-1900
Facsimile:  (302) 426-9947

**Future Claimants' Representative:**

James J. McMonagle
Vorys Sater Seymour & Pease LLP
2100 One Cleveland Center
1375 E. Ninth Street
Cleveland, OH  44114
Telephone: (216) 479-6158 (office)
Facsimile:  (216) 937-3734 (office)

with a copy to:

KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Att'n:  Andrew A. Kress Esq.

170

998

Telephone: (212) 836-8000
Facsimile: (212) 836-7151

YOUNG CONAWAY STARGATT & TAYLOR, LLP
P.O. Box 391
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Att'n: James L. Patton, Jr., Esq.
Telephone: (302) 571-6684
Facsimile: (302) 571-1253

### 14.17 Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

171

999

Dated December 31, 2005

SAUL EWING LLP

By: /s/ Norman L. Pernick
Norman L. Pernick (I.D. # 2290)
J. Kate Stickles (I.D. # 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

Charles O. Monk, II
Jay A. Shulman
Lockwood Place
500 E. Pratt Street
Baltimore, MD 21202
(410) 332-8600

Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7777

Attorneys for the Debtors and
Debtors-in-Possession

SIDLEY AUSTIN LLP

James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
Dennis M. Twomey
Eric J. Pearson
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Attorneys for the Debtors and
Debtors-in-Possession

OWENS CORNING, et al.
(for itself and on behalf of the Subsidiary
Debtors)

By: /s/ Stephen K. Krull
Name: Stephen K. Krull
Title: Sr. Vice President, General Counsel
and Secretary

COVINGTON & BURLING

By: /s/ Mitchell F. Dolin
Mitchell F. Dolin
Anna P. Engh
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
(202) 662-6000

Special Insurance Counsel to Debtors
and Debtors-in-Possession (as to insurance
matters)

172

1000

KAYE SCHOLER LLP
Jane W. Parver
Andrew A. Kress
Edmund M. Emrich
425 Park Avenue
New York, NY 10022
(212) 836-8000

YOUNG, CONAWAY,
STARGATT & TAYLOR, LLP

By: /s/ Edwin J. Harron
James L. Patton, Jr. (I.D. # 2202)
Edwin J. Harron (I.D. # 3396)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Attorneys for James J. McMonagle,
Legal Representative for Future Claimants

Dated as of: December 31, 2005

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch
375 Park Avenue, 35th
New York, NY 10152-3500
(212) 319-7125

Peter Van N. Lockwood
Julie W. Davis
One Thomas Circle, N.W.
Washington, D.C. 20005
(202) 862-5000

CAMPBELL & LEVINE, LLC

By: /s/ Kathleen Campbell Davis
Marla Eskin  (I.D. # 2989)
Mark T. Hurford (I.D. # 3299)
Kathleen Campbell Davis (I.D. # 4229)
800 King Street
Wilmington, DE 19801
(302) 426-1900

Attorneys for the Official
Committee of Asbestos Claimants

1001

**Schedule I**
**Schedule of Subsidiary Debtors**

CDC Corporation
Engineered Yarns America, Inc.
Exterior Systems, Inc.
Falcon Foam Corporation
Fibreboard Corporation
HOMExperts LLC
Integrex
Integrex Professional Services LLC
Integrex Testing Systems LLC
Integrex Supply Chain Solutions LLC
Integrex Ventures LLC
Jefferson Holdings, Inc.
Owens-Corning Fiberglas Technology Inc.
Owens Corning HT, Inc.
Owens-Corning Overseas Holdings, Inc.
Owens Corning Remodeling Systems, LLC
Soltech, Inc.

**Schedule II**
**Schedule of Non-Debtor Subsidiaries**

Commercial Owens Corning Chile Limitada
Commercializadora Owens Corning, S.A. de C.V.
Crown Manufacturing Inc.
Engineered Pipe Systems, Inc.
EPS Holding AS
Eric Company
European Owens-Corning Fiberglas, S.A.
Flowtite Offshore Services Ltd.
Goodman Ventures, Inc.
IP Owens Corning Ltd.
IPM, Inc.
LMP Impianti Srl
Norske EPS Botswana AS
OC (Belgium) Holdings, Inc.
OC Celfortec Inc.
O.C. Funding B.V.
OCW Acquisition Corporation
Owens-Corning Britinvest Limited
Owens-Corning Capital Holdings I, Inc.
Owens-Corning Capital Holdings II, Inc.
Owens-Corning Capital L.L.C.
Owens-Corning Cayman Limited
Owens-Corning Fiberglas Deutschland GmbH
Owens-Corning Fiberglas (G.B.) Ltd.
Owens-Corning Fiberglas Espana, S.A.
Owens-Corning Fiberglas France S.A.
Owens-Corning Fiberglas Norway A/S
Owens-Corning Fiberglas S.A.
Owens-Corning Fiberglas Sweden Inc.
Owens-Corning Fiberglas (U.K.) Pension Plan Ltd.
Owens-Corning FSC, Inc.
Owens-Corning Funding Corporation
Owens-Corning (Guangzhou) Fiberglas Co., Ltd.
Owens-Corning Holdings Limited
Owens-Corning Real Estate Corporation
Owens-Corning (Sweden) AB
Owens-Corning Veil Netherlands B.V.
Owens-Corning Veil U.K. Ltd.
Owens Corning (Anshan) Fiberglass Co., Ltd.
Owens Corning Argentina Sociedad de Responsabilidad Limitada
Owens Corning Australia Pty. Limited
Owens Corning Automobile (UK) Ltd.
Owens Corning Building Materials Espana, S.A.

Owens Corning Canada Inc.
Owens Corning Cayman (China) Holdings
Owens Corning (China) Investment Company, Ltd.
Owens Corning Commercial Insulation Systems, LLC
Owens Corning Composites Italia S.r.l.
Owens Corning Composites SPRL
Owens Corning Enterprise (India) Pvt. Ltd.
Owens Corning Espana SA
Owens Corning Fiberglas A.S. Limitada
Owens Corning (India) Limited
Owens Corning (Japan) Ltd.
Owens Corning Integrated Acoustic Systems, LLC
Owens Corning Korea
Owens Corning Mexico, S.A. de C.V.
Owens Corning (Nanjing) Foamular Board Co. Ltd.
Owens Corning NRO Inc.
Owens Corning NRO II Inc.
Owens Corning Sales Company
Owens Corning (Shanghai) Composites Co., Ltd.
Owens Corning (Shanghai) International Trading Co., Ltd.
Owens Corning (Shanghai) Fiberglas Co., Ltd.
Owens Corning (Singapore) Pte Ltd.
Owens Corning Trading (Korea) Co., Ltd.
Owens Corning VF Holdings, Inc.
OCF Mexico, S.A. de C.V.
Palmetto Products, Inc.
Quest Industries, LLC
Scanglas Ltd.
Technologia Owens Corning LLC
Trumbull Asphalt Co. of Delaware
Vytec Corporation
Willcorp,Inc.
Wrexham A.R. Glass Ltd.

**Schedule III**
**Schedule of Persons against Whom Claims are Not Released under the Plan**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule IV**
**Schedule of Executory Contracts and Unexpired Leases Not Assumed**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule V**
**[Intentionally Omitted]**

**Schedule VI**
**Schedule of Purchasers and Transferees Treated as Protected Parties**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule VII**
**Schedule of Insurance Companies Who Are Protected Parties**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule VIII**
**Schedule of FB Persons and OC Persons**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule IX**
**Schedule of Interested Parties**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule X**
**Schedule of Protected Parties**

[To be provided at least five (5) Business Days prior to the Disclosure Statement Hearing,
as it may be amended up to ten (10) Business Days prior to the Objection Deadline]

**Schedule XI**
**List of Insurance Policies to Be Rejected to the Extent Executory Contracts**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule XII**
**Schedule of Estimates**

[To be provided at least five (5) Business Days prior to the Disclosure Statement Hearing, as it may be amended up to ten (10) Business Days prior to the Objection Deadline]

**Schedule XIII**
**[Intentionally Omitted]**

**Schedule XIV**
**Schedule of Avoidance Actions and Material Rights**
**of Action Expressly Not Released**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

