IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re OWENS CORNING, INC., *et al.*,<br><br>　　　　　Debtors. | Chapter 11 Case No. 00-3837 (JKF)<br>Jointly Administered |
| INACOM CORP., and its related debtors,<br>by and through Executive Sounding Board<br>Associates, Inc., as Plan Administrator,<br><br>　　　　　Appellant,<br><br>v.<br><br>OWENS CORNING, *et al.*,<br><br>　　　　　Appellee. | Civil Action No. 05-852 (JPF)<br><br><br><br>Appeal from Order of the United States<br>Bankruptcy Court For the District of<br>Delaware |

## OPENING BRIEF OF APPELLEE, OWENS CORNING, *ET AL.*

**SAUL EWING LLP**
Norman L. Pernick (No. 2290)
Domenic E. Pacitti (No. 3989)
J. Kate Stickles (No. 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
(302) 421-6800

-and-

Adam H. Isenberg
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7777

Counsel for Appellee, Owens Corning, *et al.*

Dated: February 6, 2006

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

II.     APPLICABLE STANDARDS OF APPELLATE REVIEW ........................... 2

III.    PRELIMINARY STATEMENT ......................................................................... 2

IV.     STATEMENT OF FACTS ................................................................................. 3

V.      ARGUMENT ..................................................................................................... 6

        A.      The Bankruptcy Court Correctly Denied Appellant's Motion
                For Enlargement of Time Because a Party Who Admits Timely
                Receipt of a Bar Date Order by Itself, its Restructuring
                Advisors and its Attorneys, But Fails to File a Claim by the
                Court Imposed Deadline Does Not Meet Its Burden For
                Showing Excusable Neglect For Its Conduct ........................................... 6

                (1)     The Delay in Filing a Proof of Claim Was Well Within
                        the  Reasonable Control of Appellant and Appellant's
                        Attorneys .......................................................................................... 8

                (2)     The Length of Delay is Extraordinary Given the Notice
                        to  Appellant and Appellant's Continued, Inexcusable
                        Neglect in  Either Filing a Claim Timely or Requesting
                        Relief Under  Bankruptcy Rule 9006 (b)(1) and the
                        Impact on Judicial  Proceedings ................................................. 14

                (3)     Real Prejudice to the Debtors Would Ensue if Relief to
                        the  Appellant Were Granted ...................................................... 15

                (4)     Bad Faith of Appellant. ............................................................... 17

VI.     CONCLUSION ............................................................................................... 18

## TABLE OF CITATIONS

### FEDERAL CASES

United States v. Boyle, 469 U.S. 241, 105 S. Ct. 687, 83 L. Ed. 2d 622 (1985)...................................................................................................................10

Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995)......................................7, 8

Consolidated Freightways Corp. of Delaware v. Larson, 827 F.2d 916 (3d Cir. 1987)..........................................................................................................15

In re American Classic Voyages Co., 405 F.3d 127 (3d Cir. 2005) ...................14

In re Eagle-Picher Industries, Inc., 158 B.R. 713 (Bankr. S.D. Ohio 1993).........9

In re Enron Corp., 419 F.3d 115 (2d Cir. 2005) ...................................................9

In re Interstate Grocery Distributions System, 267 B.R. 907 (Bankr. N.J. 2001) ..........................................................................................................14

In re Just for Feet, Inc., 299 B.R. 343 (Bankr. D. Del. 2003).............................15

In re Keene Corp., 188 B.R. 903 (Bankr. S.D.N.Y. 1995) ...............................6, 7

In re O'Brien Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999) ....2, 12, 14, 15, 16

Link v. Wabash R. Co., 370 U.S. 626, 82 S. Ct. 1386, 8 L. Ed. 734 (1962) .....................10

Lucas Aerospace, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 171 B.R. 187 (Bankr. D. Del. 1994), aff'd, 1995 U.S. Dist. LEXIS 17671 (D. Del. 1995) .....................................................................................6

Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993)...................................................................2, 7, 9, 10, 11, 12, 15, 18

Smith v. Ayer, 101 U.S. 320, 25 L. Ed. 955 (1880) ..........................................10