Schedule XV[1]
**Schedule of Fibreboard Insurance Policies Which Are**
**FB Asbestos Property Damage Insurance Assets**

| Insurer | Policy Period | Policy Number |
|---|---|---|
| Employers Reinsurance Corp. | Sept. 15, 1956 to Sept. 15, 1959 | C-2033 |
| Lloyd's of London | Sept. 15, 1956 to Sept. 15, 1959 | 564/500671 |
| Lloyd's of London | Sept. 15, 1956 to Sept. 15, 1958 | 56/8706D |
| Lloyd's of London | Sept. 15, 1958 to Sept. 15, 1959 | 58/10666D |
| Employers Surplus Lines Ins. Co. | Sept. 15, 1959 to Sept. 15, 1962 | E50072 |
| Lloyd's of London | Sept. 15, 1959 to Sept. 15, 1962 | 564/510503 |
| Lloyd's of London | Sept. 15, 1959 to Sept. 15, 1962 | 59/9335D |
| Truck Ins. Exchange | April 1, 1977 to Oct. 1, 1978 | 350 41 55 |
| Ins. Co. Of The State Of Pa | June 1, 1977 to July 1, 1977 | 4177 8005 |
| Central National Insurance Co. | July 1, 1977 to June 1, 1978 | CNU 12 65 73 |
| Mission Insurance | July 1, 1977 to June 1, 1978 | M 835766 |
| Pine Top | June 1, 1978 to Aug. 1, 1978 | MLP 101015 |
| Lexington | June 1, 1978 to Aug. 3, 1978 | 5513494 |
| Puritan Insurance Co. | April 1, 1979 to April 1, 1980 | ML 650521 |
| Granite State | Jan. 1, 1980 to April 1, 1980 | 6579 5818 |
| Granite State | Jan. 1, 1980 to April 1, 1980 | 6579 0962 |
| Granite State | April 1, 1980 to April 1, 1981 | 6580 7157 |
| Granite State | April 1, 1980 to April 1, 1981 | 6580 2060 |
| New England Reinsurance Corp. | April 1, 1980 to April 1, 1981 | 791297 |
| California Union Ins. Company | April 1, 1980 to April 1, 1981 | ZCX 004028 |
| Allianz Underwriters Inc. | April 1, 1980 to April 1, 1981 | AUX 5200051 |

---

[1] This Schedule remains subject to further revision and amendment by the Plan Proponents up to ten (10) Business Days prior to the Objection Deadline

1017

| Insurer | Policy Period | Policy Number |
|---|---|---|
| Granite State | April 1, 1981 to April 1, 1982 | 6581 8194 |
| Granite State | April 1, 1981 to April 1, 1982 | 6581 2956 |
| New England Reinsurance Corp. | April 1, 1981 to April 1, 1982 | 791604 |
| California Union Ins. Company | April 1, 1981 to April 1, 1982 | ZCX 004437 |
| Allianz Underwriters Inc. | April 1, 1981 to April 1, 1982 | AUX 5201138 |
| Granite State | April 1, 1982 to April 1, 1983 | 6582 9385 |
| New England Reinsurance Corp. | April 1, 1982 to April 1, 1984 | 791794 |
| California Union Ins. Company | April 1, 1982 to April 1, 1983 | ZCX 006186 |
| Allianz Underwriters Inc. | April 1, 1982 to April 1, 1983 | AUX 5201505 |
| Century Indemnity Co. | April 1, 1982 to April 1, 1984 | CIZ 425553 |
| Central National Insurance Co. | April 1, 1982 to April 1, 1985 | CNZ 006802 |
| Granite State | April 1, 1983 to April 1, 1984 | 6583 0372 |
| California Union Ins. Company | April 1, 1983 to April 1, 1984 | ZCX 006526 |
| Allianz Underwriters Inc. | April 1, 1983 to April 1, 1984 | AUX 5201071 |
| Granite State | April 1, 1984 to April 1, 1985 | 6584 1255 |
| Aetna Insurance Co. | April 1, 1984 to April 1, 1985 | EX 09 1011 |
| Constitution State | April 1, 1984 to April 1, 1985 | CE 874 F6883 |

**Schedule XVI[1]**
**Schedule of OCD Insurance Policies Which Are OC Asbestos Personal**
**Injury Liability Insurance Assets**

| Insurer Number | Policy Period | Policy |
|---|---|---|
| National Union Fire | June 18, 1974 to Oct. 22, 1976 | CE 1011835 |
| Affiliated FM | July 9, 1974 to Oct. 22, 1976 | XL 72515 |
| INA | July 9, 1974 to Oct. 22, 1976 | XCP 6638 |
| Lexington | Oct. 22, 1975 to Oct. 22, 1976 | GC 5502955 |
| National Union Fire | Oct. 22, 1976 to Oct. 22, 1977 | 1189233 |
| Allianz | March 9, 1979 to Sept. 1, 1979 | UMB 599515 |
| Granite State | Sept. 1, 1979 to Sept. 1, 1980 | 6179-1549 6179-1662 |
| Integrity | Sept. 1, 1979 to Sept. 1, 1980 | XL 201337 |
| National Union Fire | Sept. 1, 1979 to Sept. 1, 1980 | 1224753 1224754 |
| Allianz | Sept. 1, 1979 to Sept. 1, 1980 | AU 5003102 |
| Birmingham Fire | Sept. 1, 1979 to Sept. 1, 1980 | SE 6073551 |
| Landmark | Sept. 1, 1979 to Sept. 1, 1980 | FE 4000221 |
| Southern American | Sept. 1, 1979 to Sept. 1, 1980 | XX 800201 |
| Zurich International | Sept. 1, 1979 to Sept. 1, 1980 | ZI 7162 |
| Allianz | Sept. 1, 1980 to Sept. 1, 1981 | AUX 5200169 AUX 5200178 |
| Granite State | Sept. 1, 1980 to Sept. 1, 1981 | 6180-2514 6180-2515 |
| Integrity | Sept. 1, 1980 to Sept. 1, 1981 | XL 201765 |

[1] This Schedule remains subject to further revision and amendment by the Plan Proponents up to ten (10) Business Days prior to the Objection Deadline

| Insurer Number | Policy Period | Policy |
|---|---|---|
| National Union Fire | Sept. 1, 1980 to Sept. 1, 1981 | 122 60 49<br>122 60 50 |
| Birmingham Fire | Sept. 1, 1980 to Sept. 1, 1981 | SE 6073686 |
| Southern American | Sept. 1, 1980 to Sept. 1, 1981 | XX 800360 |
| Zurich International | Sept. 1, 1980 to Sept. 1, 1981 | ZIB 7458/2 |
| Allianz | Sept. 1, 1981 to Sept. 1, 1982 | AUX 5201229<br>AUX 5201230 |
| Integrity | Sept. 1, 1981 to Sept. 1 1982 | XL 203363<br>XL 203364 |
| National Union Fire | Sept. 1, 1981 to Sept. 1, 1982 | 118 64 21<br>118 64 22 |
| Birmingham Fire | Sept. 1, 1981 to Sept. 1, 1982 | SE 6073042 |
| Central Nat'l of Omaha | Sept. 1, 1981 to Sept. 1, 1982 | CNZ 0066019 |
| Continental | Sept. 1, 1981 to Dec. 17, 1981 | SRX 3196793 |
| Southern American | Sept. 1, 1981 to Sept. 1, 1982 | XX 800472 |
| Birmingham Fire | Sept. 1, 1982 to Sept. 1, 1983 | SE 607 3986<br>SE 607 3985 |
| Integrity | Sept. 1, 1982 to Sept. 1, 1983 | XL 206444<br>XL 206445 |
| National Union Fire | Sept. 1, 1982 to Sept. 1, 1983 | 118 64 37<br>118 64 38 |
| Central Nat'l of Omaha | Sept. 1, 1982 to Sept. 1, 1983 | CNZ 008086 |
| Granite State | Sept. 1, 1982 to Sept. 1, 1983 | 6682-3495 |
| Harbor Insurance Co. | Sept. 1, 1982 to Sept. 1, 1983 | HI 163017 |
| London Guarantee & Accd. | Sept. 1, 1982 to Sept. 1, 1983 | LX 18988076 |

| Insurer<br>Number | Policy Period | Policy |
|---|---|---|
| Pacific Employers | Sept. 1, 1982 to Sept. 1, 1983 | XCC 003198 |
| Royal Indemnity | Dec. 10, 1982 to Sept. 1, 1983 | ED 101856 |
| Central Nat'l of Omaha | Sept. 1, 1983 to Sept. 1, 1984 | CNZ 008414 |
| Royal Indemnity | Sept. 1, 1983 to Sept. 1, 1984 | ED 102134 |
| Birmingham Fire | Sept. 1, 1983 to Sept. 1, 1984 | SE 6074148<br>SE 6074149 |
| Granite State | Sept. 1, 1983 to Sept. 1, 1984 | 6683-4149<br>6683-4150 |
| INA Underwriters | Sept. 1, 1983 to Sept. 1, 1984 | XCP 145412<br>XCP 145413 |
| Integrity | Sept. 1, 1983 to Sept. 1, 1984 | XL 207790 |
| National Union Fire | Sept. 1, 1983 to Sept. 1, 1984 | 9605001<br>9605002 |
| Royal Indemnity | Sept. 1, 1983 to Sept. 1, 1984 | ED 102135 |
| Harbor Insurance Co. | Sept. 1, 1983 to Feb. 10, 1984 | HI 176858 |
| London Guarantee & Accd. | Sept. 1, 1983 to Sept. 1, 1984 | LX 2107865 |