### FEDERAL STATUTES

United States Code, 11 U.S.C. §§ 101, et seq.....................................................3

## FEDERAL RULES OF BANKRUPTCY PROCEDURE

Fed. R. Bankr. P. 8013 ........................................................................................................2

Fed.R.Bankr.P. 3003(c)(3) ..................................................................................................7

Fed.R.Bankr.P. 9006(b)(1) ..............................................................................................1, 7

I. **NATURE AND STAGE OF THE PROCEEDINGS**

Inacom Corporation[1]("Appellant") appeals from the Order of the Bankruptcy Court dated November 9, 2005 ("Order") (A260-261)[2], denying Inacom Corporation's Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1) (the "Motion") (A59-184). The Order was entered in conjunction with the findings and conclusions of the Bankruptcy Court at the October 25, 2005 hearing on the Motion. See Transcript of October 24, 2005 Hearing ("Transcript") (A275-292). Owens Corning and its affiliated debtors and debtors-in-possession in the above-captioned cases (collectively with Owens Corning, the "Debtors")[3] objected to the Motion. See Objection of Debtors to Inacom Corporation Motion to Allow the Filing of a Proof of Claim After the Deadline for Filing Proofs of Claim Pursuant to Bankruptcy Rule 9006(b)(1) ("Debtors' Objection") (A204-225). The Debtors oppose this appeal.

---

[1]   Although the pleadings are styled as being filed by "Inacom Corporation," they are actually filed by Executive Sounding Board Associates, Inc., in its capacity as "Plan Administrator" for Inacom's confirmed plan of liquidation.

[2]   Citations to "A___" herein refer to the designated pages in the Appendix to Opening Brief of Appellant Inacom Corp., *et al.* which were included in the Appellant's Appendix filed with this Court.

[3]   The Debtors are: Owens Corning, CDC Corporation, Engineered Yarns America, Inc., Falcon Foam Corporation, Integrex, Fibreboard Corporation, Exterior Systems, Inc., Integrex Ventures LLC, Integrex Professional Services LLC, Integrex Supply Claim Solutions LLC, Integrex Testing Systems LLC, Homexperts LLC, Jefferson Holdings, Inc., Owens-Corning Fiberglas Technology Inc., Owens Corning HT, Inc., Owens-Corning Overseas Holdings, Inc., Owens Corning Remodeling Systems, LLC and Soltech, Inc.

## II.    APPLICABLE STANDARDS OF APPELLATE REVIEW

A District Court reviews a Bankruptcy Court's conclusions of law *de novo*, its findings of fact under the clearly erroneous standard and its exercise of discretion for abuse thereof.    In re O'Brien Environmental Energy, Inc., 188 F.3d 116,122 (3d Cir. 1999); See also FED. R. BANKR. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous..."). A Bankruptcy Court abuses its discretion if its ruling is founded on an error of law or a misapplication of the law to the facts. In re O'Brien Environmental Energy, Inc., 188 F.3d at 122.

## III.    PRELIMINARY STATEMENT

The Bankruptcy Court correctly applied the standards set forth in Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993) and relevant Third Circuit authority in reviewing Appellant's Motion and determining that excusable neglect did not exist and that Appellant failed to meet its heavy burden.  Appellant's Motion did not seek to gain the Bankruptcy Court's blessing of some minor or technical violation of the Court's bar date order. Rather, the undisputed facts demonstrate a gross disregard of the bar date -- which passed approximately *3½ years ago* -- by a party that admittedly received notice of the bar date, identified its account receivable from Owens Corning as one of its largest accounts receivable, discussed the necessity of filing a proof of claim with sophisticated bankruptcy counsel, but nevertheless failed to file a claim.  A more egregious fact pattern would be difficult to find.  Substantial harm to the Debtors and their estates also would ensue if late filed claims were permitted to be filed in these cases.    The number of parties that received a bar date notice in these cases is