**Schedule XVII**
**Schedule of Non-Indemnified Parties and Actions**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule XVIII**
**Schedule of Terms of Tail Insurance**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Schedule XIX**
**Initial Reorganized OCD Board of Directors**

[To be provided no later than five (5) Business Days prior to the Disclosure
Statement hearing, subject to such further modifications, revisions and
supplementation as may be satisfactory in form and substance to the Debtors,
the Asbestos Claimants' Committee and the Future Claimants' Representative
up to ten (10) Business Days prior to the Objection Deadline]

**Exhibit A**
**Form of Amended and Restated Certificate of Incorporation of Reorganized OCD**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

**Exhibit B**
**Form of Amended and Restated Bylaws of Reorganized OCD**

[To be provided no later than ten (10)
Business Days prior to the Objection Deadline]

EXHIBIT C

## FORM OF OWENS CORNING
## LITIGATION TRUST AGREEMENT[1]

Litigation Trust Agreement (the "Litigation Trust Agreement"), dated as of
[          ], 2006, by and among Owens Corning, a Delaware corporation ("OCD"), on behalf of
itself and certain of its Subsidiary Debtors (as defined below) (collectively, the Subsidiary
Debtors together with OCD, the "Debtors"), as settlors, and [        ], as Litigation Trustee.

### WITNESSETH:

WHEREAS, the Fifth Amended Joint Plan of Reorganization for Owens Corning
and its Affiliated Debtors and Debtors-in-Possession (as amended, modified or supplemented,
the "Plan") provides for the establishment of the Litigation Trust (as defined below) and the
retention and preservation of the Litigation Trust Assets (as defined below) by the Litigation
Trustee, as successor to, and representative of, the Debtors' bankruptcy estates in accordance
with Section 1123(b)(3)(B) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as
amended (the "Bankruptcy Code"), all for the benefit of the holders of Allowed Claims in each
of Classes A5, A6-A, A6-B, A7 and A11 (for payment to holders of Allowed Claims in Classes
A5 and A6-B in accordance with the applicable contractual subordination provisions) under the
Plan (collectively the "Claimholders"); and

WHEREAS, the Plan contemplates, among other things, the litigation, settlement
or other resolution of the Tobacco Causes of Action, the Avoidance Actions and the Material
Rights of Action and the transfer to the Litigation Trust of Potential Tax Refunds, if and when
recovered by the Reorganized Debtors, and the distribution of the Litigation Trust Recoveries to
the Disbursing Agent for distribution of the same to the Claimholders, all as described in greater
detail in the Plan and this Litigation Trust Agreement; and

WHEREAS, on [          ], 2006, the United States Bankruptcy Court for the
District of Delaware (the "Bankruptcy Court") entered the Confirmation Order;

NOW, THEREFORE, in consideration of the premises and agreements
contained herein, the parties hereto agree as follows:

### ARTICLE I

### Establishment of Litigation Trust

Section 1.1   Creation and Name.   There is hereby created a trust which shall be
known as the ["Owens Corning Litigation Trust,"] which is the Litigation Trust created by the
Plan.

---

[1] The Litigation Trust Agreement remains subject to revision by the Plan Proponents in order to conform with the
Plan.

872523.1 12/30/05

Section 1.2    Declaration of Litigation Trust.  In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan under the Bankruptcy Code, the Debtors and the Litigation Trustee have executed this Litigation Trust Agreement and effective on the Effective Date of the Plan, the Debtors hereby irrevocably transfer to the Litigation Trustee, and to its successors and assigns, all the right, title and interests of the Debtors in and to the Litigation Trust Assets, to have and to hold unto the Litigation Trustee and its successors and assigns forever, in trust nevertheless, under and subject to the terms and conditions set forth in this Litigation Trust Agreement and in the Plan for the benefit of the Claimholders and their successors and assigns as provided for in this Litigation Trust Agreement and in the Plan.  The distribution of Litigation Trust Recoveries shall be made in accordance with this Litigation Trust Agreement and the Plan.

Section 1.3    Purpose of Litigation Trust.  The Litigation Trust is organized for the purpose of (a) holding, preserving, managing and maximizing the value of the Litigation Trust Assets for distribution; (b) liquidating the Litigation Trust Assets; and (c) distributing the Litigation Trust Recoveries to the Claimholders as described in the Plan and this Litigation Trust Agreement.  In furtherance of this purpose, the Litigation Trustee shall be responsible for (a) being representative of all Beneficiaries of the Litigation Trust in all claims and litigation relating to the Litigation Trust Assets, (b) for performing all obligations specified for the Litigation Trustee under the Plan and (c) for taking such steps as are reasonably necessary to accomplish such purposes in accordance with the provisions of this Litigation Trust Agreement.  In the event of any inconsistency between the recitation of the duties and powers of the Litigation Trustee as set forth in the Litigation Trust Agreement and the Plan, the provisions of this Litigation Trust Agreement shall govern.

Section 1.4    Litigation Trustee's Acceptance.  The Litigation Trustee accepts the trust imposed on it by this Litigation Trust Agreement and agrees to observe and perform that trust, on and subject to the terms and conditions set forth in this Litigation Trust Agreement.  In connection with and in furtherance of the purposes of the Litigation Trust, the Litigation Trustee hereby expressly accepts the transfer of the Litigation Trust Assets, subject to the provisions of the Confirmation Order, and the Litigation Trustee hereby further expressly assumes, undertakes and shall control the pursuit, litigation, settlement or other resolution of the Litigation Trust Assets.

## ARTICLE II

### Definitions

The capitalized terms used but not defined in this Litigation Trust Agreement shall have the meanings given to them in the Plan.

Section 2.1    Avoidance Actions means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by, or on behalf of, the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, and including, without limitation, the Bank Holders Action.

1028

**Section 2.2   Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended and in effect from time to time.

**Section 2.3   Bank Holders Action** means the action entitled Owens *Corning, et al. v. Credit Suisse First Boston, et al.*, in the United States District Court for the District of Delaware, A-02-5829, as such action may be amended.

**Section 2.4   Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware.

**Section 2.5   Beneficiaries** means those Claimholders and their successors who are entitled to distributions of the Litigation Trust Assets pursuant to the Plan.

**Section 2.6   Board of Directors** means the board of directors of Reorganized OCD.

**Section 2.7   Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Federal Rule of Bankruptcy Procedure 9006(a)) on which commercial banks are open for business in New York, New York.

**Section 2.8   Causes of Action** means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, as well as any defenses, objections or other rights to contest to any action or claims.

**Section 2.9   Claimholders** has the meaning ascribed to such term in the first recital of this Litigation Trust Agreement.

**Section 2.10   Code** means the Internal Revenue Code of 1986, as amended, and any successor thereto.

**Section 2.11   Commercial Claims** means rights, remedies, causes of action, suits or proceedings (whether arising out of contract, tort or otherwise) accruing to or for the benefit of any Debtor for the payment and collection of money or other consideration or the enforcement of rights and remedies in connection with, resulting from or arising out of, any commercial transaction with any of the Debtors or the performance of services by or for any of the Debtors. Commercial Claims shall include, without limitation, claims arising from damage or alleged damage to property of any Debtor, or personal injuries sustained by any employee, contractor or other business agent of any Debtor (other than Asbestos Personal Injury Claims) in any case resulting from or arising out of the conduct of business by such Debtor, the collection of debts owed to any Debtor from purchasers of goods and services from any Debtor or the collection of money or other consideration from vendors, suppliers or other parties for breaches of contract in commercial relationships with any of the Debtors or the recovery of money based on such other commercial relationship of a Debtor that arise in the ordinary course of business.