2

exponentially greater then the number of parties that filed proofs of claims. Accordingly, a floodgate of potential requests for allowance of late filed claims is very real and is exacerbated by the fact that claims buyers are constantly monitoring and soliciting potential claimants in these cases. Such claims buyers possess the logistical and financial resources to create this floodgate of late filed claims. Furthermore, the claim Appellant seeks to assert is, in the Debtors' view, wholly invalid. Thus, the Debtors do not continue to oppose this relief in an attempt to elude responsibility for an otherwise meritorious claim. Rather, the claim which Appellant seeks to assert is vigorously contested. Should the relief be granted, significant claims litigation is likely to follow. Given the lateness of the claim, the Debtors' ability to adequately contest the claim is prejudiced since Appellant has ceased operations, has no employees and has liquidated its assets. Accordingly, critical documentary and testimonial evidence necessary to contest the claim may be lost.

## IV.   STATEMENT OF FACTS

On October 5, 2000 (the "Petition Date"), the Debtors filed voluntary petitions for relief in the Bankruptcy Court pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). Prior to its bankruptcy filing, Owens Corning was party to an agreement (the "Inacom Agreement") with Inacom Corporation and/or its affiliates (collectively, "Inacom") pursuant to which Inacom furnished to the Debtors extensive computer-related services. Owens Corning was one of Inacom's largest customers. Among other things, Inacom:

- provided, through approximately 60 personnel, dedicated 24 hour, 7 days a week, "help desk" services to support approximately 6-7,000 desk-top computers in North America and Europe;

- provided global support of the Debtors' 200-300 Intel/Microsoft servers;

- operated the Debtors' server environment including email system, public drives, gateways, proxy servers, and the like;

- provided various operational services including security administration and virus protection;

- maintained, updated and interfaced with Microsoft regarding the Owens Corning common desk-top and server "image" on all Owens Corning North American and European computers;

- provided "break-fix" services for all Owens Corning desk-top computers; and

- provided asset management services by which Inacom both kept track of the Debtors' desk-top computers and handled all desk-top purchases for the Debtors.

In June 2000, with no prior notice and in clear violation of the Inacom Agreement, Inacom abruptly ceased providing these services. These actions caused the Debtors enormous disruption as well as significant out-of-pocket costs and losses. Among other things, the Debtors were forced, on an emergency basis, to reallocate personnel from their normal tasks, locate and employ temporary replacement personnel to perform tasks previously performed by Inacom and devote key personnel to the tasks of locating a permanent replacement for Inacom and managing the transition to such replacement. In addition, and among other things, Inacom failed to return certain of the Debtors' owned and leased equipment, and failed to complete various projects for which the Debtors had paid.

Because the Debtors reasonably believed that Inacom's actions gave them a complete defense to any claims that could be asserted by Inacom, each of Inacom's

4

claims was listed as "disputed" in the Amended and Restated Schedules filed by the Debtors in November 2001.

By Order dated November 28, 2001 (the "Bar Date Order") (A44-54), the Bankruptcy Court established a deadline for filing proofs of claim, other than certain excluded claims not at issue here, of April 15, 2002 (the "Bar Date"). As required by the Bar Date Order, the Debtors caused to be mailed notice of the Bar Date to all known creditors and parties-in-interest, along with conformed proof of claim forms. Each creditor's proof of claim form listed the scheduled amount of the recipient's/creditor's claim and a clear statement, if applicable, that the creditor's claim was scheduled as "contingent," "unliquidated" or "disputed."

Notice of the Bar Date was mailed to Appellant at numerous addresses.[4] See Exhibit "A" to the Debtors' Objection (excerpts from Certificate of Service re Bar Date Order) (A217-223). Although Appellant admittedly received notice of the Bar Date, (see Motion at p. 7: "[n]otice of the deadline for filing claims was served upon Inacom at various sites" (A235)), it did not file any proof of claim in the Debtors' cases by the April 15, 2002 Bar Date.

Appellant took no action regarding its claim against Owens Corning for another approximately 2½ years. Then, according to the Motion, the Plan Administrator appointed under Inacom's confirmed plan of liquidation[5] (the "Plan Administrator")

---

[4]    Exhibit "A" includes only mailings to Inacom and "Vanstar," one of Inacom's affiliated debtors, as identified in the Motion. See Motion at p.1, n.1 (A59). Additional mailings were made to other Inacom entities.