1029

Commercial Claims shall not include Avoidance Actions or any other rights, remedies, claims, causes of action, suits or proceedings created by title 11 of the United States Code.

**Section 2.12  Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan.

**Section 2.13  Debtors** means collectively, OCD and the Subsidiary Debtors.

**Section 2.14  Effective Date** means the Business Day on which all conditions to the consummation of the Plan have been satisfied or waived as provided in Article XII of the Plan, and is the effective date of the Plan.

**Section 2.15  Litigation Trust** means the trust established pursuant this Litigation Trust Agreement and the Plan.

**Section 2.16  Litigation Trust Agreement** means this agreement.

**Section 2.17  Litigation Trust Assets** means those rights, claims or other assets to be transferred to and owned by the Litigation Trust pursuant to Section 5.9 of the Plan for the benefit of each of Classes A5, A6-A, A6-B and A7, which are comprised of (i) the Litigation Trust Initial Deposit, (ii) all of the Debtors' rights and standing to object to, litigate, settle and otherwise resolve the Tobacco Causes of Action, the Avoidance Actions and the Material Rights of Action listed on Schedule XIV to the Plan, and (iii) any and all proceeds of the foregoing and interest actually earned.  Litigation Trust Assets shall not include the FB Reversions or OCD Reversions

**Section 2.18  Material Rights of Action** means all rights, remedies, claims, causes of action, suits or proceedings accruing to the Debtors or any assets or other property of the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory which, if determined in favor of the Debtors or the Estates, would reasonably be expected to result in a recovery in excess of $200,000, but excluding Commercial Claims and Avoidance Actions.

**Section 2.19  Litigation Trust Expenses** means all costs and expenses associated with the administration of the Litigation Trust, including those rights, obligations and duties described in Section 5.9 of the Plan and in accordance with the Litigation Trust Agreement.

**Section 2.20  Litigation Trust Initial Deposit** means the distribution, in the amount of $1 million, or such other amount upon which the Plan Proponents may agree no later than ten (10) Business Days prior to the Objection Deadline, to be made by the Debtors to the Litigation Trust as set forth in Section 5.9 of the Plan.

**Section 2.21  Litigation Trust Recoveries** means (i) any and all proceeds received by the Litigation Trust from the Tobacco Causes of Action, the Avoidance Actions and the Material Rights of Action listed on Schedule XIV, and (ii) interest actually earned with respect to the foregoing and the Litigation Trust Initial Deposit.

1030

**Section 2.22    Litigation Trust Reimbursement Obligation** means the obligation of the Litigation Trust to pay to Reorganized OCD any and all Litigation Trust Recoveries until such time as the Litigation Trust Initial Deposit plus interest at the rate of 5% per annum, or such other rate upon which the Plan Proponents may agree no later than ten (10) Business Days prior to the Objection Deadline, has been repaid in full.

**Section 2.23    Litigation Trustee** means the trustee of the Litigation Trust appointed pursuant to <u>Section 5.9</u> of the Plan.

**Section 2.24    Net Litigation Trust Recoveries** has the meaning ascribed thereto in Section 5.1(a) of this Agreement.

**Section 2.25    OCD** means Owens Corning, a Delaware corporation.

**Section 2.26    Person** means an individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

**Section 2.27    Plan** means the Fifth Amended Joint Plan of Reorganization of Owens Corning, et al., filed with the Bankruptcy Court on December __, 2005, as amended, modified or supplemented.

**Section 2.28    Reorganized Debtors** means, collectively, Reorganized OCD and the Reorganized Subsidiary Debtors.

**Section 2.29    Reorganized OCD** means reorganized OCD, its successor or its successor issuer under Section 12(b) of the Securities Exchange Act of 1934, on and after the Effective Date.

**Section 2.30    Reorganized Subsidiary Debtors** means the reorganized Subsidiary Debtors and their respective successors, on and after the Effective Date.

**Section 2.31    Subsidiary** means, with respect to any Person, any corporation, association or other business entity of which more than 50% of the total voting power of shares of stock (or equivalent ownership or controlling interest) entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by such Person or one or more other Persons controlled by such Person or a combination thereof.

**Section 2.32    Subsidiary Debtors** means the direct and indirect Subsidiaries of OCD that are set forth in <u>Schedule 1</u> to the Plan and such other Subsidiaries of OCD as may file for protection under Chapter 11 of the Bankruptcy Code subsequent to the date hereof and prior to the Confirmation Date.

**Section 2.33    Tobacco Causes of Action** means any and all claims by OCD and Fibreboard for restitution/unjust enrichment, fraud, and violations of state antitrust law against tobacco companies to obtain payment of monetary damages (including punitive damages) for .

1031

payments made by OCD and Fibreboard to asbestos claimants who developed smoking-related diseases, including, without limitation, the lawsuit brought by OCD and Fibreboard in the Superior Court of California, County of Alameda, styled Fibreboard Corp., et al. v. R.J. Reynolds Tobacco Company, et al., Case No. 791919-8.

Section 2.32   Trustee's Professionals means the professionals retained by the Litigation Trustee pursuant to Section 6.4 of this Litigation Trust Agreement.

## ARTICLE III

### Funding of the Litigation Trust

Section 3.1   Litigation Trust Initial Deposit.  The Litigation Trust Initial Deposit shall be funded by the Debtors or Reorganized Debtors by delivering to the Litigation Trustee $1,000,000 on the Effective Date.  The Litigation Trustee shall use the Litigation Trust Initial Deposit consistent with the purposes of the Litigation Trust and subject to the terms and conditions of the Plan and this Litigation Trust Agreement.

## ARTICLE IV

### The Litigation Trust Assets

Section 4.1   Liquidating Litigation Trust Assets

(a)     Subject to Section 4.1(c), the Litigation Trustee shall take such steps as it deems necessary to pursue, litigate, settle, or otherwise resolve the Litigation Trust Assets, and to make distributions as required under this Litigation Trust Agreement.

(b)     Subject to Section 4.1(c), the Litigation Trustee may transfer, sell, dispose of, settle or otherwise resolve or compromise the Litigation Trust Assets.  The Litigation Trustee's actions with respect to disposition of the Litigation Trust Assets, shall be taken in a manner so as to maximize the value of the Litigation Trust Assets and maximize the Litigation Trust Recoveries.

(c)     In determining whether and how to pursue, litigate, settle, transfer, sell, dispose of, resolve, or compromise any Material Right of Action or Avoidance Action, the Litigation Trustee shall consider the effect of such action on the business, operations, properties, assets or prospects of the Reorganized Debtors, which shall be determined in consultation with designated representatives of the Reorganized Debtors.

Section 4.2   Intervention.  On the Effective Date, and without having to obtain any further order of the Bankruptcy Court, the Litigation Trustee shall be deemed to have intervened as plaintiff, movant or additional party, as appropriate, in any Causes of Action, including adversary proceedings, contested matters, avoidance actions or motions which were filed prior to the Effective Date, where the subject matter of such action involves the Litigation Trust Assets.

1032

## ARTICLE V

### Distribution of Litigation Trust Assets

#### Section 5.1    Distribution of Litigation Trust Recoveries

(a)    *Distributions of Litigation Trust Recoveries.* The Litigation Trustee shall apply of Litigation Trust Recoveries as follows: (i) first, to pay Litigation Trust Expenses; (ii) second, to repay the Litigation Trust Reimbursement Obligation until such time as the Litigation Trust Reimbursement Obligation is paid in full; and (iii) third, to the Disputed Distribution Reserve for distribution on the Final Distribution Date to holders of Allowed Claims in each of Classes A5, A6-A and A6-B, and the OC Sub-Account, in accordance with Sections 3.3 and 9.5(a) of the Plan.

(b)    *Time of Distributions.* Distributions to the Disbursing Agent by the Litigation Trustee of Net Litigation Trust Recoveries shall be made as soon practicable after receipt of the Litigation Trust Recoveries; *provided, however,* that the Litigation Trustee may withhold any such distribution, or any portion thereof, to the extent it reasonably believes it necessary to pay Litigation Trust Expenses or the Litigation Trust Reimbursement Obligation that the Litigation Trustee will not be required to make any such distribution in the event that the aggregate proceeds and income available for distribution is not sufficient, in the Litigation Trustee's discretion to distribute monies to the Claimholders.