[5]    According to the Motion, Inacom filed a chapter 11 bankruptcy petition on June 16, 2000 (case no. 00-2426 (PJW)). See Motion at p. 4 (A62) The bankruptcy court confirmed Inacom's Joint Plan of Liquidation as Amended (the "Liquidating

received an inquiry from a claims trader in November 2004. Some months later, in late March or early April 2005, the Plan Administrator contacted the Debtors, through counsel, with a request that the Debtors consent to Appellant's filing of a late proof of claim on behalf of Inacom. By email dated April 11, 2005, attached as Exhibit "B" to the Debtors' Objection (A224), Appellant was informed that the Debtors would not so consent. It was not until five months later, on September 19, 2005, that Appellant filed the Motion. The Motion sought Bankruptcy Court permission for Appellant to file a claim against Owens Corning on behalf of Inacom in the approximate amount of $2.5 million.

## V.    ARGUMENT

### A.    The Bankruptcy Court Correctly Denied Appellant's Motion For Enlargement of Time Because a Party Who Admits Timely Receipt of a Bar Date Order by Itself, its Restructuring Advisors and its Attorneys, But Fails to File a Claim by the Court Imposed Deadline Does Not Meet Its Burden For Showing Excusable Neglect For Its Conduct

The Bankruptcy Court correctly denied Appellant's Motion because Appellant failed to show that Appellant's and its attorney's conduct constituted excusable neglect. Courts have long recognized that the bar date is "critically important to the administration of a successful chapter 11 case, and the reorganization process." See In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995). Thus, the burden of proving "excusable neglect" is on the party seeking an enlargement of time to file. See Lucas Aerospace, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 171 B.R. 187, 239 (Bankr. D. Del. 1994), aff'd, 1995 U.S. Dist. LEXIS 17671 (D. Del. 1995); see also

---

Plan"), by Order dated May 23, 2003. Executive Sounding Board Associates, Inc. was appointed "Plan Administrator" pursuant to the terms of such Order.

Keene, 188 B.R. at 907 (a creditor may "file a late claim if it demonstrates that its failure to file a timely claim was due to 'excusable neglect'"). In this case, Appellant failed to satisfy its burden of proving excusable neglect.

Fed.R.Bankr.P. 3003(c)(3) provides, in pertinent part, that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed.R.Bankr.P. 9006(b)(1) provides, in pertinent part, that "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion...on motion made after the expiration of the specified period permit the act to be done **where the failure to act was the result of excusable neglect**." (Emphasis added).

In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380, 395 (1993), the United States Supreme Court stated that the determination of whether "excusable neglect" exists for purposes of Fed.R.Bankr.P. 9006(b)(1) is

> an equitable one, taking into account all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether movant acted in good faith.

See also Chemetron Corp. v. Jones, 72 F.3d 341, 349 (3d Cir. 1995). The Supreme Court, however, disagreed with the Sixth Circuit Court of Appeals' suggestion "that it would be inappropriate to penalize respondents for the omissions of their attorney" and noted that the Sixth Circuit Court of Appeals inappropriately focused its analysis on "whether respondents did all they reasonably could in policing the conduct of their

7

attorney, rather than on whether their attorney, as respondents' agent, did all he reasonably could to comply with the court ordered bar date." Id. at 396.

      (1)    **The Delay in Filing a Proof of Claim Was Well Within the Reasonable Control of Appellant and Appellant's Attorneys.**

      It is difficult to conceive that the reasons asserted for Appellant's delay in filing a claim could constitute excusable neglect. In its Motion, Appellant admits that it received notice of the Bar Date (Motion, at p. 7 (A65)), that Appellant had identified its account receivable from Owens Corning as one of Appellant's largest (Id.), that Appellant "reviewed its books and records in late 2001 to determine whether it had claims against Owens Corning (Id.), and that Appellant's personnel discussed the necessity of filing a proof of claim with counsel but that "the follow-up by either Appellant employees or counsel did not occur" (Id.).