#### Section 5.2    Delivery of Distributions.    Distributions by the Litigation Trustee shall be made to the Disputed Distribution Reserve.

## ARTICLE VI

### General Powers, Rights and Obligations of the Litigation Trustee

#### Section 6.1    Appointment of Litigation Trustee.    The Person designated as Litigation Trustee pursuant to the procedures described in the Plan, shall become the Litigation Trustee on the Effective Date and shall have and perform all the duties, responsibilities, rights and obligations set forth in this Litigation Trust Agreement.

#### Section 6.2    Legal Title.    The Litigation Trustee shall hold legal title to all Litigation Trust Assets except that the Litigation Trustee may cause legal title or evidence of title to any of the Litigation Trust Assets to be held by any nominee or person, on such terms, in such manner and with such power as the Litigation Trustee may determine advisable.

#### Section 6.3    General Powers.

(a)    Except as otherwise provided in this Litigation Trust Agreement or the Plan, and subject to Section 4.01(c) of this Litigation Trust Agreement and the retained jurisdiction of the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) as provided for in the Plan, but without prior or further authorization, the Litigation Trustee may control and

873523.1 120003                                    7

exercise authority over the Litigation Trust Assets, over the acquisition, management and disposition thereof and over the management and conduct of the business of the Litigation Trust to the same extent as if the Litigation Trustee were the sole owner of the Litigation Trust Assets in its own right. No person dealing with the Litigation Trust shall be obligated to inquire into the Litigation Trustee's authority in connection with the acquisition, management or disposition of Litigation Trust Assets.

(b)    In connection with the management and use of the Litigation Trust Assets, the Litigation Trustee, except as otherwise expressly limited in this Litigation Trust Agreement, the Plan and the Confirmation Order, and, subject to Section 4.01(c) of this Litigation Trust Agreement, shall have, in addition to any powers conferred on it by any other provision of this Litigation Trust Agreement, the power to take any and all actions as are necessary or advisable to effectuate the purposes of the Litigation Trust, including, without limitation, the power and authority:

(i)    to accept the assets transferred and provided to the Litigation Trust under this Litigation Trust Agreement and the Plan;

(ii)    to distribute the Litigation Trust Recoveries in accordance with the terms of this Litigation Trust Agreement and the Plan;

(iii)    to sell, convey, transfer, assign, liquidate, collect or abandon any Litigation Trust Asset or any part thereof or any interest therein, on such terms and for such consideration as the Litigation Trustee deems desirable or appropriate;

(iv)    to prosecute all suits as may be necessary, appropriate or incident to the purposes of the Litigation Trust;

(v)    to endorse the payment of notes or other obligations of any person or to make contracts with respect thereto;

(vi)    to engage in all acts that would constitute ordinary course of business in performing the obligations of a trustee under a trust of this type;

(vii)    to remove all or any of the Litigation Trust Assets or the situs of administration of the Litigation Trust from one jurisdiction to another jurisdiction at any time or from time to time;

(viii)    in connection with any property held under this Litigation Trust Agreement that is distributable or payable to a minor, to transfer and pay over all or any portion of the property to the minor, or to a guardian of the minor's property, whenever appointed, without requiring ancillary guardianship, or to the minor's parent or the person with whom the minor resides, or to any custodian under any Uniform Gifts to Minors Act or Uniform Transfer to Minor Act with power to select any person or trust company (including any fiduciary hereunder) to be such custodian and with power to extend such custodianship to age twenty-one (21) years, without any obligation to see to the use or application of the property or to make inquiry with respect to any other

873525.1 12/06/03                                8

property available for the use of the minor, the receipt by such minor, guardian, parent, person or custodian to be a complete discharge as to such transfer or payment;

(ix)  to borrow sums of money, at any time and from time to time, for periods of time and on terms and conditions from persons or corporations (including any fiduciary hereunder) for purposes as may be deemed advisable, and secure such loans by the pledge or hypothecation of any property held under this Litigation Trust Agreement;

(x)  to change the state of domicile of the Litigation Trust;

(xi)  to establish the funds, reserves and accounts within the Litigation Trust as deemed by the Litigation Trustee, in its discretion, to be useful in carrying out the purposes of the Litigation Trust;

(xii)  to sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitration or other proceeding;

(xiii)  in accordance with this Agreement, to indemnify (and purchase insurance indemnifying) the Litigation Trustee, and the employees, agents and representatives of the Litigation Trust or the Litigation Trustee to the fullest extent that a corporation organized under the laws of the Litigation Trust's domicile is from time to time entitled to indemnify its directors, officers, employees, agents and representatives;

(xiv)  to delegate any or all of the discretionary power and authority herein conferred at any time with respect to all or any portion of the Litigation Trust to any one or more reputable individuals or recognized institutional advisors or investment managers without liability for any action taken or omission made because of such delegation, except for such liability as is provided herein;

(xv)  to consult with the Reorganized Debtors at such times and with respect to such issues relating to the conduct of the Litigation Trust as the Litigation Trustee considers desirable; and

(xvi)  to perform such other acts and undertake such other conduct as the Litigation Trustee believes is necessary to carry out the purposes and intent of this Litigation Trust.

The Litigation Trustee shall not at any time, on behalf of the Litigation Trust or the Holders, enter into or engage in any trade or business, and the Litigation Trustee shall not use or dispose of any part of the Litigation Trust Assets in furtherance of any trade or business.

Section 6.4  Retention of Attorneys, Accountants and Other Professionals.
The Litigation Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as it may deem necessary (collectively, the "Trustee Professionals"), in its sole discretion, to aid in the performance of its responsibilities pursuant to the terms of the Plan and this Litigation Trust

873525.1 12/30/05

9

1035

Agreement, including, without limitation, the liquidation and distribution of Litigation Trust Assets

(a)    such law firm(s) as counsel to the Litigation Trust as the Litigation Trustee may deem advisable to aid in the pursuit, litigation, settlement or other resolution of the Litigation Trust Assets and to perform such other functions as may be appropriate to carry out the primary purposes of the Litigation Trust. The Litigation Trustee may commit the Litigation Trust to and shall pay such law firm(s) reasonable compensation from the Litigation Trust Assets for services rendered and expenses incurred. The Litigation Trustee may also engage such law firm(s) on a contingent fee basis as permitted by applicable law;

(b)    an independent public accounting firm to audit the financial books and records of the Litigation Trust and to perform such other reviews and/or audits as the Litigation Trustee may deem advisable to carry out the primary purposes of the Litigation Trust. The Litigation Trustee may commit the Litigation Trust to and shall pay such accounting firm reasonable compensation from the Litigation Trust Assets for services rendered and expenses incurred; and

(c)    such experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as are advisable to carry out the purposes of the Litigation Trust. The Litigation Trustee may commit the Litigation Trust to and shall pay all such persons or entities reasonable compensation from the Litigation Trust Assets for services rendered and expenses incurred.

Section 6.5    Co-Trustees or Separate Trustees.

(a)    In order to (and only to the extent necessary to) meet any legal requirements of any jurisdiction in which any of the Litigation Trust Assets may from time to time be located, the Litigation Trustee shall have the power to appoint one or more individuals or corporations either to act as co-trustee jointly with the Litigation Trustee of all or any part of the Litigation Trust Assets or to act as separate trustee of all or any part of the Litigation Trust Assets and to vest in such person or persons, in such capacity, such title to the Litigation Trust Assets or any part thereof, and such rights, powers, duties, trusts or obligations as may be necessary for the Litigation Trustee to perform its duties under this Litigation Trust Agreement, subject to the remaining provisions of this Section 6.5.