      The "initial excuse" first asserted by Appellant in its Motion as to the reason this follow-up did not occur is two-fold. First, Appellant asserted that:

> during the period which claims against Owens Corning were to be prepared and filed, the very small Inacom staff was reviewing and assisting in the preparation of objections to the more than 10,000 claims either scheduled by or filed against the Inacom estates, assisting in litigation to bring hundreds of collection actions and avoidance actions, and disposing of assets.

Motion, at p. 7 (A65). Second, Appellant asserted that:

> apparently due to a misunderstanding, the Owens Corning accounts receivable were written off in December 2000 resulting in a loss of visibility and follow-up.

Motion at p. 7 (A65). These assertions do not withstand scrutiny and, even if correct, cannot constitute "excusable neglect."

Interestingly, at the hearing on the Motion, Appellant attempted to argue a different version of the "excuse" articulated in its Motion. Appellant sought permission to proffer evidence in the form of proffered testimony of Alaine Agie, the former vice president of operations of Inacom. Through counsel's proffered testimony of Ms. Agie, the Bankruptcy Court discerned that Appellant: (a) was aware of the filing of Owens Corning's bankruptcy; (b) was aware of the scheduling of Inacom's claims by Owens Corning; (c) had a system in place to monitor Inacom's claims in bankruptcies of companies where it had outstanding accounts receivable; (d) included Owens Corning in the monitoring system maintained by Appellant's attorneys; and (e) had almost weekly meetings with its attorneys about the claims against Owens Corning. Transcript at p. 23 (A284). The "revised excuse" for not timely filing a proof of claim was that the status of the filing of a proof of claim on Appellant's behalf in the Debtors' cases was noted incorrectly by Appellant's attorneys on the monitoring system they maintained. Id.

First as it relates to Appellants "initial excuse," it is clear that a heavy workload cannot constitute excusable neglect. In re Enron Corp., 419 F.3d 115, 126 (2d Cir. 2005) ("preoccupation or an excessive workload do not usually constitute 'excusable neglect'"). See Pioneer Investment Services, 507 U.S. at 398 ("we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."). See also In re Eagle-Picher Industries, Inc., 158 B.R. 713, 715-716 (Bankr. S.D. Ohio 1993) (rejecting a claim filed two weeks after bar date where the only explanation was an "overworked and underfunded" staff). Secondly, with respect to Appellant's "revised excuse," the Supreme Court in Pioneer specifically disagreed with the Court of

9

Appeals' analysis regarding mistakes by a party's attorney as constituting excusable,

stating:

> The Court of Appeals suggested that it would be inappropriate to penalize
> respondents for the omissions of their attorney, reasoning that "the
> ultimate responsibility of filing the ... proof[s] of clai[m] rested with
> [respondents'] counsel." *Ibid.* The court also appeared to focus its
> analysis on whether respondents did all they reasonably could in policing
> the conduct of their attorney, rather than on whether their attorney, as
> respondents' agent, did all he reasonably could to comply with the court-
> ordered bar date. In this, the court erred.
>
> In other contexts, we have held that clients must be held accountable for
> the acts and omissions of their attorneys. In Link v. Wabash R. Co., 370
> U.S. 626, 82 S.Ct. 1386, 8 L.Ed. 734 (1962), we held that a client may be
> made to suffer the consequence of dismissal of its lawsuit because of its
> attorney's failure to attend a scheduled pretrial conference. In so
> concluding, we found "no merit to the contention that dismissal of
> petitioner's claim because of his counsel's unexcused conduct imposes an
> unjust penalty on the client." Id. at 633, 82 S.Ct. at 1390. To the contrary,
> the Court wrote:
>
> > "Petitioner voluntarily chose this attorney as his
> > representative in the action, and he cannot now avoid the
> > consequences of the acts or omissions of this freely
> > selected agent. Any other notion would be wholly
> > inconsistent with our system of representative litigation, in
> > which each party is deemed bound by the acts of his
> > lawyer-agent and is considered to have 'notice of all facts,
> > notice of which can be charged upon the attorney.' " Id. at
> > 633-634, 82 S.Ct., at 1390 (quoting Smith v. Ayer, 101
> > U.S. 320, 326, 25 L.Ed. 955 (1880)).
>
> This principle also underlies our decision in United States v. Boyle, 469
> U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985), that a client could be
> penalized for counsel's tardy filing of a tax return. This principle applies
> with equal force here and requires that respondents be held accountable
> for the acts and omissions of their chosen counsel. Consequently, in
> determining whether respondents' failure to file their proofs of claim prior
> to the bar date was excusable, the proper focus is upon whether the neglect
> of respondents *and their counsel* was excusable.