(b)    Unless otherwise provided in the instrument appointing such co-trustee or separate trustee, every co-trustee or separate trustee shall, to the extent permitted by law, be appointed subject to the following terms:

(i)    all rights, powers, trusts, duties and obligations conferred or imposed by this Litigation Trust Agreement on the Litigation Trustee in respect of the custody, control or management of monies, papers, securities and other personal property shall be exercised solely by the Litigation Trustee;

(ii)    all rights, powers, trusts, duties and obligations conferred or imposed by this Litigation Trust Agreement on such trustees shall be conferred or imposed on and exercised or performed by the Litigation Trustee, or by the Litigation

873525.1 12/7/05                                10

1036

Trustee and such co-trustee or separate trustee jointly, except when, under the law of any jurisdiction in which any particular act or acts are to be performed, the Litigation Trustee shall be incompetent or unqualified to perform such act or acts, in which event, subject to clause (iv), such act or acts as shall be performed by such co-trustee or separate trustee;

(iii)     any request in writing by the Litigation Trustee to any co-trustee or separate trustee to take or to refrain from taking any action hereunder shall be sufficient warrant for the taking, or the refraining from taking, of such action by such co-trustee or separate trustee;

(iv)     any co-trustee or separate trustee to the extent permitted by law shall delegate to the Litigation Trustee the exercise of any right, power, trust, duty or obligation, discretionary or otherwise;

(v)     the Litigation Trustee, at any time, by an instrument in writing, may accept the resignation of or remove any co-trustee or separate trustee appointed under this Section 6.5. A successor to any co-trustee or separate trustee so resigned or removed may be appointed in the manner provided in this Section 6.5;

(vi)     neither the Litigation Trustee nor any co-trustee or separate trustee appointed hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder selected by it with reasonable care;

(vii)     any demand, request, direction, appointment, removal, notice, consent, waiver or other action in writing delivered to the Litigation Trustee shall be deemed to have been delivered to each such co-trustee or separate trustee;

(viii)     any moneys, papers, securities or other items of personal property received by any such co-trustee or separate trustee hereunder shall, so far as may be permitted by law, be turned over to the Litigation Trustee to be held pursuant to the terms hereof; and

(ix)     any co-trustee appointed solely to qualify the Litigation Trust as a statutory business trust shall have no liability or responsibility for any of the duties and responsibilities under Article VI of this Litigation Trust Agreement or otherwise, except to maintain such offices and to execute such certificates as are required to be executed by all trustees and to take such other actions as are required under the applicable statute authorizing such business trust.

(c)     Upon the Litigation Trustee's acceptance in writing of such appointment by any such co-trustee or separate trustee, it or such person shall be vested with the Litigation Trust's right, title and interest in the Litigation Trust Assets, or portion thereof, and with such rights, powers, duties, trusts or obligations, jointly or separately with the Litigation Trustee, all as shall be specified in the instrument of appointment, subject to all the terms of this Litigation Trust Agreement. Every such acceptance shall be filed with the Litigation Trustee.

(d)     In case any co-trustee or separate trustee shall die, become incapable of acting, resign or be removed, the estate, right, title and interest in the Litigation Trust Assets and

all rights, power, trusts, duties and obligations of the co-trustee or separate trustee shall, so far as permitted by law, vest in and be exercised by the Litigation Trustee unless and until a successor co-trustee or separate trustee shall be appointed pursuant to this Section 6.5.

Section 6.6    Compensation of Litigation Trustee and the Trustee's Professionals. [NOTE: The following is for illustrative purposes only and will be amended upon appointment of a Trustee.]

(a)    The Board of Directors shall negotiate with and authorize the payment of reasonable compensation from the Litigation Trust Assets to the Litigation Trustee for services rendered and expenses incurred in fulfilling its duties pursuant to this Litigation Trust Agreement. [For the first six full months following the month in which the Effective Date occurs, the Litigation Trustee shall receive compensation of $[_____] per month. The fee payable for the month in which the Effective Date occurs shall be payable on the first day of the month following the Effective Date, and shall be prorated based on a $[_____] monthly fee and calculated for the actual number of days during the month that the Litigation Trustee has served. In all other cases, the fee will be payable on the first business day of the month (being the first day on which banking institutions in the [State of New York] are not authorized or required by law or regulation to be closed) following the month for which service has been rendered. Six months following the Effective Date, and annually thereafter, the Board of Directors and the Litigation Trustee shall negotiate the amount and payment terms of the compensation to the Litigation Trustee for the following one-year period. If no agreement is reached, the parties may seek the determination of the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) as to reasonable compensation.] The compensation and reimbursement of expenses of the Litigation Trustee shall be paid out of Litigation Trust Assets.

(b)    On or before the last day of each month following the month for which compensation is sought, each of the Litigation Trustee's Professionals seeking compensation shall serve a monthly statement on the Litigation Trustee, and the Board of Directors. The Litigation Trustee, and the Board of Directors will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving an objection setting forth the precise nature of the objection and the amount at issue on the Trustee's Professional. At the expiration of the fifteen (15) day period, the Litigation Trust shall promptly pay 100% of the amounts requested, except for the portion of such fees and disbursements to which an objection has been made. The parties shall attempt to consensually resolve objections, if any, to any monthly statement. If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees may seek payment of such fees by filing a motion with the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) and providing notice to the Litigation Trustee. Any professional who fails to submit a monthly statement shall be ineligible to receive further payment of fees and expenses as provided in this Litigation Trust Agreement until the monthly statement is submitted.

Section 6.7    Standard of Care; Exculpation. The Litigation Trustee shall perform the duties and obligations imposed on the Litigation Trustee by this Litigation Trust Agreement with reasonable diligence and care under the circumstances. The Litigation Trustee

1038

shall not be personally liable to the Litigation Trust or to any Beneficiary (or any successor of such entities) except for such of its own acts as shall constitute bad faith, willful misconduct, gross negligence, willful disregard of its duties or material breach of this Litigation Trust Agreement. Except as aforesaid, the Litigation Trustee shall be defended, held harmless and indemnified from time to time from the Litigation Trust Assets but not from or by the Beneficiaries or any of the parties released in the Plan, against any and all losses, claims, costs, expenses and liabilities to which the Litigation Trustee may be subject by reason of the Litigation Trustee's execution in good faith of its duties under this Litigation Trust Agreement. The Litigation Trustee's officers, employees and agents may be likewise defended, held harmless and indemnified. The Litigation Trustee shall not be obligated to give any bond or surety or other security for the performance of any of its duties, unless otherwise ordered by the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust); if so otherwise ordered, all costs and expenses of procuring any such bond shall be deemed Litigation Trust Expenses.

Section 6.8   Reliance by Litigation Trustee. The Litigation Trustee may rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that it has no reason to believe to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of its bad faith, willful misconduct, gross negligence, willful disregard of its duties or material breach of this Litigation Trust Agreement, the Litigation Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon. The Litigation Trustee may consult with legal counsel and shall be fully protected in respect of any action taken or suffered by it in accordance with the written opinion of legal counsel. The Litigation Trustee may at any time seek instructions from the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) concerning the acquisition, management or disposition of the Litigation Trust Assets.

Section 6.9   Action upon Instructions. If in performing the Litigation Trustee's duties under this Litigation Trust Agreement, the Litigation Trustee is required to decide between alternative courses of action, or the Litigation Trustee is unsure of the application of any provision of this Litigation Trust Agreement or the Plan, then the Litigation Trustee may promptly deliver a notice to the Board of Directors, requesting written instructions as to the course of action to be taken by the Litigation Trustee. If the Litigation Trustee does not receive such written directions within 10 business days after it has delivered such notice, the Litigation Trustee may, but shall be under no duty to, take or refrain from taking such action not inconsistent with this Litigation Trust Agreement as the Litigation Trustee shall deem advisable.

Section 6.10   Bankruptcy Court (or District Court) Approval. If the Litigation Trustee does not receive direction described in Section 6.9 or any other approval required by this Litigation Trust Agreement from the Board of Directors, within the requisite time period or the Litigation Trustee believes that a court order is necessary or advisable to protect the interests of the Beneficiaries, the Litigation Trustee may apply to the Bankruptcy

1039

Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) for a determination as to the course of action to be taken by the Litigation Trustee.

Section 6.11    **Investment Obligations.** The Litigation Trustee shall invest and re-invest the liquid Litigation Trust Assets consistent with the obligations of a trustee under Section 345 of the Bankruptcy Code. In addition, the Litigation Trustee may invest the corpus of the Litigation Trust in prudent investments in addition to those described in Section 345 of the Bankruptcy Code. The Litigation Trustee shall not be liable in any way for any loss or other liability arising from any investment, or the sale or other disposition of any investment, made in accordance with this Section 6.11, except for any such loss or liability arising from the Litigation Trustee's gross negligence, willful misconduct or bad faith.