Pioneer, 507 U.S. 396-397.

The mere mistake by Appellant's counsel is not neglect and certainly not excusable neglect contemplated by the Supreme Court in Pioneer. Mistake is defined as "an error, fault, a misconception, misunderstanding," and neglect is defined as "to ignore, disregard, to fail to care for or give proper attention to." Webster II New College Dictionary (1995). The Bankruptcy Court in reviewing Appellants alleged "initial excuse" and later "revised excuse" squarely pointed out the distinction in the context of the excusable neglect analysis, stating in pertinent part:

> THE COURT: Well, it's a mistake, but the question is, is it excusable neglect? It's clearly not neglect because someone took the effort to determine that the claim was filed, and as a result there's no neglect at all. So I don't even have to get to the question of whether it's excusable. It's not neglectful.
>
> * * *
>
> You know the problem is that somebody is dealing on a deliberate basis with this Owens Corning claim. If they made a mistake, they made a mistake. But the question is, is there neglect? The standard in Pioneer is excusable neglect. Not every mistake that somebody makes.
>
> * * *
>
> Well, it certainly was [a deliberate course of events]. You just described the deliberation. You were meeting on a nearly weekly basis to discuss the Owens claim. The accounting people were aware of it. They knew about the bankruptcy, they knew it was disputed. They got the Proof of Claim. They checked to determine whether, in their own system, they needed to do something and determined they didn't, when in fact they did. That is not neglectful. That is deliberate.
>
> * * *
>
> Pioneer does not open up the entire world for everybody's mistakes. There are other remedies for mistakes. Go collect on other remedies for the mistakes.

Transcript at pp.24-26 (A285-287). The Bankruptcy Court was correct. It followed the holding of Pioneer and determined that a mere mistake by Appellant's attorneys does not rise to the level of excusable neglect contemplated

by the Supreme Court. Pioneer, 507 U.S. 396-397.

Furthermore, the leading cases on "excusable neglect" typically do not consider only the moving parties' conduct in determining whether excusable neglect has occurred. Rather, they also examine whether the *debtor bears any responsibility* for the moving party's non-action. See, e.g., Pioneer, 507 U.S. at 399 ("we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, 'excusable.'"); In re O'Brien Environmental Energy, Inc., 188 F.3d at 128-129 ("[t]he Bankruptcy Court should not have limited its focus to [the movants'] conduct. An examination of [the debtor's] role in the mishap is also essential to a determination of whether [the movants'] neglect was excusable."). Nowhere in the Motion or the proffered testimony does Appellant allege any action or omission on the part of the Debtors that contributed to Appellant's failure to comply with the Bar Date, or any asserted defect in the manner in which the Debtors gave notice of the Bar Date. Thus, Appellant's failure to comply with the Bar Date was solely due to its own conduct.

Indeed, the stated conduct and activities of Appellants staff at the time of the Bar Date -- which included objecting to claims in the Inacom case and prosecuting collection actions (Motion at p. 7 (A65)) -- undermine any finding of excusable neglect. Clearly, Appellant's employees and representatives should have been acutely aware of the significance of the Bar Date, heavy work-load notwithstanding.

Second, to the extent a mistake was made in "December 2000" regarding the alleged "writing off" of Appellant's account receivable from Owens Corning, such mistake cannot support any finding of excusable neglect. Even if such a mistake

occurred, Appellant's personnel had almost 1½ years to correct it -- the interval from when the asserted mistake occurred to the Bar Date. Significantly, during such interval Inacom was no longer operating. Rather, "[a]fter June 16, 2000 Appellant operated solely to wind up and liquidate its business." Motion at p. 4 (A62). Presumably, a large part of such operations -- which occurred under the guidance of experienced and sophisticated bankruptcy professionals[6] -- involved collection of Inacom's accounts receivable, from debtors and non-debtors alike. Indeed, the Motion acknowledges that "[a]fter [Inacom] filed its own bankruptcy case it established a mechanism by which its remaining staff would, upon notification of the filing of a petition by a company or the receipt of a notice of the deadline for filing claims, against which Inacom had a claim, review its books and records and communicate with its attorneys as to the existence of potential claims against other bankrupt companies." Motion at p. 9 (A67).