Section 6.12    **Quarterly Reports.** The Litigation Trustee shall submit quarterly status reports to the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) and Reorganized OCD. Each quarterly status report shall be due on the thirtieth (30th) day following the last day of any calendar quarter (or the next Business Day if the thirtieth day following the last day of any calendar quarter is not a Business Day). The Litigation Trustee shall continue to submit quarterly status reports until the assets of the Litigation Trust are fully administered or the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) determines on motion that such reports are no longer necessary. Each quarterly status report shall contain a summary of all activity by the reporting party during the previous quarter, a summary of the professional fees sought and obtained in the prior quarter and a summary of cash receipts and disbursements of the Litigation Trustee, a summary of cash receipts and disbursements of the Litigation Trust, a summary of any distributions and such other information as the Litigation Trustee deems appropriate for inclusion or as reasonably requested by the parties to whom such reports are to be submitted.

Section 6.13    **Tax Filings and Notices.** The Litigation Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns and other filings, including all federal, state and local tax returns of the Litigation Trust, as may be required under the Code, the Plan, or as may be required by applicable law of other jurisdictions including, if required under applicable law, notices required to report interest or dividend income. The Litigation Trustee shall, when specifically requested by, to the extent required by applicable law, provide such Beneficiary with such tax information as is necessary for the preparation by such Beneficiary of its income tax return.

Section 6.14    **Compliance with Securities Laws.** The Litigation Trustee shall, to the extent required by law, file with the Securities and Exchange Commission and other applicable federal and state governmental agencies any reports and other documents that may be required in connection with the holding, management or distribution of trust assets, and shall take any and all other actions necessary to comply with federal or state securities laws.

Section 6.15    **Resignation or Removal.** The Litigation Trustee may resign as Litigation Trustee by giving written notice of its resignation to the Board of Directors. The

1040

Litigation Trustee shall continue to serve as trustee for the shorter of (a) 90 days following the tender of the notice of resignation or (b) until the appointment of a successor Litigation Trustee shall become effective in accordance with Section [__] of this Litigation Trust Agreement. The Litigation Trustee may be removed by the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) for acts that constitute bad faith, willful misconduct, gross negligence, willful disregard of its duties or material breach of this Litigation Trust Agreement. In the event of the resignation or removal of the Litigation Trustee, the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) shall designate a person to serve as successor Litigation Trustee.

### ARTICLE VII

#### Coordination with Reorganized Debtors

       **Section 7.1    Duty to Provide Access.** Subject to Section 8.2 of this Litigation Trust Agreement, the Reorganized Debtors shall make available reasonable access during normal business hours, on reasonable notice, to personnel and books and records of the Reorganized Debtors to representatives of the Litigation Trust to enable the Litigation Trustee to perform the Litigation Trustee's tasks under the Litigation Trust Agreement and the Plan; *provided, however,* that the Reorganized Debtors shall not be required to make expenditures in response to such requests determined by them in good faith to be unreasonable.

       **Section 7.2    Preservation of Confidential and Privileged Information.** The Litigation Trustee shall enter into an agreement with the Reorganized Debtors for the purpose of maintaining the confidentiality of, and retaining the protection of any applicable privilege in connection with, the information provided by the Reorganized Debtors pursuant to Section 8.1 of this Litigation Trust Agreement.

### ARTICLE VIII

#### Retention of Jurisdiction

       Pursuant to the Plan and Confirmation Order, the District Court, together with the Bankruptcy Court to the extent of any reference made to it by the District Court and the Reference Order, will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among other things, jurisdiction to:

      (a)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions in the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including this Litigation Trust Agreement;

      (b)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including

1041

disputes arising under agreements, documents or instruments executed in connection with the Plan, including this Litigation Trust Agreement;

(c)    hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including this Litigation Trust Agreement;

(d)    effectuate performance of and payments under the provisions of the Plan, including the Litigation Trust Expenses.

## ARTICLE IX

### Termination

The Litigation Trust shall continue until termination of the Litigation Trust is approved by the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) after distribution of all the Litigation Trust Assets and[, in any event,] must be terminated no later than  [____] (__) years from the date of creation of the Litigation Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) within [six (6)] months of the beginning of the extended term.  The Litigation Trustee shall at all times endeavor to liquidate the Litigation Trust Assets expeditiously, and in no event shall the Litigation Trustee unduly prolong the duration of the Litigation Trust.  On termination of this Litigation Trust, the Litigation Trustee shall advise the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) in writing of its termination.  Notwithstanding the foregoing, after the termination of the Litigation Trust, the Litigation Trustee shall have the power to exercise all the powers, authorities and discretions herein conferred solely for the purpose of liquidating and winding up the affairs of the Litigation Trust.  On distribution of all of the Litigation Trust Assets, the Litigation Trustee shall retain the books, records and files that shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all such records and documents may be destroyed at any time after[__ years] from the distribution of all of the Litigation Trust Assets.

## ARTICLE X

### Miscellaneous

Section 10.1    Notices.  All notices, requests or other communications required or permitted to be made in accordance with this Litigation Trust Agreement shall be in writing

and shall be delivered personally or by facsimile transmission or mailed by first-class mail or by overnight delivery service:

    If to the Litigation Trustee, at:

        [name]
        [address]
        [city, state, zip]

    with copies to:

        [name]
        [address]
        [city, state, zip]

    If to the Reorganized Debtors, at:

        OWENS CORNING
        One Owens Corning Parkway
        Toledo, OH 43659
        Att'n: Corporate Secretary
        Telephone: (419) 248-7201
        Facsimile: (419) 248-8445

    with copies to:

        Law Department
        OWENS CORNING
        One Owens Corning Parkway
        Toledo, OH 43659
        Telephone: (419) 248-8650
        Facsimile: (419) 325-4650

        SAUL EWING LLP
        222 Delaware Avenue
        P.O. Box 1266
        Wilmington, DE 19899-1266
        Att'n: Norman L. Pernick, Esq.
        Telephone: (301) 421-6800
        Facsimile: (301) 421-6813

        100 South Charles Street
        Baltimore, MD 21201-2773
        Att'n: Charles O. Monk II, Esq.
        Telephone: (410) 332-8600
        Facsimile: (410) 332-8862

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036-6522
Att'n: Ralph Arditi, Esq.
    D.J. Baker, Esq.
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Notices sent out by facsimile transmission shall be deemed delivered when actually received, and notices sent by first-class mail shall be deemed delivered three business days after mailing and notices sent by overnight delivery service shall be deemed delivered the next business day after mailing.

Section 10.2    Effectiveness. This Litigation Trust Agreement shall become effective on the Effective Date.

Section 10.3    Intention of Parties to Establish Litigation Trust. This Litigation Trust Agreement is intended to create a trust, and the Litigation Trust created hereunder shall be governed and construed in all respects as a trust.

Section 10.4    Investment Company Act. The Litigation Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Litigation Trust does not and will not hold itself out as, an "investment company" or an entity "controlled" by an "investment company" as such terms are defined in the Investment Company Act.

Section 10.5    Taxation. For United States federal income tax purposes, it is intended that the Litigation Trust be classified as a liquidating trust under section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for United States federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Litigation Trust Assets and then contributed such interests to the Litigation Trust.

Section 10.6    Counterparts. This Litigation Trust Agreement may be executed in one or more counterparts (via facsimile or otherwise), each of which shall be deemed an original but which together shall constitute but one and the same instrument.

Section 10.7    Governing Law. This Litigation Trust Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of ___.

Section 10.8    Headings. Sections, subheadings and other headings used in this Litigation Trust Agreement are for convenience only and shall not affect the construction of this Litigation Trust Agreement.

Section 10.9    Severability. Any provision of this Litigation Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions of this Litigation Trust Agreement, and any such prohibition or unenforceability in

1044

any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

Section 10.10    Amendments.  This Litigation Trust Agreement may be amended from time to time by the Trust Advisory Board, if any, by majority vote.

Section 10.11    Successors.  This Litigation Trust Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

Section 10.12    No Suits by Claimholders.  No Claimholder shall have any right by virtue of any provision of this Litigation Trust Agreement to institute any action or proceeding in law or in equity against any party other than the Litigation Trustee on or under or with respect to the Litigation Trust Assets.

Section 10.13    Irrevocability.  The Litigation Trust is irrevocable, but is subject to amendment as provided for herein.

Section 10.14    Litigation Trust Continuance.  The death, dissolution, resignation, incompetency or removal of the Litigation Trustee shall not operate to terminate the Litigation Trust created by this Litigation Trust Agreement or to revoke any existing agency created under the terms of this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee.  In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (a) execute and deliver such documents, instruments and other writings as may be requested by the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) or a successor Litigation Trustee to effect the termination of the Litigation Trustee's capacity under this Litigation Trust Agreement and the conveyance of the Litigation Trust Assets then held by the Litigation Trustee to the successor, (b) deliver to the Bankruptcy Court (or the District Court in the event that the District Court modifies the Reference Order to retain jurisdiction over the Litigation Trust) or the successor Litigation Trustee all documents, instruments, records and other writings related to the Litigation Trust as may be in the possession of the Litigation Trustee and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

Section 10.15    Enforcement and Administration.  The [Bankruptcy Court] [District Court] shall enforce and administer the provisions of this Litigation Trust Agreement as set forth in the Plan.