Even if Inacom did indeed "write off" its accounts receivable from Owens Corning, it was or should have been put on notice by the Debtors' Bar Date notice and materials that it had a potentially significant claim against Owens Corning. As stated above, the Debtors caused to be mailed conformed proof of claim forms to all known creditors and parties-in-interest. *Each creditor's proof of claim form listed the scheduled*

---

[6]      See Motion at p. 5 (A63) ("within a few months after filing its petition Inacom (1) was being run by Bridge Associates LLC as their bankruptcy consultants, and (2) had its primary bankruptcy [counsel] Wilkie, Farr & Gallagher replaced by Pachulski, Stang, Ziehl, Young, Jones & Weintraub"). The Debtors note that, upon information and belief, all of such professionals, as well as the Plan Administrator and other parties, were given broad releases under Inacom's Liquidating Plan. The Plan Administrator also is the beneficiary of broad exculpation and indemnity provisions for its post-confirmation actions, pursuant to the terms of the "Plan Administrator Agreement" approved in connection with the confirmation of Inacom's Liquidating Plan.

*amount of such creditor's claim* and contained a clear statement, if applicable, that the creditor's claim was scheduled as "contingent," "unliquidated" or "disputed."

Thus, the Bar Date materials mailed to Inacom expressly stated the amounts of Inacom's scheduled (but disputed) claims against Owens Corning. Surely, the listing of the amount of such claims on the proof of claim forms sent to Inacom should have caused Inacom to further review its books and records regarding amounts due from Owens Corning. Apparently, such review did not occur.

> **(2)    The Length of Delay is Extraordinary Given the Notice to Appellant and Appellant's Continued, Inexcusable Neglect in Either Filing a Claim Timely or Requesting Relief Under Bankruptcy Rule 9006 (b)(1) and the Impact on Judicial Proceedings**

In considering whether Appellant's neglect was "excusable," one cannot overlook the circumstances that led to the filing of the Motion. According to the Motion, Appellant was contacted by a claims trader in November 2004 with respect to Appellant's claims against Owens Corning. Several months passed before Appellant contacted Owens Corning to discuss the claim. An additional five months passed before the Appellant filed the Motion. Such additional delays do not help the moving party's case. See In re Interstate Grocery Distributions System, 267 B.R. 907, 913 (Bankr. N.J. 2001) ("The length of delay in seeking relief is significant. . . . Here, [movant] waited almost eight months after learning [of the missed deadline] and no reasonable explanation is proffered for the length of this delay . . ."). See also In re American Classic Voyages Co., 405 F.3d 127, 128-29 (3d Cir. 2005) (motion to file late claim filed 16 days after movant discovered missed bar date); In re O'Brien Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999) (moving party filed motion within approximately six weeks of discovering

14

missed deadline); Consolidated Freightways Corp. of Delaware v. Larson, 827 F.2d 916

(3d Cir. 1987) (movant immediately applied to district court for extension of time, after

learning of missed deadline); In re Just for Feet, Inc., 299 B.R. 343, 347 (Bankr. D. Del.

2003) (Fitzgerald, J.) (questioning "why [movant] waited two to three months after

discovering his mistake to file the motion . . .").