IN WITNESS WHEREOF, the parties hereto have executed this Litigation Trust Agreement or caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the date first above written.

OWENS CORNING

By:_____
    Name:

1045

Title:

[LITIGATION TRUSTEE]

By:_____

    Name:

    Title:

873525.2 12/30/05

20

1046

**Exhibit D**
**Form of Asbestos Personal Injury Trust Agreement**

# OWENS CORNING/FIBREBOARD

# FORM OF ASBESTOS PERSONAL INJURY TRUST AGREEMENT

OWENS CORNING/FIBREBOARD

ASBESTOS PERSONAL INJURY TRUST AGREEMENT

TABLE OF CONTENTS

SECTION 1 — Agreement of Trust ............................................................................ 4

    1.1    Creation and Name ............................................................. 4
    1.2    Purpose ................................................................................ 4
    1.3    Transfer of Assets ............................................................... 4
    1.4    Acceptance of Assets and Assumption of Liabilities ............ 5

SECTION 2 — Powers and Trust Administration ................................................... 6

    2.1    Powers ................................................................................ 6
    2.2    General Administration ....................................................... 10
    2.3    Claims Administration......................................................... 15

SECTION 3 — Accounts, Investments, and Payments ........................................... 16

    3.1    Accounts ............................................................................. 16
    3.2    Investments ......................................................................... 16
    3.3    Source of Payments ............................................................ 18

SECTION 4 — Trustees ........................................................................................... 19

    4.1    Number ............................................................................... 19
    4.2    Term of Service .................................................................. 19
    4.3    Appointment of Successor Trustees ..................................... 20
    4.4    Liability of Trustees, Officers and Employees ..................... 21
    4.5    Compensation and Expenses of Trustees .............................. 21
    4.6    Indemnification of Trustees and Additional Indemnitees ...... 22
    4.7    Trustees' Lien ..................................................................... 23
    4.8    Trustees' Employment of Experts ........................................ 23
    4.9    Trustees' Independence ....................................................... 24
    4.10  Bond ................................................................................... 24

-i-

SECTION 5 — Trust Advisory Committee................................................................ 24

    5.1    Members .................................................................................... 24
    5.2    Duties ...................................................................................... 24
    5.3    Term of Office ......................................................................... 25
    5.4    Appointment of Successor ....................................................... 26
    5.5    TAC's Employment of Professionals ...................................... 26
    5.6    Compensation and Expenses of TAC ...................................... 28
    5.7    Procedures for Consultation With and Obtaining the
           Consent of the TAC ................................................................ 28

           (a)    Consultation Process ..................................................... 28
           (b)    Consent Process ............................................................ 29

SECTION 6 — The Future Claimants' Representative ................................................ 30

    6.1    Duties ...................................................................................... 30
    6.2    Term of Office ......................................................................... 30
    6.3    Appointment of Successor ....................................................... 31
    6.4    Future Claimants' Representative's Employment of Professionals ........ 31
    6.5    Compensation and Expenses of the Future Claimants'
           Representative .......................................................................... 33
    6.6    Procedures for Consultation With and Obtaining the
           Consent of the Future Claimants' Representative ................... 34

           (a)    Consultation Process ..................................................... 34
           (b)    Consent Process ............................................................ 34

SECTION 7 — General Provisions ........................................................................... 36

    7.1    Irrevocability ........................................................................... 36
    7.2    Termination ............................................................................. 36
    7.3    Amendments ............................................................................ 37
    7.4    Meetings .................................................................................. 38
    7.5    Severability ............................................................................. 38
    7.6    Notices .................................................................................... 39
    7.7    Successors and Assigns ............................................................ 40
    7.8    Limitation on Claim Interests for Securities
           Laws Purposes ......................................................................... 40
    7.9    Entire Agreement; No Waiver ................................................. 40
    7.10   Headings ................................................................................. 41
    7.11   Governing Law ........................................................................ 41
    7.12   Settlors' Representations and Cooperation ............................. 41
    7.13   Dispute Resolution .................................................................. 41
    7.14   Enforcement and Administration ............................................. 42
    7.15   Effectiveness ........................................................................... 42
    7.16   Counterpart Signatures ........................................................... 42

-ii-

## OWENS CORNING/FIBREBOARD

## ASBESTOS PI TRUST AGREEMENT

This Owens Corning/Fibreboard Asbestos PI Trust Agreement (hereinafter referred to as the "PI Trust Agreement"), dated the date set forth on the signature page hereof and effective as of the later of the Effective Date or the date this Agreement is executed by the Trustees ("Trustees"), is entered into by Owens Corning ("OC," the "Settlor," or the "Debtor"), a Delaware corporation, the Debtor and debtor-in-possession in Case No. 00-03837 in the United States Bankruptcy Court for the District of Delaware as Settlor, the Future Claimants' Representative; the Official Committee of Asbestos Creditors ("Committee"); and the Trustees and the members of the PI Trust Advisory Committee ("TAC"), who are further identified on the signature pages hereof and appointed at Confirmation pursuant to the Fifth Amended Joint Plan of Reorganization for Owens Corning and Its Affiliated Debtors and Debtors-In-Possession ("Plan"), as such Plan may be amended, modified or supplemented from time to time. All capitalized terms not otherwise defined herein shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

WHEREAS, at the time of the entry of the order for relief in the Chapter 11 case, Owens Corning ("OC")and its wholly-owned subsidiary Fibreboard Corporation ("Fibreboard") were named as a defendants in actions involving personal injury ("PI") or death claims caused by

773708.2 12/10/03

exposure to asbestos-containing products for which OC and Fibreboard, their predecessors, successors and assigns have legal liability ("OC Asbestos Personal Injury Claims" and "Fibreboard Asbestos Personal Injury Claims" as defined in the Plan); and

WHEREAS, OC has reorganized under the provisions of Chapter 11 of the Bankruptcy Code in a case pending in the United States Bankruptcy Court for the District of Delaware, known as *In re Owens Corning, et al, Debtor*, Case No. 00-03837 JKF; and

WHEREAS, the Plan has been confirmed by the Bankruptcy Court; and

WHEREAS, the Plan provides, *inter alia*, for the creation of the Asbestos Personal Injury Settlement Trust ("PI Trust"); and

WHEREAS, pursuant to the Plan, the PI Trust is to use its assets and income to satisfy all Asbestos Personal Injury Claims; and

WHEREAS, pursuant to the Plan, the PI Trust shall be funded with the consideration described in Sections 3.3(f)(iii) and 3.4(d)(iii) of the Plan;

WHEREAS, pursuant to the Plan, the PI Trust will use that consideration to establish two separate Sub-Accounts, the OC Sub-Account which shall be funded with the consideration described in Section 3.3(f)(iii) of the Plan, and the Fibreboard Sub-Account which shall be funded with the consideration described in Section 3.4(d)(iii) of the Plan;

WHEREAS, pursuant to the Plan, OC Asbestos Personal Injury Claims shall be paid from the OC Sub-Account and Fibreboard Asbestos Personal Claims shall be paid from the Fibreboard Sub-Account;

1051

WHEREAS, it is the intent of OC, the Trustees, the Committee, the TAC, and the Future Claimants' Representative that the PI Trust be administered, maintained, and operated at all times through mechanisms that provide reasonable assurance that the PI Trust will satisfy all PI Trust Claims pursuant to the Owens Corning/Fibreboard Asbestos Personal Injury Trust Distribution Procedures ("TDP") that are attached to the Disclosure Statement as Exhibit D-1 in a substantially similar manner, and in strict compliance with the terms of this PI Trust Agreement; and

WHEREAS, pursuant to the Plan, the PI Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code ("IRC"); and

WHEREAS, the Bankruptcy Court has determined that the PI Trust and the Plan satisfy all the prerequisites for an injunction pursuant to Section 524(g) of the Bankruptcy Code, and such injunction has been entered in connection with the Confirmation Order;

NOW, THEREFORE, it is hereby agreed as follows:

1052