### (3)    Real Prejudice to the Debtors Would Ensue if Relief to the Appellant Were Granted.

The Pioneer decision indicates that courts determining whether to permit

the filing of a late proof of claim should also consider the danger of prejudice to the

debtor were the claim to be allowed. Pioneer, 507 U.S. at 380. There are "several factors

to consider in a Pioneer prejudice analysis, including: the size of the claim with respect to

the rest of the estate; whether allowing the late claim would have an adverse impact on

the judicial administration of the case ...the disruptive effect that the late filing would

have on the plan or upon the economic model upon which the plan was based; and

whether allowing the claim would open the floodgates to other similar claims." O'Brien,

188 F.3d at 126.

Although no plan has yet been confirmed in the Debtors' cases, the

Debtors have valid reasons for concern that a granting of the Motion will cause

significant prejudice to the estates. Among other things, the Debtors have concern that

granting the Motion will open the floodgates to numerous motions for permission to file

late claims and that such motions may succeed. Stated plainly, if the extraordinary

circumstances alleged in the Motion are found to constitute excusable neglect, it is hard

to imagine what circumstances would *not* constitute excusable neglect, and the Bar Date

will have had no meaning.

The Debtors' concern about a flood of late-filed claims is not academic. The Debtors received approximately 25,000 filed proof of claims in these cases asserting $16.6 billion of aggregate claims, despite giving notice of the Bar Date to over 204,000 creditors and potential creditors. See Disclosure Statement with Respect to Fifth Amended Joint Plan of Reorganization for Owens Corning and its Affiliated Debtors and Debtors-in-Possession at pp. 74-75 (A594-595). Should the Motion be granted, how many of these parties will seek to assert late claims? Case law in this Circuit clearly recognizes this as a valid form of "prejudice." See O'Brien, 188 F.3d at 126. Dealing with the claims that have been filed thus far has been, and continues to be, an enormous task; any action that increases the number of claims that must be reviewed, reconciled and potentially objected to is of significant concern and prejudice. In fact, since the filing by Appellant of its Motion, two other parties have filed motions to extend the time for filing claims.[7] More are certain to be filed. Additionally, since the filing of Appellant's Motion, in excess of sixty-five claims have been sold and transferred, indicating a continuing active market in the sale of claims against the Debtors.[8]

Separately, permitting Appellant to file a late claim is unfair to the thousands of Owens Corning creditors who managed -- unlike Appellant -- to file their claims on time. Appellant's proposed claim is sizeable. Should the relief be granted,

---

[7] See Motion of R/S Associates d/b/a Festival Flee Market Ltd. to Enlarge Time *Nunc Pro Tunc* to April 15, 2002 to File Pre-Petition Unsecured Claim dated December 21, 2005 and Motion of Crown Metals for Entry of An Order Extending the Time Within Which Crown Metals May File a Proof of Claim, dated January 20, 1996. Contemporaneously herewith, the Debtors have filed a Motion with this Court requesting that it take judicial notice of the referenced Motions.

[8] Contemporaneously, herewith, the Debtors have filed a Motion with this Court requesting that it take judicial notice of the docket in Debtors' bankruptcy cases that reference Notices of Transfer of Claims.

such claim, if ultimately allowed, will dilute the recoveries of other creditors who, absent legislation, are unlikely to be paid in full.

Lastly, the Debtors' ability to adequately contest the claim is prejudiced since Appellant has ceased operations, has no employees and has liquidated. Accordingly, critical documentary and testimonial evidence necessary to contest the claim may be lost, resulting in additional prejudice to the Debtors and their estates.

### (4)    Bad Faith of Appellant.

There is nothing in the record to conclude that the Appellant acted in bad faith. Notwithstanding the lack of bad faith, the other factors here weigh heavily against a finding that Appellant's actions were excusable neglect.

## VI.   **CONCLUSION**

For the reasons set forth above, the Debtors submit that, the Bankruptcy Court did not err in denying Appellant's Motion, that the factors in <u>Pioneer</u> weigh in favor of the Debtors, that Appellant failed to meet its heavy burden and, therefore, the Bankruptcy Court should be affirmed in this appeal.

Dated: February 6, 2006
Wilmington, Delaware

SAUL EWING LLP

By: _____

Norman L. Pernick (No. 2290)
Domenic E. Pacitti (No. 3989)
J. Kate Stickles (No. 2917)
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE  19899-1266
(302) 421 - 6800

and

Adam H. Isenberg, Esquire
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972 - 7777

Counsel to Appellee, Owens Corning, *et al.*